IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HENRY ESPEJO, individually and on behalf of
all others similarly situated,

    *Plaintiff,*

    *v.*

SANTANDER CONSUMER USA, INC., an
Illinois corporation,

    *Defendant.*

Case No.: 1:11-cv-08987

Honorable Charles P. Kocoras

## DEFENDANT'S MOTION FOR REASSIGNMENT OF CASE
## BASED UPON RELATEDNESS PURSUANT TO LOCAL RULE 40.4

Defendant Santander Consumer, USA, Inc. hereby moves for an order finding that the subsequently filed putative nationwide class action — *Lorenzie Humphreys and Yvette Rheames, on behalf of themselves and all others similarly situated vs. Santander Consumer, USA, Inc.,* No. 1: 12-cv-04671 pending in the Northern District of Illinois, Eastern Division (the "Related Action" or the "*Humphreys* case") — is related to the instant putative nationwide class action matter within the meaning of Local Rule 40.4. Santander respectfully requests that this Court: (i) find the Related Action satisfies Local Rule 40.4, and (ii) forward that finding and this Request to the Executive Committee to reassign the Related Action to this Court for all further proceedings.

### Pertinent Background Of Both Matters

1.    On December 19, 2011, the original Plaintiff, Tercia Pereira, filed a nationwide putative class action against Santander alleging that Santander had violated the Telephone Consumer Protection Act ("TCPA") 47 U.S. C. § 227(b)(1), by using automative dialing

equipment to call plaintiff's cell phone without her consent in connection with collection of a debt relating to plaintiff's husband, a Santander account holder.

2.      On August 8, 2012, this Court granted plaintiff leave to file an amended complaint and substitute the class representative. On that same date, plaintiff filed the amended complaint and Henry Espejo ("Espejo") was substituted in as the new putative plaintiff class representative. The substantive allegations of the amended complaint remained similar to the original complaint — new plaintiff Espejo alleged that he received calls on his cellular phone seeking to collect a debt belonging to his wife, but that he had not consented to Santander calling him. (Am. Compl., ¶¶ 14-18.) Espejo seeks certification of a nationwide class.

3.      Santander has answered the amended complaint and the parties have propounded written discovery and exchanged documents. Oral discovery is currently underway, with depositions scheduled throughout November. On October 18, 2012, this Court set a discovery cut-off of December 4, 2012.

4.      On or about August 7, 2012, plaintiff Humphreys filed the Related Action in the Northern District of Illinois. The Related Action was assigned to the Honorable Virginia M. Kendall. A copy of the currently operative complaint in the Related Action, the Amended Nationwide Class Action Complaint, is attached as Exhibit A. Like the action before this Court, plaintiffs Humphreys and Rheames in the Related Action assert, *inter alia*, a putative nationwide TCPA "no consent" class action directed against Santander. (*Humphreys* Compl., at p. 10; Second Claim For Relief.)

5.      The Related Action, like the instant case, seeks to certify a nationwide class of persons under the TCPA who did not consent to receiving calls from Santander on their cell phones in connection with collection of a debt. (*Compare, Humphreys* Compl., at p. 10; Second

Claim For Relief; *with* Espejo Am. Compl., at ¶ 19.) While the plaintiffs in the Related Action asserted three claims — TCPA, FDCPA and breach of contract — fundamentally, the most significant and the claim with the greatest potential for relief is, like the present case, brought under the TCPA. (*Id.*)

6.     On October 26, 2012, Santander filed its responsive pleadings to the complaint in the Related Action: a motion to compel arbitration as to one plaintiff (Humphreys); with regard to the second plaintiff (Rheames), an answer and a companion motion for expedited discovery on the issue of arbitrability. (*Humphreys* case Dkt. Nos. 25, 26, 29.) On November 1, 2012, the Court granted the motion to compel arbitration of Humphreys' claims, and entered and continued the motion for expedited discovery as to plaintiff Rheames. (*Humphreys* case Dkt. No. 32.) At this time, no discovery cut-off has been set in the Related Action. The sole defendant in both actions, Santander, is represented by the same law firm, ReedSmith, LLP.

Just today, the remaining plaintiff in the Humphreys action agreed to dismiss, without prejudice, the asserted claims for alleged FDCPA violations and breach of contract. The only claims that remain in the Humphreys case are the TCPA no consent claims.

### *The Related Action is "Related" To The Present Action Under Local Rule 40.4(a)*

7.     Local Rule 40.4(a) provides, in pertinent part, as follows:

Two or more civil cases may be related *if one or more* of the following conditions are met:

(1)     the cases involve the same property;

(2)     the cases involve some of the same issues of fact or law;

(3)     the cases grow out of the same transaction or occurrence; or

(4)     in class action suits, one or more of the classes involved in the cases is or are the same.

8.     The cases need not be absolutely identical to be related for purposes of satisfying Local Rule 40.4. *See Fairbanks Capital Corp. v. Jenkins,* No. 12 C 3930, 2002 WL 31655277, at *2 (N.D. Ill. Nov. 25, 2002) (granting reassignment based on Relatedness). Indeed, as this Court has noted, following *Fairbanks*: "Two cases need not be absolutely identical to be related for purposes of LR 40.4. If some of the same issues of fact or law are common, that can be sufficient to establish relatedness." *Global Patent Holdings, LLC v. Green Bay Packers, Inc.,* No. 00 C 4623, 2008 WL 1848142, at *3 (N.D. Ill. April 23, 2008) (Kocoras, J.). Thus, this Court held that when "the cases are fundamentally similar," motions to reassign based on relatedness are proper. *Global Patent Holdings,* 2008 WL 1848142, at *4 (granting motion under LR 40.4) (copies of all slip opinions are attached hereto as Group Exhibit B).

9.     The Related Action is related to the instant action under Local Rule 40.4(a) because of at least two key components: (i) the issues of law involving the TCPA claims are the same in both matters; and (ii) the TCPA putative classes are the same in both matters.

10.     *First,* both actions assert violations of the TCPA based upon Santander having allegedly called cell phones without consent of the named plaintiff. Both cases involve the identical legal issues of, *inter alia,* whether (i) a customer's consent to receive calls to a cell phone also authorizes calls to a spouse; (ii) the putative class is ascertainable; and (iii) Santander's telephone system constitutes an "automatic dialer" as defined by the TCPA.

11.     *Second,* plaintiffs in both cases seek to certify virtually identical nationwide classes under the TCPA for calls allegedly made without their consent:

> **Espejo "No Consent TCPA Class":** Any person in the United States to whom Defendant (1) placed a call in connection with the collection of debt; (2) to a cellular telephone number; and (3) which was never provided to Defendant or to any other entity associated with the origination or collection of the debt by the person called. (Am. Compl. ¶ 19.)

**Humphreys "No Consent TCPA Class":** (1) All persons in the United States who are current or former customers of Santander within the previous six years and all other persons to whom Santander made telephone calls for the collection of debts from its customers, and (2) all persons that were called by Santander using an automatic telephone dialing service and/or an artificial or prerecorded voice where the evidence shows that the person received at least one phone call placed by the automatic telephone dialing service and/or an artificial or prerecorded voice and (i) where there is no evidence of prior express consent to call that person's cellular telephone number by the automatic telephone dialing service and/or an artificial or prerecorded voice for a time period consistent with the statute of limitations for TCPA claims or (ii) where the prior express consent to call was withdrawn prior to the call being placed. (*Humphreys* Compl. p. 10.)

12.     While the wording of the two putative class definitions is different, the persons captured by these definitions will be the same. Accordingly, since the issues of law are the same on both matters, and the TCPA classes in both matters are the same, the two actions are related under Rule 40.4(a).

### *The Conditions For Reassignment Based On*
### *Relatedness Are Satisfied Under Local Rule 40.4(b)*

13.     Once a court has found two cases to be 'related' under LR 40.4(a), the Court can reassign the latter-filed case if the following criteria of Rule 40.4(b) are then met:

(1)     both cases are pending in this Court;

(2)     the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort;

(3)     the earlier case has not progressed to the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case substantially; and

(4)     the cases are susceptible of disposition in a single proceeding.

14.     As mentioned about, the requirements of Rule 40.4(a) have been satisfied. The requirements for relatedness under Rule 40.4(b) are also met. As this Court has remarked, "the reassignment mechanism is primarily concerned with judicial efficiency." *Global Patent Holdings, LLC*, 2008 WL 1848142, at *4. Examining the Rule 40.4(b) factors, when measured

against the circumstances presented, demonstrates that reassignment for relatedness will further the goal of judicial efficiency.

15.     *First,* it is undisputed that this case and the Related Action are both pending in the Northern District of Illinois, Eastern Division.

16.     *Second*, handling these cases together before a single judge will save substantial judicial resources. Nationwide class certification issues under the TCPA (which inevitably will be one of the key contested matters in both cases) will only have to be briefed and decided once, instead of twice, by two judges in this District, if these matters were to proceed along parallel routes. Similarly, only one court will have to decide the issue of whether Santander's telephone system used to call the plaintiffs in both matters constitutes an "auto dialer" as defined by the TCPA. Having only a single judge decide these critical issues is a highly significant factor in the reassignment calculus. *See Fairbanks Capital Corp,* 2002 WL 31655277, at *2 ("Reassignment of all of the cases to this Court's calendar will permit these issues to be briefed and determined once; rather than four separate times, which will result in a substantial saving of judicial time and effort….").

17.     Equally significant from a judicial efficiency standpoint is that the parties in the instant and Related Actions are in the process of attempting to both agree and promptly schedule a mediation in an effort to try to resolve these matters on a global basis. Such a potential resolution militates in favor of consolidating the matters together before a single judge in the event the parties reach a settlement of the class actions, which settlement would then be subject to judicial approval. It would be more efficient and save judicial resources to have that judicial approval process pursuant to Fed.R.Civ. Pro. 23(e) encompass a single proceeding, before a

single judge, rather than have an expensive and time-consuming judicial matter repeated before another judge.[1]

18.     *Third,* given that plaintiff Humphreys' claims will now be arbitrated, only plaintiff Rheames remains in the Related Action. Significantly, plaintiff Rheames' claims under the TCPA are virtually identical to those asserted by Espejo in the instant matter. (*Compare,* Humphreys Compl., ¶¶ 34-48; *with* Espejo Compl., ¶¶ 14-18.) Given the very limited nature of the legal and factual issues presented, neither case presents a discovery-heavy matter. Thus, the consolidation of the *Humphreys* case would not likely cause substantial delay to either matter to reach final disposition. Santander has already produced written discovery to plaintiffs in the instant action, and that same discovery would be equally available to counsel in the Related Action. And, as to depositions, counsel for both actions would be equally entitled to participate in such depositions so that no undue prejudice would result from having not had the opportunity to examine any deposed witnesses.

19.     Finally, the key issue of Rule 23 certification of the TCPA classes — which are virtually identical in both matters — is susceptible of disposition in a single proceeding on account of the substantial overlap of the legal and factual issues under that claim. The issues of fact and law are virtually identical with one another between the instant and Related Actions in

---

[1] Another related matter, *Arka Bonner v. Santander Consumer USA, Inc.*, Case Number 2:12-cv-02183-RDP, was recently filed in the United States District Court for the Northern District of Alabama. On October 30, 2012 Santander moved, *inter alia,* to transfer the *Bonner* Alabama case to the Northern District of Illinois because *Bonner* involves substantially similar and overlapping issues of law and fact when compared to this action, and is almost identical to the Related Action. *See* Ex. C, Santander's "Motion to Dismiss, Transfer, or Stay, or Alternatively, Motion for Judgment on the Pleadings" in *Bonner v. Santander*. On November 1, 2012, the plaintiff in the *Bonner* case consented to the transfer to the Northern District of Illinois. On November 5, 2012, the District Court For The Northern District of Alabama entered an Order granting Santander's Motion, transferring *Bonner* to the Northern District of Illinois. *See* Ex. D. As referenced in that Order, Santander intends to seek consolidation and reassignment of the *Bonner* case with the currently pending actions in this District that are now the subject of the present LR 40.4 Motion. (*Id.*) Like in *Humphreys*, the plaintiff in the *Bonner* action has agreed to dismiss the FDCPA and contract claims, and the only remaining claims are under the TCPA.

connection with the TCPA claims. Thus, the two matters are "fundamentally similar" to one another, thereby entitling a finding of relatedness. *Global Patent Holdings, LLC,* 2008 WL 1848142, at *4. [2]

**WHEREFORE**, Defendant Santander Consumer USA, Inc. respectfully moves this Court for an order finding that *Humphreys, et al. v. Santander Consumers USA, Inc.,* No. 12-cv-0467, is related to the instant action under Local Rule 40.4, and that the case be reassigned to this Court for all further proceedings.

Dated: November 7, 2012

Respectfully Submitted,

**SANTANDER CONSUMER USA, INC.,**
*Defendant*

By: /s Gary S. Caplan
        One of Its Attorneys

Gary S. Caplan
Michael D. Richman
REED SMITH LLP
10 South Wacker Drive, Suite 4000
Chicago, Illinois 60606
(312) 207-1000

---

[2] Santander is aware of this Court's decision in *Martin v. Midland Funding, LLC,* No. 11 C 3104, 2011 WL 3876965 (Aug. 30, 2011) (Kocoras. J.), in which this Court denied a Local Rule 40.4 Motion for Relatedness in connection with TCPA and FDCPA putative class actions. However, this matter is materially distinguishable from *Midland Funding.* First, unlike the situation in *Midland Funding* where there were *different defendants* in each of the pending actions, here, Santander is the *solely* named defendant in both *Humphreys* and this matter. (*Id.,* 2011 WL 3876965 at *2.) Second, the claims asserted in the instant action and the Related Action are virtually the same. Third, in *Midland Funding,* the putative classes and definitions in each action were substantially different. *Id.* Not true here. In the instant action, by contrast, the putative nationwide class definition proposed in each case here is virtually the same: focusing on the TCPA components of being composed of all persons called by Santander (i) using an automatic telephone dialing service, and (ii) where there was no evidence of the recipient of the cellular phone number not having provided Santander with prior express consent to call. Fourth, unlike in *Midland Funding,* here, the class discovery will substantially overlap in both cases, as the TCPA issues of consent and whether Santander called the cellular numbers with an automatic telephone dialing service are the same.

# EXHIBIT A

`IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LORENZIE HUMPHREYS, and YVETTE RHEAMES, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>SANTANDER CONSUMER USA, INC.,<br><br>    Defendant. | CIVIL ACTION NO.:<br>1:12-cv-04671<br><br>JURY TRIAL DEMANDED |

## AMENDED NATIONWIDE CLASS ACTION COMPLAINT

This is a nationwide class action complaint pursuant to Rule 23 of the Federal Rules of Civil Procedure against defendant Santander Consumer USA, Inc. ("Santander" or "defendant"). Lorenzie Humphreys ("Humphreys") Yvette Rheames ("Rheames"), on behalf of themselves and all others similarly situated (collectively with Humphreys and Rheames, "plaintiffs"), seek redress for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), and breach of contract as set forth herein.

**PARTIES**

1.      Plaintiff Lorenzie Humphreys is an adult resident citizen of Cook County, Illinois. Mr. Humphreys currently resides in the City of Chicago in Cook County, Illinois.

2.      Plaintiff Yvette Rheames is an adult resident citizen of Cook County, Illinois. Ms. Rheames currently resides in the City of Chicago in Cook County, Illinois.

3.      Santander is an Illinois corporation with its principal office located in Dallas, Texas. Santander has conducted business in Cook County in Illinois during the time period pertinent to the allegations in this complaint. Santander is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

**JURISDICTION AND VENUE**

4.      This class action is based on the FDCPA, the TCPA, and breach of contract. Plaintiffs' complaint asserts numerous state and federal claims against defendant. Plaintiffs' state law claims are related to the same collection activity that forms the basis for plaintiffs' FDCPA and TCPA claims. It is therefore evident that plaintiffs' state law claims in this case are so related to claims in the action within this Court's original jurisdiction that they form part of the same case or controversy and, thus, fall squarely within this Court's supplemental jurisdiction. Accordingly, federal question jurisdiction exists pursuant to 28 U.S.C. §1331, and

2

supplemental jurisdiction exists pursuant to 28 U.S.C. §1367. This Court, additionally, should exercise supplemental jurisdiction over plaintiffs' state law claims in order to avoid an unnecessary duplication of judicial resources.

5.     Venue is proper under 28 U.S.C. §1391, since a substantial part of the events giving rise to the claims occurred within this judicial district and division and since the defendant is subject to the personal and general jurisdiction of this Court.

6.     Defendant's wrongful activities were directed to this jurisdiction. Plaintiffs' rights were damaged or impaired in this jurisdiction, and significant damages and losses were suffered in this jurisdiction.

7.     Santander regularly, continuously, and systematically conducts business in the state of Illinois and is an Illinois corporation.

## NATURE OF THE CASE

8.     Santander is one of the largest subprime automobile servicing companies in the world. As of 2010, its debt collection portfolio was approximately $15 billion. Although the debts it collects are in fact owned by others, Santander collects the debts in its own name without disclosing that it is not the owner of the debt. Therefore, it functions as an undisclosed agent for the true owner.

9.     Defendant's routine business practices involve taking over the collection of debts previously collected by others and then: (a) engaging in unlawful harassment and unlawful collection methods, and (b) imposing improper fees never agreed to and not authorized by the contracts they are servicing. It is a very lucrative but unlawful business plan.

10.     Santander is so eager to harass, abuse, and annoy its customers that its repeated and continuous calls each day are from multiple Santander telephone numbers. It calls cell numbers without prior authorization.

11.     Santander also begins its calls long before the grace period for the payment in question runs. For example, for loans due on the 1st with a 10 day grace period through the 10th, Santander's harassing calls begin on or about the 2nd.

12.     Furthermore, it employs the same methods to abuse, annoy, and harass the friends, family and references of the debtors all in an unlawful attempt to intentionally harass, abuse and annoy its customers and their family and friends.

13.     Defendant willfully, knowingly, regularly, and routinely charges and collects fees not authorized by the contracts with debtors, including collecting late fees when payments were not late and "repo fees" unrelated to any expense of repossession. Santander's conduct in assessing undue fees is so enthusiastic that upon acquiring accounts to collect it not only charges unlawful fees in the future,

4

but Santander routinely goes back and retroactively assesses unlawful fees pertaining to time periods long before it had anything to do with the loans, adding those fees to the then current bill. In some cases this occurs years after the purported event, which never in fact even occurred.

14. Defendant's routine business practices also include the use of prerecorded automatic telephone dialing systems and artificial or voice systems willfully and knowingly directed to cell phones without the express prior consent of the person being called. The persons called without express permission using automatic telephone dialing systems, artificial and prerecorded voice systems include not only the debtors but the friends, family and references of the debtors.

15. Santander's business practices are so outrageous that it has a rare "F" rating with the Better Business Bureau in Dallas, its headquarters' city.

## FACTUAL ALLEGATIONS AS TO PLAINTIFF HUMPHREYS

16. In 2005, Mr. Humphreys purchased a 2005 Mitsubishi Outlander ("the vehicle") from Webb Chevrolet in Chicago, Illinois.

17. Mr. Humphreys originally financed the vehicle through an entity other than Santander.

18. In approximately 2010, Mr. Humphreys began receiving telephone calls from Santander attempting to collect an alleged outstanding balance on the vehicle note.

5

19.    Mr. Humphreys has a cellular telephone with an assigned telephone number ending in 5157.

20.    Beginning in 2010, Santander telephoned the 5157 cellular number more than 100 times using an automated telephone dialing system and left numerous pre-recorded messages in Mr. Humphreys' voice mailbox.

21.    Mr. Humphreys began receiving these telephone calls from Santander attempting to collect an alleged outstanding balance on the vehicle note.

22.    Santander's calls to Mr. Humphreys were initiated by an autodialer or a predictive dialer.

23.    An autodialer or predictive dialer places calls without human intervention until a person answers the call, in which case the dialer attempts to connect the person answering the call with a human debt collector.

24.    Mr. Humphreys did not authorize the automated placement of calls to his cellular telephone.

25.    Mr. Humphreys told Santander to stop calling his cell phone; however, Santander persisted in calling Mr. Humphreys' cellular phone.

26.    Since that time, Mr. Humphreys received numerous harassing and misleading telephonic communications from Santander's agents attempting to collect upon the alleged debt on his cell phone and on his home phone number. Santander called these lines multiple times per day.

6

27.    When he spoke with a live person, Santander repeatedly misled and deceived Mr. Humphreys as to the actual balance owed on the vehicle note.

28.    Santander attempted to coerce and embarrass Mr. Humphreys into making additional payments by repeatedly calling Mr. Humphreys an excessive number of times with the intent to harass.

29.    Santander's agents have repeatedly threatened Mr. Humphreys in an attempt to collect upon the alleged debt.

30.    Santander's agents have attempted to belittle, abuse, and oppress Mr. Humphreys in their attempts to collect upon the alleged debt.

31.    Santander's agents have left numerous messages on Mr. Humphreys' cellular and home voicemail services failing to disclose that the purpose of their communications was an attempt to collect upon the alleged debt and using automated or predictive dialers.

32.    In short, Mr. Humphreys has been harassed, misled, deceived, coerced, and threatened in violation of the FDCPA and TCPA.

33.    Santander furthermore repeatedly misrepresented the loan balance and breached its contract with Mr. Humphreys by charging fees not authorized in the contract.

## FACTUAL ALLEGATIONS AS TO PLAINTIFF RHEAMES

34.    Ms. Rheames was harassed and received numerous phone calls from Santander regarding another person's alleged debt.

35.    Ms. Rheames has a cellular telephone with an assigned telephone number ending in 3624.

36.    Ms. Rheames told Santander to stop calling her cell phone; however, Santander persisted in calling Ms. Rheames' cellular phone.

37.    Beginning in approximately 2011, Santander telephoned the 3624 cellular number several times using an automated telephone dialing system and left numerous pre-recorded messages in Ms. Rheames' voice mailbox.

38.    Santander's calls to Ms. Rheames were initiated by an autodialer or a predictive dialer.

39.    An autodialer or predictive dialer places calls without human intervention until a person answers the call, in which case the dialer attempts to connect the person answering the call with a human debt collector.

40.    Ms. Rheames repeatedly told Santander to stop calling her regarding the other person's alleged debt; however, Santander persisted in contacting Ms. Rheames and left numerous voicemails on her message service.

8

41.     Santander was calling Ms. Rheames' telephone number for the purpose of collecting an alleged debt owed by another person to a lender other than Santander.

42.     Santander intended to contact Ms. Rheames regarding another person's alleged debt.

43.     Prior to receiving calls from Santander, Ms. Rheames had no contact or communications with Santander, and did not authorize Santander to contact her.

44.     Ms. Rheames did not authorize the automated placement of calls to her cellular telephone.

45.     Santander's agents have repeatedly threatened Ms. Rheames in an attempt to collect upon the alleged debt.

46.     Santander's agents have attempted to belittle, abuse, and oppress Ms. Rheames in their attempts to collect upon the alleged debt.

47.     Santander's agents have left numerous messages on Ms. Rheames' cellular voicemail service failing to disclose that the purpose of their communications was an attempt to collect upon the alleged debt and using automated or predictive dialers.

48.     In short, Ms. Rheames has been harassed, misled, deceived, coerced, and threatened in violation of the FDCPA and the TCPA.

## CLASS ACTION ALLEGATIONS

Plaintiffs seek to represent a nationwide class pursuant to Rule 23 of the Federal

Rules of Civil Procedure. The class which plaintiffs seek to represent is composed

of and defined as:

> (1) All persons in the United States who are current or former
> customers of Santander within the previous six years and all other
> persons to whom Santander made telephone calls for the collection of
> debts from its customers, and (2) all persons that were called by
> Santander using an automatic telephone dialing service and/or an
> artificial or prerecorded voice where the evidence shows that the
> person received at least one phone call placed by the automatic
> telephone dialing service and/or an artificial or prerecorded voice and
> (i) where there is no evidence of prior express consent to call that
> person's cellular telephone number by the automatic telephone dialing
> service and/or an artificial or prerecorded voice for a time period
> consistent with the statute of limitations for TCPA claims or (ii)
> where the prior express consent to call was withdrawn prior to the call
> being placed.

49.    This action has been brought and may properly be maintained as a

class action pursuant to the provisions of Rule 23(a)(1)-(4) and Rule 23(b) of the

Federal Rules of Civil Procedure, and satisfies the numerosity, commonality,

typicality, adequacy, predominance and superiority requirements thereof because:

> a. The plaintiff class is so numerous that the individual joinder of all
>
>    members is impracticable under the standard of Federal Rule of
>
>    Civil Procedure 23(a)(1).
>
> b. Common questions of law and fact exist as to all members of the
>
>    class, as required by Federal Rule of Civil Procedure 23(a)(2), and

10

predominate over any questions, which affect only individual members of the class within the meaning of Federal Rule of Civil Procedure 23(a)(2). These common questions of law and fact include, without limitation:

    i. Whether defendant engaged in violations of laws as alleged herein;

    ii. Whether defendant by nature of its wrongful conduct is liable for damages and losses resulting from the conduct alleged herein; and

    iii. Whether the defendant had a policy and uniform practice with respect to harassing consumer, family members, friends, and/or references, misleading consumers, and charging and collecting unauthorized fees.

c. The plaintiffs' claims are typical of the claims of the members of the class under Federal Rule of Civil Procedure 23(a)(3). The representative plaintiffs and all members of the class sustained damages arising out of defendant's common course of conduct in violation of the law as complained herein. The losses of each member of the class were caused directly by defendant's wrongful conduct in violation of law as alleged herein.

11

d. The representative plaintiffs will fairly and adequately protect the interests of the class as required by Federal Rule of Civil Procedure 23(a)(4). Plaintiffs have no interests, which are adverse to the interests of the class members. Plaintiffs were harassed, mislead, and/or charged unauthorized fees by defendant. Plaintiffs have retained counsel, who have substantial experience and success in the prosecution of class action and consumer litigation.

e. Defendant's scheme affected all class members similarly. Plaintiffs and all members of the class were treated the same. As a result, the issues which affect the plaintiffs and the class members in common predominate over those which affect only the interest of any particular class member. Thus, common questions of law and fact greatly predominate over questions of law or fact affecting only individual members of the class.

f. A class action is superior to other available methods for the fair and efficient adjudication of this controversy under Federal Rule of Civil Procedure 23(b) since individual joinder of all members of the class is impracticable. Furthermore, as the damages suffered by each individual member of the class may be relatively small, the expense and burden of individual litigation would make it difficult

12

or impossible for individual members of the class to redress the wrongs done to them. The cost to the court system of adjudication of such individualized litigation would be substantial. Individualized litigation would also present the potential for inconsistent or contradictory judgments and would magnify the delay and expense to all parties and the court system in multiple trials of the factual issues of the case. By contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves the resources of the parties and the court system, and protects the rights of each class member.

## FIRST CLAIM FOR RELIEF

## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

50.    Plaintiffs re-allege and incorporate the preceding paragraphs and subsequent factual averments in this complaint as if fully set forth herein.

51.    Santander violated 15 U.S.C. §1692b(1) because its agents communicated with persons other than the consumer and failed to provide their identity and state that they are confirming or correcting location information.

52.    Santander violated 15 U.S.C. §1692b(2) by telling persons other than the consumer that the consumer owed a debt.

53.     Santander violated 15 U.S.C. §1692b(3) by repeatedly communicating with persons other than the consumer without reasonable belief that the earlier response was erroneous or incomplete or that such person now has complete or correct information.

54.     Santander violated 15 U.S.C. §1692c(a)(3) by contacting plaintiffs and the class at their place of employment after Santander had reason to know the employer prohibited the consumer from receiving such communication.

55.     Santander violated 15 U.S.C. §1692c(b) by communication with third parties other than those permitted by that paragraph except as provided in 15 U.S.C. §1692b.

56.     Santander used language that was obscene, profane, or had the natural consequence of abusing the consumer in violation of 15 U.S.C. §1692d(1).

57.     Santander caused telephones to ring and engaged persons in telephone conversations repeatedly or continuously with intent to annoy, abuse, or harass in violation of 15 U.S.C. §1692d(5).

58.     Santander violated 15 U.S.C. §1692d(6) by placing telephone calls without meaningful disclosure of the callers' identity.

59.     Santander violated 15 U.S.C. §1692e(2) by falsely representing the amount of debt.

60. Santander violated 15 U.S.C. §1692e(11) by failing to make the required disclosures in the initial written communications from Santander.

61. Santander violated 15 U.S.C. §1692f(1) by collecting money from plaintiffs and the class (interest, fees, charges and expenses) not expressly authorized by the contract or permitted by law.

62. Santander failed to provide the notice required by 15 U.S.C. §1692g(a).

63. As a proximate result of Santander's actions, plaintiffs and the class were caused to suffer harm.

64. Plaintiffs and the class are entitled to an award of statutory damages or actual damages, whichever is higher, plus costs and attorneys' fees for Santander's violations of the FDCPA.

Wherefore, premises considered, plaintiffs and the class demand judgment against Santander for statutory or actual damages, whichever is higher, plus costs, attorneys' fees and such additional relief as the Court may deem appropriate or to which plaintiffs and the class may be entitled.

## SECOND CLAIM FOR RELIEF

## VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT

65. Plaintiffs re-allege and incorporate the preceding paragraphs and subsequent factual averments of this complaint as if fully set forth herein.

66.     Santander violated the TCPA by the calls made to plaintiffs and the class. The violations include the use of automatic telephone dialing systems and artificial and prerecorded voice messages directed to cell numbers without plaintiffs' and the class's express permission.

67.     Santander's actions were done willfully or knowingly.

68.     Plaintiffs and the class are entitled to an award of statutory damages for Santander's violations of the TCPA.

69.     Each call is a separate violation and entitles plaintiffs and the class to statutory damages against Santander in the amount of at least Five Hundred Dollars ($500.00) per call. Because the violations by Santander were committed willfully and knowingly, plaintiffs and the class request that a statutory damage of One Thousand Five Hundred Dollars ($1,500.00) per call be assessed pursuant to 47 U.S.C. § 227(b)(3).

Wherefore, premises considered, plaintiff demands judgment against Santander for statutory or actual damages, whichever is higher, plus costs and such additional relief as the Court may deem appropriate or to which plaintiff and the class may be entitled.

## THIRD CLAIM FOR RELIEF

## BREACH OF CONTRACT

70.     Plaintiffs re-allege and incorporate the preceding paragraphs and subsequent factual averments of this complaint as if fully set forth herein.

71.     Defendant had a contract with plaintiffs and the class or was acting as an agent on behalf of an undisclosed principal. Santander in either event is liable for the breach.

72.     Defendant breached the contract with plaintiffs and the class by imposing unauthorized fees, including but not limited to late fees, which were not due, and repossession fees not authorized by the contract.

73.     As a consequence of defendant's breach of contract, plaintiffs and the class suffered damages.

Wherefore, premises considered, plaintiffs and the class demand judgment against Santander for actual and compensatory damages, plus interest, costs, and such additional relief as the Court may deem appropriate or to which plaintiffs and the class may be entitled.

## PRAYER FOR RELIEF

WHEREFORE, premises considered, plaintiffs and the class seek the following relief:

a)      Following appropriate discovery, an order certifying this cause as a nationwide class action pursuant to Federal Rule of Civil Procedure 23, with appropriate subclasses as the Court deems appropriate, and notice as applicable to the absent class members, and appointing plaintiffs as class representatives;

b)      A declaration that Santander's nationwide pattern and practice of conduct as alleged herein constitutes a violation of the FDCPA, the TCPA, and breach of contract with respect to plaintiffs and the class;

c)      Statutory damages of One Thousand Dollars ($1,000.00) from Santander for violations of the FDCPA pursuant to 15 U.S.C. § 1692k;

d)      Statutory damages of One Thousand Five Hundred Dollars ($1,500.00) per call for Santander's willful and knowing violations of the TCPA pursuant to 47 U.S.C. § 227(b)(3) or in the alternative at least Five Hundred Dollars ($500.00) per call;

e)      Costs and reasonable attorneys' fees from Santander for violations of the FDCPA pursuant to 15 U.S.C. § 1692k;

f)      Appropriate injunctive relief requiring Santander to stop violating the FDCPA and the TCPA;

g)      Actual and compensatory damages;

h)      Interest, costs, and attorneys' fees; and

i)      Such further and different relief as the Court may deem appropriate or

as plaintiffs and the class are entitled to under the law.

## **JURY DEMAND**

Plaintiffs demand trial by struck jury of all issues.


                                        /s/ S. Jerome Levy
                                        S. Jerome Levy
                                        One of the Attorneys for Plaintiff

S. Jerome Levy
Karin A. Olson
S. Jerome Levy & Associates, P.C.
33 North Dearborn Street, Suite 1617
Chicago, Illinois 60601
Telephone: 312.832.1616
Facsimile: 312.832.0270
sjlevy@jeromelevylaw.com
kaolson@jeromelevylaw.com

# EXHIBIT B


Not Reported in F.Supp.2d, 2002 WL 31655277 (N.D.Ill.)
**(Cite as: 2002 WL 31655277 (N.D.Ill.))**

▷

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois, Eastern Division.
FAIRBANKS CAPITAL CORP., Plaintiff,
v.
Johnny JENKINS and Annie J. Wesson-Jenkins,
Defendants.
Johnny JENKINS and Annie J. Wesson-Jenkins,
Counterclaimants,
v.
FAIRBANKS CAPITAL CORP. and Nationscredit
Financial Services Corp., d/b/a EquiCredit Corpora-
tion of Illinois, Counterdefendants.

No. 02 C 3930.
Nov. 25, 2002.

*MEMORANDUM OPINION AND ORDER*
KENNELLY, J.

*1 Fairbanks Capital Corp., the assignee of a
mortgage of real estate given to secure payment of
a promissory note, sued the mortgagors, Johnny
Jenkins and Annie Wesson-Jenkins, seeking to
foreclose on the mortgage. The case was filed in
this Court based on diversity of citizenship. In their
answer, the defendants asserted as an affirmative
defense that they were entitled under the Truth in
Lending Act to rescind the transaction and were ex-
ercising that right. They also counterclaimed
against Fairbanks and Nationscredit Financial Ser-
vices Corp. (which does business as EquiCredit
Corp. of Illinois), the original mortgagee, for dam-
ages under the TILA. The Court previously denied
Fairbanks' motion to strike the affirmative defense
and dismiss the counterclaim. *Fairbanks Capital
Corp. v. Jenkins,* 225 F.Supp.2d 910, 2002 WL
31260011 (N.D.Ill. Oct. 9, 2002).

The defendants have now moved this Court
pursuant to Northern District of Illinois Local Rule
40.4(c) to find that three later-filed cases pending
before other judges of the Court are related to this

one and for that reason to request reassignment of
those cases to this Court's docket. Fairbanks and
EquiCredit have objected to the motion. For the
reasons stated below, the Court grants defendants'
motion.

The defendants' TILA claim involves
EquiCredit's alleged violation of TILA provisions
requiring that they be given notice of their right to
rescind the transaction within three business days.
*See* 15 U.S.C. § 1635; 12 C.F.R. § 226.23. Defend-
ants contend that a document they were asked to
sign at closing purportedly "confirming" that they
were not rescinding was invalid because it improp-
erly negated their right to rescind. This TILA viola-
tion, defendants contend, had the effect of giving
them an extended three-year period in which to res-
cind, *see* 15 U.S.C. § 1635(f); 12 C.F.R. §
226.23(a), which they contend can be asserted
against an assignee like Fairbanks. *See* 15 U.S.C. §
1641(c). As noted earlier, they seek rescission of
the transaction as well as damages and attorney's
fees.

*McWethy v. Nationscredit Financial Services
Corp.,* Case No. 02 C 7262, pending before Judge
Robert Gettleman, is a putative class action brought
on behalf of eight named plaintiffs (two individual
mortgagors and three groups of dual mortgagors)
who are parties to mortgage loans made by
EquiCredit and assigned to Fairbanks. The defend-
ants are Nationscredit d/b/a EquiCredit Corp. of
Illinois, EquiCredit Corp. of Missouri; EquiCredit
Corp. of America; and Fairbanks. The plaintiffs'
complaint asserts claims under TILA and the
Illinois Consumer Fraud Act arising from
EquiCredit's alleged practice of requiring borrowers
to sign confirmation forms effectively giving up
their right to rescind.

*Brown v. Nationscredit Financial Services
Corp.,* Case No. 02 C 5023, pending before Judge
William Hibbler, is a putative class action brought
by a single plaintiff against Nationscredit d/b/a

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

EquiCredit Corp. of Illinois; EquiCredit Corp. of America; and Fairbanks. The plaintiff, a homeowner who obtained a mortgage loan from EquiCredit (and assigned to Fairbanks) in order to finance improvements to his home, alleges TILA and ICFA violations based on the practice of requiring borrowers to "confirm" their non-rescission at the time of the transaction. He also alleges that the loan was subject to the Home Ownership and Equity Protection Act, which he says EquiCredit violated by failing to make certain HOEPA-required disclosures.

**\*2** Finally, *Brown v. Nationscredit Financial Services Corp.,* Case No. 02 C 6059, pending before Judge Charles Norgle, is brought on behalf of two plaintiffs against Nationscredit d/b/a EquiCredit Corp. of Illinois; EquiCredit Corp. of America; and Fairbanks. The plaintiffs, who obtained a mortgage loan from EquiCredit which was assigned to Fairbanks, alleges violations of TILA and ICFA arising from the previously-mentioned practice of requiring borrowers to "confirm" non-rescission at the time of the transaction.

The plaintiffs in all of the cases that are subject to this motion are represented by the same law firm. As best we can tell, all of the Nationscredit / EquiCredit entities in all of the cases are represented by a single law firm, and Fairbanks is likewise represented by the same law firm in all of the cases.

Local Rule 40.4(a) states that two or more civil cases may be related if they involve the same property, the same issues of fact or law, arise from the same transaction or occurrence, or, in the case of class action suits, involve the same classes. N.D. Ill. LR 40.4(a)(1)-(4). EquiCredit and Fairbanks do not argue that the cases are not related within the meaning of Rule 40.4(a), and even if they had done so, the Court would find that the criteria of Rule 40.4(a)(2) have been met, as the cases involve the same issues of law. There is no question that each of these cases will involve the issue of the legality, under TILA and ICFA, of EquiCredit's alleged practice of requiring borrowers to sign non-rescission "confirmations." The Rule does not re-

quire complete identity of issues in order for cases to be considered related.

EquiCredit and Fairbanks' challenge to defendants' motion turns on the application of Local Rule 40.4(b), which provides the criteria for determining whether assignment of related cases to the judge with the lowest-numbered case is appropriate. Under Rule 40.4(b), reassignment may be ordered if four criteria are met as to all of the cases in question: they are pending in this Court; the handling of all the cases by the same judge is likely to result in a substantial saving of judicial time and effort; the earliest case has not progressed so far that designating later cases as related would likely delay substantially the proceedings in the earliest case; and the cases are susceptible of disposition in a single proceeding. N.D. Ill. LR 40.4(b)(1)-(4). There is no question that the first and third of these criteria are met here; all of the cases are pending in this Court, and *Fairbanks Capital Corp. v. Jenkins,* the first of the cases to be filed, has not progressed all that far: the Court has ruled on a motion to dismiss the counterclaim, and discovery has just gotten started.

The Court likewise believes that significant judicial efficiency will result from having one judge handle all four of the cases. None of the cases can be disposed of without determining the legality of EquiCredit's alleged practice regarding non-rescission "confirmation" at the time of the loan, as well as the consequences of that practice vis-a-vis Fairbanks as assignee. Reassignment of all of the cases to this Court's calendar will permit these issues to be briefed and determined once, rather than four separate times, which will result in a substantial saving of judicial time and effort-not to mention a substantial saving of the parties' and their counsels' time and effort. The overall administration of justice will likewise be enhanced by having a single judge determine this issue in all four of the cases. Indeed, the Court of Appeals for the Seventh Circuit recently criticized the judges of this Court for permitting numerous lawsuits involving TILA and ICFA-related challenges to the practices of "payday

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

loan" companies to proceed along different tracks before different judges, resulting in numerous and disparate decisions, as well as multiple appeals. *Smith v. Check-N-Go of Illinois, Inc.*, 200 F.3d 511, 513 n.* (7th Cir.1999). The criticism was not entirely justified, as none of the parties in any of those cases had sought reassignment under Local Rule 40.4 or on any other basis. But the same, of course, cannot be said here.

*3 Finally, all of the cases are reasonably subject to disposition in a single proceeding. EquiCredit and Fairbanks argue strenuously that the fact that the case already pending on this Court's docket is, unlike the other cases, a mortgage foreclosure case, requires denial of defendants' motion for reassignment. They contend that a mortgagee is "the master of his complaint" and is entitled to proceed with the foreclosure without the annoyance of extraneous matters. But even though Fairbanks is entitled to prosecute its foreclosure claim against the Jenkins defendants, that claim cannot be determined without addressing the TILA issue raised as part of defendants' affirmative defense of rescission. Thus the Court will be required to consider that issue in *Fairbanks v. Jenkins* whether or not the other cases are reassigned to this Court. Determination of that same issue in four cases simultaneously is not likely to prolong the time needed to consider it; the same lawyers appear in all the cases, which can and will be briefed jointly on the common issues. The HOEPA issue raised in one of the *Brown* cases likely can be determined at the same time and thus likewise does not undercut the Court's ability to resolve all of the cases simultaneously.

Fairbanks and Nationscredit also argue that Illinois' mortgage foreclosure laws preclude the assertion of a class action as part of a counterclaim by the mortgagor/defendant. But that is not a necessary result of reassignment; the Jenkins defendants have not asserted a class claim, and reassignment of cases as related does not inexorably lead to their consolidation for all purposes. And although Rule 40.4(b) requires a showing that the cases to be reas-

signed be susceptible of determination in a single proceeding with the earlier case already pending on the judge's docket, it does not require proof that the cases can or should be consolidated. Rather, the Rule requires only a finding that the cases are "susceptible" (that is, capable) of determination in a single proceeding. The Court finds that this is so. Determination of the common TILA / ICFA issues raised in all four cases, whatever the outcome, will be outcome-determinative of *McWethy* and both *Brown* cases [FN1] as well as in *Fairbanks v. Jenkins* (in which the primary defense to foreclosure is the alleged TILA violation). Moreover, as defendants argue, the evidence regarding the manner in which each of the borrowers allegedly was required to sign the non-rescission confirmation is likely to be admissible in the other cases pursuant to Federal Rule of Evidence 404(b) to show *modus operandi* and/or the absence of mistake or accident.

> FN1. One of the *Brown* cases also involves a HOEPA claim, but this involves the same evidence as the TILA claim, and it likely can and will be determined together with that claim. The presence of the HOEPA claim thus does not suggest that the cases are not susceptible of being determined in a single proceeding.

## Conclusion

For the reasons stated above, the Court finds that Case Nos. 02 C 5023, 02 C 6059, and 02 C 7262 are related to the present case within the meaning of Local Rule 40.4(a) and that reassignment of those cases to this Court's docket is appropriate under Local Rule 40.4(b) and therefore grants defendants' motion and second motion to designate those cases as related to this one [docket items 22-1, 25-1]. The appropriate request will be submitted to the Executive Committee. This case (as well as the others, assuming they are reassigned by then) is set for a status hearing on December 19, 2002 at 9:30 a.m.

N.D.Ill.,2002.
Fairbanks Capital Corp. v. Jenkins

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 31655277 (N.D.Ill.)
**(Cite as: 2002 WL 31655277 (N.D.Ill.))**

Not Reported in F.Supp.2d, 2002 WL 31655277
(N.D.Ill.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2008 WL 1848142 (N.D.Ill.)
**(Cite as: 2008 WL 1848142 (N.D.Ill.))**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois,
Eastern Division.
GLOBAL PATENT HOLDINGS, LLC, Plaintiff,
v.
GREEN BAY PACKERS, INC., Napleton Elmhurst
Imports, Inc., d/b/a Ed Napleton Acura, Orbitz
Worldwide, Inc., Peapod, LLC, Officemax Inc. and
Caterpillar Inc., Defendants.

No. 00 C 4623.
April 23, 2008.

Paul Christopher Gibbons, Arthur Anthony Gasey,
Niro, Scavone, Haller & Niro, Ltd., Chicago, IL,
for Plaintiff.

Sheri J. Engelken, Gonzaga University School of
Law, Spokane, WA, Christian Chadd Taylor, Gi-
anni L. Cutri, Kirkland & Ellis LLP, Michael P.
Padden, Howrey, LLP, John Sheldon Letchinger,
Robert Loren Wagner, Wildman, Harrold, Allen &
Dixon, LLP, Timothy J. Vezeau, Breighanne Aileen
Eggert, Michael Adam Dorfman, Katten Muchin
Rosenman LLP, Brad Richard Bertoglio, Dean A.
Monco, Wood, Phillips, Vansanten, Hoffman & Er-
tel, Chicago, IL, Jonathan F. Putnam, Kirkland and
Ellis, New York, NY, Gregory L. Baker, Robert G.
Abrams, Howrey LLP, Washington, DC, William
C. Rooklidge, Howrey LLP, Irvine, CA, Harvey
Freedenberg, Shawn K. Leppo, William Patrick
Smith, McNees Wallace & Nurick LLC, Harris-
burg, PA, for Defendants.

## MEMORANDUM OPINION
CHARLES P. KOCORAS, District Judge.

*1 This matter comes before the court on two
motions filed by the parties. In the first, Plaintiff
Global Patent Holdings, LLC ("Global Patent")
seeks reassignment of another case to this court
pursuant to Local Rule 40.4 on the basis that it is
related to the instant case. The second is a motion
by Defendants Green Bay Packers, Inc.; Napleton
Elmhurst Imports, Inc.; Orbitz Worldwide, Inc.;
Peapod, LLC; OfficeMax, Inc.; and Caterpillar, Inc.
to stay this litigation during the pendency of a reex-
amination proceeding before the Patent and Trade-
mark Office ("PTO"). For the following reasons,
both motions are granted.

## BACKGROUND
This case was initially filed by a company
called Techsearch, LLC on July 28, 2000. The
complaint contained a claim of patent infringement
against Defendants Internet Entertainment Group
Inc., Ed Napleton Acura, Gregory Aharonian, and
the Green Bay Packers in violation of 35 U.S.C. §
271(a). At that time, Techsearch owned U.S. patent
No. 5,253,341, which claimed an improved method
and apparatus for downloading compressed audio
and visual data as well as other graphical informa-
tion from a remote server to an end user station
("EUS") for the purpose of decompressing and dis-
playing the data. In its complaint, Techsearch asser-
ted that Defendants infringed its patent by down-
loading responsive data, including compressed au-
dio/visual and graphical data, on their respective
websites. Defendants were also accused of know-
ingly and intentionally inducing third parties to in-
fringe Techsearch's patent in violation of 35 U.S.C.
§ 271(b) and (c).

Subsequently, an anonymous requester initiated
a reexamination procedure of the patent before the
PTO. Rather than keeping the case open while the
reexamination ran its course, Techsearch requested
and obtained dismissal of its complaint with leave
to reinstate the case if the reexamination was re-
solved in its favor. Eventually, the Board of Patent
Appeals cancelled the 16 claims of the original pat-
ent and declared a new claim, claim 17, patentable (
U.S. Patent No. 5,253,341 C1, hereinafter referred
to "the '341 patent").

According to the motion to reinstate, on Janu-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 1848142 (N.D.Ill.)
**(Cite as: 2008 WL 1848142 (N.D.Ill.))**

ary 25, 2005, Techsearch assigned the patent to Global Patent, its parent company. On August 8, 2007, Global Patent sued CDW Corporation and Motorola, Inc., in *Global Patent Holdings v. CDW Corp.,* case No. 07 C 4476. As Techsearch had asserted in the complaint in this case, Global Patent claimed CDW and Motorola infringed the '341 patent by downloading responsive data, including compressed audio/visual and graphical data, on their respective websites. The downloading method utilized both an EUS and a server, with asymmetric processing power capacities and involving compression and inverse decompression techniques requiring less processing power. Furthermore, the complaint argued that these two defendants had knowingly and intentionally induced third parties to infringe the '341 patent. The case was assigned to Judge Norgle. Thus far, CDW and Motorola have answered the complaint and moved to stay the proceedings pending the reexamination that has also prompted the pending motion to stay in this case. No discovery has yet been conducted in the case before Judge Norgle.

**\*2** On September 10, 2007, Techsearch moved to reinstate the case before this court. We granted Techsearch's motion on October 11 and permitted it to file an amended complaint that substituted Global Patent as the plaintiff, dropped Defendants Aharonian and Internet Entertainment, and added six new defendants. Global Patent then moved to reassign case no. 07 C 4476 to this court on the ground that it is related to this case. Shortly thereafter, Defendants moved to stay the proceedings in this case pending the outcome of the second reexamination procedure before the PTO.

## DISCUSSION

### I. Motion to Reassign

In the Northern District of Illinois, cases are assigned to a district judge at random. LR 40.1. This system can lead to situations in which two or more cases that are closely related will be assigned to different judges. In such an instance, LR 40.4 provides a mechanism whereby parties can request that the

later-filed case be reassigned to the judge who is presiding over the lower-numbered, and thus earlier-filed, case. The rule promotes efficient use of judicial resources by minimizing duplication of effort on cases that have a great deal in common. To obtain reassignment of a case, a movant must first show that the case to be reassigned is related to a previously filed case and then demonstrate that reassignment would promote efficient use of judicial resources. Global Patent invokes LR 40.4 in support of its request for reassignment. CDW is the only defendant to oppose the reassignment.

As a threshold matter, CDW challenges the premise that this case is properly considered earlier-numbered and thus first-filed. In the 2003 dismissal, we granted Techsearch leave to reinstate this case if it prevailed in the patent reexamination. According to CDW, Global Patent previously disavowed any connection to Techsearch, and CDW insists that only a case with Techsearch as the plaintiff can have the benefit of the 2000 filing date.

To support its contention that Global Patent is a stranger to this case, CDW points to a declaratory judgment action filed in the District of Nevada in 2007. In a declaration filed to dispute personal jurisdiction in Nevada, Anthony O. Brown, president of Global Patent, stated that Global Patent had no "current ownership or other interest in, or an affiliation with, TechSearch." Contrary to CDW's position, the declaration also states that in January 2000, Techsearch was both a subsidiary of Global Patent and the owner of the '341 patent.[FN1] In addition, on January 25, 2005, Techsearch LLC, at the time still a subsidiary of Global Patent, assigned the '341 patent to its parent Global Patent. The ownership of the patent resulting from the assignment would make Global Patent the real party in interest for purposes of this case as it is presently postured. Fed.R.Civ.P. 17(a). Furthermore, CDW's argument ignores the fact that Techsearch, not Global Patent, moved to reinstate the case on September 10, 2007. Global Patent was substituted as the plaintiff only

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 1848142 (N.D.Ill.)
(Cite as: 2008 WL 1848142 (N.D.Ill.))

after the case had been reinstated by the originally filing plaintiff. Thus, this case is the earlier filed, and if the requirements of LR 40.4 are satisfied, the case before Judge Norgle should be reassigned to this court.

> FN1. Declaration of Anthony O. Brown, Doc. 15, Ex. A, *Zappos.com, Inc., v. Global Patent Holdings, L.L.C.,* case no. 2:07-cv-01726-RCJ-GWF (D.Nev.).

*A. Factors Pertaining to Relatedness*

**\*3** To be deemed related, two cases must satisfy at least one of the four criteria laid out in Rule 40.4(a): the cases share some issues of fact or law; they involve the same property; each grows out of the same transaction or occurrence; or they involve one or more of the same classes if the motion is made in the context of multiple class action suits. Here, Global Patent contends that the first two criteria are present.

To counter Global Patent's position that the two cases satisfy the first criterion, CDW emphasizes differences between the various defendants, such as the nature of their respective businesses. However, two cases need not be absolutely identical to be related for purposes of LR 40.4. *Fairbanks Capital Corp. v. Jenkins,* 2002 WL 31655277, \*2 (N.D.Ill. Nov.25, 2002). If some of the same issues of fact or law are common, that can be sufficient to establish relatedness. Here, Global Patent's two complaints share a factual foundation in the form of the assertions that the various Defendants' websites downloaded or induced others to download responsive data, including JPEG images and other compressed audio/video and graphical data. Furthermore, CDW's answer and asserted affirmative defenses are almost indistinguishable from those of the Green Bay Packers, who are already a defendant in the case before us. Consequently, we conclude that this case and case no. 07 C 4476 are related within the meaning of LR 40.4(a).

Global Patent also contends that the cases satisfy the second criterion in that they both involve the same property. CDW hotly contests the argument that the word "property" as used in this portion of the rule necessarily applies to intellectual property with the same force that it would to tangible items. Cases in this district have found that a claim for infringement cases are not necessarily related simply because the same patent is alleged to have been infringed in both cases. *See, e.g., Magnavox Co. v. Electronics, Inc.,* 31 F.Supp.2d 620, 623 (N.D.Ill.1998); *Androphy v. Smith & Nephew, Inc.,* 31 F.Supp. 29, 34 (N.D.Ill.1980). However, our conclusion as to the similarity of facts and law within the two cases distinguishes this case from those upon which CDW relies to contend that the assertion of common property is not enough in this case.

Accordingly, we turn our attention to the four factors contained in LR 40.4(b).

*B. Factors Pertaining to Judicial Efficiency*

Even if two cases are found to be related, the moving party must also meet each of four criteria specified in LR 40.4(b) before a case will be reassigned. First, both cases must be pending in this district. Second, a substantial savings of judicial time and effort must be likely to result from the reassignment of the cases to a single judge. Third, the earlier-filed case must be at a point where designating a later-filed case would not be likely to substantially delay the proceedings in the earlier case. Finally, the cases must be susceptible to disposition in a single proceeding.

**\*4** We need look no further than to the respective dockets to conclude that the first and third conditions of LR 40.4(b) are satisfied. Both cases are pending in the Northern District of Illinois. Furthermore, thanks to the 2003 dismissal, this case has not progressed to the point where treating the two cases as related would be likely to substantially delay the proceedings; no discovery has been conducted and little judicial effort has been expended thus far.

With respect to the second and fourth condi-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

tions, Global Patent, as the moving party, bears the burden of indicating "the extent to which the conditions required by section (b) will be met if the cases are found to be related." LR 40.4(c)(2). On the second factor, Global Patent states that duplicative treatment of claim construction will result in unnecessary consumption of judicial time, effort, and cost. In addition, it asserts that extra time and expense can be avoided by a single resolution of invalidity and inequitable conduct defenses. According to Global Patent, reassignment will also likely result in judicial efficiency in that only one round of depositions will take place for the parties, third party inventors, the prosecuting attorneys, and any potential prior art witnesses or companies. These assertions do not shed much light on how the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort. Rather, the content of Global Patent's argument focuses on the potential for duplication in necessary work and resource expenditure by the parties, which may have little impact on the amount of court resources that will be required. For example, with respect to claim construction, a decision construing the claims in either case could be applied to the case in which claims had not yet been construed.

With regard to the fourth condition, Global Patent highlights the likely number of summary judgment motions and evidence provided in support thereof, such as graphical designs or testimony related to the background of the patented invention. Though there is more to a consideration of the fourth prong than Global Patent's narrow focus would imply, a review of the pleadings in conjunction with the parties' submissions on this motion convinces this court that both actions involve *prima facie* fundamentally similar claims and defenses that will likely be amenable to dispositive treatment in unified proceedings, whether in claim construction, summary judgment, or trial.

CDW argues that Global Patent provided only conclusory statements as to how reassignment will

result in savings of judicial time and effort, which is true with respect to the initial filing in support of the motion. Many of the points discussed above appear only in Global Patent's reply, and the considerations Global Patent has offered bear more upon time and cost savings to the parties than the impact on the court. We emphatically do not endorse a practice of filing underdeveloped motions or saving the bulk of a party's arguments for presentation in a reply brief. It is well settled that parties engaging in either practice run a very real risk of forfeiting otherwise meritorious arguments. However, as the reassignment mechanism is primarily concerned with judicial efficiency, we will not force the parties to engage in the same exercise in the form of a renewed, better presented motion. We are convinced based on our own examination of the two cases, combined with the information the parties have supplied, that the cases are fundamentally similar, and the motion to reassign case no. 07 C 4476 is therefore granted.

**II. Motion to Stay**

*5 The second motion under consideration asks us to stay the proceedings in this case, and ostensibly those in the reassigned case, pending the outcome of the reexamination proceeding for claim 17 of the '341 patent. District courts have broad discretion to control their dockets using techniques such as stays of proceedings, provided a stay is not indefinite or otherwise excessive. *Gould v. Control Laser Corp.,* 705 F.2d 1340, 1341 (Fed.Cir.1983).

Global Patent contends that the PTO has already contributed its expertise to this matter via the first reexamination proceeding and thus there is little to be gained from waiting for the second to run its course. However, as Defendants point out, claim 17 was not in the original patent but was added by amendment during the previous reexamination. The previous reexamination thus functioned as an original examination of that claim rather than a reexamination of a previous stamp of approval, as was the case with the original 16 claims. Moreover, because the reexamination was conducted *ex parte,*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 1848142 (N.D.Ill.)
**(Cite as: 2008 WL 1848142 (N.D.Ill.))**

there could be no participation from anyone other than GPH when claim 17 was being examined. Accordingly, the association of claim 17 with the prior reexamination did not result in the same application of the PTO's expertise on patentability that is available for the original 16 claims that were rejected.

No discovery has been conducted and little judicial effort has been expended in either of the cases now before us. Though we are mindful that four years was consumed in waiting for the result of the reexamination of the original 16 claims, a significant amount of time and effort in claim construction and other litigation would have been wasted if we had forged ahead without the benefit of the PTO's examination (and subsequent rejection) of those claims. Also, the fact that this examination will focus on a single claim makes it unlikely that a similar amount of time will be spent in reaching resolution of the new reexamination. The questions of validity, patentability, and claim content are common to the issues before this court and before the PTO, so the more prudent course of action is to stay these cases while the reexamination proceeds. Defendants' motion requesting that relief is therefore granted.

## CONCLUSION

Based on the foregoing analysis, Global Patent's motion to reassign is granted, as is the Defendants' motion to stay.

N.D.Ill.,2008.
Global Patent Holdings, LLC v. Green Bay Packers, Inc.
Not Reported in F.Supp.2d, 2008 WL 1848142 (N.D.Ill.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.


Not Reported in F.Supp.2d, 2011 WL 3876965 (N.D.Ill.)
**(Cite as: 2011 WL 3876965 (N.D.Ill.))**

C
Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois,
Eastern Division.
Nicholas MARTIN, individually and on behalf of a
class, Plaintiff,
v.
MIDLAND FUNDING LLC, Defendant.

No. 11 C 3104.
Aug. 31, 2011.

Alexander Holmes Burke, Burke Law Offices,
LLC, Chicago, IL, for Plaintiff.

Theodore Wilson Seitz, Dykema Gossett, PLLC,
Lansing, MI, James Michael Golden, Renee Lynn
Zipprich, Dykema Gossett PLLC, Chicago, IL, for
Defendant.

**ORDER**

CHARLES P. KOCORAS, District Judge.

*1 This case comes before the Court on Defendant Midland Funding, LLC's ("Midland") motion to reassign and consolidate a later-filed matter pursuant to Northern District of Illinois Local Rule 40.4(c). For the reasons stated below, the motion is denied.

Midland asks the Court to reassign and consolidate *Scardina v. Midland Credit Management,* No. 11–cv–3149 (N.D.Ill.) (Lindberg, J.) (*"Scardina"*), with the instant matter before this Court, *Martin v. Midland Funding, LLC,* No. 11–cv–3104 (N.D.Ill.) (Kocoras, J.) (*"Martin"*). Plaintiff Dave Scardina ("Scardina") objects. To resolve the pending motion, a summary of the two cases is necessary.

On May 10, 2011, Plaintiff Nicholas Martin ("Martin") filed a purported class action against Midland. The amended complaint asserts class claims under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"). Martin seeks to hold Midland liable for calling class members' cellular telephones using an automatic telephone dialing system or prerecorded or artificial voice. Martin purports to represent individuals who resided in Illinois between January 1, 2008, and November 24, 2008, received calls during that same time period, and had an alleged debt obtained by Midland during that same time period. The *Martin* action is currently pending before this Court.

One day later, on May 11, 2011, Scardina filed a purported class action against Midland, as well as Midland Credit Management, Inc. ("MCM") and Encore Capital Group, Inc. ("Encore"). Scardina asserts a class claim under the TCPA and seeks to hold all three defendants liable. Scardina seeks to hold MCM liable for calling class members' cellular telephones using an automatic telephone dialing service or an artificial or prerecorded voice without their prior express consent. Scardina also seeks to hold Midland, the owner of the debt, vicariously liable. Finally, Scardina seeks to hold Midland's parent, Encore, liable for raising the capital for the predictive dialing equipment and directing MCM to use the equipment. Scardina purports to represent individuals with Illinois cellular telephone numbers who received automated calls between May 11, 2007, and May 31, 2011. The *Scardina* action is currently pending before Judge Lindberg.

Any party may file a motion for reassignment based on the relatedness of two or more cases. N.D. Ill. L.R. 40.4(c). The party moving for reassignment must show that the standards in Local Rule 40.4(a) and 40.4(b) are satisfied. According to Local Rule 40.4(a), two or more civil cases may be related if one or more of the following conditions are met: (1) the cases involve the same property; (2) the cases involve some of the same issues of fact or law; (3) the cases grow out of the same transaction or occurrence; or (4) in class action suits, the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

classes are the same. Pursuant to Local Rule 40.4(b), the court may reassign a case related to an earlier-numbered case if: (1) both cases are pending in this Court; (2) the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort; (3) the earlier case has not progressed to a point where designating a later-filed case as related would likely substantially delay the proceedings in the earlier case; and (4) the cases are susceptible of disposition in a single proceeding.

*2 Midland argues that the cases are related under Local Rule 40.4(a) because the cases involve some of the same issues of fact or law and the classes are the same. Because Martin and Scardina both assert class claims under the TCPA against Midland, some common issues of fact and law exist. However, aside from a single cause of action against the same defendant, the cases are very different. First, Scardina, unlike Martin, asserts a TCPA claim against two additional defendants, MCM and Encore, and has a different theory regarding each defendant's liability. Martin did not sue MCM, the licensed debt collector, or Encore, the parent allegedly directing MCM's use of predictive dialing equipment. Thus, some discovery relating to MCM's and Encore's involvement in Scardina will not be relevant in Martin.

Second, unlike Scardina, Martin asserts an additional class claim under the FDCPA. The FDCPA claim involves factual issues wholly unrelated to the TCPA claim. In particular, Martin's FDCPA claim deals with false representations Midland allegedly made to consumer reporting agencies regarding the character, amount, or legal status of Martin's purported debt. Martin's FDCPA claim thus varies the scope of discovery in Martin.

Finally, the class definitions substantially differ. The class in Martin includes individuals who: (1) resided in Illinois between January 1, 2008, and November 24, 2008; (2) received calls during that same time period; and (3) had an alleged debt obtained by Midland during that same time period.

Thus, class discovery in Martin will focus on the purported class members' residences, the time of the calls, and the time Midland obtained the alleged debts. Different from Martin, the class in Scardina includes individuals with Illinois cellular telephone numbers who received automated calls between May 11, 2007, and May 31, 2011. Thus, class discovery in Scardina will focus on the purported class members' cellular telephone numbers, not their residences, and whether they received calls between May 11, 2007, and May 31, 2011, a much broader time frame. Further, inclusion in the Scardina class, unlike the Martin class, does not depend on when Midland obtained the alleged debt. For these reasons, Martin and Scardina are not sufficiently related for reassignment under Local Rule 40.4(a).

Even if the cases were sufficiently related under Local Rule 40.4(a), Midland has not shown that the cases satisfy the standard in Local Rule 40.4(b). For the reasons stated above, the handling of both cases by the same judge will not likely result in a substantial saving of judicial time and effort and the cases are not susceptible to disposition in a single proceeding. Moreover, reassignment would likely delay the proceedings in Scardina, since the deadline for the close of discovery is approximately one month away, September 28, 2011.

For the foregoing reasons, the Court denies Midland's motion to reassign and consolidate Scardina with Martin.

N.D.Ill.,2011.
Martin v. Midland Funding LLC
Not Reported in F.Supp.2d, 2011 WL 3876965 (N.D.Ill.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT C

FILED

2012 Nov-01  PM 02:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ARICA BONNER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO.** |
| | ) | |
| **v.** | ) | **2:12-cv-02183-RDP** |
| | ) | |
| **SANTANDER CONSUMER USA, INC.,** | ) | <u>**UNOPPOSED**</u> |
| | ) | <u>**AS TO TRANSFER**</u> |
| **Defendant.** | ) | |
| | ) | |

---

## DEFENDANT'S MOTION TO DISMISS, TRANSFER, OR STAY, OR, ALTERNATIVELY, MOTION FOR JUDGMENT ON THE PLEADINGS

---

**COMES NOW** defendant Santander Consumer USA, Inc. ("SCUSA" or "Defendant"), by and through its undersigned counsel, specifically reserving its right to seek arbitration of Plaintiffs' claims pursuant to 9 U.S.C. § 1 *et seq*., **and** pursuant to the Federal Rules of Civil Procedure 12(b)(1), 12(c), and 28 U.S.C. § 1404 files this motion to dismiss, or in the alternative to transfer this litigation to the United States District Court for the Northern District of Illinois, or in the further alternative to stay this litigation pending the outcome of <u>Espejo v. Santander Consumer USA, Inc.</u>, No. 1:11-cv-8987 (N.D. Ill) and <u>Humphreys v. Santander Consumer USA, Inc.</u>, No. 1:12-cv-04671 (N.D. Ill.). In support hereof, Defendant states as follows:

2043096 v2

# I.

## INTRODUCTION

On December 19, 2011, Tercia Pereira filed a putative class action complaint in the United States District Court for the Northern District of Illinois alleging that SCUSA had violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"), by making unsolicited telephone calls to cellular phones. See generally Espejo v. Santander Consumer USA, Inc., No. 1:11-cv-08987, Compl. (Doc. 1) (Ex. "A" hereto) [hereinafter "Pereira Compl."]. Specifically, Pereira alleged that SCUSA made unsolicited telephone calls to tens of thousands of consumers' cellular phones without their consent using "skip tracing," "number trapping," "equipment that had the capacity to store or produce telephone numbers to be called," "a random or sequential number generator," and "a predictive dialer." See id. at ¶¶ 11, 13–15.  She alleged that her claim was typical of a class consisting of:

> Any person in the United States to whom [SCUSA] (1) placed a call in connection with the collection of a debt; (2) to a cellular telephone number; and (3) which was never provided to [SCUSA] or to any other entity with the origination or collection of a debt by the person called.

Id. at ¶ 18.

On June 14, 2012, Lorenzie Humphreys filed a complaint in the United States District Court for the Northern District of Illinois alleging that SCUSA had violated the TCPA, the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et*

2

*seq.* ("FDCPA"), and Illinois contract law. <u>See generally</u> <u>Humphreys v. Santander</u> <u>Consumer USA, Inc.</u>, No. 1:12-cv-04671, Compl. (Doc. 1) [herein after "Humphreys Compl."]. In that complaint, Humphreys alleged that SCUSA had violated the TCPA by making unsolicited telephone calls to his cellular phone without his consent using pre-recorded messages, automatic dialers, and predictive dialers. <u>See</u> <u>id.</u> at ¶¶ 15, 19–25, 31, 45–48. He also alleged that SCUSA had violated the FDCPA by making "harassing or misleading telephone communications," calling him at his place of employment, and failing to disclose that communications were attempts to collect a debt. <u>See</u> <u>id.</u> at ¶¶ 9–12, 26–43. Further, he alleged that SCUSA had violated Illinois contract law by charging him unauthorized fees. <u>Id.</u> at ¶ 51.

On June 15, 2012, Arica Bonner filed a complaint in this Court, alleging that SCUSA had violated the TCPA, the FDCPA, and Alabama contract law. <u>See</u> <u>generally</u> Pl's Compl. (Doc. 1). In that complaint, Bonner alleged that SCUSA had violated the TCPA by making unsolicited telephone calls to her cellular phone without her consent using pre-recorded messages, automatic dialers, and predictive dialers. <u>See</u> <u>id.</u> at ¶¶ 13, 22–23. She also alleged that SCUSA had violated the FDCPA by making "harassing or misleading telephone communications," calling her at her place of employment, and failing to disclose that communications were attempts to collect a debt. <u>See</u> <u>id.</u> at ¶¶ 8–11, 18–28, 31–44. Further, she alleged

3

that SCUSA had breached a contract with her by charging her unauthorized fees. Id. at ¶ 52.

On June 26, 2012, Bonner amended her complaint to allege a putative nationwide class action and to add eight (8) additional Plaintiffs. See generally Pls' First Am. Compl. (Doc. 4). Bonner's allegations are substantially unchanged from her initial complaint, and seven (7) of the eight (8) additional Plaintiffs make nearly identical allegations. See id. at ¶¶ 24–38, 39–53 (Harper); id. at ¶¶ 54–68 (Levins); id. at ¶¶ 69–83 (Cook); id. at ¶¶ 84–98 (Stevenson); id. at ¶¶ 99–113 (Wallace); id. at ¶¶ 114–130 (Williams); id. at ¶¶ 131–141, 147–154 (Shelby). The eighth additional Plaintiff, Maude Jones, also alleges TCPA and FDCPA violations based on the same alleged conduct by SCUSA; her claim is different only in that SCUSA allegedly contacted her in an attempt to collect another's debt. See id. at ¶¶ 142–146, 148–149, 154. The Plaintiffs allege that their individual claims are representative of a class of Plaintiffs consisting of:

> (1) All persons in the United States who are current or former customers of [SCUSA] within the previous six years and all other persons to whom [SCUSA] made telephone calls for the collection of debts from its customers, and (2) all persons that were called by [SCUSA] using an automatic telephone dialing service and/or an artificial or prerecorded voice where the evidence shows that the person received at last one phone call placed by the automatic telephone dialing service and/or an artificial or prerecorded voice and (i) where there is no evidence of prior express consent to call that person's cellular telephone number by the automatic telephone dialing service and/or an artificial or prerecorded voice for a time period consistent with the statute of limitations for TCPA claims or (ii)

where the prior express consent to call was withdrawn prior to the call being placed.

<u>Id.</u> at ¶ 155.

On August 7, 2012, Lorenzie Humphreys amended his complaint to allege a putative class action and to add Yvette Rheanes as an additional class representative. <u>See generally</u> <u>Humphreys v. Santander Consumer USA, Inc.</u>, No. 1:12-cv-04671, Pl's Am. Compl. (Doc. 12) (Ex. "B" hereto) [hereinafter "Humphreys Am. Compl."] Humphreys' individual claims are unchanged, and Rheanes' claims are substantially the same as Humphreys' except that she alleges that she was contacted regarding another's debt. <u>See</u> <u>id.</u> at ¶¶ 16–48. Humphreys and Rheanes allege that their claims are typical of a class consisting of

> (1) All persons in the United States who are current or former customers of [SCUSA] within the previous six years and all other persons to whom [SCUSA] made telephone calls for the collection of debts from its customers, and (2) all persons that were called by [SCUSA] using an automatic telephone dialing service and/or an artificial or prerecorded voice where the evidence shows that the person received at last one phone call placed by the automatic telephone dialing service and/or an artificial or prerecorded voice and (i) where there is no evidence of prior express consent to call that person's cellular telephone number by the automatic telephone dialing service and/or an artificial or prerecorded voice for a time period consistent with the statute of limitations for TCPA claims or (ii) where the prior express consent to call was withdrawn prior to the call being placed.

<u>Id.</u> at 10 (unnumbered paragraph).

On August 8, 2012, Henry Espejo was substituted as the class representative in the Pereria action. <u>See</u> <u>Espejo v. Santander Consumer USA, Inc.</u>, No. 1:11-cv-

08987, First Am. Compl. (Doc. 30) [hereinafter "Espejo Compl."]. Other than the substitution of a new named class representative, the allegations in the First Amended Class Action Complaint are nearly identical to the allegations in the initial Class Action Complaint. Compare Pereira Compl. *with* Espejo Compl.

On October 23, 2012, the Plaintiffs in this case amended their complaint a second time. See generally Pls' Second Am. Compl. (Doc. 29). This second amended complaint reduces the number of named plaintiffs to five, see id. at ¶¶ 1–5, but it makes substantially the same allegations. Compare Pls' Second Am. Compl. (Doc. 29), with Pls. First Am. Compl. (Doc. 4).

As a result, there are currently three pending cases, two in the Northern District of Illinois and one in this Court, all of which deal with substantially the same issues and parties. Of those cases, the Espejo action was the first filed. *See* Pereira Compl. (filed Dec. 19, 2011). The last of these cases to be filed is the one currently before this Court. SCUSA avers that it will be filing this week a motion to consolidate the Espejo and Humphreys lawsuits.

## II.

## ARGUMENT

### A.   Plaintiffs' Claims Are Subject To The First-To-File Rule.

The first-to-file rule is a rule of federal comity that permits a district court to decline jurisdiction when there is an earlier-filed case pending in another court

involving substantially similar parties and issues. See Merial Ltd. v. Cipla Ltd., 681 F.3d 1283, 1299 (11th Cir. 2012). The rule permits the district court to either transfer, stay, or dismiss the action. See id.; see also Mann Mfg., Inc. v. Hortex, Inc., 439 F.2d 403, 408 (5th Cir. 1971)[1] (concluding the appropriate course was either to decline jurisdiction and dismiss or to transfer the case to the first-filed forum); In re Checking Account Overdraft Litig., 859 F. Supp. 2d 1313, 1325 (S.D. Fla. 2012) (concluding the appropriate course was to transfer to the first-filed forum); Mun. Gas. Auth. of Ga. v. Town of Smyrna, Tenn., No. 1:11-cv-2476-JEC, 2012 WL 1038649, at *4 (N.D. Ga. Mar. 27, 2012) (staying litigation pending the outcome of the first-filed case). Absent compelling circumstances, the party that filed first should be able to proceed without fearing a conflicting order in a later-filed action. See Manuel v. Convergys Corp., 430 F.3d 1132, 1135 (11th Cir. 2005) ("Where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed under the first-filed rule."). The purpose of the rule is to "conserve judicial resources and avoid conflicting rulings." Rudolph & Me, Inc. v. Ornament Cent., LLC., No. 9:11-cv-670-T-33EAJ, 2011 WL 3919711, at *1 (M.D. Fla. Sept. 7, 2011).

---

[1] Under Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), decisions of the former Fifth Circuit decided before October 1, 1981 are binding precedent in the Eleventh Circuit.

### 1.   *The Espejo Action And The Humphreys Action Are Earlier Pending Cases.*

"The filing of an action derives from the filing of the complaint." Merial Ltd., 681 F.3d at 1299. Merial makes clear that "what matters is the initiation of the suit." Id. Thus, the Espejo action was filed on December 19, 2011, and the Humphreys action was filed on June 14, 2012. Bonner filed this case on June 15, 2012, making it the last of the three filed cases. As a result, both the Espejo and the Humphreys actions are earlier pending cases for the purposes of the first-to-file rule.

### 2.   *The Three Actions Involve Overlapping Parties.*

The three (3) actions clearly involve the same defendant, SCUSA. The three actions also involve the same plaintiffs because there is substantial overlap between the members of the putative classes. See Manuel, 430 F.3d at 1135. The Espejo class includes everyone who received a call from SCUSA on their cellular phone but who did not give SCUSA their cellular phone number. See Espejo Compl. ¶ 19. The Humphreys class and the putative class in this case more broadly include all persons who Santander called on a cellular phone using an automatic dialer or a pre-recorded voice and who did not consent to receive such a call or withdrew consent to receive such a call. See Humphreys Am. Compl. at 10 (unnumbered paragraph); Pls' Second Am. Compl. (Doc. 29, ¶ 92). Without a doubt, some members of the Humphreys class and the putative class in this case

are also members of the Espejo class. In fact, the Espejo complaint also alleges that SCUSA used automatic dialers and pre-recorded messages. See Espejo Compl. ¶¶ 11, 16. Further, members of the Espejo class are also members of the Humphreys class and the class proposed here; if they did not provide their cellular phone numbers they would certainly assert that they did not consent to be called on their cellular phones.

Moreover, the Humphreys class and class proposed by the Plaintiffs in this action are absolutely identical because they define the class identically. Compare Humphreys Am. Compl. at 10 (unnumbered paragraph), with Pls' Second Am. Compl. (Doc. 29, ¶ 92). As a result, anyone who is a member of the class proposed in Humphreys is also a member of the class proposed in this case and vice versa. Even the proposed class representatives in each case would also be members of the putative class in the other case. See, e.g., Pls' Second Am Compl. ¶¶ 27–28 (alleging that Bonner received repeated calls to her cellular phone that involved pre-recorded messages, automatic dialers, and predictive dialers); Humphreys Am. Compl. at 10 (unnumbered paragraph) (defining the class to include those who received calls on their cellular phones that involved pre-recorded voices or that used automatic dialers). In the interests of judicial economy and to avoid conflicting rulings, this Court should conclude that the first-to-file rule applies to this case.

### 3.    *The Three Actions Involve Overlapping Issues.*

The first-filed Espejo action involves alleged calls from SCUSA to the plaintiffs' cellular phones made using pre-recorded messages, automatic dialers, and predictive dialers and made without the plaintiffs' consent. See Espejo Compl. ¶¶ 11–17. The Espejo plaintiffs contend that those alleged actions by SCUSA violated the TCPA. The second-filed Humphreys action involve those very same allegations: alleged calls from SCUSA to the plaintiffs' cellular phones made using pre-recorded messages, automatic dialers, and predictive dialers and made without the plaintiffs' consent. See Humphreys Am. Compl. ¶¶ 14, 19–25, 32, 35–40, 44, 48. The Humphreys plaintiffs also contend that those same alleged actions by SCUSA violated the TCPA. This case, the last filed, also involves those very same allegations: alleged calls from SCUSA to the Plaintiffs' cellular phones made using pre-recorded messages, automatic dialers, and predictive dialers and made without the Plaintiffs' consent. See Pls' Second Am. Compl. (Doc. 29, ¶¶ 14, 18, 27–28, 42–43, 57–58, 67, 69–72). The Plaintiffs in this case also contend that those same alleged actions by SCUSA violated the TCPA.

The second-filed Humphreys action also involves allegations that SCUSA engaged in unlawful harassment and unlawful collection methods by allegedly making harassing, abusive, and threatening calls that misled the plaintiffs as to the balance owed to SCUSA and that allegedly failed to disclose that the calls were

made in an attempt to collect a debt. <u>See</u> Humphreys Am. Compl. ¶¶ 9–12, 26–32, 34, 41–43, 45–48. The Humphreys plaintiffs contend those alleged actions by SCUSA violated the FDCPA. Further, the Humphreys action contends that SCUSA violated Illinois contract law by allegedly charging fees not authorized by the plaintiffs' loan contracts. <u>See</u> <u>id.</u> at ¶¶ 13, 33, 72.

This case, the last filed, involves the same FDCPA allegations as does the Humphreys action: allegations that SCUSA engaged in unlawful harassment and unlawful collection methods by allegedly making harassing, abusive, and threatening calls that misled the plaintiffs as to the balance owed to SCUSA and that allegedly failed to disclose that the calls were made in an attempt to collect a debt. <u>See</u> Pls' Second Am. Compl. (Doc. 29, ¶¶ 13–16, 23–26, 29–34, 38–41, 44–49, 52–56, 59–64, 73–81, 85–91). It also involves the same breach-of-contract allegations as does the Humphreys action: SCUSA allegedly charged fees not authorized by the plaintiffs' loan contracts. <u>See</u> <u>id.</u> at ¶¶ 17, 34, 49, 64, 80–81, 115–16.

As should be clear, the three actions involve substantially overlapping issues. All three cases involve the alleged collection activities of SCUSA. All three cases involve the same factual dispute over whether SCUSA made calls to cellular phones using pre-recorded messages, automatic dialers, and predictive dialers without the consent of the person called; and, if SCUSA is determined to have

taken those actions, all three cases will require the Courts to decide whether those actions violated the TCPA. Further, both the Humphreys action and this case involve the same factual dispute over whether SCUSA made harassing, abusive, threatening, and misleading calls, and if it did, both cases will require the Courts to decide whether those calls violated the FDCPA. Moreover, both the Humphreys action and this case involve the same factual dispute over whether SCUSA charged the plaintiffs unauthorized fees, and if it did, both cases will require the Courts to decide whether doing so was a breach of contract.

Particularly in light of SCUSA's intent to seek consolidation of the Espejo and Humphreys actions in the Northern District of Illinois, the three cases involve substantially similar and overlapping issues of fact and law, which are all based on the alleged collection practices of SCUSA. In the interests of judicial economy and to avoid conflicting rulings, this Court should conclude that the first-to-file rule applies to this case.

### 4.   *There Are No Compelling Circumstances That Preclude Applying The First-To File Rule.*

The party seeking jurisdiction in a later-filed forum bears the burden of proving "compelling circumstances" that warrant an exception to the first-to-file rule. See Manuel, 430 F.3d at 1135; Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu, 675 F.2d 1169, 1174 (11th Cir. 1982); Jones v. Cont'l Motors, Inc., No. 12-0188-WS-C, 2012 WL 2733670, at *1 (S.D. Ala. July 06, 2012). The "compelling

circumstances" exception to the first-to-file rule is narrow. See <u>Mun. Gas. Auth.</u>, 2012 WL 1038649, at *3. When examining whether there are compelling circumstances, courts have considered evidence of forum shopping by the plaintiff, interests of judicial economy, convenience to the parties and witnesses, and superiority of the second-filed forum. <u>See, e.g.</u>, <u>Ins. Co. of Pa. v. Centerline Homes, Inc.</u>, No. 10-61707-Civ., 2011 WL 1595058, at *1 (S.D. Fla. Apr. 27, 2011) (concluding that the plaintiff had not shown compelling circumstances because the second action was not filed "in apparent anticipation of another pending proceeding"); <u>Derma Med Tech. Corp. v. Passmore Labs</u>, No. 10-00483-CG-B, 2011 WL 1753196, at *7 (S.D. Ala. Apr. 21, 2011) ("'The first filed action is preferred ... 'unless consideration of judicial and litigant economy, and the just and effective disposition of disputes requires otherwise.'") (quoting <u>Serco Servs. Co., L.P. v. Kelly Co.</u>, 51 F.3d 1037, 1039 (Fed. Cir. 1995))); <u>Polyform A.G.P. Inc. v. Airlite Plastics Co.</u>, No. 4:10-CF-43 (CDL), 2010 WL 4068603, at *7 (M.D. Ga. Oct. 15, 2010) (concluding that the defendant had shown compelling circumstances by showing that the second court was a superior forum based on its "extensive familiarity ... with [the] issues"); <u>Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Beta Constr. LLC</u>, No. 8:10-cv-1541-T-26TBM, 2010 WL 3789042, at *3 (M.D. Fla. Sept. 24, 2010) (stating that whether there are compelling circumstances involves many factors, including "forum shopping by

the plaintiff in the first-filed action, superiority of the second-filed action's forum in resolving the issues, and the convenience to the parties and witnesses in the second-filed forum").

Here, there is nothing to indicate that the plaintiffs in the Espejo action engaged in forum shopping or filed their case to preclude a later filing of this case. Judicial economy weighs heavily in favor of litigating these three (3) actions together, and Northern District of Illinois is likely to be more familiar with the issues because two of the three cases are already pending there. Further, the Espejo action has been pending in that court for a longer time than this case has been pending in this Court. There is nothing that indicates that this Court is a significantly more convenient forum for the parties and witnesses involved in the three actions, nor is there anything indicating that this Court is a superior forum for resolving these issues.[2]

Instead, permitting these cases to move forward separately would implicate the dangers noted by the court in In re Checking Account Overdraft Litig., 839 F. Supp. 2d at 1325.  It would encourage other plaintiffs to file actions involving substantially similar (but perhaps not identical) plaintiffs and substantially similar (but perhaps not identical) issues outside an already pending class action. See id.

---

[2] In fact, although they have not formally appeared in the Humphreys case, Plaintiffs counsel are also involved in that case as additional counsel for the plaintiffs and the putative class.

In doing so, it would permit those other defendants to potentially settle those later-filed class actions and thereby undermine the earlier-filed class action. *See id.* Avoiding those types of conflicting rulings is one of the primary purposes of the first-to-file rule. See Manuel, 430 F.3d at 1135; Rudolph & Me, Inc., 2011 WL 3919711, at *1.

**B.    This Court Should Decline To Exercise Jurisdiction And Dismiss The Plaintiffs' Claims.**

If a district court concludes that the first-to-file rule applies, it may decline jurisdiction and dismiss the case, transfer the case to the forum of first-filed case, or it may stay the litigation pending the outcome in the first-filed case. See Merial Ltd., 681 F.3d at 1299. Here, the best resolution would be dismissal. All of the named plaintiffs and the class they seek to represent are currently represented by the class representatives in the Espejo and Humphreys actions. Counsel for the Bonner class is also counsel in the Humphreys action. Thus, dismissal would not prejudice the rights of any plaintiff in this case. Further, dismissal avoids unnecessary duplication of litigation and conserves the judicial resources of the forum to which this would be transferred -- the Northern District of Illinois. Moreover, staying the litigation until resolution of the Humphreys action only postpones an inevitable dismissal. Because the claims and parties in Humphreys are identical, resolution of the Humphreys action will probably bar this case under

collateral estoppel principles. See RF Delaware, Inc. v. Pac. Keystone Techs., Inc., 326 F.3d 1255, 1261 (11th Cir. 2003) (reciting the elements of collateral estoppel).

In the event this Court is not willing to dismiss this action, SCUSA requests that this Court transfer this case to the Northern District of Illinois, the first-filed forum, and let that court determine whether the case should proceed. Indeed, the first-to-file rule not only makes the first-filed forum the appropriate forum to litigate the issues, it also makes the first-filed forum the appropriate court to decide which case should be permitted to go forward. See, e.g., Travel Spike, LLC v. Travel Ad Network, Inc., No. 1:11-cv-3199-RWS, 2012 WL 887591, at *2 (N.D. Ga. Mar. 15, 2012) ("'[T]he 'first to file rule' not only determines which court may decide the merits of substantially similar issues, but also establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred and consolidated.'" (quoting Cadle Co. v. Whataburger of Alice, Inc., 174 F.3d 599, 604 (5th Cir. 1999)).

Applying that reasoning here, transfer can accomplish many of the same goals as dismissal and will also not prejudice the rights of any of the plaintiffs. The United States District Court for the Northern District of Illinois would be able to determine whether to dismiss this case, consolidate it with the Espejo action, consolidate it with both the Humphreys and Espejo actions, or stay this case

pending the outcome of the other two cases. Transfer would also avoid duplication of litigation and also conserves judicial resources.

Finally, and as a third alternative, this Court should, at a minimum, stay this case pending an outcome in the Espejo and Humphreys actions. A stay would at least prevent concurrent litigation of the same issues involving the same parties in two different jurisdictions. It would also reduce or eliminate the possibility of inconsistent judgments. It would not, however, as effectively protect the rights of the plaintiffs to potentially participate in the cases already pending in the Northern District of Illinois. Nor would it as effectively conserve judicial resources; once the Espejo and Humphreys actions have been resolved, this Court would have to then decide whether this case is barred by collateral estoppel or other preclusion principles.

## C.   Plaintiffs' FDCPA and Breach of Contract Claims Cannot Proceed In This Court.

Should this Court determine that it will retain jurisdiction over this action and will not issue a stay, Plaintiffs' FDCPA and breach of contract claims must be dismissed pursuant to Fed. R. Civ. P. 12(c) because they fail to state a claim against SCUSA upon which relief may be granted.[3]

---

[3] This portion of SCUSA's motion only addresses the claims of plaintiffs Levins, Cook and Williams. Plaintiff Jones is the only other named plaintiff in this action. Her claims, however, are due to be dispatched to arbitration based on

17

### *I.      Standard Of Review.*

The Eleventh Circuit treats Rule 12(c) and Rule 12(b)(6) motions identically. See Agricredit Acceptance, LLC v. Hendrix, 32 F. Supp. 2d 1361, 1364 (S.D. Ga. 1998) (citing Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998)). This means that the standard of review for each motion is the same. See Dorsey v. Ga. Dep't of State Road & Tollway Auth. SRTA, No. 1:09-CV-1182-TWT, 2009 WL 2477565, at *5 n.6 (N.D. Ga. Aug. 10, 2009) ("Since a motion for judgment on the pleadings is governed by the same standard as a motion to dismiss for failure to state a claim, courts have noted that the standard in Twombly is applicable to motions for judgment on the pleadings."); see also Boyd v. Peet, 249 F. App'x 155, 157 (11th Cir. 2007) (citing to Twombly in reviewing a Rule 12(c) motion).

"When considering a motion to dismiss, all facts set forth in the [Plaintiffs'] complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting GSW, Inc. v. Long County, Ga., 999 F.2d 1508, 1510 (11th Cir. 1993)). In order to state a claim for relief, the Federal Rules of Civil Procedure state that a pleading must contain "a short and plain

---

SCUSA's pending motion to compel arbitration and, therefore, are not contemplated by this section.

statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P.

8(a)(2). The Supreme Court originally explained that the purpose of the rule was to

"give the defendant fair notice of what the plaintiff's claim is and the grounds upon

which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957). While factual

allegations do not have to be detailed, they must contain more than "labels and

conclusions;" a "formulaic recitation of the elements of a cause will not do." Bell

Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citing Papasan v. Allain, 478

U.S. 265, 286 (1986)).

The Supreme Court has also recently stated that Fed. R. Civ. P. 8 demands

more than an unadorned, "the-defendant-unlawfully-harmed-me accusation."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

Instead, "[f]actual allegations must be enough to raise a right to relief above the

speculative level." Twombly, 550 U.S. at 555. "Facts that are merely consistent

with the Plaintiff's legal theory will not suffice when, without some further factual

enhancement, [they] stop short of the line between possibility and plausibility of

entitle[ment] to relief." Weissman v. Nat'l Ass'n of Sec. Dealers, Inc., 500 F.3d

1293, 1310 (11th Cir. 2007) (internal quotations omitted) (quoting Twombly, 550

U.S. at 557) (quoting DM Research, Inc. v. Coll. of Am. Pathologists, 170 F. 3d

53, 56 (1st Cir. 1999)). Should Plaintiffs fail to "nudge[] their claims across the

line from conceivable to plausible, their complaint must be dismissed." <u>Twombly</u>, 550 U.S. at 570.

### 2.   *SCUSA Cannot Be Considered To Be A "Debt Collector."*

As the allegations in Plaintiffs' Complaint make clear -- as well as the contracts that are specifically referenced in Plaintiffs' Complaint -- SCUSA did not obtain the accounts of named Plaintiffs Levins, Cook, or Williams while they were in default and, thus, their claims under the Fair Debt Collection Practices Act ("FDCPA") fail as SCUSA is not a "debt collector" subject to liability under the Act. As shown below, the retail installment contracts at issue are indisputable evidence that Plaintiffs **cannot** assert claims against SCUSA for a violation of the FDCPA.

The FDCPA applies where there is evidence that: (1) the plaintiff is objecting to a collection activity arising from consumer debt; (2) the defendant who is attempting to collect debt qualifies as a "debt collector;" and (3) the defendant engaged in a prohibited act or failed to perform certain requirements under the statute. <u>See</u> <u>Jenkins v. BAC Home Loan Servicing, LP</u>, 822 F. Supp. 2d 1369, 1374 (M.D. Ga. 2011) (setting forth three factors listed above); <u>see also</u> <u>Bentley v. Bank of Am., N.A.</u>, 773 F. Supp. 2d 1367, 1371 (S.D. Fla. 2011) (same); <u>see also Reese v. Ellis, Painter, Ratterree & Adams, LLP</u>, 678 F.3d 1211, 1216 (11th Cir. 2012) ("[I]n order to state a plausible FDCPA claim …, a plaintiff

must allege, among other things, (1) that the defendant is a 'debt collector' and (2) that the challenged conduct is related to debt collection."). The FDCPA defines a "debt collector" as:

> (6) … any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another…. **The term does not include --**

> (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity … (iii) **concerns a debt which was not in default at the time it was obtained by such person**.

15 U.S.C. § 1692a(6) and § 1692a(6)(F) (emphasis added). In other words, one of the requirements under the FDCPA for a creditor to be a "debt collector" is the debt sought to be collected was in default when it was acquired by the creditor. See Wadlington v. Credit Acceptance Corp., 76 F.3d 103, 106-07 (6th Cir. 1996) (finding assignee of retail installment sales contract that was not in default at time of assignment is not a "debt collector" under the FDCPA); see also Janke v. Wells Fargo & Co., 805 F. Supp. 2d 1278, 1281 (M.D. Ala. 2011) (stating that the term "'debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned'") (quoting Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985)).

In the instant case, SCUSA cannot be a "debt collector" subject to FDCPA liability with regard to the accounts of Levins, Cook and Williams, because SCUSA was assigned the accounts at the origination of the loan, before any possibility of default.[4] As evidence to demonstrate that it was the assignee of contracts of Plaintiffs Levins, Cook, and Williams, SCUSA has attached each of their retail installment contracts to this Motion as Exhibits C, D, and E respectively. In Plaintiffs' Complaint, they describe each of the transactions that gave rise to the debt at issue in the lawsuit. See Pls' Second Am. Compl. (Doc. 29, ¶¶ 35-36, 50-51, 65-66). Under the "incorporation by reference" doctrine, "'a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment'" as long as the attached document is "'(1) central to the plaintiff's claim; and (2) …. the authenticity of the document is not challenged.'" Bamert v. Pulte Home Corp., 445 F. App'x 256, 267 (11th Cir. 2011) (quoting Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002)). Here, the basis for Plaintiffs' claims is the collection of debt that was originated by the subject contracts and, thus, there is no question they are central to Plaintiffs' claims. Additionally, Plaintiffs Complaint provides descriptions of the transactions

---

[4] Although not raised in this current Motion, because it would require the submission of extrinsic evidence outside of the pleadings, SCUSA cannot be considered a debt collector for the additional reason that the principal purpose of its business is not the collection of debts owed or due or asserted to be owed or due to another. See 15 U.S.C. § 1692a(6).

at issue, which correspond to the attached documents and demonstrate that the documents are not "challenged."

A review of the retail installment contracts of Plaintiffs Levins and Cook, attached hereto as Exhibits C and D, each demonstrate the Contracts were immediately assigned, at origination, to Drive Financial Services, a d/b/a for SCUSA. Additionally, a review of the retail installment contract of Plaintiff Williams, attached hereto as Exhibit E, demonstrates that the contract was immediately assigned, at origination, to SCUSA. The fact that these contracts were assigned at origination, before any payments were due on Plaintiffs' loans, is indisputable evidence that SCUSA did not obtain Plaintiffs' accounts when they were in default. As a result, it is clear that SCUSA is merely an assignee of the contracts that, under the FDCPA, is permitted to stand in the shoes of the creditor. In other words, by obtaining immediate assignment of the contracts at origination, SCUSA is a creditor under the FDCPA and is exempt from liability under the statute. See 15 U.S.C. § 1692a(6)(F)(iii); see also Wadlington, 76 F.3d at 106-07 (assignee of retail installment sales contract was not a "debt collector" under the FDCPA); Janke, 805 F. Supp. 2d at 1281-82 (dismissing FDCPA claim absent allegation that debt was in default at time of transfer).

As Plaintiffs' Complaint and the retail installment contracts attached hereto make clear, SCUSA was the assignee of the accounts of Plaintiffs Levins, Cook

and Williams at the time of origination. Therefore, SCUSA is not a "debt collector" with regard to those accounts, and Plaintiffs' FDCPA claims against SCUSA must be dismissed.

### 3.   *Plaintiffs Fail To Adequately Plead A Breach Of Contract Claim Against SCUSA.*

Plaintiffs' breach of contract claims must be dismissed for failing to meet the pleading floor set by the Federal Rules of Civil Procedure. Specifically, Plaintiffs fail to plead specific facts that could support any of their breach of contract claims. As discussed above, Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). As previously mentioned, the Supreme Court has stated that Rule 8 demands more than an unadorned, "the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

The Eleventh Circuit has also recognized these pleading standards. See Davis v. Coca Cola Bottling Co. Consol., 516 F.3d 955 (11th Cir. 2008). In Davis, the Eleventh Circuit stated that the purpose of Rule 8(a)(2) of the Federal Rules of Civil Procedure is to "'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" Davis, 516 F.3d at 973 (quoting Twombly, 550 U.S. at 555). "To that end, a complaint's '[f]actual allegations must be enough to raise a right of relief above the speculative level'." Id. (quoting Twombly, 550 U.S. at

555). Recently, when deciding whether a complaint alleging FDCPA violations was sufficient under Fed. R. Civ. P. 8 and 12(b)(6), the court in <u>Tucker v. Malcolm S. Gerald & Assoc., Inc.</u> stated the following:

> The <u>Iqbal</u> Court further explained that a court need not accept legal conclusions couched as factual recitations as true and that determining whether a complaint states a plausible claim for relief is a context-specific task requiring the reviewing court to draw on its judicial experience and common sense. A complaint has *alleged* but has not *shown* entitlement to relief, where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.

No. 3:09-cv-1183-J-12JRK, 2010 WL 1223912, at *2 (M.D. Fla. Mar. 24, 2010) (citation omitted).

Plaintiffs' complaint, as amended, fails to provide SCUSA with sufficient notice of the allegations and claims against it in relation to their breach of contract claim. Indeed, the complaint is devoid of any specific factual allegations regarding the provisions of the contract they rely upon and instances when SCUSA charged fees that were improper. Plaintiffs, rather, simply make the generic allegation that SCUSA breached the contract "by imposing unauthorized fees, including but not limited to late fees, which were not due." (Doc. 4, ¶ 179). Plaintiffs' contracts all authorize SCUSA to collect late fees. <u>See</u> Exs. C-E. Without explanation or identification of any specific fees charged that were not due, Plaintiffs' threadbare allegations are insufficient to put SCUSA on notice of a plausible claim against it.

Plaintiffs also claim that SCUSA had a pattern of charging improper repossession fees. But they do not allege that **any** repossession fees were actually charged to the named Plaintiffs, or that SCUSA charged Plaintiffs any **improper** repossession fees, or that SCUSA repossessed a car from any of them. See generally Pls' Second Am. Compl. (Doc. 29). Indeed, Plaintiffs' complaint is devoid of any allegations related to repossession fees sufficient to plead a plausible claim for breach of contract against SCUSA.

Moreover, the contracts governing Plaintiffs' claims permit SCUSA to charge Plaintiffs for all of their costs related to repossessing and storing their vehicles. See Exs. C-E. Consequently, even if SCUSA did charge repossession-related fees, and even if those fees covered its own costs in ordering repossessions and dealing with recovery companies related to those repossessions (as well as the fees charged by the recovery companies themselves), those fees are specifically authorized by the contracts.

By alleging in their breach of contract claim that fees were charged which were "not due" or were "improper," Plaintiffs simply make conclusory statements that contain no real allegations regarding how the contracts with these specific Plaintiffs were breached. Plaintiffs allegations are essentially circular. Why did the fees constitute a breach of the contract? Because they were improper. Why were they improper? Because they breached the contract. Instead of sufficiently pleading

a plausible case for breach of contract in their complaint, plaintiffs decide to ignore the written contracts giving SCUSA broad powers in charging fees and made vague conclusory allegations regarding improper fees, presumably in hopes of opening up the door for a fishing expedition.

"While a court, at this stage of the litigation, must consider the allegations contained in the plaintiff's complaint as true, this rule **'is inapplicable to legal conclusions.**'" Costa v. Celebrity Cruises, Inc., 768 F. Supp. 2d 1237, 1239 (S.D. Fla. 2011) (quoting Iqbal, 556 U.S. at 678) (emphasis added), aff'd, 470 F. App'x 726 (11th Cir. 2012). "Thus, 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Costa, 768 F. Supp. 2d at 1240 (quoting Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555)). Simply stating that the fees charged were improper or not due does not make them so. Such statements are legal conclusions, not factual allegations creating a plausible cause of action.  Plaintiffs have therefore failed to meet the pleading standards set out by Fed. R. Civ. P. 8 and clarified by the United States Supreme Court in Twombly and Iqbal.  Their breach of contract claims must be dismissed.

**WHEREFORE, PREMISES CONSIDERED**, Defendant respectfully requests the Court to enter an Order dismissing Plaintiffs' Amended Nationwide Class Action Complaint. In the alternative, the Defendant respectfully requests the Court to enter an Order transferring this litigation to the United States District

Court for the Northern District of Illinois. In the further alternative, the Defendant respectfully requests the Court to enter an Order staying this litigation pending the outcome of Espejo v. Santander Consumer USA, Inc., No. 1-11-cv-08987 (N.D. Ill) and Humphreys v. Santander Consumer USA, Inc., No. 1:12-cv-04671 (N.D. Ill). In the event this Court refuses to dismiss, transfer or stay this case, Defendant respectfully requests that this Court dismiss Plaintiffs' FDCPA and breach of contract claims.

s/ Robert H. Rutherford
John R. Chiles (CHI006)
Robert H. Rutherford (RUT002)
R. Frank Springfield (SPR024)
Daniel B. Snyder (SNY010)

Attorneys for Defendant
Santander Consumer USA, Inc.

**OF COUNSEL:**

BURR & FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, AL 35203
Telephone:   (205) 251-3000
Facsimile:   (204) 458-5100
jchiles@burr.com
rrutherf@burr.com
fspringf@burr.com
dsnyder@burr.com

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document by Notice of Electronic Filing, or, if the party served does not participate in Notice of Electronic Filing, by U.S. First Class Mail on this the 1st day of November, 2012:

D. Frank Davis
John E. Norris
Wesley W. Barnett
Courtney L. Peinhardt
Andrew S. Herring
DAVIS & NORRIS, LLP
The Bradshaw House
2154 Highland Avenue South
Birmingham, Alabama 35205
Telephone: (205) 930-9900
Facsimile: (205) 930-9989

s/ Robert H. Rutherford
OF COUNSEL

# EXHIBIT D

FILED

2012 Nov-05  AM 09:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ARICA BONNER, et al.,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:12-CV-2183-RDP** |
| | } | |
| **SANTANDER CONSUMER USA,** | } | |
| **INC.,** | } | |
| | } | |
| **Defendant.** | } | |

## ORDER TRANSFERRING CASE

Before the court is Defendant's Motion to Dismiss, Transfer, or Stay, or Alternatively, Motion for Judgment on the Pleadings (Doc. #32), filed on November 1, 2012.

Plaintiffs have advised the court that they consent to a transfer of this case to the Northern District of Illinois, where two other cases involving similar claims and putative classes are pending against Defendant. Defendant has advised the court that once the case is transferred, it will seek to consolidate this case with one or both of the actions in the Northern District of Illinois.

The court has reviewed Defendant's motion, together with Plaintiffs' consent to the transfer, and concludes that the motion is well-taken and should be **GRANTED**. The court hereby **TRANSFERS** this action to the United States District Court for the Northern District of Illinois.

**DONE** and **ORDERED** this \_\_\_\_5th\_\_\_\_ day of November, 2012.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE