**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| HENRY ESPEJO, individually and on behalf of all others similarly situated, )<br><br>*Plaintiff*, )<br><br>*v.* )<br><br>SANTANDER CONSUMER USA, INC., an Illinois Corporation, )<br><br>*Defendant*. ) | **Case No. 1:11-cv-8987**<br>*Related to*: Case No. 1:12-cv-4671<br>Case No. 1:12-cv-9431<br><br>Honorable Charles P. Kocoras |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY
PURSUANT TO THE PRIMARY JURISDICTION DOCTRINE**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................. 2

    I.    Espejo Files Suit Against Santander Almost Three Years Ago for Unlawfully Using an ATDS to Repeatedly Call His Cellular Telephone Without His Consent ................................................................................................. 2

    II.    Santander Uses the Guise of Ongoing Mediation to Delay the Litigation by over a Year................................................................................................ 3

ARGUMENT ............................................................................................................. 4

    I.    A Stay Would Be Improper Because the FCC Has Already Ruled that Dialing Equipment Like Santander's Meets the TCPA's Definition of an ATDS. ........................................................................................... 6

    II.    There is No Risk of Inconsistent Adjudications Arising if the Case is Not Stayed. ................................................................................................... 10

    III.    Staying the Litigation Indefinitely While Waiting for Agency Input of Unknown Scope Would Waste Judicial Resources, Fail to Advance the Interests of Justice, and Reward Santander's Continued Dilatory Tactics. . 11

        A.    The FCC is under no obligation to rule on the petitions and therefore, any stay will likely be lengthy, if not indefinite. ................. 11

        B.    The lengthy stay proposed by Santander will prejudice Plaintiff, clog this Court's docket, and interfere with the interests of justice... 13

    IV.    The Cases Where Courts Have Stayed TCPA Actions Pending FCC Rulings Are Inapposite Because They Involved Factual Disputes Directly Affected by the Pending Petitions. ....................................................................... 14

CONCLUSION ............................................................................................................. 15

i

## TABLE OF AUTHORITIES

**UNITED STATES SUPREME COURT CASES**

*Landis v. N. Am. Co.,* 299 U.S. 248 (1936) ................................................................. 13

*Local Union No. 189, Amalgamated Meat Cutters & Butcher Workmen of N. Am.,*
   *AFL-CIO v. Jewel Tea Co.,* 381 U.S. 676 (1965) ................................................ 16

*Sibron v. New York,* 392 U.S. 40 (1968) ...................................................................... 17

*United States v. W. Pac. R.R. Co.,* 352 U.S. 59 (1956) ................................................. 6


**UNITED STATES CIRCUIT COURT OF APPEALS CASES**

*Arsberry v. Illinois,* 244 F.3d 558 (7th Cir. 2001) ....................................................... 5

*Assoc. of Businesses Advocating Tariff Equity v. Hanzlik,* 779 F.2d 697 (D.C. Cir. 1985) ......... 13

*Cheyney State Coll. Faculty v. Hufstedler,* 703 F.2d 732 (3d Cir. 1983) .................................... 16

*Pagtalunan v. Galaza,* 291 F.3d 639 (9th Cir. 2002) .................................................. 17

*Ryan v. Chemlawn Corp.,* 935 F.2d 129 (7th Cir. 1991) ............................................. 6

*Skaw v. United States,* 740 F.2d 932 (Fed. Cir. 1984) ................................................ 15

*Yakima Valley Cablevision, Inc. v. F.C.C.,* 794 F.2d 737 (D.C. Cir. 1986) ............................... 13


**UNITED STATES DISTRICT COURT CASES**

*Excellular Inc v. U.S. W. NewVector Grp., Inc.,* No. 96-cv-1514,
   1998 WL 1969616 (W.D. Wash. Feb. 9, 1998) ........................................................ 14

*Fried v. Sensia Salon, Inc.,* No. 13-cv-312,
   2013 WL 6195483 (S.D. Tex. Nov. 27, 2013) ................................................... 15, 16

*Gilmore v. Sw. Bell Mobile Sys., L.L.C.,* 210 F.R.D. 212 (N.D. Ill. 2001) ................................ 5, 9

*Griffith v. Consumer Portfolio Serv., Inc.,* 838 F. Supp. 2d 723 (N.D. Ill. 2011) ................... 9, 10

*Hibler v. Santander Consumer USA, Inc.,* No. 5:13-cv-1354 (C.D. Cal. June 20, 2014). ............. 4

*Higgenbotham v. Diversified Consultants, Inc.,* No. 13-2624-JTM, 2014 WL 1930885 ............. 15

*Hurrle v. Real Time Resolutions, Inc.,* No. 13-cv-5765,
   2014 WL 670639 (W.D. Wash. Feb. 20, 2014) ..................................................... 16

*In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329 (N.D. Ga. 2000)...................... 13

*Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92 (N.D. Ill. 2013) .......................................... 7, 9

*Lardner v. Diversified Consultants Inc.*, No. 13-cv-22751,
    2014 WL 1778960 (S.D. Fla. May 1, 2014) ................................................................... 10

*Mendoza v. UnitedHealth Group, Inc.*, No. 13-cv-1553,
    2014 WL 722031 (N.D. Cal. Jan. 6, 2014) ................................................................... 15

*Natural Resources Defense Counsel v. Norton*, 64 ERC 1718 (E.D. Cal. Jan. 3, 2007).............. 11

*Passero v. Diversified Consultants, Inc.*, No 13-cv-338,
    2014 WL 2257185 (W.D.N.Y. May 28, 2014)................................................................ 15

*Pfizer Inc. v. Apotex Inc.*, 640 F. Supp. 2d 1006 (N.D. Ill. 2009). ................................................ 11

*Sterk v. Path, Inc.*, No. 13-cv-2330, 2013 WL 5460813 (N.D. Ill. Sept. 26, 2013) ..................... 14


**STATUTES**

47 U.S.C. § 227 ................................................................................................................................. 1

47 U.S.C. § 227(a)(1)........................................................................................................................ 7

47 U.S.C. § 227(b)(1)(A)(iii)............................................................................................................ 7


**REGULATIONS**

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18
    F.C.C.R. 14014 (July 3, 2003).............................................................................................. 7, 8

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27
    F.C.C.R. 15391 (Nov. 29, 2012).......................................................................................... 8, 10, 12


**MISCELLANEOUS PETITIONS**

*In re Professional Association for Customer Engagement's Petition for Expedited Declaratory
    Ruling*, No. 02-278 (Oct. 18, 2013) ......................................................................................... 3

*In re YouMail's Petition for Expedited Declaratory Ruling and Clarification*, GC Docket No. 02-
    278 (Apr. 13, 2013)................................................................................................................... 3

*In the Matter of Cargo Airline Association Petition for Expedited Declaratory Ruling Rules and
    Regulations Implementing the Telephone Consumer Protection Act of 1991*, 29 F.C.C.R. 3432
    (Mar. 27, 2014) ...................................................................................................................... 14

*In the Matter of Communication Innovators' Petition for Declaratory Ruling*, CG Docket No. 02-278 (June 7, 2012) ............................................................................................................... 3

*In the Matter of GroupMe, Inc./Skype Communications SA.R.L Petition for Expedited Declaratory Ruling Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 29 F.C.C.R. 3442 (Mar. 27, 2014) ...................................................................... 14

*Petition for Rulemaking of ACA International*, CG Docket No. 02-278 (Jan. 31, 2014)............... 3

## INTRODUCTION

Plaintiff Henry Espejo ("Plaintiff" or "Espejo") brought this putative class action against Defendant Santander Consumer USA, Inc. ("Santander"), alleging that Santander's practice of using an automatic telephone dialing system ("ATDS") to call consumers' cellular telephones without consent violates the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Now, nearly three years after the case was filed, Santander has moved for an indefinite stay pursuant to the doctrine of primary jurisdiction. In particular, Santander requests a stay pending the FCC's resolution of four petitions (one of which has since been withdrawn) addressing (i) whether the meaning of the word "capacity" as used in the TCPA is limited to only *present* capacity, and (ii) what rises to the level of "human intervention" as that term is contemplated by the TCPA.[1] Santander's request to stay should be denied for several reasons.

Foremost, the FCC and courts throughout the country have already addressed the "capacity" and "human intervention" issues raised by Santander, and have plainly held that dialing systems like Santander's here (as described further below) constitute an ATDS. As a result, there is no need for the Court to defer to the FCC for further clarification.

Second, the FCC is under no obligation to rule on any of the pending petitions at all, let alone within a specific timeframe. Thus, staying the case while waiting for the FCC to take up the three remaining petitions would effectively result in an indefinite—or at the very least, lengthy—delay of these proceedings. Of course, during any such delay, witness testimony will

---

[1] Those four petitions are: *In the Matter of Communication Innovators' Petition for Declaratory Ruling*, CG Docket No. 02-278 (June 7, 2012) ("CI Petition"); *In re YouMail's Petition for Expedited Declaratory Ruling and Clarification*, GC Docket No. 02-278 (Apr. 13, 2013) ("YouMail Petition"); *In re Professional Association for Customer Engagement's Petition for Expedited Declaratory Ruling*, No. 02-278 (Oct. 18, 2013) ("PACE Petition"); and *Petition for Rulemaking of ACA International*, CG Docket No. 02-278 (Jan. 31, 2014) ("ACA Petition") (collectively "the Petitions"). Communication Investors withdrew its petition on July 14, 2014. *See* CG Docket No. 02-278 (July 14, 2014).

become less reliable, evidence will become more difficult to obtain, and the Parties will remain in limbo regarding their rights, obligations, and remedies—and this case is already almost three years old, with much work to be done since the parties' settlement negotiations have ended.

Third, and finally, Santander's motion fails because it relies on a series of cases that are inapplicable here inasmuch as they (a) lack this case's clear and unambiguous facts regarding the use of an ATDS, and (b) apply an excessively broad interpretation of the narrow and sparsely applied primary jurisdiction doctrine.

For those reasons, and as discussed more fully below, the Court should deny Santander's motion to stay, and allow the litigation to proceed.

## **BACKGROUND**

### I. Espejo Files Suit Against Santander Almost Three Years Ago for Unlawfully Using an ATDS to Repeatedly Call His Cellular Telephone Without His Consent

This putative class action was initiated on December 19, 2011 by former plaintiff Tercia Pereira, who asserted that Santander had used an ATDS to call her cellular telephone numerous times, without her consent. (Dkt. 1.) Pereira alleged that Santander's unlawful calls were made to collect a debt from her that she did not, in fact, owe. (*Id.*) Pereira sought to represent a class of all individuals who received similar calls without consent, and a subclass of individuals who received such calls despite not owing a debt to Santander. (*Id.*)

In response, Santander moved to compel arbitration. (Dkt. 16.) After full briefing, the Court denied the arbitration motion, (Dkt. 23), and, after Santander answered, the parties stipulated to Pereira's filing of an amended complaint, which substituted Plaintiff Henry Espejo in her place as the named-plaintiff and putative class representative. (Dkts. 27, 30.) Espejo's case was later related and consolidated with several other actions pending against Santander. (*See* Dkts. 33, 40.) At that point, Espejo's counsel was also named as interim class counsel. (Dkt. 44.)

## II. Santander Uses the Guise of Ongoing Mediation to Delay the Litigation by over a Year

On January 31, 2013, three weeks after the Court appointed Espejo's lawyers interim class counsel, the Parties participated in their first private mediation, with Judge Morton Denlow (ret.) of JAMS (Chicago). (*See* Declaration of Benjamin H. Richman ("Richman Decl."), filed concurrently herewith, at ¶ 2.) Although they were unable to reach an agreement at that mediation, the Parties agreed to continue to work toward resolution and to voluntarily exchange certain documents and information, in addition to the documents and information already sought in Espejo's first set of written discovery requests. (*Id.* ¶ 3.) While Santander spent months refusing to produce information (either formally, in response to discovery requests, or informally), the Parties agreed to participate in a second mediation, on May 6, 2013, with Judge Wayne R. Andersen (ret.) of JAMS (Chicago). (*Id.* ¶¶ 4, 5.)

Like the first mediation with Judge Denlow, the second mediation, with Judge Andersen, did not lead to settlement. After the Parties informed the Court of as much, it ordered them to continue discovery and for Santander to respond to Plaintiff's outstanding discovery requests. (Dkt. 50.) Although Santander again refused to respond, by the time of the next status hearing before the Court on July 11, 2013, the Parties appeared to be on the verge of settlement, with terms having been agreed to in principle by counsel and supposedly sent to Santander's board for approval. (*Id.* ¶ 8.) After further delay, and as it appeared again that no settlement would be reached, Espejo filed a motion to compel Santander's response to his outstanding discovery requests, which had been pending at that point for over four months. (Dkt. 53.)

On September 10, 2013, immediately prior to the hearing on the motion to compel, Santander's counsel informed Plaintiff's counsel that during the time Santander claimed to be seeking board approval for the proposed settlement in this case, Santander's lawyers actually

negotiated a settlement of an overlapping class action in the Central District of California,[3] a

mere two weeks after it had been first filed, after only a single day's mediation, and for

substantially less relief than would have been afforded under the proposed settlement in this

case. (Richman Decl. ¶¶ 10–12.) Illustrative of the sham nature of that settlement, after further

disputes here and in the Southern District of California (and an unsuccessful third mediation)

counsel in the *Hibler* action walked away from the settlement and moved to voluntarily dismiss

their case. *See Hibler*, Dkt. No. 61 (C.D. Cal. June 20, 2014).

On May 7, 2014, the Parties held their fourth full-day mediation, again with Judge

Andersen. (*Id.* ¶ 4.) Once again, they appeared to make substantial progress, and Santander

represented that it was going to its board for approval. (*Id.*) Weeks later, however, Santander's

counsel informed Espejo's counsel that Santander's board had not approved the terms.

(*Id.* ¶ 15.)Accordingly, the litigation was set to proceed.

Now, with litigation looming, Santander seeks an indefinite stay based upon several

petitions pending before the FCC, the ruling on which it claims *could be* dispositive of the claims

in this case. As explained further below, Santander's request for a stay mischaracterizes the state

of the law, is incredibly untimely, and should be denied in its entirety.

## ARGUMENT

"The doctrine [of primary jurisdiction] is really two doctrines." *Arsberry v. Illinois*, 244

F.3d 558, 563 (7th Cir. 2001). First, "[i]n its central and original form, [better]…described…as

'exclusive agency jurisdiction,' it applies only when, in a suit involving a regulated firm but not

brought under the regulatory statute itself, an issue arises that is within the exclusive original

jurisdiction of the regulatory agency to resolve, although the agency's resolution of it will usually

---

[3]     *See Hibler v. Santander Consumer USA, Inc.*, No. 5:13-cv-1354 (C.D. Cal.).

be subject to judicial review." *Id.* The second form, which Santander contends applies here, exists "as a doctrine that allows a court to refer an issue to an agency that knows more about the issue, even if the agency hasn't been given exclusive jurisdiction to resolve it." *Id.* This form of the primary jurisdiction doctrine "is actually a form of abstention and [is] not jurisdictional in nature." *Gilmore v. Sw. Bell Mobile Sys., L.L.C.*, 210 F.R.D. 212, 220–21 (N.D. Ill. 2001).

"No fixed formula exists for applying th[is second form of the] doctrine…. In every case, the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956). Traditionally, the factors considered include:

> (a) whether the question at issue is within the conventional experience of judges; (b) whether the question at issue involves technical or policy issues within the agency's particular field of expertise; (c) whether a determination would involve the exercise of agency discretion; (d) the need for a consistent and uniform rule; (e) the likelihood of inconsistent rulings if not referred to the agency; (f) whether the issue has already been before the agency; (g) whether judicial economy is served by having the agency resolve the issue; and (h) whether the referral will result in substantial delay and added expense.

*Gilmore v. Sw. Bell Mobile Sys., L.L.C.*, 210 F.R.D. 212, 220–21 (N.D. Ill. 2001) (citing *Ryan v. Chemlawn Corp.*, 935 F.2d 129, 131 (7th Cir. 1991)).

The primary jurisdiction doctrine should not be applied to stay this case. First, the FCC and courts through the country have already spoken on the two issues raised in Santander's motion (i.e., the meaning of the terms "capacity" and "human intervention"), including ruling—three times—that systems like Santander's dialing equipment constitute an ATDS. Thus, there is no need for further clarification, and continuing with litigation in this Court (rather than deferring to the FCC) does not pose a risk of applying inconsistent standards. Second, deferring to the FCC would also result in a lengthy—indeed, potentially indefinite—delay in these proceedings insofar as there is no set timeline for the FCC to rule on the petitions at issue, the

FCC has given no indication when or whether it will issue rulings, and the FCC is in fact not required to take any action on the petitions at all. Third, and finally, Santander's arguments in favor of staying this case also fail because they rely on a series of recent cases that apply an overly broad interpretation of what is otherwise a narrowly and sparsely applied primary jurisdiction doctrine.

## I.  A Stay Would Be Improper Because the FCC Has Already Ruled that Dialing Equipment Like Santander's Meets the TCPA's Definition of an ATDS.

Santander asserts that a stay is warranted so that the FCC can evaluate two pending questions that may (if ever decided) provide further guidance in defining "automatic telephone dialing system" under the TCPA. Specifically, Santander asserts that the FCC will determine (i) whether a dialing system with only the potential future capacity (as opposed to *present* capacity) to store or produce and dial randomly or sequentially generated telephone numbers constitutes an ATDS, and (ii) whether a dialing system that requires any human intervention at all—no matter how inconsequential—constitutes an ATDS. Even if those were open questions (they are not), the answers to them have no bearing on this case because there can be no dispute that Santander's dialing system *did* have the present capacity (at the time the unlawful calls were made) to function as an ATDS, and was able to (and did) do so without human intervention.

The relevant TCPA provision in this case prohibits calls made to cell phones that are made "using any automatic telephone dialing system or an artificial or prerecorded voice." 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA defines "automatic telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The FCC has repeatedly held that "predictive dialers"—"automated dialing system[s] that use[] a complex set of algorithms to automatically dial consumers' telephone

numbers in a manner that 'predicts' the time when a consumer will answer the phone and a telemarketer will be available to take the call"—fit the definition of ATDS under the TCPA. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C.R. 14014, 14022 n.31 (July 3, 2003) (the "2003 Order"); *see also Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 101 (N.D. Ill. 2013) (noting that the "FCC has already ruled that a predictive dialer constitutes automatic telephone dialing equipment three times."). In applying and interpreting the TCPA, the FCC has held that this definition "covers any equipment that has the specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers are called randomly or sequentially generated or come from calling lists." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 F.C.C.R. 15391, 15392 n.5 (Nov. 29, 2012) (the "2012 Order"); *see also* 2003 Order at 14091–92 (noting that the ATDS definition should be interpreted broadly to include technology used to dial "lists" or "databases" of numbers, since such technology has the basic functional "capacity to dial numbers without human intervention.").

The information adduced to date in discovery plainly demonstrates that Santander's dialing system had the *present* "specified capacity to generate numbers and dial them without human intervention . . . from calling lists." 2012 Order at 15392 n.5. Indeed, Santander admits that its dialing system receives and stores a list of numbers to be called each day. (Nightengale Decl. ¶ 3.) It also admits that those numbers are called once employees are logged in to the system and have pressed a button "to signal that the employee is ready to dial a call"—not that they manually dial the calls. (*Id.* ¶ 4.) Further, discovery has shown that the autodialer system used by Santander, ███████████████████, has functionality that removes any doubt as to whether it is a predictive dialer (and therefore an ATDS under the FCC's prior rulings).

Specifically, the ███████████ system includes the following functions:



(*See* Unified Director Use Guide, Exhibit A,[4] at SCUSA/E 0202.) Further confirming that

Santander's dialer had autodialing capacity is the fact that the call records for Mr. Espejo ████

███████████████████████████████████████████████████████ (*See, e.g.,*

Exhibit B, at SCUSA/E 0025–0030.) Under controlling FCC authority, therefore, Santander used

an ATDS to make its calls: its predictive dialer generated numbers to be called from the lists pre-

loaded by Santander, without requiring input from a Santander employee prior to each call. *See*

2012 Order at 15392 n.5; *Jamison*, 290 F.R.D. at 101. As such, no "specialized development of

related facts" by the FCC is necessary in this case, and the case can and should properly remain

before this Court. *See Gilmore*, 210 F.R.D. at 221.

     Similarly, Santander's argument that its dialer requires "human intervention"—i.e., that

its call center representatives have to log in before they can make calls—is a red herring. (Def.

Br. at 14–15.) First, as explained above, the evidence adduced clearly demonstrates that

Santander's dialer had—at the time the calls were made—the capacity to dial numbers without

---

[4]     All citations to Exhibits refer to the exhibits to the Declaration of Benjamin H. Richman, filed

human intervention. (*See* Exs. A, B.) That is, in ███████████████████████

██████████████████████████, ██████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████. (*See* Ex. A.)

    Second, Santander's reading of "human intervention" would effectively render the concept of an ATDS meaningless. Indeed, any dialing system necessarily requires some level of human activity—e.g., plugging the system into an electrical outlet, pressing its power button, or, as here, clicking a button to start the autodialing procedure. (*See* Nightengale Decl. at 5, ¶ 6.) This in mind, the FCC and the courts have recognized that human intervention does not mean that some human was involved somewhere in the calling process between programming the autodialer and the start of the dialing procedure. Rather, they have taken "human intervention" to mean that a human actually dials the numbers. *See, e.g.*, *Griffith v. Consumer Portfolio Serv., Inc.*, 838 F. Supp. 2d 723, 727 n.2 (N.D. Ill. 2011) (noting that calls were made without human intervention where "[defendant's] collectors [did] not dial the numbers, the dialer [did].").

    Here, Santander offers no evidence of human *intervention* (as opposed to initiation) of the dialing process (i.e., evidence that humans actually dialed the calls at issue), and as such, it provides no reason to stay the litigation pending the FCC's potential resolution of the supposed human intervention issue. *See Griffith*, 838 F. Supp. 2d at 727 n.2; *Lardner v. Diversified Consultants Inc.*, No. 13-cv-22751, 2014 WL 1778960 (S.D. Fla. May 1, 2014) (explaining that "automated dialing systems that automatically dial cell phone numbers from a preprogrammed list . . . are 'automatic telephone dialing systems' under the TCPA") (collecting cases).

    For these reasons, under the FCC's own well-settled interpretation, Santander used an ATDS to make the calls at issue. Accordingly, Santander's motion should be denied.

**II. There is No Risk of Inconsistent Adjudications Arising if the Case is Not Stayed.**

Santander next argues that a stay of this case is necessary pending rulings from the FCC on the Petitions, to ensure the creation of uniform nationwide standards regarding the capacity and human intervention issues. (Def. Br. at 9.) This argument also fails.

Santander begins by explaining that in the absence of any definition of "capacity," a split in the courts has arisen over whether the TCPA requires an autodialer to have either the *present* rather than just *potential* capacity to call without human intervention. (*Id.*) Santander asserts that deferring to the FCC will allow it to resolve the dispute nationally, and prevent this Court from "[n]ot permitting the FCC to address the technical issues committed to that agency's discretion." (*Id.* at 10.) The dispute regarding the meaning of capacity, however, has no bearing on this case. Santander's dialing system, at the time the calls at issue were made, had the present, specified capacity "to generate numbers and dial them without human intervention regardless of whether the numbers are called randomly or sequentially generated or come from calling lists" in its ███████████████████████████████████████████████████████ modes. 2012 Order at 15392 n.5. As such, the Court will not have to weigh in on the present versus future capacity issue, thereby avoiding the risk of inconsistent adjudications, and leaving undisturbed the FCC's ability to resolve the Petitions and establish a uniform nationwide standard.[5]

Ultimately, while the need for uniform standards is an important one, Santander fails to establish *any* disputed issues presently before this Court that will be clarified by an FCC ruling. As such, there is no need to stay this case pending FCC resolution of the Petitions.

---

[5] Santander does not assert that the "human intervention" issue presents the possibility for inconsistent adjudications. Even if it did however, no such risk exists, as the evidence produced to date has clearly established that Santander's autodialer was equipped to call without any human intervention. (*See* Ex. A.) As such, there is no need for the Court to consider (or wait for FCC resolution of) questions relating to the consequences of necessary human intervention.

### III. Staying the Litigation Indefinitely While Waiting for Agency Input of Unknown Scope Would Waste Judicial Resources, Fail to Advance the Interests of Justice, and Reward Santander's Continued Dilatory Tactics.

In addition to omitting any substantive basis for application of the primary jurisdiction doctrine here (as described in Sections I and II, *supra*), Santander's request for a stay also fails to satisfy any of the practical factors the Court must consider. That is, when evaluating a proposed stay, courts must consider "(i) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (ii) whether a stay will simplify the issues in question and streamline the trial, and (iii) whether a stay will reduce the burden of litigation on the parties and on the court." *Pfizer Inc. v. Apotex Inc.*, 640 F. Supp. 2d 1006, 1007 (N.D. Ill. 2009). "[I]f there is even a fair possibility that the stay will work damage to some one else," the party seeking the stay "must make out a clear case of hardship or inequity in being required to go forward." *Landis v. N. Am. Co.,* 299 U.S. 248, 255 (1936); *see also*, *e.g.*, *Natural Resources Defense Counsel v. Norton*, 64 ERC 1718, at *14 (E.D. Cal. Jan. 3, 2007) (applying similar standard in primary jurisdiction context).

### A. The FCC is under no obligation to rule on the petitions and therefore, any stay will likely be lengthy, if not indefinite.

First, the FCC has no obligation to resolve a pending petition within a specific timeframe, or even at all. Even when it has accepted a petition for comment, the FCC has broad discretion to decline to rule. *Yakima Valley Cablevision, Inc. v. F.C.C.*, 794 F.2d 737, 747 (D.C. Cir. 1986); *see also Assoc. of Businesses Advocating Tariff Equity v. Hanzlik*, 779 F.2d 697, 701 (D.C. Cir. 1985) (D.C. Cir. 1985) ("It is too well-established to be seriously questioned that agencies are empowered to order their own court proceedings and control their own dockets."). Thus, regardless of the petition at issue, there is no certainty that the FCC will rule and even if it does, when that will be.

The Petitions Santander relies upon are a prime example of that uncertainty. The CI Petition, for instance, was lodged with the FCC in June 2012, and the comment period closed in November 2012. (Def. Br. at 5.) Then, as Santander notes, in September 2013, the FCC noted that a draft order concerning the CI Petition had been circulated internally. (*Id.*) Over the course of the following ten months, however, the FCC did not rule, and Communication Innovators ultimately decided to withdraw its petition. *See* CG Docket No. 02-278 (July 14, 2014). Similarly, the YouMail Petition has been pending for over a year, with comments closed in August 2013, and there is no indication that a resolution is upcoming. (*Id.*)

In fact, since the close of comments in the YouMail Petition, the FCC has decided two other pending petitions regarding the TCPA, while giving no indication that a ruling on the YouMail Petition is forthcoming, let alone imminent. *See In the Matter of Cargo Airline Association Petition for Expedited Declaratory Ruling Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 29 F.C.C.R. 3432 (Mar. 27, 2014); *In the Matter of GroupMe, Inc./Skype Communications SA.R.L Petition for Expedited Declaratory Ruling Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 29 F.C.C.R. 3442 (Mar. 27, 2014). The same goes for the PACE and ACA Petitions, which have been pending since October 2013 and January 2014, with respective comment deadlines of January 2014 and March 2014. (*Id.*).[6]

---

[6] Tellingly, Santander offers no explanation as to why a stay has all of a sudden become a necessity based on the Petitions. Indeed, the issues Santander identifies as requiring a stay are not new developments—it has utilized the same dialing equipment throughout the pendency of this case. Thus, if a stay were necessary, Santander could have moved for one two years ago when the CI Petition was first submitted, or over a year ago when the YouMail petition was lodged. It didn't and the fact that it has done so only now, as the litigation and discovery are finally ready to proceed, makes all the more clear that Santander is simply seeking to delay these proceedings yet again.

**B. The lengthy stay proposed by Santander will prejudice Plaintiff, clog this Court's docket, and interfere with the interests of justice.**

Further, there is no question that a stay of this litigation (and certainly an indefinite one) will prejudice Espejo and the putative Class. Not surprisingly, courts have consistently held that a lengthy delay based on the doctrine of primary jurisdiction—as is likely to be the case— imposes an unfair burden on the party opposing a stay. *See Skaw v. United States*, 740 F.2d 932, 938 (Fed. Cir. 1984) (denying second referral to Department of Interior where proceedings had already been suspended for three years and right to trial had been delayed more than five years). That's especially true in class actions like this, where, as time goes on, class members may have difficulty accurately recalling the details of relatively small claims or misplace relevant evidence. *See, e.g.*, *In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1334 (N.D. Ga. 2000).

Ultimately, the primary jurisdiction doctrine is not one "of futility." *Local Union No. 189, Amalgamated Meat Cutters & Butcher Workmen of N. Am., AFL-CIO v. Jewel Tea Co.*, 381 U.S. 676, 686 (1965). As such, stays of "indefinite duration" should not be allowed. *Cheyney State Coll. Faculty v. Hufstedler*, 703 F.2d 732, 738 (3d Cir. 1983). Instead, where an agency has not "expeditiously determine[d]" the issues in question, the litigation should continue. *See Excellular Inc v. U.S. W. NewVector Grp., Inc.*, No. 96-cv-1514, 1998 WL 1969616, at *1 (W.D. Wash. Feb. 9, 1998). As Judge Der-Yeghiayan recently explained in denying a motion to stay a TCPA class action pending FCC action, "[j]udicial economy would not be served if this case is allowed to stagnate on the court docket, waiting indefinitely for a decision by the FCC… ." *Sterk v. Path, Inc.*, No. 13-cv-2330, 2013 WL 5460813, at *2 (N.D. Ill. Sept. 26, 2013).

Given the indefinite nature of the proposed stay, its only certain result would be prejudice to Espejo's and the putative Class's ability to pursue their claims. *See Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002) ("Unnecessary delay inherently increases the risk that witnesses'

memories will fade and evidence will become stale.") (*citing Sibron v. New York,* 392 U.S. 40, 57 (1968)). For example, with the passage of time, relevant witnesses—both party and third-party witness—may find it more difficult to recall the specifics of Santander's calling practices; putative Class members may find it more difficult to recall receipt of the calls; and, documentary evidence may be more difficult to obtain (e.g., wireless carriers' records of Class members having received the calls, which are typically only available for a limited period of time). As a result, for example, should the Class ultimately be certified, proving the Class's claims may become more difficult and Class members may even be less inclined (or able) to claim any form of recovery for their injuries. For these reasons, too, a stay should not be granted.[7]

## IV. The Cases Where Courts Have Stayed TCPA Actions Pending FCC Rulings Are Inapposite Because They Involved Factual Disputes Directly Affected by the Pending Petitions.

Finally, in support of its motion to stay, Santander cites five recent decisions where district courts have stayed TCPA class actions pending the resolution of the Petitions. Santander's reliance on those cases is misplaced, however, because none of them involved situations—as in this case—where discovery had clearly indicated that an ATDS was used.

First, in *Mendoza v. UnitedHealth Group, Inc.*, No. 13-cv-1553, 2014 WL 722031 (N.D. Cal. Jan. 6, 2014), the court ruled on a motion to stay where only limited discovery had taken place. In fact, the court noted the relatively early stage of the proceedings as a factor in its

---

[7]     Tellingly, Santander offers no explanation as to why a stay is necessary at *this stage* of the litigation. As noted above, the CI Petition was pending for two years and the YouMail petition for more than one, and Santander has only now decided that those petitions justify a stay. Nor have any developments in discovery or the litigation suddenly made the stay necessary. The Court is not being forced to rule imminently on Santander's use of an ATDS. In fact, pursuant to the schedule in place, discovery is scheduled to continue until early 2015. There is no reason why the Court should stay the case now, only to wait months (if not longer) for an FCC decision. Instead, the litigation should continue, and if facts come to light showing that there is actually a need for a stay, Santander can renew its motion.

decision to issue the stay. *Id.* at *2. Furthermore, the court reasoned that the issues pending

before the FCC— i.e., "whether the dialing equipment's *present* capacity is the determinative

factor in classifying it as an ATDS, or whether the equipment's *potential* capacity with hardware

and/or software alterations should be considered"—were squarely raised by the plaintiff's

complaint. *Id.* at *1. Neither consideration is present here. Instead, Espejo is in possession of

evidence demonstrating that Santander used an ATDS to make the calls, regardless of whether

*present* or *potential* capacity is the determinative standard.

Santander also relies on *Higgenbotham v. Diversified Consultants, Inc.*, No. 13-2624-

JTM, 2014 WL 1930885, at *3 (D. Kan. May 14, 2014). (Def. Br. at 12–13.) In *Higgenbotham*,

the defendant contended (and the plaintiff had not disproven) that the autodialer used lacked the

"present capacity" to function as an ATDS. As such, the pending FCC rulings were potentially

dispositive. *Id.* at *1. Again, that's not the case here given the record-evidence. (*See* Exs. A, B.)

The same is true with respect to Santander's reliance on *Passero v. Diversified*

*Consultants, Inc.*, No 13-cv-338, 2014 WL 2257185 (W.D.N.Y. May 28, 2014), and *Fried v.*

*Sensia Salon, Inc.*, No. 13-cv-312, 2013 WL 6195483 (S.D. Tex. Nov. 27, 2013), where the

defendants "contended that the system used to send text messages to Plaintiffs 'indisputably does

not dial,'" and the plaintiffs did not assert that the systems had the capacity to actually dial

consumers. *Id.* at *4.[8] Thus, these authorities are inapposite as well.

## CONCLUSION

For the reasons explained above, Plaintiff respectfully requests that the Court deny

Santander's motion to stay, and award such other such relief as it deems equitable and just.

---

[8]    Santander also cites to *Hurrle v. Real Time Resolutions, Inc.*, No. 13-cv-5765, 2014 WL 670639
(W.D. Wash. Feb. 20, 2014) in support of its motion. The *Hurrle* decision, however, dealt with the
question of whether debt collection calls fall within the TCPA's purview, and provided no analysis of
how the FCC's resolution of the issues raised in the Petition would advance the litigation. *Id.*

**HENRY ESPEJO**, individually and on behalf of all others similarly situated,

Dated: July 31, 2014

By: s/ J. Dominick Larry
      One of Plaintiff's Attorneys

Jay Edelson
jedelson@edelson.com
Rafey S. Balabanian
rbalabanian@edelson.com
Benjamin H. Richman
brichman@edelson.com
Christopher L. Dore
cdore@edelson.com
J. Dominick Larry
nlarry@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

16

## CERTIFICATE OF SERVICE

I, J. Dominick Larry, an attorney, hereby certify that on July 31, 2014, I served the above and foregoing by causing a true and accurate copy of such paper to be filed and served on all counsel of record via the Court's CM/ECF electronic filing system.

s/ J. Dominick Larry