UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HENRY ESPEJO, individually and on behalf of all others similarly situated | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 11 C 8987 |
| SANTANDER CONSUMER USA, INC., an Illinois Corporation, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

Before the Court is Defendant Santander Consumer USA, Inc.'s ("Santander") motion to stay the proceedings pursuant to the primary jurisdiction doctrine. For the reasons set forth below, Santander's motion is denied.

## BACKGROUND

On December 19, 2011, Plaintiff Henry Espejo ("Espejo") filed a class action complaint against Santander alleging that Santander impermissibly called Espejo. Espejo alleges in his complaint that Santander made debt collection calls to his mobile telephone without his prior consent, using an automatic telephone dialing system ("ATDS"). Espejo contends that Santander's conduct violated the Telephone Consumer Protection Act ("TCPA").

On July 7, 2014, Santander filed a motion to stay the proceedings pending the outcome of several petitions for clarification before the Federal Communications Commission ("FCC"), the agency Congress delegated to interpret the TCPA.

## LEGAL STANDARD

The primary jurisdiction doctrine permits a federal court to enter a stay and "refer a matter extending beyond the 'conventional experiences of judges' or 'falling within the realm of administrative discretion' to an administrative agency with more specialized experience, expertise, and insight." *Arsberry v. Illinois*, 244 F.3d 558, 563 (7th Cir. 2001) (quoting *National Communications Association, Inc. v. American Telephone & Telegraph Co.*, 46 F.3d 220, 222-223 (2d Cir. 1995). Courts invoke the primary jurisdiction doctrine "to advance regulatory uniformity," "to answer a question . . . within the agency's discretion," and "to benefit from technical or policy consideration within the agency's . . . expertise." *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 466 (6th Cir. 2010) (internal quotation marks omitted). The Seventh Circuit has enunciated several factors and policy issues that should be considered when determining to stay a case pursuant to the primary jurisdiction doctrine: (a) whether the question at issue is within the conventional experience of judges; (b) whether the question at issue involves technical or policy issues within the agency's particular field of expertise; (c) whether a determination would involve the exercise of agency discretion; (d) the need for a consistent and uniform rule; (e) the likelihood of inconsistent rulings if not referred to the agency; (f) whether the issue

has already been before the agency; (g) whether judicial economy is served by having the agency resolve the issue; and (h) whether the referral will result in substantial delay and added expense. *See Ryan v. Chemlawn Corp.,* 935 F.2d 129, 131 (7th Cir.1991).

## DISCUSSION

Santander argues that this case should be stayed due to the FCC's consideration of two issues, which depending on the FCC's determination, would be dispositive of the case at bar. The issues posed by numerous petitions before the FCC seek clarification on telephone equipment: (a) that lacks the current *capacity* to store, produce and dial telephone numbers randomly or sequentially; and (b) that requires *human intervention* to function. In advocating for a stay, Santander contends that the TCPA's current definition of an ATDS is ambiguous and the lack of specificity needs to be resolved by the FCC. The TCPA defines an ATDS as "equipment which has the capacity: (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227 (a)(1). Santander submits that the resolution of whether an ATDS must have the *present* or *potential* capacity to store or produce numbers would alleviate the need for the parties to delve into extensive discovery.

The FCC is currently considering multiple petitions for declaratory rulings that seek guidance on the capacity of the phone system and the level of human intervention required to be deemed an ATDS. First, *In the Matter of Communication*

*Innovators*, CG Docket No. 02-278 (June 7, 2012), a petition seeking a declaration that telephone dialing systems that lack "the current ability to generate and dial random or sequential numbers, are not automatic telephone dialing systems under the TCPA." Additionally, *In re YouMail Inc. Petition for Expedited Declaratory Ruling and Clarification*, CG Docket No. 02-278 (April 19, 2013), a declaration is sought deeming software that does not have the current capacity to store, produce, or dial random or sequential numbers, being outside the scope of the definition of an ATDS. Finally, *In re Professional Association for Customer Engagement Petition for Expedited Declaratory Ruling*, CG Docket 02-278 (October 18, 2013), seeks to clarify the term capacity in relation to the dialing systems capabilities when the call is made. Also a declaration is sought stating that a calling system is not an ATDS unless it has the capacity to dial numbers without human intervention. All petitions have been taken under advisement by the FCC and there has not been a definitive date for any ruling.

Espejo opposes the imposition of a stay to await a final FCC determination. Espejo contends that previous FCC rulings and courts throughout the country have already determined the human intervention and capacity issues which renders a stay of the present case futile. Additionally, the imposition of a stay would further delay the present case for an undetermined period of time after years of protracted arbitration and settlement negotiations, which were not fruitful.

Espejo contends that Santander has offered evidence showing that human intervention was merely utilized in dialing initiation but has failed to provide any evidence of human intervention in the actual dialing process. According to Espejo, the concept of human intervention necessary to defeat the application of the TCPA is missing here. *See Griffith v. Consumer Portfolio Serv., Inc.*, 838 F.Supp.2d 723, 727 n. 2 (N.D. Ill. 2011) (noting that calls were made without human intervention where "[defendant's individual] collectors [did] not dial the numbers, the dialer [did]."). Santander counters Espejo's assertion by offering the declaration of Wayne Nightingale, the Vice President of Operating Systems for Santander, which states, "[w]ithout a live employee pressing a button to initiate a call, no call could be made." Faced with contradictory levels of human intervention regarding Santander's dialing system, it remains for the Court to decide the disputed question of human intervention.

Additionally, Espejo argues that the issue concerning the capacity of the phone dialing systems to dial numbers has been sufficiently established to classify Santander's equipment as an ATDS. Espejo supports its argument by relying on the FCC's declaration *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, 18 FCC Rcd. 14014, 14092 (2003) (2003 Order). In the 2003 Order, the FCC held that an ATDS includes "any equipment that has the specified capacity to generate numbers and dial them without human intervention . . . ." Admittedly, the 2003 Order presents some

vagueness concerning the present or potential capacity of the dialing equipment, and courts from around the country have weighed in on the issue of capacity, with varying results. *Compare Hunt v. 21st Mortgage Corp.*, 2012 CV 2697, 2013 WL 5230061, at *4 (N.D. Ala. Sept. 17, 2013) (to meet the ATDS definition, "a system must have the present capacity , at the time the calls were made, to store or produce and call numbers from a number generator"); *Gragg v. Orange Cab Co.*, 12 CV 576, 2014 WL 494862, at *2 (W.D. Wash. Feb. 7, 2014) (finding that "present, not potential, capacity to store, produce, or call randomly or sequentially generated telephone numbers" is the applicable standard) *with Sterk v. Path, Inc.*, 13 CV 2330, 2014 WL 2443785 (N.D. Ill. May 30, 2014) (broadly construing the statutory language to include any dialer with the potential to dial numbers without human intervention). The extent of disagreement in interpreting the capacity requirement does not currently represent a dispositive issue which requires the FCC's interpretation. At this stage of the case, Espejo has pled in his complaint that Santander made calls with "equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator and dial such numbers." Espejo relies on the present capacity of the equipment used, not any future capacity. In opposition to Espejo's complaint Santander asserts that at the time of the calls, its dialing system lacked the current capacity to store, produce or dial telephone numbers using a random or sequential generator. The disputed issues are matters traditionally decided by courts, whether factual, legal, or mixed matters.

This case has languished through numerous arbitrations and prospective settlement negotiations without a glimmer of finality. As we have surpassed the three-year mark in this case, it would be unduly burdensome to stay the proceedings for an undetermined period of time to await the FCC's determinations without any idea about when a decision will be rendered. At this stage of the case, it is not clear that any pronouncement by the FCC will materially aid in the resolution of the issues in this case.

## CONCLUSION

For the aforementioned reasons the Court denies Santander's motion.

                            /s/ Charles P. Kocoras
                            Charles P. Kocoras
                            United States District Judge

Dated:   August 28, 2014