# EXHIBIT A

**From:** Rafey Balabanian [mailto:rbalabanian@edelson.com]
**Sent:** Monday, September 08, 2014 1:08 PM
**To:** Rolfes, James A.
**Cc:** Pietrkowski, Henry; Richman, Michael D.; Benjamin Richman; Jay Edelson; Nick Larry
**Subject:** Espejo v. Santander

Jim:

I wanted to follow up our call Friday, and clarify a couple of points with respect to the sampling procedure we've proposed and the depositions requested. As to the sampling, if I understood your main point, it was that working from a pool of 1,000 accounts would be burdensome for Santander, and you questioned the relevance of landline accounts that we've asked for. On the depositions, you seemed to want to produce only Wayne Nightengale right now because you believe he he has the most knowledge relevant to Espejo's claims. I take up each point below.

First, we actually don't need the Landline accounts to be produced and would prefer that they aren't. As we've explained several times, the purpose of the Landline Group is simply to act as negative identifiers to ensure that a representative sample of "Cell" accounts (or "positives") is obtained from the population as a whole (i.e., the 2.8 million accounts to which Santander made collection calls). That said and as Ben previously offered, to the extent Santander is unwilling to incur what we believe will be a nominal cost to validate the phone numbers in the Landline Group (i.e., utilizing a third party service to confirm that those numbers are actually assigned to landlines rather than cell phones), we would be willing to accept production of those accounts for purposes of handling the validation on our end.

During our call, you also claimed that pulling 1,000 random accounts as a starting point for sampling would be "unduly burdensome" and offered instead to produce the 75 account files Santander provided to Davis & Norris LLP ("D&N"). That's a problem for us for a number of reasons. For one, Santander seems to believe that producing any amount of discovery is "unduly burdensome." As I'm sure you know, however, it's not enough to simply make that statement and refuse to engage in a meaningful way, which is what Santander is doing by directing us to the 75 or so files produced to D&N. If Santander truly believes that the requested discovery would be excessive or burdensome, it's required to explain what the burdens actually are and why it believes them to be excessive relative to this litigation--which you've never even attempted to do.

That aside, for the reasons we've explained several times--though I'll explain them again one last time for the sake of completeness--75 files wouldn't be an appropriate sample. In order to draw statistically significant conclusions from a sample of the approximately 2.8 million accounts at issue--including reaching an acceptable margin of error (i.e. 5%) and confidence interval (i.e. 95%)--we need a sample of 400 "Cell" accounts (those accounts where any of the associated telephone numbers are assigned to a cellular phone), which also includes identifying 400 "negatives" (the "Landline" accounts). Thus, 800 total accounts will ultimately need to be identified no matter what. Accordingly, we suggested that the sampling begin by randomly selecting 1,000 accounts because it's a round number that's more than 800 and thus, allows some room to work in terms of identifying the requisite number of accounts for each group. If Santander would prefer to start with some other number, that's fine. But regardless of what that number is, the ultimate result must be the identification of 400 Cell and 400 Landline accounts.

Beyond that, the 75 D&N files wouldn't work here anyway because this case and the D&N matters are separate pieces of litigation. For example, the D&N matters all involve consumers who, unlike Mr. Espejo, have binding arbitration agreements with Santander (or its business partners). Moreover, the D&N files (to our understanding) were selected only from a population of approximately 3,500 individual debtors, all of whom are represented by D&N. The population at issue here is not so limited and includes all of the 2.8 million accounts that Santander admittedly made collection calls to.

With that, please let us know by the close of business tomorrow, September 9th, whether the proposed sampling procedure is acceptable to Santander and if so, when it will be producing the requested account files. If it is not or we don't hear from you, we'll be renewing Plaintiff's motion to compel immediately. And to be clear, we do not believe any further meet and confer on this point is necessary. If you believe otherwise, please explain in writing your reasoning.

The same goes for the depositions we've requested. We've been asking for deposition dates for months now, but when we spoke you proposed that we proceed first with the deposition of Wayne Nightengale only because it would (in your view) shed light on which of the other depositions we need, and that we discuss those issues after the Nightengale deposition is completed. With respect, we want to approach the depositions another way. We'll proceed with the Nightengale deposition first, but there's no need to delay scheduling the other depositions. (That said, we're willing to schedule the other depositions for the week following Mr. Nightengale's, which will give us plenty of time to determine whether any of the others are unnecessary in light of his testimony.) We also think that waiting until the second week of October for Mr. Nightengale's deposition is too long. You originally committed to proceeding with his deposition during the second or third week of September, and we'd like to stick with that, so please let us know his availability the third and fourth weeks of the month. It's not clear to us at this point why we would need to push things out another two to three weeks.

As to Mr. Jones' deposition, when we spoke you disputed that Mr. Jones had any knowledge relevant to this litigation. That position is belied by public filings with the FCC identifying Mr. Jones as having met with FCC commissioners on August 7, 2014 to discuss Santander's recent Petition for Expedited Declaratory Ruling, CG. No. 02-278, and its telephone calling practices, including, *inter alia*, the methods by which it purports to obtain consent from consumers to be called and consumers' requests that the calls cease. Thus, it's clear that Mr. Jones not only has knowledge relevant to the claims and defenses at issue, but perhaps knowledge that the other witnesses do not possess. So we again ask that you produce Mr. Jones for deposition, or advise whether you are refusing to do so.

Again, please provide us potential dates to proceed with the depositions of Wayne Nightengale, Paul Jones, Mark Mooney, Martin Merios, Chuck Hayes, Michelle Rogers and Joseph Burda by close of business tomorrow. If we do not receive them or do not hear from you, we will tee these issues up for the Court's consideration as well.

Best,
Rafey

Rafey S. Balabanian | Edelson PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
312.589.6376 (direct) | 312.589.6370 (firm) | 312.589.6378 (fax)
rbalabanian@edelson.com | www.edelson.com

🌍 Please consider the environment before printing this e-mail

CONFIDENTIALITY AND LIABILITY FOR MISUSE.
The information contained in this communication is the property of Edelson PC. It is confidential, may be attorney work product, attorney-client privileged or otherwise exempt from disclosure under applicable law, and is intended only for the use of the addressee(s). Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited. If you have received this communication in error, please notify Edelson PC immediately by return e-mail and destroy this communication and all copies thereof, including all attachments.
Pursuant to requirements related to practice before the U.S. Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for purposes of (i) avoiding penalties imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.