# EXHIBIT B



ATTORNEYS AT LAW

CALIFORNIA   FLORIDA   LOUISIANA   MISSISSIPPI   NEW YORK   OHIO   TEXAS

**Burton D. Brillhart**
(214) 445-2409 (direct)
(214) 207-3161 (mobile)
Fax (214) 247-0855
bbrillhart@mcglinchey.com

August 11, 2014

Ms. Marlene H. Dortch
Secretary
Federal Communications Commission
445 12th Street, S.W.
Washington, D.C. 20054

      RE:    Notice of Ex Parte Meeting Regarding the Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; CG Docket No. 02-278

Dear Ms. Dortch:

      On August 7, 2014, Paul Jones, Senior Vice President and Assistant General Counsel and Wayne Nightengale, Senior Vice President of Servicing of Santander Consumer USA ("Santander"); Burton Brillhart and Lauren Campisi of McGlinchey Stafford PLLC, counsel to Santander; and Jeffrey Shapiro of Peck Madigan Jones, met with Aaron Garza, Kurt Schroeder, John B. Adams and Lynn Follansbee from the Consumer & Governmental Affairs Bureau of the Federal Communications Commission (the "Commission") to discuss Santander's Petition for Expedited Declaratory Ruling, CG Docket No. 02-278 (filed July 10, 2014) (the "Petition").

      In the Petition, Santander respectfully requests that the Commission clarify and confirm that the TCPA, the Commission's regulations and its prior rulings do not provide a right to revoke "prior express consent" to receive non-telemarketing calls and text messages to cellular telephones sent using an automatic telephone dialing system ("ATDS") and/or an artificial or prerecorded voice message. Alternatively, Santander requests that the Commission clarify the meaning of "prior express consent" by confirming a caller may designate one or more of the following methods approved by the Commission that the consumer must use to effectively revoke "prior express consent": (1) in writing at the mailing address designated by the caller; (2) by email to the email address designated by the caller; (3) by text message sent to the telephone number designated by the caller; (4) by facsimile to the telephone number designated by the caller; and/or (5) as prescribed by the Commission hereafter as needed to address emerging technology. As we discussed during our meeting, Santander requests that the Commission identify reasonable methods that produce a verifiable record (i.e. – mail, email, text or facsimile) from which individual callers must provide one or more option(s) that consumers must use to effectively revoke "prior express consent."

      **The Commission has the authority to grant the requested relief.** Consistent with our discussion, Santander's Petition asks the Commission to interpret and clarify the meaning of "prior express consent" just as the Commission has done since the statute's enactment in 1991.

2711 N. Haskell Avenue, Suite 2750, LB 38 • Dallas, TX 75204 • (214) 445-2445 • Fax (214) 445-2450 • www.mcglinchey.com

McGlinchey Stafford PLLC in Florida, Louisiana, Mississippi, New York, Ohio and Texas  McGlinchey Stafford LLP in California

Ms. Marlene H. Dortch
May 13, 2014
Page 2

As the Commission recently noted, "the TCPA is silent on the issue of what form of express consent - oral, written, or some other kind - is required for calls that use an automatic telephone dialing system or prerecorded voice to deliver a telemarketing message. Thus, the Commission has discretion to determine, consistent with Congressional intent, the form of express consent required."[1] In its initial interpretation of the meaning of "prior express consent," the Commission explained that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, *absent instructions to the contrary*."[2] The meaning of "absent instructions to the contrary" has been interpreted inconsistently. Santander respectfully requests that the Commission provide certainty to businesses and consumers by confirming that "prior express consent" to receive non-telemarketing calls can be revoked only at the designated mailing or email address or the telephone number for receiving text messages or facsimiles identified by the caller.

**Non-telemarketing calls should be treated differently than telemarketing calls.** As we discussed during our meeting, there is a fundamental difference between unsolicited calls marketing products and services that the consumer has not requested and non-telemarketing calls from businesses with whom the consumer voluntarily chose to purchase a product or service that are limited to that transaction. The Commission recognized this difference in 2012 when it amended the regulations implementing the TCPA. In the 2012 amendments, the Commission imposed a heightened standard of consent only with respect to calls that contain an advertisement or constitute telemarketing. Just as the Commission found it necessary to treat telemarketing calls differently than non-telemarketing calls with respect to the consent needed to place those calls, the Commission should also recognize the need to treat revocation of consent differently between telemarketing and non-telemarketing calls.

**Allowing callers who place non-telemarketing calls to designate a method approved by the Commission for revoking prior express consent is consistent with the TCPA and its goals.** The TCPA and its implementing regulation already contain provisions allowing telemarketers to designate the method and location (by mail, website, email, facsimile or telephone) that the recipient of an unsolicited facsimile advertisement must use to effectively revoke consent to receive additional facsimile advertisements. There should be no advantage given to telemarketers who were the sole target of the TCPA. If "prior express consent" to receive non-telemarketing communications may be revoked, businesses also should be allowed to designate a reasonable method approved by the Commission that produces a verifiable written record by which consumers may revoke "prior express consent."

**Allowing callers who place non-telemarketing calls to designate the method for revoking prior express consent is consistent with other consumer protection statutes.** As noted in Santander's Petition and discussed during our meeting, many consumer protection laws

---

[1] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 27 FCC Rcd. 1830, 1838 para. 21 (2012).
[2] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CC Docket No. 92-90, Report and Order, 7 FCC Rcd. 8752, 8769 para. 31 (1992).
1268111.1

Ms. Marlene H. Dortch
May 13, 2014
Page 3

require consumers to exercise rights only through a designated method. The following is an illustrative but not exhaustive list of examples:

- **Servicemembers Civil Relief Act (SCRA).**

- In order for an obligation or liability of a servicemember to be subject to the interest rate limitation under the SCRA, the servicemember must provide to the creditor ***written notice*** and a copy of the military orders calling the servicemember to military service and any orders further extending military service, not later than 180 days after the date of the servicemember's termination or release from military service. 50 USC Appx. § 527(b).

- **Fair Credit Reporting Act (FCRA).**

- Any person who procures an investigative consumer report on any consumer must upon ***written request*** made by the consumer make a complete and accurate disclosure of the nature and scope of the investigation requested. 15 U.S.C. §1681d(b).

- A victim of fraudulent transactions resulting from identity theft is required to make a request for information ***in writing*** to an address specified by the business entity. 15 U.S.C. §1681g(e)(3).

- Whenever credit for personal, family, or household purposes involving a consumer is denied or the charge for such credit is increased because of information obtained from a person other than a consumer reporting agency, the user of the information must disclose the nature of the information to the consumer upon the consumer's ***written request*** for the reasons for such adverse action. 15 U.S.C. §1681m(b)(1).

- A furnisher of consumer information is allowed to ***designate an address*** to which the consumer must submit a dispute in writing regarding the accuracy of information furnished to consumer reporting agencies. 15 U.S.C. §1681s-2(a)(8)(D); 12 C.F.R. §1022.43(c).

- Businesses that use eligibility information about a consumer received from an affiliate to make a solicitation to the consumer must provide a reasonable opportunity and a ***reasonable and simple method*** for the consumer to opt out, including either an opt-out form that may be mailed or electronically processed through email or a website or a toll-free telephone number. 12 C.F.R. §1022.25.

- **Gramm-Leach-Bliley Act (GLBA)**

- Consumers have a right to opt out of the disclosure of nonpublic personal information to nonaffiliated third parties through a ***reasonable means***, including either an opt-out form that may be mailed or electronically processed through email or a website or a toll-free telephone number. 12 C.F.R. 1016.7(a)(1)

1268111.1

Ms. Marlene H. Dortch
May 13, 2014
Page 4

- **Health Insurance Portability and Accountability Act (HIPAA)**

- Allows covered entities to require that individuals who make requests for access to inspect or to obtain a copy of protected health information do so *in writing*, provided they inform individuals of such a requirement. 45 C.F.R. § 164.524(b)(1).

- Individuals may revoke an authorization to disclose protected health information at any time, provided that the revocation is *in writing*. 45 C.F.R. § 164.508(a)(1).

- **Electronic Fund Transfer Act (EFTA), Regulation E**

- Consumers may stop payment of a preauthorized electronic fund transfer by notifying the financial institution orally or in writing at any time up to three business days preceding the scheduled date of such transfer. The financial institution may require *written confirmation* to be provided to it within fourteen days of an oral notification if, when the oral notification is made, the consumer is advised of such requirement and the address to which such confirmation should be sent. 15 U.S.C. §1693e(a); 12 C.F.R. §1005.10(c).

- Consumers may submit a notice of error with respect to an electronic fund transfer orally or in writing. The financial may require the consumer to give *written confirmation* of an error within 10 business days of an oral notice provided the financial institution informs the consumer of the requirement and provides the address where confirmation must be sent. 12 C.F.R. 1005.11(b)(2).

- **Truth in Lending Act (TILA), Regulation Z**

- To exercise a right to rescind a credit transaction, a consumer must notify the creditor of the rescission *by mail, telegram, or other means of written communication*. 12 C.F.R. §§ 1026.15(a)(2); 1026.23(a)(2).

- A card issuer that makes a significant change in account terms on a credit card account must provide instructions for the cardholder to reject the change or changes and a *toll-free telephone number* that the consumer may use to notify the creditor of the rejection. 12 C.F.R. §1026.9(c)(2)(iv)(B).

- Consumers may report alleged billing errors to their credit card issuers by providing *written notice* to the address disclosed by the card issuer for receiving such notices within 60 days after the creditor transmitted the first periodic statement that reflects the alleged billing error. 12 C.F.R. §1026.13(b).

- Credit card issuers may permit a consumer to consent to a card issuer's payment of any over-the-limit transaction *in writing, orally, or electronically, at the card issuer's option*. The card issuer must also permit the consumer to revoke his or her consent using the same methods available to the consumer for providing consent. 12 C.F.R. §1026.56(c).

1268111.1

Ms. Marlene H. Dortch
May 13, 2014
Page 5

- Private education loan creditors are allowed to *specify a method or methods*, either orally or in writing, by which the consumer can accept the loan at any time within the requisite 30-day acceptance period. Commentary to Regulation Z, 12 C.F.R. § 1026.48(c)(1).

- Similarly, the private education loan creditor must *specify a method or methods*, either orally or in writing, by which the consumer may cancel a private education loan without incurring a penalty. Commentary to Regulation Z, 12 C.F.R. § 1026.48(d).

- **Real Estate Settlement Procedures Act (RESPA), Regulation X**

- Consumers must submit "qualified written requests," requests for information and notices of error *in writing* to the address designated by the mortgage servicer for receiving such requests and notices. 12 U.S.C. § 2605(e); 12 C.F.R §§ 1024.35(c); 1024.36(b).

- **Fair Debt Collection Practices Act (FDCPA)**

- If a consumer notifies a debt collector *in writing* that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector must not communicate further with the consumer with respect to such debt, with limited exceptions. 15 U.S.C. § 1692c(c).

As evidenced by these examples, there is strong precedent allowing businesses to designate the method by which a consumer may exercise a right. This precedent is consistent with the TCPA, its regulation and the Commission's prior interpretations and the legislative history surrounding the enactment and amendments to the TCPA.

**Requiring a method for revocation of "prior express consent" that produces a verifiable written record is consistent with other consumer protection laws that provide a private right of action and statutory penalties.** Many of the examples identified above allow consumers to enforce their rights through a private right of action and the recovery of statutory penalties. As we explained during our meeting, requiring a verifiable written record is critical to ensuring businesses have a meaningful opportunity to comply and to prevent frivolous litigation. The Consumer Financial Protection Bureau (CFPB) recently acknowledged this balance in promulgating the new mortgage servicing rules. Like the TCPA, RESPA provides mortgagors with a private right of action and statutory penalties if a mortgage servicer fails to acknowledge or respond to certain inquiries related to the mortgage loan.[3] The CFPB initially proposed a rule that would allow borrowers to submit those inquiries orally or in writing. In response, commenters explained that allowing these inquiries to be submitted orally would make compliance effectively impossible because of differing recollections of any given conversation, the significant litigation risk that would result and the costs that would be incurred by servicers in attempting to comply, particularly with respect to small servicers. The CFPB ultimately limited its final rule to a written process, which it concluded "strikes the appropriate balance

---

[3] *See* 12 C.F.R §§ 1024.35(c); 1024.36(b); 12 U.S.C. § 2605(e); 12 U.S.C. § 2614.

1268111.1

Ms. Marlene H. Dortch
May 13, 2014
Page 6

between ensuring responsiveness to consumer requests and complaints and mitigating the burden on servicers of following and demonstrating compliance with specific procedures with respect to oral notices of error."[4] The Commission should recognize this same balance with respect to the TCPA by clarifying the consumer's right to revoke "prior express consent" in writing, by email message, text message or facsimile at the address or number designated by the caller.

**The relief sought by the Petition is not duplicative of other petitions.** As we discussed, no other petition currently pending before the Commission seeks clarity with respect to the potential revocation of "prior express consent" to receive non-telemarketing calls using an ATDS or artificial or prerecorded message. However, the petitions seeking clarity regarding the scope of "prior express consent" once a telephone number has been reassigned to a new subscriber are related as they address the caller's potential liability for placing calls to telephone numbers for which the caller obtained "prior express consent." Both situations – alleged revocation and reassignment – impose practical compliance challenges and subject businesses to significant litigation exposure and warrant immediate attention and response from the Commission. Addressing both issues contemporaneously would provide certainty with respect to a business' obligations after obtaining the consumer's "prior express consent." Accordingly, Santander encourages the Commission to address both issues at the same time.

Pursuant to Section 1.1206(b) of the Commission's rules, Santander is filing this notice electronically in the above-referenced docket. Please contact me directly with any questions.

Sincerely,

**MCGLINCHEY STAFFORD**

*/s/ Burton D. Brillhart/*

Burton D. Brillhart
McGlinchey Stafford PLLC
2711 N. Haskell Avenue, Suite 2750, LB 38
Dallas, TX 75204
Telephone: (214) 445-2409
Facsimile: (214) 247-0855

Lauren E. Campisi
McGlinchey Stafford PLLC
601 Poydras Street, 12th Floor
New Orleans, LA 70130
Telephone: (504) 596-2761
Facsimile: (504) 910-9121

---

[4] Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10696, 10738 (Feb. 14, 2013) (amending 12 C.F.R. § 1024).
1268111.1

Ms. Marlene H. Dortch
May 13, 2014
Page 7


cc:
Kurt Schroeder
John B. Adams
Lynn Follansbee
Aaron Garza

Case: 1:11-cv-08987 Document #: 94-2 Filed: 10/01/14 Page 8 of 8 PageID #:1104

1268111.1