# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

HENRY ESPEJO, individually and on behalf of all others similarly situated,

        *Plaintiff,*

    v.

SANTANDER CONSUMER USA, INC., an Illinois Corporation,

        *Defendant.*

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Case No. 11-cv-8987**
*Related to*: Case No. 1:12-cv-4671
          Case No. 1:12-cv-9431

The Honorable Charles P. Kocoras, Judge Presiding

The Honorable Sidney I. Schenkier Magistrate Judge

## DEFENDANT SANTANDER CONSUMER USA, INC.'S
## RESPONSE TO PLAINTIFF'S MOTION TO COMPEL

James A. Rolfes (Bar No. 6200271)
Henry Pietrkowski (Bar No. 6230048)
Michael D. Richman (Bar No. 3124631)
Joseph B. Prater (Bar No. 6290497)
REED SMITH LLP
10 South Wacker Drive, Suite 4000
Chicago, IL 60606
(312) 207-1000
*jrolfes@reedsmith.com*
*hpietrkowski@reedsmith.com*
*mdrichman@reedsmith.com*
*jprater@reedsmith.com*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ...................................................................................................... 1

BACKGROUND AND PROCEDURAL HISTORY ................................................. 3

ARGUMENT .............................................................................................................. 7

I.  APPLICABLE STANDARDS: A BALANCE BETWEEN UTILITY AND COST ................................................................................................................ 7

II.  SANTANDER HAS PROVIDED DISCOVERY TO ESPEJO. ...................... 8

    A.  As Espejo's Counsel Conceded Under Oath, Santander Has Provided Significant Discovery to Espejo. ....................................................... 8

    B.  Espejo's Counsel Has Obtained Additional Information as Counsel on Individual Arbitrations Brought Against Santander. ......................... 9

III.  ESPEJO HAS PROPOUNDED OVERLY BROAD AND UNREASONABLE DISCOVERY REQUESTS. .......................................................................... 10

    A.  Espejo's Generic and Expansive Discovery Requests, as Stated, Would Require Production of Every Santander Document. ...................... 10

    B.  Santander Has Provided Detailed Explanations For Its Objections and Offered Alternative Approaches to Espejo's Objectionable Discovery Requests. ...................................................................... 11

IV.  ESPEJO'S PROPOSED SAMPLING PROCEDURE IMPOSES AN UNNECESSARY AND UNDUE BURDEN ON SANTANDER. ................... 12

V.  SANTANDER HAS SUGGESTED AN APPROACH TO DEPOSITIONS THAT AVOIDS UNNECESSARY COST ........................................................ 16

    A.  Santander Already Has Produced Wayne Nightengale as Its Rule 30(b)(6) Witness. ............................................................................ 16

    B.  Espejo Noticed the Deposition of Santander's Legal Counsel to Harass Santander. ............................................................................. 17

CONCLUSION ........................................................................................................ 18

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Brodsky v. Humana, Inc.*, No. 08 C 50188, 2009 WL 1956450 (N.D. Ill. July 8, 2009) ............ 14

*Dugan v. Quanstrom*, No. 03 C 0254, 2003 WL 22956124 (N.D. Ill. Dec. 11, 2003).................. 8

*Feske v. MHC Thousand Trails Ltd. P'ship*, No. 11-CV-4124-PSG, 2012 WL 1123587 (N.D. Cal. Apr. 3, 2012) ....................................................................................... 13

*In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94-897, MDL 997, 1996 WL 84185 (N.D. Ill. Feb. 21, 1996)....................................................................... 7

*Kleen Prods. LLC v. Packaging Corp. of America*, No. 10 C 5711, 2012 WL 4498465 (N.D. Ill. Sept. 28, 2012) ............................................................................. 7, 14, 15

*Poole v. Centennial Imports, Inc.*, No. 2:12–cv–00647–APG–VCF, 2013 WL 3832415 (D. Nev. July 23, 2013)........................................................................................ 8

*Samuel, Son & Co. v. Beach*, No. 13–128, 2014 WL 5089718 (W.D. Pa. Oct. 9, 2014) ............. 8

*Soto v. Castlerock Farming & Transport, Inc.*, 282 F.R.D. 492 (E.D. Cal. 2012)...................... 14

*Ty, Inc. v. Salvino, Inc.*, No. 98 C 6318, 1999 WL 162774 (N.D. Ill. Mar. 16, 1999) ................ 14

*United Consumers Club, Inc. v. Prime Time Mktg. Mgmt. Inc.*, Nos. 2:07 CV 358, 3:08 CV 60, 2009 WL 3200540 (N.D. Ind. Sept. 25, 2009) ............................................... 14

*United States ex rel. McBride v. Halliburton Co.*, 272 F.R.D. 235 (D.D.C. 2011)...................... 7

**Statutes**

47 U.S.C. § 227 et seq.,.............................................................................................. 3

**Rules**

Fed. R. Civ. P. 26(b)(2)(C)(iii) (2014)......................................................... 7, 10, 12, 15

## INTRODUCTION

In his Renewed Motion to Compel answers to his written discovery requests and the depositions of several Santander Consumer USA, Inc. employees (Dkt. 89), Plaintiff Henry Espejo ignores the responses Santander already provided to each of the written requests and its challenges to the necessity of the proposed depositions. He further fails to incorporate the agreements reached in numerous meet-and-confer conferences aimed at narrowing Espejo's overly broad requests and saving Santander from the impossibly high burden of producing data and information associated with millions of account files. In fact it is Espejo, and not Santander, who unilaterally terminated the parties' discussions that Espejo prolonged by waging a letter writing campaign regarding objections asserted last year. But Espejo cannot simply treat Santander's past discovery responses, objections and productions as if they did not take place. Because Santander has responded to Espejo's discovery in good faith, offered reasonable alternatives to burdensome requests and asserted legitimate objections to his overbroad requests, this Court should deny his motion to compel.

Espejo's edict on sampling serves as a prime example of the problems with Espejo's discovery strategy. Asserting that Santander should have interpreted his overbroad discovery requests as "only seek[ing] information 'sufficient' to identify the number of accounts and Class members," (Pl.'s Mem. Of Law in Support of His Renewd Mot. ("Pl.'s Mem.") (Dkt. 100) at 15), Espejo complains that Santander should have accepted a sampling proposal requiring production of information related to at least 800 customer accounts. In doing so, he dismisses without further thought Santander's counter proposal that his counsel review the 75 account files available to his counsel, which already are at issue in individual arbitrations against Santander. Espejo's counsel has served as counsel of record or has worked closely in concert with the law firm bringing those actions. Such files, at minimum, will provide Espejo with sufficient

information to see the various ways Santander obtains phone numbers, receives consent to call those numbers and documents its interactions with its account holders. Production of those files will provide Espejo the requested information in a manner that places significantly less burden on Santander. But Espejo rejected this proposal, terminated further discussion with Santander, and filed a motion to compel. Thus, to the extent Espejo lacks requested information, it is not because of Santander's discovery responses, but rather because of his refusal to consider reasonable measures to obtain the information he says he needs.[1]

Espejo also makes a premature and unwarranted request for depositions of various Santander employees. Santander suggested that Espejo first proceed with the Rule 30(b)(6) deposition of Wayne Nightengale before deciding what other depositions he needed. Mr. Nightengale's deposition went forward as scheduled on October 22, 2014, where he answered every question that Espejo's counsel asked on every topic presented, including Santander's call center policy and procedures, telephone equipment, consent and recordkeeping. While it is difficult to see why Espejo needs additional depositions on these matters given the breadth of the Rule 30(b)(6) topics and the fact that Nightengale answered every question asked of him, counsel are in the process of conferring on which other depositions might be necessary. Thus, there is no present dispute with regard to depositions ripe for this Court's decision.

Espejo's current discovery issues arise not because of Santander's discovery responses, but instead from his own refusal to participate fully in meet-and-confer sessions, accept the actual state of Santander's records, and work toward reasonable discovery strategies that provide him with the information he claims to need in a manner that reduces the burden placed on Santander. For these reasons, Espejo's Renewed Motion to Compel should be denied.

---

[1] After Espejo filed his motion to compel, his counsel communicated a willingness to review the 75 files while preserving the right to seek a further sample. Santander is in the process of assembling these files for production.

## BACKGROUND AND PROCEDURAL HISTORY

On December 19, 2011, Tercia Pereira filed a complaint alleging that Santander violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq., by making debt collection calls to her cellular telephone without prior express consent using an automatic telephone dialing system ("ATDS"). (Class Action Complaint (Dkt. 1).) Over the next year, the parties addressed a series of procedural issues, namely, a motion to compel arbitration, (*see* Dkts. 8, 9, 16), the substitution of Espejo for Pereira as the named plaintiff (Dkt. 27], the filing of an amended complaint (Dkt. 30), and the reassignment of two additional related putative classes against Santander. (Dkts. 36, 40.)    In August 2012, Espejo served a first set of document requests and interrogatories that Santander responded to on September 10, 2012. (Dkts. 91-6, 91-7.)  By year-end 2012, Santander had produced documents and provided other information such that Espejo's lead counsel, Jay Edelson, declared (under penalty of perjury) that, by January 2013, Santander had produced "thousands of pages of relevant internal documents," engaged in an "ongoing dialogue [with Espejo's counsel] regarding the parties' respective views of the relevant facts, law and overall direction of the litigation," and exchanged with Espejo's counsel "significant (and candid) … information" about the case. (Pl.'s Mot. and Mem. of Law in Support of Appt. of Interim Co-Lead Counsel (Dkt. 42) at 9; Decl. of J. Edelson in Support of Mot. for Appt. as Interim Co-Lead Counsel ("Edelson Decl.") (Dkt. 42-1) ¶¶ 9-11.)

The parties then entered into mediation, first with the Honorable Morton Denlow (ret.), and then with the Honorable Wayne Anderson (ret.). (*See* Pl. Espejo's Mot. to Compel Def.'s Responses (Dkt. 53) at 3.) As Espejo's counsel informed the Court, the negotiations ebbed and flowed throughout the first half of 2013. (*Id.*; *see also* Def. Santander Consumer USA, Inc.'s Resp. to Pl. Espejo's Mot. to Compel (Dkt. 55) at 1.) During that time period, Espejo sent letters outlining additional desired discovery on March 12, 2013 and May 28, 2013, and a second set of

document requests and interrogatories on March 29, 2013. But as Espejo's counsel admits, at the time of those demands, "settlement discussions began to advance significantly" so that by July 11, 2013, Espejo informed the Court about the anticipated memorandum of understanding for the settlement of the case (Pl. Espejo's Mot. to Compel Def.'s Responses (Dkt. 53) at 5-6) and, significantly, *not* his discovery complaints. Even so, and with only one settlement term in dispute between the parties, Espejo sought to compel responses to certain written discovery. (*Id.*) Santander provided those responses without an order requiring it to do so. (*See* Def. Santander Consumer USA, Inc.'s Resp. to Pl. Espejo's Mot. to Compel (Dkt. 55) at 2.) The next day (August 8, 2013), and after hearing the parties' representations as to the status of the settlement discussions, the Court entered and continued Espejo's motion to compel. (Dkt. 57.). When the following week, neither Espejo nor Santander would budge on the final settlement term, however, the settlement discussions ended. (*See* 08/15/13 Andersen email, attached as Ex. 3.) (Judge Andersen terminates the mediation stating: "This mediation has been stalemated due to disagreement …. Neither side has altered its position nor even blinked.").)

It was at this point that Santander mediated and struck an agreement with another party that, like Espejo, sought to represent a class of Santander customers in a TCPA case. (*See* Trans. of Proceedings 10/10/13 (Dkt. 61) at 10.) Recognizing that this settlement would significantly change the scope of the discovery necessary in Espejo's case, the Court indicated that Espejo should limit his discovery going forward to "reasonable and moderate" matters and avoid "the morass of costs that wide open discovery will bring about." (*Id.* at 24.) Espejo's counsel understood the "wisdom of not spending a ton of time on class discovery," and indicated he would reformat the discovery to address a smaller group of claimants. (*Id.* at 26.)

- 4 -

Rather than do that, however, Espejo's counsel spent months attempting to block the settlement reached in the other case, in part, by wrongly accusing Santander and the plaintiff in the other case of inappropriately negotiating the settlement—a claim expressly rejected by the court. (*See* Def. Santander Consumer USA, Inc.'s Reply in Support of Its Mot. to Stay (Dkt. 86) at 56, n.11) (court finds Espejo's counsel's arguments of "collusive dealings" without merit). But the tactics Espejo's counsel employed caused the named plaintiff in that case to question whether he wanted to continue as a class representative and he decided to withdraw.

With the other settlement now undone by Espejo's counsel, the parties here re-engaged in settlement discussions, which they reported to the Court. (*See* Dkts. 36, 37 (the Court notes parties' decision to proceed with private mediation and denying Espejo's continued motion to compel).) While these discussions produced a settlement agreement that Espejo's counsel was willing to recommend to the putative class, those representing Santander at the negotiations made clear that a settlement of such significance required the approval of Santander's Board. After considerable thought, the Santander Board in June 2014 rejected the proposed settlement.

After learning of the failed effort to settle the case, the Court on June 24, 2014, instructed the parties to meet and confer about discovery (Dkt. 71]) which the parties agreed to do via telephone on June 30, 2014. (Declaration of James Rolfes ("Rolfes Decl." attached as Ex. 1) at ¶ 2.) At that meeting, however, Espejo's counsel indicated that rather than discussing the additional discovery Espejo still needed, they would instead send a letter. (*Id.*) Three weeks later, Espejo's counsel sent a nine page letter that sought to rehash issues from the discovery requests propounded, negotiated and responded to in 2012 and 2013. (Dkt. 91-1.) Santander responded with an August 11, 2014 letter that rejected Espejo's unilateral demands, and provided a point-

by-point response to Espejo's concerns. (Dkt. 91-2.) Santander also offered to meet and confer as the Court originally suggested. (*Id.*)

Apparently realizing that letter writing campaigns take a tremendous amount of time and do not often produce agreement as to the scope of discovery, Espejo's counsel accepted the invitation to have a meet and confer session. (Rolfes Decl. ¶ 4.) In what became a series of calls, Espejo's counsel suggested that a statistically valid sample of customer accounts (*e.g.* call logs, loan agreements and other information that would show consent to call cell phones) may provide the information they sought in discovery. (*Id.* ¶ 5.) Santander's counsel responded that Santander would consider sampling of the accounts but needed to know the parameters and goals of the sampling. (*Id.* ¶ 4.) On August 29, 2014, Espejo's counsel sent a "Proposed Sampling Procedure." (Dkt. 91-5.) As is discussed in more detail below, the suggested sampling required Santander to assemble a significant volume of material while not providing any explanation for why Espejo needed, or could even use, the proposed statistically valid sample. Consequently, as an alternative approach, Santander suggested that Espejo could determine various ways Santander obtains prior consent by looking at the 75 Santander customer account files that Espejo's counsel already had knowledge of through their relationship with counsel on the arbitrations of individual claims against Santander. (Rolfes Decl. ¶ 6.)

Via a September 8, 2014 email, Espejo's counsel rejected Santander's proposal that he look at the 75 customer account files to which he already had access. (Dkt. 91-3 at 2-3.) He further demanded immediate deposition dates for various Santander employees (although previously told they were not available until early to mid-October, after the Jewish holidays), and insisted on the deposition of Santander's in-house legal counsel (a clear example of their intent to harass). (*Id.*) The next day, Santander's counsel responded to these demands and suggested a

further call to discuss Espejo's discovery requests. (*Id.* at 5-7.) Espejo's counsel, however, declared the meet-and-confer discussions at an end. (*Id.* at 8.)

## ARGUMENT

## I. APPLICABLE STANDARDS: A BALANCE BETWEEN UTILITY AND COST.

Despite the broad discovery rights granted by Rule 26(b), all discovery "'is subject to the court's obligation to balance its utility against its cost.'" *Kleen Prods. LLC v. Packaging Corp. of America*, No. 10 C 5711, 2012 WL 4498465, at *13 (N.D. Ill. Sept. 28, 2012) (quoting *United States ex rel. McBride v. Halliburton Co.*, 272 F.R.D. 235, 240 (D.D.C. 2011). "More specifically, Rule 26(b)(2)(C) requires the court to consider whether '(1) the discovery sought is unreasonably cumulative or duplicative, or obtainable from a cheaper and more convenient source; (2) the party seeking the discovery has had ample opportunity to obtain the sought information by earlier discovery; or (3) the burden of the discovery outweighs its utility.'" *Id.* (quoting *McBride*, 272 F.R.D. at 240-41. In determining whether the burden or expense of the proposed discovery outweighs its likely benefit, the Court should consider the "needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii) (2014).

But the Court need not even consider the movant's discovery motion if he has not satisfied the good faith meet-and-confer requirements under Local Rule 37.2 and this Court's meeting requirement on motions. "[M]eet and confer" requirements are "consistent with the general rule that in all discovery motions, the movant must make a good faith attempt to resolve the dispute without court action." *In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94-897, MDL 997, 1996 WL 84185, at *2 (N.D. Ill. Feb. 21, 1996) (Kocoras, J.). Accordingly, it is improper for a litigant to bypass such measures and prematurely seek court intervention. *See,*

*e.g.*, *id.*; *Poole v. Centennial Imports, Inc.*, No. 2:12–cv–00647–APG–VCF, 2013 WL 3832415, at *5 (D. Nev. July 23, 2013) ("It is in the interest of the parties to seek the efficient resolution of their disputes without the need for Court intervention. For this reason, courts are particularly strict in their reading and enforcement of the meet and confer requirement."); *see also Dugan v. Quanstrom*, No. 03 C 0254, 2003 WL 22956124, at *2 (N.D. Ill. Dec. 11, 2003) (Schenkier, J.) (questioning whether the court should address a motion to quash when the movants "failed to meet and confer as required by local rule: the motion to quash does not assert that the movants made any effort to discuss their disputes with the defendants before filing this motion"). Moreover, the goals envisioned by the meet and confer "process can only be furthered if the Court enforces agreements reached during meet and confer sessions and requires the parties and their counsel to perform their respective obligations under the bargains which have been achieved." *Samuel, Son & Co. v. Beach*, No. 13–128, 2014 WL 5089718, at *4 (W.D. Pa. Oct. 9, 2014).

## II.    SANTANDER HAS PROVIDED DISCOVERY TO ESPEJO.

### A.    As Espejo's Counsel Conceded Under Oath, Santander Has Provided Significant Discovery to Espejo.

While Espejo claims Santander stonewalled his discovery efforts, the truth is that Santander produced significant discovery to Espejo even while this case was in mediation for much of its duration. As noted above, Espejo's lead counsel, Jay Edelson, declared under penalty of perjury that, by January 2013, Santander had produced "thousands of pages of relevant internal documents," engaged in an "ongoing dialogue [with Espejo's counsel] regarding the parties' respective views of the relevant facts, law and overall direction of the litigation," and exchanged with Espejo's counsel "significant (and candid) … information" about the case. (Pl.'s Mot. and Mem. of Law in Support of Appointment of Interim Co-Lead Counsel (Dkt. 42) at 9

and Edelson Decl. ¶¶ 9-11.) And in fact, Santander has answered two sets of interrogatories and two sets of document requests despite some of those requests being so overbroad on their face that they seemed to call for the production of millions of account files. (*See* Dkt. 91-6, 91-7.) Santander also provided information about the putative class and its telephone system. (*See, e.g.*, Resp. to Interrogatory 15 (Dkt. 91-6); Resp. to Req. for Production 12 (Dkt. 91-7).) And there can be no dispute that Santander's counsel's has engaged in extensive meet-and-confer discussions with Espejo's counsel. (*See, e.g.,* Dkts. 91-2 through 4.)

**B.    Espejo's Counsel Has Obtained Additional Information as Counsel on Individual Arbitrations Brought Against Santander.**

Espejo's counsel also are lead counsel, co-counsel or act in consert with counsel on several individual TCPA arbitrations brought against Santander. Santander offered as a compromise of the parties' discovery disputes to produce account records associated with approximately 75 individual arbitrations brought against Santander in which Espejo's counsel or their colleagues participate—an alternative that will reduce the discovery burden on Santander by having Espejo's counsel use materials they already have access to, or at least have heard about. (Rolfes Decl. ¶ 6.) At first Espejo's counsel refused to discuss this compromise, opting instead to file the renewed motion to compel. (*Id.* at ¶ 7.) After filing that motion to compel, however, Espejo's counsel have now indicated a willingness to review those 75 files while reserving Espejo's right to insist on an additional sample. (*Id.*) As review of these files should provide Espejo with the information he claims he needs, further discovery of account files, at least at this point, is cumulative and unwarranted.

### III. ESPEJO HAS PROPOUNDED OVERLY BROAD AND UNREASONABLE DISCOVERY REQUESTS.

#### A. Espejo's Generic and Expansive Discovery Requests, as Stated, Would Require Production of Every Santander Document.

Espejo's untailored, generic requests for information relate to approximately 4.3 million accounts, about 2.8 million of which received phone calls from Santander (*see* Resp. to Interrogatory 15 (Dkt. 91-6)), and call for an account-by-account review and production of most every account-related document Santander maintains. Such broad and expansive requests can only be interpreted as designed to unfairly and unnecessarily impose costs on Santander with little or no anticipated production of information relevant to this litigation. *See* Fed. R. Civ. P. 26(b)(2)(C)(iii) (discovery can be curtailed when "the burden or expense of the proposed discovery outweighs its likely benefit" considering the issues in the case and "the importance of the discovery in resolving th[ose] issues"). Rather than create reams of detailed objections to Espejo's 22 Interrogatories and 40 Requests for Production that identified the specific nature of each objectionable request Espejo propounded, Santander instead suggested that counsel conduct a meet-and-confer conference. In such a session, Espejo could propose reasonable discovery requests tailored to the case he has asserted that avoid unnecessary costs or demands on Santander's resources, protect the privacy of third party information, and do not seek obviously privileged material. When the parties followed that process in 2012, Santander produced documents and provided Espejo's counsel with "thousands of pages of relevant internal documents," disclosure of relevant facts, and "significant (and candid) … information" about the case. (Edelson Decl. ¶¶ 9-11.)

It appeared, at least to Santander, that in the summer 2014, the parties once again had entered into a similar discussion aimed at identifying the specific information Espejo wanted in a manner that did not create an undue burden on Santander. Rather than bicker about two-year-old

requests that expressly, and improperly, demanded all electronically stored information and the compilation of data requiring a file-by-file review of over 4 million customer files, the parties instead focused on ways to provide Espejo with evidence that reflected the multiple ways Santander collects and maintains account information, and obtains consent for cell phone calls. Espejo suggested statistically valid sampling could do this, and Santander responded that the 75 account files to which Espejo's counsel already had access could provide the information. What the parties did not discuss in these meet-and-confer sessions, however, was the point-by-point discussion of Espejo's overly broad requests that, if left unchanged, would unfairly and unnecessarily impose costs on Santander with little or no anticipated production of information relevant to this litigation. As the following discussion reveals, that discussion would have only further highlighted the unreasonableness of Espejo's discovery requests.

>    **B.      Santander Has Provided Detailed Explanations For Its Objections and Offered Alternative Approaches to Espejo's Objectionable Discovery Requests.**

When Espejo's counsel provided their meet-and-confer letter in July 2014, Santander responded with a detailed explanation of each objection made and additionally suggested alternative approaches to the discovery Espejo sought. (*See* Dkt. 91-1 at 5-57; Dkt. 91-2 at 2-5.) Espejo in the present motion to compel simply repeats 10 of his 12 criticisms of Santander's now two-year-old objections as if this correspondence never took place. As shown in the side-by-side comparison of this correspondence, however, Espejo repeatedly asks for the production of account files related to every one of Santander's over 4 million customers, or a file-by-file search of those documents to compile the information sought by the interrogatories. (*See* Ex. 4 hereto.) Often, this discovery neither relates to Espejo's case nor his need for information related to class certification (*e.g.*, information sought to show the size of his putative class when Santander has not challenged numerosity). Its production also would cause Santander substantial cost, both in

dollars as well as the distractions from Santander's ongoing business. (Nightengale Decl. ¶¶ 11, 15, 17-20, attached as Ex. 2.)[2]  Further, Espejo's continued insistence that Santander has not provided a sufficient answer or objection to his discovery ignores the actual answers given (which in many cases includes the information he asked for), and reflects Espejo's unwillingness to accept that he has alleged an undeterminable class, or that Santander does not maintain information in the manner he assumed. That Espejo also fails to engage with Santander on its suggestions for alternative ways of obtaining the type of information he purportedly needs only further shows that it is Espejo's inability or unwillingness to modify his discovery requests to fit the actual state of Santander's records that has caused any perceived issues with the volume of discovery, not Santander's objections.  *See* Fed. R. Civ. P. 26(b)(2)(C)(iii) (imposing limitations on discovery requests in relation to the utility of those requests to resolving the issues in the case).

## IV.   ESPEJO'S PROPOSED SAMPLING PROCEDURE IMPOSES AN UNNECESSARY AND UNDUE BURDEN ON SANTANDER.

Espejo's proposed sampling procedure calls for the creation of two samples of 400 accounts—one sample consisting of accounts "where at least one of the phone numbers called was a cell phone" (the "Cell Group"), and the other made up of accounts "where none of the phone numbers called were a cell phone" (the "Landline Group"). (*See* Proposed Sampling Procedure [Dkt. 91-5].) To obtain these two samples, Espejo proposes that 1,000 accounts be randomly selected, and then classified as belonging to the Cell Group or the Landline Group. (*Id.* at ¶¶ 1, 2.) When both the Cell Group and the Landline Group contain at least 400 accounts,

---

[2] While the cost of such a large production of data, or a file-by-file compilation would seem obvious, Santander offered to provide an explanation of the specific burden associated with the discovery Espejo propounded, including the sample of 800 accounts he suggested as an alternative to the propounded discovery, but Espejo's counsel rejected this offer when he declared the meet-and-confer discussions abruptly at an end on September 10.  Santander provides such an affidavit here to show that it could provide the more detailed information of cost and burden had Espejo truly wanted that information.  (*See* Nightengale Decl. ¶¶ 11, 15, 17-20.)

Santander would "produce all (i) call logs, (ii) account details, and (iii) applicable financing agreements" associated with those 800 accounts. (*Id.* at ¶¶ 4, 5.)

Espejo's proposed sampling procedure constitutes an undue burden. Santander's employees cannot merely assemble the materials associated with each account by pushing a button (as Espejo seems to suggest), but instead would need to compile the relevant documents from different sources and redact the confidential personal information contained therein. (*See* Nightengale Decl. ¶¶ 5-14.) In fact, identifying and compiling all call logs, account details, and applicable financing agreements would take approximately half an hour to one hour for each account, and due to the highly confidential nature of the information, only higher level employees with adequate security clearance could even do that work. (*Id.* at ¶ 11.) Moreover, because of the highly confidential customer contained in these files, such as credit scores, bank account information, social security numbers and drivers license numbers, each file must be painstakingly redacted before it is produced to Espejo's counsel, which could taken another two to four hours of labor per file. (*Id.* at ¶ 14.) Accordingly, Santander's higher level employees could expend between 2,000 to 4,000 estimated hours of labor in the process of identifying, compiling and redacting this information for all 800 requested account files. (*Id.* at ¶¶ 11, 14-15.)

Assembling this significant volume of material would substantially interfere with Santander's daily business operations, and would unfairly and unnecessarily impose substantial costs on Santander. (*Id.* at ¶¶ 11, 14-16.) As a result, Espejo's proposed procedure is inconsistent with the primary purpose of sampling—namely, to "advance[] the goal of proportionality set forth in Fed. R. Civ. P. 26(b)(3)(c)(iii)." *Feske v. MHC Thousand Trails Ltd. P'ship*, No. 11-CV-4124-PSG, 2012 WL 1123587, at *2 (N.D. Cal. Apr. 3, 2012). Indeed,

sampling in the context of class action discovery is designed to relieve a party's burden of production, and therefore, the burden imposed upon Santander by Espejo's proposed sampling is a crucial consideration in determining whether Espejo's procedure is appropriate under these circumstances. *See, e.g., Soto v. Castlerock Farming & Transport, Inc.*, 282 F.R.D. 492, 504 (E.D. Cal. 2012) (ordering "a reduced sample in order to minimize the burden on [the] [d]efendant" in response to the defendant's argument that the plaintiff's proposed sampling methodology would "still require production[] of 'tens of thousands of pages'"). As indicated above, Espejo's proposed sampling procedure imposes an undue burden on Santander and should be rejected. *See Ty, Inc. v. Salvino, Inc.*, No. 98 C 6318, 1999 WL 162774, at *3 (N.D. Ill. Mar. 16, 1999) (Schenkier, J.) (denying the plaintiff's motion to compel production of financial documents because "the request for . . . such records would impose an undue burden on [the] plaintiff that outweighs the likely benefit to the . . . defendants"); *see also Brodsky v. Humana, Inc.*, No. 08 C 50188, 2009 WL 1956450, at *3-4 (N.D. Ill. July 8, 2009) (denying in part a motion to compel the defendant to respond to various discovery requests in a TCPA case because full responses would entail six weeks to two years of document review and cost between $20,000 and $80,000); *Kleen Prods.*, 2012 WL 4498465, at *9–12 (granting the defendant's motion for a protective order because responding to the plaintiffs' interrogatory could take as many as 800 man-hours to accomplish); *United Consumers Club, Inc. v. Prime Time Mktg. Mgmt. Inc.*, Nos. 2:07 CV 358, 3:08 CV 60, 2009 WL 3200540, at *5-6 (N.D. Ind. Sept. 25, 2009) (denying a motion to compel as unduly burdensome where complying with the relevant document request would entail $750,000 in costs and 200-500 man-hours of labor).

Moreover, the Court must weigh the heavy burden imposed upon Santander against Espejo's speculative need for the sample. Espejo's counsel has consistently failed to articulate

why he needs a statistical sample of this magnitude, or what statistically valid conclusions he hopes to draw from it. Espejo alleges generally that the sampling would "allow Plaintiff to draw statistically significant conclusions regarding the percentage of account-holders who are likely putative class members, and . . . would provide Plaintiff with the opportunity to assess methods by which Santander could query its database . . . to ascertain class size and composition." (Pl.'s Mem. at 14.) But the proposed sampling will not provide results from which any statistically valid conclusions can be made. Santander's customers consented to cell phone calls in a variety of different ways—for example, some customers consented in credit applications or contractually waived TCPA claims, others provided written consent, while others orally provided consent during phone calls with Santander's account representatives. Accordingly, determining the manner in which customers consented would require an account-by-account investigation. Thus, a conclusion that a statistically valid percentage of the putative class gave consent in a particular way will not identify the particular putative class members who did so, or alleviate the need to undertake the account by account review that ultimately undermines Espejo's hope to certify a class here. Furthermore, Espejo has not addressed how the value of the proposed sampling outweighs its burden on Santander. *See Kleen Prods.*, 2012 WL 4498465, at *10 (granting the defendant's motion for a protective order and noting that the plaintiffs had failed to "address the Rule 26 proportionality principle"—*i.e.*, "how the value of the proposed discovery outweighs its burden"); Fed. R. Civ. P. 26(b)(2)(C)(iii).

In addition, with regard to testing Santander's assertion that it received prior consent for the calls it made to members of the putative class, Espejo's counsel already has access to many customer accounts because, as noted above, they are counsel, or work closely with counsel, in

arbitrations of individual claims against Santander.  (Rolfes Decl. ¶ 6.)[3]  The 75 accounts from individual arbitrations that Santander has agreed to produce will enable Espejo's counsel to draw conclusions about the manner in which Santander obtained consent from members of the putative class. Espejo's counsel, however, has failed to explain why those 75 accounts are insufficient for his purposes, and he has not provided a valid reason why he should not first examine those accounts before requesting any additional sample.  To the extent Espejo contends that 400 or 800 accounts is a statistically significant number, he has yet to articulate what he can possibly prove by those statistics when each account file is different and must be individually scrutinized to determined whether consent for the calls was present.

In sum, Espejo's proposed sampling procedure would strain Santander's ongoing business activities and require the expenditure of significant personnel time. In addition, Espejo's counsel has not explained why he needs the sampling, or what statistically valid conclusions he hopes to draw from it. Accordingly, the Court should reject Espejo's proposed sampling procedure.

## V.     SANTANDER HAS SUGGESTED AN APPROACH TO DEPOSITIONS THAT AVOIDS UNNECESSARY COST.

### A.     Santander Already Has Produced Wayne Nightengale as Its Rule 30(b)(6) Witness.

The Rule 30(b)(6) deposition of Wayne Nightengale proceeded as scheduled on October 22, 2014.  Espejo's counsel had the opportunity to ask questions regarding twelve identified topics concerning the Santander's telephone equipment, its record retention policies and practices, its call procedures and practices, account holder consent and other information Espejo identified as needed for determining membership in the putative class. Mr. Nightengale answered

---

[3] The fact that Espejo's counsel also serves as counsel in individual TCPA arbitrations against Santander further demonstrates the individual nature of the TCPA claims they are improperly trying to certify as a class here.

every question that was asked of him. While Santander has indicated its willingness to consider to Espejo's counsel's justification for taking further depositions, Espejo has not yet intitiated that discussion. Further, Espejo's counsel has possession of, or at a minimum access to, the deposition transcripts of three of the four additional Santander employees that they have identified here through their work on the individual arbitrations against Santander with their close partners, the Davis & Norris law firm.[4]  Espejo, therefore, has failed to articulate why they need to take what at best will be cumulative depositions, and any such request would be premature.  For these reasons, the motion to compel these depositions should be denied.

> **B.     Espejo Noticed the Deposition of Santander's Legal Counsel to Harass Santander.**

As articulated more fully in Santander's Motion for a Protective Order as to Deposition of Paul Jones (Doc. 94), Espejo has noticed the deposition of Santander's in-house attorney, Paul Jones, solely as a thinly veiled attempt to harass Mr. Jones and the company. Any information that Mr. Jones may have that is relevant to this case is the result of his acting as counsel for Santander. Thus, his testimony is subject to the attorney-client privilege and/or work product doctrine and a deposition would have no point.

Espejo's only purported justification for deposing Mr. Jones was his presence at a meeting with the FCC regarding a petition that Santander had brought before that agency.  That FCC petition, however, had nothing to do with the issues in this case.  (*See* Santander's Motion for Protective Order ¶¶ 5-7 (Dkt. 94).)  Moreover, Mr. Nightengale accompanied Mr. Jones to that meeting with the FCC, but Espejo's counsel failed to question Mr. Nightengale about it at his October 22 deposition.  Likewise, while Espejo's counsel had the opportunity at Mr. Nightengale's deposition to establish whether Mr. Jones had any non-privileged information that

---

[4] Espejo's counsel has access to the deposition transcripts of Michele Rodgers, Joseph Burda and John Thomas.

might be relevant to this action, Espejo's counsel failed to ask any questions on that subject either.

## CONCLUSION

For all the foregoing reasons, Defendant Santander Consumer USA, Inc. respectfully requests that the Court deny Espejo's unsupported and premature motion to compel and request for sanctions, and grant Santander its costs in responding to this motion, and such other relief as the Court deems just and appropriate under the circumstances.

Dated: October 29, 2014        Respectfully submitted,

**SANTANDER CONSUMER USA, INC.,**
*Defendant*

By:   /s/  James A. Rolfes          
      One of Its Attorneys

James A. Rolfes (Bar No. 6200271)
Henry Pietrkowski (Bar No. 6230048)
Michael D. Richman (Bar No. 3124631)
Joseph B. Prater (Bar No. 6290497)
REED SMITH LLP
10 South Wacker Drive, Suite 4000
Chicago, IL 60606
(312) 207-1000
*jrolfes@reedsmith.com*
*hpietrkowski@reedsmith.com*
*mdrichman@reedsmith.com*
*jprater@reedsmith.com*

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| HENRY ESPEJO, individually and on behalf of all others similarly situated,<br><br>   *Plaintiff*,<br><br>  v.<br><br>SANTANDER CONSUMER USA, INC., an Illinois Corporation,<br><br>   *Defendant*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

          **Case No. 11-cv-8987**
          *Related to*: Case No. 1:12-cv-4671
                Case No. 1:12-cv-9431

          The Honorable Charles P. Kocoras,
          Judge Presiding

          The Honorable Sidney I. Schenkier
          Magistrate Judge

## DECLARATION OF JAMES A. ROLFES

I, James A. Rolfes, declare under oath as follows:

  1.  I am an attorney-at-law licensed in the State of Illinois and am a partner at the law firm of Reed Smith LLP, counsel for Defendant Santander Consumer USA, Inc. ("Santander") in the above-captioned action. I make this Declaration in support of Santander's Response to Plaintiff's Renewed Motion to Compel Defendant's Responses to Outstanding Written Discovery Requests and Deposition Notices. I have personal knowledge of the facts stated in this Affidavit and am competent and authorized to testify to the matters set forth herein.

  2.  On June 24, 2014, the Court instructed the parties to meet and confer about discovery. (Dkt. 71.) The parties agreed to meet and confer via telephone on June 30, 2014, but at that meeting, Espejo's counsel notified Santander's counsel that rather than discuss the additional discovery needed by Espejo, they would send a letter regarding their discovery requests. Santander's counsel offered to discuss Santander's discovery responses and objections over the phone.

  3.  On July 24, 2014, Espejo's counsel sent Santander's counsel a nine-page letter discussing discovery requests that already had been propounded, negotiated, and responded to in

2012 and 2013. (Dkt. 91-1.)  On August 11, 2014, Santander responded with a letter that provided a point-by-point response to Espejo's demands (Dkt. 91-2), and again offered to meet and confer.

4.     Subsequently, Espejo's counsel accepted the invitation to meet and confer, and, in a series of calls in late August 2014, suggested that a "statistically valid" sample of customer accounts could provide the information they sought in discovery.  Santander's counsel responded that Santander would consider a sampling of the accounts, but made clear that the size and breadth of the suggested sample would determine whether Santander would agree to the procedure, and that Santander would need to know the goals of the sampling.

5.     On August 29, 2014, Espejo's counsel sent Santander's counsel a "Proposed Sampling Procedure" (Dkt. 91-5), which required Santander to create two samples of 400 accounts, and then produce to Plaintiff all "(i) call logs, (ii) account details, and (iii) applicable financing agreements" associated with those 800 accounts.  Espejo's counsel requested that Santander assemble this significant volume of material without explaining why Espejo needed, or could even use, the proposed sample.

6.     In response, Santander suggested, as an alternative approach, that Espejo first examine the 75 Santander customer account files to which Espejo's counsel already have access to determine the various ways Santander obtains prior consent.  Espejo's counsel are counsel of record, or work closely with counsel from Davis & Norris, LLP, who have brought approximately 75 arbitrations of individual claims against Santander.  Espejo's counsel have not disputed that they have knowledge of the 75 customer account files in question.  Furthermore, to the extent necessary, Santander has offered to re-produce the 75 customer accounts to Espejo's counsel.  The 75 accounts will provide Espejo with sufficient information to see the various ways

Santander obtains phone numbers, receives consent to call those numbers, and documents its interactions with its account holders, and will do so in a manner that places significantly less burden on Santander than Espejo's proposed sampling procedure.

7.     On September 8, 2014, Espejo's counsel rejected this proposal via email, and instead demanded deposition dates for certain Santander employees including Santander's in-house legal counsel.  (Dkt. 91-3 at 2-3.)  Santander's counsel responded to those demands the following day, and suggested that the parties discuss Espejo's discovery requests over the phone.  (Dkt. 91-3 at 5-7.)  But Espejo's counsel declared the meet-and-confer discussions at an end (*id.* at 8), and subsequently filed the renewed motion to compel.  (Dkt. 89.)  After filing the motion to compel, however, Espejo's counsel indicated on October 15, 2014, a willingness to review the 75 files, while reserving Espejo's right to request an additional sample.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on October 29, 2014.

_____
JAMES A. ROLFES

# EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| HENRY ESPEJO, individually and on behalf of all others similarly situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>SANTANDER CONSUMER USA, INC., an Illinois Corporation, )<br><br>Defendant. ) | **Case No. 11-cv-8987**<br>*Related to*: Case No. 1:12-cv-4671<br>　　　　　Case No. 1:12-cv-9431<br><br>The Honorable Charles P. Kocoras, Judge Presiding<br><br>The Honorable Sidney I. Schenkier Magistrate Judge |

## DECLARATION OF WAYNE NIGHTENGALE

I, Wayne Nightengale, declare under oath as follows:

1.      I am Senior Vice President of Operations at Defendant Santander Consumer USA Inc. ("Santander") and submit this Affidavit in support of Santander's Response to Plaintiff's Renewed Motion to Compel Defendant's Responses to Outstanding Written Discovery Requests and Deposition Notices. I have personal knowledge of the facts stated in this Declaration and am competent and authorized to testify to the matters set forth herein.

*Plaintiff's Proposed Sampling Procedure*

2.      I understand that Plaintiff has proposed a sampling of Santander's account records. (Doc. 91-5.) Plaintiff's proposed procedure calls for the creation of two samples of 400 accounts each—one sample consisting of accounts "where at least one of the phone numbers called was a cell phone," and the other consisting of accounts "where none of the phone numbers called were a cell phone." To identify these two sample groups, Plaintiff proposes that at least 1,000 accounts be randomly selected from the "approximately 2.8 million accounts to which Santander has made outbound calls." The parties would then classify these files as belonging to

either of the two sample groups based on a "third-party phone number validation service." When both of the sample groups contains at least 400 accounts, Santander would produce to Plaintiff all "(i) call logs [which are embedded in the account notes], (ii) account details, and (iii) applicable financing agreements" associated with those 800 accounts.

3. One potential problem with Plaintiff's sampling methology is his proposed use of a third-party phone validation service. In my experience, such services are not entirely accurate and cannot determine in many instances whether a phone number was a cell phone number or landline number at any particular point in time. Residential landline phone numbers are "ported" to cell phone numbers at an increasing rate. Consumers also often change their cell phone and landline numbers. Thus, each particular account file may contain multiple different phone numbers that have changed over time. Some are active numbers while others are expired or have been reassigned to new subscribers. The fact that Santander called a phone number that a third-party validator classifies as belonging to a cell phone does not mean that number was associated with a cell phone when Santander called it.

4. In any event, to comply with Plaintiff's proposed sampling procedure, Santander's employees would need to (i) identify the 800 sample files to be used; (ii) compile the relevant data and documents for each file; and (iii) redact the confidential personal information contained in those files before producing them. Each of these tasks is described in more detail below along with an estimate of the amount of time that it would take Santander's employees to perform them.

***Identification of Sample Account Files***

5. To identify the 800 sample files to be used, the parties first would need to determine the universe of files from which those samples would be selected. Santander has

made outbound calls to about 2.8 million accounts.

6.       Of the 2.8 million accounts at issue, many involved loan accounts initiated between 2007 and 2010. A high percentage of these older accounts have been archived, which makes them much more difficult to search or retrieve than Santander's active accounts. To retrieve these archived accounts, Santander's IT department would need to work with vendors to search for the server on which each account is stored and then retrieve the data and documents. Plaintiff's counsel have not specified whether he wants the account samples to be pulled only from Santander's active account files or from the archived files too. If Plaintiff's counsel want to include the archived accounts in their random sampling, this would substantially increase the time required to pull these files.

7.       Another potentially important factor that Plaintiff's counsel have not specified is whether they want the random sample to include only accounts originated by Santander itself or also those accounts Santander has acquired over the years from various other companies, such as Triad, GE Capital, HSBC and other financial lending institutions.

***Compiling the Requested Information and Documents***

8.       According to Plaintiff's proposed sampling procedure, once the 800 sample files are identified, Santander would then produce all "(i) call logs, (ii) account details, and (iii) applicable financing agreements" associated with each of those 800 accounts. I am assuming for purposes of this affidavit that Plaintiff has requested Santander to pull all of the account notes for each phone number associated with the account, as well the entire financial transaction history, and all of the contract documents associated with the original financing transaction that might contain the account holder's contact information.

9.       The call logs, account notes and transaction history for Santander's files reside in

- 3 -

a proprietary graphical user interface called the "MySupervisor" program, which is built upon Shaw Systems, a commercially available account management system. Santander employees with sufficient security clearance would be needed to develop the queries and pull all of the account notes for each phone number associated with each account as well the account's entire financial transaction history, and then export that data to a spreadsheet or other readable format The average salary paid to employees with this level of security clearance would be approximately $30 per hour.

10. In addition, the documents associated with the original financing transaction (such as the credit application, financing contract and title documents) would need to be pulled from another source entirely – the Optika Document Management system, which stores these documents individually in scanned pdf format. Again, these documents only are available to those employees with the require security clearance.

11. In my estimation, pulling the "(i) call logs, (ii) account details, and (iii) applicable financing agreements" would take approximately 30 minutes to one hour per account. Thus, for the 800 sample files requested by Plaintiff, this would require 400 to 800 hours of employee time at a cost of approximately $12,000 to $24,000. Because of the highly confidential nature of the information contained in these files, Santander cannot use its lower-level collection associates to complete these tasks. They must be performed by employees with a higher level security clearance, which would substantially disrupt Santander's business operations.

*Redaction of Confidential and Financial Information*

12. The consumer documents that Plaintiff seeks to have produced in this litigation contain highly confidential personal information, including, but not limited to, bank account information, credit report information, social security numbers, driver's license numbers and

other personally identifying information that could lead to substantial privacy concerns if they fell into the wrong hands.

13.     While I understand that a Protective Order has been entered in this case, the highly confidential nature of this information requires that Santander or its attorneys redact such information before producing it to Plaintiff's counsel. In my experience, this redaction process is detail-intensive and requires a close read of every line of every document that is being produced to ensure that this sensitive information of third parties is not shared with those who do not absolutely need to see it.

14.     I estimate that redacting each account file would take between two to four hours, meaning that the entire process for redacting 800 files could take between 1,600 to 3,200 hours, which would be extremely expensive and burdensome to Santander.

***Summary of the Burden on Santander From Plaintiff's Proposed Sampling Procedure***

15.     Identifying, compiling and redacting the 800 randomly sampled files that Plaintiff has requested would require Santander's employees or outside counsel to expend approximately 2,000 to 4,000 hours to complete. This estimate is broken down as follows:

| | |
|---|---|
| Identifying 800 sample files and compiling requested data and documents[1] | 400 to 800 hours |
| Redacting confidential information | 1,600 to 3,200 hours |

16.     Expenditure of this many hours would be incredibly burdensome and detrimental to productivity for the company, particularly given the highly doubtful conclusions that Plaintiff or any expert might be able to draw from them.

---

[1] As discussed above, if Plaintiff's counsel want Santander to include archived accounts in this random sample, that could substantially increase the amount of time involved because these accounts must be obtained from various computer servers through an outside vendor.

*The Burden Imposed By Plaintiff's Other Proposed Discovery Requests*

17.     As demonstrated above, the burden on Santander from having to produce documents and information associated with 800 account files is enormous.  Many of Plaintiff's written discovery requests, however, would require a file-by-file review of thousands or even millions of account files, which would impose an insurmountable burden upon Santander.

18.     As one example, Plaintiff requests an explanation of how many individuals comprise the putative class.  Santander could not answer that question without conducting an individualized investigation of the approximately 2.8 million accounts that it called.  Santander's records indicate that approximately 800,000 account holders agreed in their credit applications to receive cell phone calls or contractually waived their TCPA claims.  In addition, however, many other account holders provided their consent in phone calls with Santander's account representatives or through subsequent correspondence with Santander.  A manual investigation of the account notes would be required in each case to determine if this occurred for each particular account holder.  Such a file-by-file review of Santander's account notes would require an extraordinary expenditure of time and resources.

19.     Even determining whether a particular phone number was associated with a cell phone or landline at the time that Santander called it would require a manual review of the file and cross-checking that number against an outside database of cell phone numbers at that particular point in time.  The same phone number can be identified in an account file as a "cell phone," "home phone," "work phone," "IVR" or "other" at different points in time or even simultaneously.

20.     To the extent a file-by-file review is necessary to answer any of Plaintiff's interrogatories or document requests, this would impose an impossibly high burden on Santander

that cannot, as a practical matter, be done without potentially costing the company millions of dollars and completely disrupting its business operations.

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 29, 2014.

Wayne Nightengale

# EXHIBIT 3

**From:** Wayne Andersen
**Date:** August 15, 2013 8:21:21 PM PDT
**To:** Chad R Fuller <CFuller@goodwinprocter.com>, "Abraham J. Colman"
<AColman@ReedSmith.com>, Rafey Balabanian <rbalabanian@edelson.com>, "Jay Edelson"
<jedelson@edelson.com>
**Cc:** Brooke <bbuczkowski@jamsadr.com>
**Subject: Espejo**

Gentlemen,

This mediation has been stalemated due to disagreement about                    for weeks.
Neither side has altered its position nor even blinked. Perpetuating the appearance of an ongoing
mediation when there is an apparently irreconcilable disagreement seems inappropriate to me, so
I will close my file and consider the mediation as terminated.

Despite this failure, I have enjoyed working with each of you.  If the parties would like to engage
me again in the future, please let me know. Good luck.  I hope you can work out your
differences.

Judge Wayne Andersen (ret.)
Mediator & Arbitrator


JAMS Chicago
312.655.9191   Brooke Buczkowski
Bbuczkowski@jamsadr.com


*****************************************************************

# EXHIBIT 4

| | Espejo's Discovery Request | Santander's Objection |
|---|---|---|
| 1 | Documents concerning the total number of debtors for whom Santander holds accounts (see Interrog. 14, Req. Prod. 17) | Santander's response to Interrogatory 14 provides the approximate number of accounts held as of the date of its Response to Interrogatory 14, *i.e.*, 4.3 million accounts. That number came from a query to Santander's computerized record system. Santander further responded to Request for Production 17, indicating that a request to provide "all documents and ESI" sufficient to dentify the number of accounts was overbroad, burdensome, would invade the privacy rights of third parties, raised privilege concerns and would not likely lead to the discovery of admissible evidence. Providing documents and ESI associated with approximately 4.3 million accounts is essentially a request for every account-related document in Santander's possession; it further would require disclosure of client information (including clients to whom Santander never placed a call), as well as communications between Santander and its attorneys regarding Plaintiffs' request. Given the over breadth of the request, conducting a search for, and assembling all documents, as well as reviewing such documents for privilege (let alone preparing a privilege log), would in and of itself cause the expenditure of an extravagant amount of time and resources for information of, at best, questionable relevance to Plaintiff's case.<br><br>While this would seem obvious, and is information Espejo's counsel likely could surmise without knowing that much about Santander, or any other large financial institution, Santander states it here to respond to Espejo's concern that Santander's objections seem too general. That in large part is due to the fact that this request, like many Espejo propounded, is so obviously overbroad and burdensome that they can only be interpreted as either an attempt to inflict unnecessary cost on Santander, or an invitation to have further discussion as to more precise document requests. With that in mind, in response to Request for Production 17, Santander indicated a willingness to produce responsive, non-privileged documents. For instance, Santander could provide a screen print of the results generated by the inquiry Santander made to identify the approximately 4.3 million accounts. Prior to making that production, however, Santander wanted to discuss with Espejo on Santander's proposed response to Request for Production 17. Espejo's counsel did not respond to this suggestion. |

| | Espejo's Discovery Request | Santander's Objection |
|---|---|---|
| 2 | An explanation of how many individuals comprise the putative class, and how that number was determined (see Interrog. 15; Reqs. Prod. 18 – 19) | Santander does not know, nor has any documents that reflect the number of individuals that comprise the putative class. Other than conducting an account by account review of its approximately 4.3 million accounts, Santander could not possibly determine who is in the class Espejo asserts. Instead, as stated in its Response to Interrogatory 15, Santander's records indicate that it called approximately 2.8 million of its approximately 4.3 million accounts, and of those, approximately 800,000 agreed to cell phone calls in credit applications or contractually waived TCPA claims. Many other account holders provided such consent in phone calls with Santander call center associates, although determining if that was the case would require an account by account investigation. Moreover, often Santander cannot determine if it made any particular call to a client's cell phone or his or her landline. Thus, determining who is in the class Espejo defines is not possible without an extraordinary expenditure of time and resources. With regard to Requests to Production 18 and 19, they (like Request for Production 17) seek "all documents and ESI," as well as "all communications," related to 2.4 million accounts, and if read literally, would be so overly expansive, and include such clearly irrelevant information, that Santander can only interpret such a requests as abusive, or alternatively, as an invitation for further discussions as to how to address legitimate document requests. Santander did, however, agree that it would produce documents, again thinking that after discussion with Espejo, Santander could take a screenshot of the computer screens that provided the numbers used in the response to Interrogatory 15. Espejo's counsel did not respond to this suggestion. |

| | Espejo's Discovery Request | Santander's Objection |
|---|---|---|
| 3 | The total number of phone calls made by or on behalf of Santander to phone numbers associated with its debtors' accounts that are internally identified by Santander as being (i) automated without the involvement of a live operator, or (ii) initially automated, but connected to a live operator when answered (see Interrog. 16; Reqs. Prod. 20 – 27) | Santander does not "internally identify" calls to its customers as "completely automated" or "initially automated, but connected to a live operator when answered," as Espejo suggested in Interrogatory 16. To determine the nature of a call made to an account holder requires a review of the account holder's file, and even then, it may not be possible to determine what calls, if any, meet Espejo's definition of "automated" or if such calls were made to a cell phone. Clearly, searching the account files for 4.3 million accounts is burdensome and excessive, and would involve review of private third-party information for material that has nothing to do with the Espejo's claims or any substantive effect on his request for class certification (i.e., Santander is not contesting numerosity, and whether Santander employed an automatic telephone dialing system as defined by the TCPA will be determined by reference to the equipment, governing case law and FCC decisions). Thus, Santander objected to Espejo's overly broad and imprecise discovery requests set forth in Interrogatory 16 and Requests for Production 20-27. |

| | Espejo's Discovery Request | Santander's Objection |
|---|---|---|
| 4 | The total number of phone calls identified in Santander's response to No. 3 above that were made to phone numbers that Santander internally identifies as cellular telephones (see Interrog. 17; Reqs. Prod. 24 – 27)<br><br>Santander previously suggested that it was incapable of determining this figure, but the documents produced to date show otherwise. For example, as evidenced by the call logs Santander produced for Espejo, it's clear that Santander internally distinguishes debtor phone numbers using, for example, labels such as "cell phone" and "home phone." (Richman Decl. ¶ 11.) If it's a situation where Santander is unable or unwilling to devote the resources necessary to review debtor files and determine the total cell phone numbers identified in its records, Plaintiff has expressed his willingness to review the call logs of a representative sample and extrapolate for the putative class from there. But Santander producing nothing is obviously not allowed. | As noted above, Santander did not, and cannot, identify "calls" as defined by Plaintiff in Interrogatory 16. As Espejo premises Interrogatory 17 on the "calls identified" in Interrogatory 16, all the issues associated with that imprecise and overbroad request apply equally to Interrogatory 17. Further, while Santander in some account files noted whether a particular number was a cell phone, it did not make, or record, that determination for every account phone number, and even determining whether it made such a determination for a particular account will require a review of the account file. Such a review for 4.3 million accounts is clearly overboard and burdensome. As to Espejo's suggestion that Santander provide "sample" of call logs in lieu of responding to Interrogatory 17 or Request for Production 24 to 27, whether the sample approach will work will depend on the size and breadth of the sample Espejo suggests. Further, Santander doubts that such a sample will ever be "representative" or subject to extrapolation, but will instead show the futility of Espejo's attempt to find account uniformity where none exists. |

| | Espejo's Discovery Request | Santander's Objection |
|---|---|---|
| 5 | The total number of debtor accounts that have only one telephone number associated with them (see Interrog. 18; Reqs. Prod. 28 – 29).<br><br>As with No. 4 above, this information is easily identified from within Santander's debtor files and thus, there is no excuse for not producing the information in its entirety. Nevertheless, Plaintiff would accept a representative sample as responsive to these requests. | Espejo's request in Interrogatory 18 (and related Requests for Production 28 and 29) for identification of those account holders for which Santander has only one telephone number does not appear relevant to either the Espejo's claim or his class allegations. Further, while Santander may be able to identify the number of accounts with one associated phone number at a particular point in time, that information is constantly changing in a database that includes approximately 4.3 million accounts. Further, a request to provide "all documents and ESI" and "communications" sufficient to identify the number of such accounts is essentially a request for every account related document in Santander's possession and would require disclosure of client information (including clients to whom Santander never placed a call), as well as communications between Santander and its attorneys regarding Espejo's request. We did, however, agree that we would produce documents, again thinking that after discussion with you, we could take a screenshot of the computer screen that reflects the results of a query of the database for the number of such accounts as of a specific point in time. |
| 6 | A description of Santander's ability to determine and/or identify the source of the telephone numbers associated with its debtors' accounts (e.g., whether they were contained in an original financing agreement executed by the debtor or were obtained at a later date over the phone, through subsequent paperwork, etc.) (see Interrog. 19; Reqs. Prod. 13, 30 – 31); | As indicated in the response to Interrogatory 19, to determine the source of a phone number associated with any particular account requires a review of the account file, a clearly burdensome task given the approximately 4.3 million accounts identified. Financing agreements, phone calls with account associates, subsequent documents received from account holders, are some, but by no means all the various ways Santander received telephone information for 4.3 million accounts. Identifying all the various permutations would require a massive file review. Identifying "all documents and ESI' and "communications" associated with such a file review as requested in Requests for Production 13, 30 and 31 would be only more burdensome and expensive. Thus, the requests as stated are clearly unreasonable. That said, in Santander's previous responses it indicated a willingness to produce documents that reflect points at which Santander obtains account phone numbers. For instance, Santander could supply a blank credit application. Again, we would need to have a discussion to determine the more tailored production Espejo would propose as an alternative to these overbroad and burdensome requests. |

|   | Espejo's Discovery Request | Santander's Objection |
|---|---|---|
| 7 | A description of the types of contact information Santander has associated with those debtors' accounts other than telephone numbers (e.g., mailing addresses, email addresses, messaging capabilities through the Santander online payment system, etc.) (see Interrog. 20; Reqs. Prod. 32 – 33). | In response to Interrogatory 20, Santander stated that the additional contact information that it maintains for account holders are physical mailing addresses and for some customers, email addresses. Further, while producing "all documents and ESI" and "communications" that would reflect the other contact information Santander maintains for approximately 4.3 million accounts would be burdensome and unnecessarily costly, Santander has indicated it will produce documents, such as for example, a blank credit application, that indicates the type of contact information that account holders provide. In any event, determining if Espejo can provide a more tailored request will require further discussion. |
| 8 | Identification of all claims asserted against Santander for alleged violations of the TCPA, any judgments entered in those matters and the amounts of such judgments, and copies of any non-confidential settlement agreements entered into by the parties in those matters (see Interrog. 21; Reqs. Prod. 34 – 35). | Identifying, and producing "all documents and ESI" and "communications" related to TCPA claims asserted and resolved (either through judgment or settlement) is a task that will require a burdensome search through account files, and would include production of private, third-party information and communications with counsel engaged to address such claims. Conducting such a search, or preparing a privilege log on such a scale, would inflict substantial unnecessary cost on Santander. Further, Plaintiff has not indicated why such complaints, judgments or settlements have anything to do with the TCPA claim he asserts or the information he needs to support a motion for class certification. |

| | Espejo's Discovery Request | Santander's Objection |
|---|---|---|
| 9 | All policies and procedures for obtaining consent to call purported debtors (see Interrog. 6; Reqs. Prod. 9, 14). | Interrogatory 6, and Requests for Production 9 and 14, do not ask for "policies and procedures for obtaining consent to call purported debtors." Instead, Interrogatory 6 asked for the means by which Santander obtained the Plaintiff's prior consent to be called as well as the same information for all putative class members. Requests for Production 9 and 14 ask for documents reflecting such prior consent and the methodology used to verify prior and continuing consent. Santander provided the information for the Espejo (both in the interrogatory response and with the production of documents) but objected to doing so for each class member because Santander only could do so by conducting a file by file review to determine the means by which it obtained prior consent from the various class members. A file by file review for approximately 4.3 million accounts is burdensome and would impose an extraordinary and unfair cost on Santander |
| 10 | Descriptions of how Santander obtained the telephone numbers of purported debtors and related individuals and entities that it calls—which necessarily includes identification of third-parties from which such numbers are obtained, and any contracts, written agreements or other understandings between such third partiesand Santander (see Interrogs. 3, 19; Reqs. Prod. 13, 30 – 31). | Interrogatories 3 and 19, and Requests for Production 13, 30 and 31, refer to the "process" by which Santander obtained telephone number for each member of the putative class, which like all such over broad requests, would require a burdensome review of all account files. Further, through the responses provided related to Espejo, as well as the other interrogatories, Espejo knows of various ways in which Santander obtains customer phone numbers. Even so, as part of the meet and confer process, Santander offered to discuss with Espejo the nature of any additional information he was looking for, including third-party information. Espejo, however, did not respond to that offer. |

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2014, I electronically filed the foregoing **Defendant Santander Consumer USA, Inc.'s Motion to File, *Instanter*, Enlarged Brief in Response to Plaintiff's Renewed Motion to Compel** with the Clerk of the Court using the ECF system, which will send electronic notification of such filing to all registered parties.

/s/  James A. Rolfes