IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HENRY ESPEJO, individually and on behalf of all others similarly situated | ) ) ) | |
| Plaintiff, | ) ) ) | No. 11 CV 8987 |
| v. | ) ) | Magistrate Judge Sidney I. Schenkier |
| SANTANDER CONSUMER USA, INC., an Illinois Corporation, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant, Santander Consumer USA, Inc., has moved for a protective order to prevent putative class action plaintiff, Henry Espejo, from taking the deposition of Santander's Senior Vice President and Deputy General Counsel, Paul Jones (doc. # 94). Mr. Espejo contends that Mr. Jones may possess information relevant both to the merits of Mr. Espejo's claims and to his motion for class certification. Specifically, the plaintiff seeks to depose Mr. Jones about: (1) a meeting he and others had with the Federal Communications Commission ("FCC") that addressed, among other things, Santander's petition to seek changes to certain FCC regulations related to revocation of consent to receive debt collection calls, and (2) Santander's current debt collection practices.

Additionally, the plaintiff contends that because Santander's Rule 30(b)(6) witness, Wayne Nightengale, testified that Santander's compliance procedures for the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et. seq.*, are developed, overseen and

updated by the company's senior vice presidents along with "compliance in (sic) legal staff," of which Mr. Jones is a member, Mr. Jones can testify as to his knowledge about how Santander purports to obtain consent to call debtors and other matters related to TCPA compliance practices and procedures. These issues, the plaintiff argues, are relevant to his claim that Santander violated the TCPA by making debt collection phone calls to his and other individuals' cellular phones without first obtaining consent to do so.

Santander contends that Mr. Jones' deposition should not be allowed because anything he has to say on these matters would be protected by the attorney-client privilege as a result of his position as in-house counsel to Santander. The defendant also argues that: (1) any information Mr. Espejo seeks could be obtained from other, non-attorney sources; and (2) in any event, the information is, at best, only tangentially related to his claim that Santander violated the TCPA by making non-consensual debt-collection phone calls to his cellular phone.

The matter has been fully briefed. For the following reasons, we grant the defendant's motion for protective order. We do so without prejudice to the right of plaintiff to revisit the issue, but only after he has exhausted all non-privileged means of obtaining the information he seeks.

## I.

The parties spend considerable time in their briefs arguing about whether the deposition of a party's attorney may occur, and whether there is a different standard for allowing the deposition of in-house counsel as opposed to trial counsel. Santander urges us to adhere to the four-part test created by the Eighth Circuit, which requires the party seeking an attorney's deposition to show: (1) that the information sought is relevant, (2) that no other means exist to obtain the information, (3) that the information is crucial to the case and (4) the information

sought is non-privileged. *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986).

It is true that some judges in the Northern District of Illinois have used the *Shelton* test to determine whether to allow the deposition of a party's attorney. *See, e.g., In re Plasma-Derivative Protein Therapies Antitrust Litigation*, No. 09 C 7666, 2013 WL 5274296 (N.D. Ill. Sept. 18, 2013). Others, however, including the district judge precisely in this matter, employ a more flexible approach that looks at all the circumstances of the particular case. *See, Wilson v. O'Brien*, No. 07 C 3994, 2010 WL 1418401 (N.D. Ill. April 6, 2010) (Kocoras, J.), *appeal dismissed* --- F.3d ----, 2010 WL 3447650 (7th Cir. 2010). And, this Court has allowed the depositions of in-house counsel to proceed, explaining that "not every communication between a lawyer and a client is automatically privileged" and that parties can generally be expected to assert objections during the course of a deposition to protect against disclosure of privileged information. *Quality Croutons, Inc. v. George Weston Bakeries, Inc.*, 05 C 4928, 2006 WL 2375460 (N.D.Ill. August 14, 2006) (Schenker, J.) (noting that attorney's title of "Vice President-General Counsel" could reflect both business and legal duties).

As an initial matter, we find that the information Mr. Espejo seeks to discover from Mr. Jones is sufficiently relevant to his claims and/or defenses in the case to be a fit subject of discovery. In this case, the plaintiff seeks to depose Mr. Jones about his attendance at a meeting with the FCC that discussed the issue of proper consent procedures under the TCPA and his participation in the development of consent policies and procedures for defendant. Although defendant argues that the FCC meeting concerned the proper methods for revocation of consent, which are not at issue here, we disagree. One of Santander's affirmative defenses is that any debt-collection phone calls it may have made to cellular phones without consent were done in

3

error; if so, it is relevant for the plaintiff to explore why such errors occurred and whether they were related to Santander's policies with respect to consent revocation. We cannot say that the discussion at the FCC is wholly irrelevant to those matters. And, to the extent that Mr. Jones has knowledge of and participated in the creation of Santander's policies and procedures for compliance with the TCPA, and particularly with respect to issues of consent, we find his knowledge is relevant.

Further, it is not evident that all of Mr. Jones's knowledge would implicate the attorney-client privilege. To be sure, Mr. Jones's knowledge of what was said at the meeting with the FCC is not privileged, given that the meeting took place with a third-party governmental entity. A conversation involving a client's lawyer and a third party plainly is not privileged. *See, Quality Croutons,* 2006 WL 2375460 at *2 (holding that conversations between the defendant's attorneys and plaintiff's representatives "clearly are not privileged").

With respect to Mr. Jones' knowledge about defendant's compliance and consent policies and procedures, we note that, as was the case with one of the attorneys in *Quality Croutons* who was "Vice President-General Counsel," Mr. Jones holds a dual title: Senior Vice President and Deputy General Counsel. The significance of the dual title is that Mr. Jones may wear both "a legal and business hat," which would mean that his communications and knowledge would not be privileged if made or obtained in his business, rather than legal, capacity. *Quality Croutons,* 2006 WL 2375460, at *4. During his Rule 30(b)(6) deposition in this case, Santander Senior Vice President Wayne Nightengale testified that the company's compliance policies and procedures are overseen and updated monthly by him in conjunction with "other SVPs" and compliance and legal staff – which includes Mr. Jones both as a Senior Vice President and also as a member of the compliance and legal department. We make no determination about whether

4

all of the information Mr. Jones possesses with respect to defendant's compliance policies and procedures is in fact privileged. However, we cannot exclude the possibility that Mr. Jones possesses non-privileged, relevant information he gained as a Santander Senior Vice President.

Defendant's briefs have shed no light on Mr. Jones's role as a senior vice president, and where his duties in that role end and his responsibilities as deputy general counsel begin. As we said in *Quality Croutons*, in such a situation, determining what information is privileged by allowing a deposition to proceed and requiring the privilege to be asserted on a question-by-question basis is often "a more appropriate method" than barring the deposition altogether based on the categorical assumption that any and all information the attorney may possess is privileged. 2006 WL 2375460, at *4 (internal citations omitted).

## II.

But, often does not mean always. We recognize that the deposition of a party's attorney – whether in-house or trial counsel – does impose more of a burden than the deposition of other fact witnesses. Whether the attorney is questioned on matters that implicate the attorney-client privilege or not, the possibility of such a situation requires extra vigilance on the part of party being deposed. Such a deposition also increases the likelihood that further motion practice will be required if the parties cannot agree whether a particular line of questioning implicates privileged matters. Therefore, where the deposition of an attorney can be avoided because the same information is available from other, non-privileged sources, it is prudent for the parties to pursue that course of discovery first.

In this case, we see no good reason for plaintiff to insist on deposing Santander's attorney when plaintiff inexplicably has failed to exhaust other reasonable means to obtain much or all of the information he seeks from Mr. Jones. In its opposition to defendant's motion (doc. # 110:

Plaintiff's Resp. at. 6), the plaintiff contends that he needs to depose Mr. Jones so that he can testify about, *inter alia,* "how Santander currently purports to obtain consent to call its debtors," as well as "TCPA-compliance practices and procedures," and "whether Santander's conduct was knowing or willful." But, this is not a case where it appears that Mr. Jones is the sole source of that information. *Cf Wilson,* 2010 WL 1418401 at *3 (allowing deposition of attorney to go forward because no other sources of the information sought were available).

In his Rule 30(b)(6) Notice of Deposition (doc. # 119, Reply in Support of Motion for Protective Order, Exhibit A), the plaintiff listed as deposition topics, *inter alia,* "Santander's Compliance Department operations, including Compliance Department locations, equipment, directors, managers and other employees, practices, policies and procedures" (Request # 8), and "Santander's policies and procedures for complying with the [TCPA], including but not limited to obtaining individuals' consent to be called" (Request #9). On October 22, more than three weeks after the defendant filed its Motion for Protective Order, plaintiff took two consecutive depositions of Wayne Nightengale, first as a Rule 30(b)(6) corporate representative and then as an individual with personal knowledge of the facts of the case. According to the defendant's Reply to its Motion for Protective Order (doc. #119), Mr. Nightengale answered every question posed to him as a Rule 30(b)(6) witness, including questions on those matters the plaintiff contends it needs to obtain from the deposition of Mr. Jones. In his response, filed after this deposition, plaintiff does not explain what information on these matters he was unable to obtain from Mr. Nightengale – or could not obtain from others.

Additionally, although Mr. Nightengale attended the same meeting with the FCC that plaintiff says he must ask Mr. Jones about, plaintiff's counsel did not ask him a single question about the meeting during the course of his deposition in his individual capacity. Again, plaintiff's

6

memorandum did not address Mr. Nightengale's deposition or plaintiff's reasons for failing to ask Mr. Nightengale about the meeting with the FCC that he attended alongside Mr. Jones.

The availability of alternative sources for the information plaintiff seeks from Mr. Jones separates this case from the circumstances presented in *Quality Croutons*. There, the defendant's lawyers were the only people on the defendant's side who were involved in certain relevant discussions with plaintiff. Thus, there were no other employees of the defendant or its partner from whom plaintiff could seek the information. That plainly is not the case here with respect to the FCC meeting, and well may not be true as to the other matters about which plaintiff wishes to question Mr. Jones.

## CONCLUSION

For the foregoing reasons, we cannot say that Mr. Jones' deposition should go forward at this time. We thus grant the motion for protective order.

While we do not make it a practice to allow the re-deposition of previously-deposed witnesses, we will allow the plaintiff one additional hour to depose Mr. Nightengale in his individual capacity limited to questions about what transpired at the meeting with the FCC. After that deposition and other discovery that may bear on that question as well as on the issue of defendant's compliance policies and procedures, the parties will be better positioned to set aside the unhelpful rhetoric that pervades their briefing and to fairly consider whether the deposition of Mr. Jones is warranted. If they cannot agree, then the additional discovery should enable them to

present the question to the Court on a more developed record, mindful of the guidance provided

in this opinion.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

DATE: November 25, 2014