# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HENRY ESPEJO, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>SANTANDER CONSUMER USA INC., an Illinois corporation,<br><br>*Defendant.* | Case No.: 1:11-cv-08987<br><br>Honorable Charles P. Kocoras |
| ARICA BONNER, *et al.*, on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>SANTANDER CONSUMER USA INC.,<br><br>*Defendant.* | Case No.: 12-cv-09431<br><br>Honorable Charles P. Kocoras |

## DEFENDANT SANTANDER CONSUMER USA INC.'S
## MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGEMENT

| | | |
|---|---|---|
| James A. Rolfes<br>(Bar No. 6200271)<br>*jrolfes@reedsmith.com*<br>Henry Pietrkowski<br>(Bar No. 6230048)<br>*hpietrkowski@reedsmith.com*<br>REED SMITH LLP<br>10 South Wacker Drive<br>Chicago, IL 60606<br>(312) 207-1000 | Abraham J. Colman<br>*pro hac vice*<br>*acolman@reedsmith.com*<br>REED SMITH LLP<br>355 South Grand Avenue<br>Los Angeles, CA 90071<br>(213) 457-8000 | Marc A. Lackner<br>*pro hac vice*<br>*mlackner@mcguirewoods.com*<br>David S. Reidy<br>*dreidy@mcguirewoods.com*<br>MCGUIRE WOODS LLP<br>505 Sansome Street, Suite 700<br>San Francisco, CA 94111<br>(415) 844-1974 |

*Attorneys for Defendant Santander Consumer USA, Inc.*

**TABLE OF CONTENTS**

Page

I. INTRODUCTION .................................................................................................. 1

II. FACTS .................................................................................................................... 2

    A. Mr. Espejo Gave Express Consent to Receive Calls to His 1411-ended Cell Phone Number. ................................................................................. 2

    B. Levins Provided Express Consent to Receive Calls at All Three of Her Cell Phone Numbers. ................................................................................. 4

    C. Santander's Telephone System. ................................................................ 5

III. SUMMARY JUDGMENT STANDARD ............................................................... 6

IV. ARGUMENT .......................................................................................................... 6

    A. Santander Had Plaintiffs' Prior Express Consent to Contact the Telephone Numbers at Issue. ................................................................... 6

    B. Santander Did Not Employ an ATDS. .................................................... 11

        1. Santander's Use of a Dialer Depends on Human Intervention ........... 11

        2. Santander's Telephone System Does Not Employ a Random or Sequential Number Generator ............................................................. 12

V. CONCLUSION ..................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abplanalp v. United Collection Bureau, Inc.*,
  No. 3:15-CV-203-RJC-DCK, 2016 WL 81498 (W.D.N.C. Jan. 7, 2016) .............................. 13

*ACA International v. Federal Communications Commission*,
  Case No. 15-1211 ............................................................................................................... 13

*Acton v. Intellectual Capital Mgmt., Inc.*,
  No. 15-CV-4004(JS)(ARL), 2015 WL 9462110 (E.D.N.Y. Dec. 28, 2015) .......................... 13

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) .............................................................................................................. 6

*Boyce v. Carter*,
  No. 12 C 5372, 2014 WL 4436384 (N.D. Ill. Sept. 8, 2014) .............................................. 10

*Buslepp v. Improv Miami, Inc.*,
  No. 12-60171-CIV., 2012 WL 4932692 (S.D. Fla. Oct. 16, 2012) ..................................... 11

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .............................................................................................................. 6

*Chattanond v. Discover Fin. Servs., LLC*,
  No. 2:15-cv-08549-RSWL-JC (C.D. Cal. Feb. 26, 2016) ................................................... 13

*Derby v. AOL, Inc.*,
  No. 15-cv-00452-RMW, 2015 WL 3477658 (N.D. Cal. June 1, 2015) .............................. 12

*Fontes v. Time Warner Cable Inc.*,
  Case No. CV14-2060-CAS, 2015 WL 9272790 (C.D. Cal. Dec. 17, 2015) ....................... 13

*Gensel v. Performant Techs., Inc.*,
  No. 13 C 1196, 2015 WL 6158072 (E.D. Wis. Oct. 20, 2015) ........................................... 13

*Glauser v. GroupMe, Inc.*,
  No. C 11-2584 PJH, 2015 WL 475111 (N.D. Cal. Feb. 4, 2015) ................................. 11. 12

*Gragg v. Orange Cab Co.*,
  995 F. Supp. 2d 1189 (W.D. Wash. 2014) ......................................................................... 11

*Greene v. DirecTV, Inc.*,
  No. 10 C 117, 2010 WL 4628734 (N.D. Ill. Nov. 8, 2010) ................................................... 7

*Hedberg v. Ind. Bell Tel. Co.*,
   47 F.3d 928 (7th Cir. 1995) ..................................................................................................6

*Hill v. Homeward Residential, Inc.*,
   No. 2:13-cv-388, 2014 WL 4105580 (S.D. Ohio Aug. 19, 2014) ............................................9

*Jeffreys v. City of New York*,
   426 F.3d 549 (2d Cir. 2005)...................................................................................................10

*Kolinek v. Walgreen Co.*,
   No. 13 C 4806, 2014 WL 3056813 (N.D. July 7, 2014)............................................................8

*Luna v. Shac, LLC*,
   2015 WL 4941781 (N.D. Cal. Aug. 19, 2015) .......................................................................11

*Mackiewicz v. Nationstar Mortgage, LLC*,
   Case No.6:15-CV-00465 (M.D. Fla. Nov. 10, 2015) .............................................................13

*Marks v. Crunch San Diego, LLC*,
   No. 14-cv-00348-BAS-BLM, 2014 WL 5422976 (S.D. Cal. Oct. 23, 2014).........................12

*McKenna v. WhisperText*,
   No. 5:14-cv-00424-PSG, 2015 WL 428728 (N.D. Cal. Jan. 30, 2015)...................................12

*Moore v. Firstsource Advantage, LLC*,
   07–CV–770, 2011 WL 4345703 (W.D.N.Y. Sept.15, 2011)....................................................8

*Payton v. Kale Realty, LLC*,
   No. 13 C 8002, 2016 WL 703869 (N.D. Ill. Feb. 22, 2016).............................................6, 7, 8

*Reardon v. Uber Techs., Inc.*,
   115 F. Supp. 3d 1090, 1097 (N.D. Cal. 2015) .....................................................................7, 8

*In re Rules and Regs. Implementing Tel. Consumer Protection Act of 1991*,
   23 FCC Rcd. 559 (Jan. 4, 2008)...............................................................................................7

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,
   Report and Order, 7 FCC Rcd 8752 (Oct. 16, 1992) ............................................................7, 8

*Sharp v. Allied Interstate Inc.*,
   No. 12–CV–068S, 2014 WL 1224656 (W.D.N.Y. Mar. 25, 2014)..........................................8

*Spierer v. Rossman*,
   798 F.3d 502 (7th Cir. 2015) ...................................................................................................6

*Springer v. Durflinger*,
   518 F.3d 479 (7th Cir. 2008) ...................................................................................................6

*Thrasher-Lyon v. CCS Comm. LLC*,
  11 C 04473, 2012 WL 3835089 (N.D. Ill. Sept. 4, 2012) ........................................................... 8

*Zeidel v. YM LLC USA*,
  No. 13-cv-6989, 2015 WL 1910456 (N.D. Ill. April 27, 2015) ................................................ 8

**Statutes**

47 U.S.C. § 227(a)(1) ........................................................................................................................ 12

47 U.S.C. § 227(b)(1)(A) .................................................................................................................. 6

**Other Authorities**

23 F.C.C. Rcd 559, 2008 WL 65485 .......................................................................................... 7, 8

**I.      INTRODUCTION**

Plaintiffs Henry Espejo and Faye Levins claim that, without their express consent, Defendant Santander Consumer USA Inc. dialed their cell phone numbers using an "automatic telephone dialing system" (or "ATDS"), thus violating Telephone Consumer Protection Act (47 U.S.C. § 227, et seq.) ("TCPA").[1] But Plaintiffs' testimony, Santander's business records, and in Levins' case, a tape-recorded conversation, all provide conclusive proof Santander obtained the requisite express consent prior to dialing Plaintiffs' cell phone numbers. This express consent provides a complete defense to Plaintiffs' TCPA claims.

And even if Santander had not obtained this consent, Plaintiffs' TCPA claims still would fail because Santander did not employ an ATDS to make calls to either Plaintiff. The company's telephone equipment lacked the capacity to dial numbers stored or produced by a random or sequential number generator – an express statutory requirement of an ATDS – and relied on customer service agents clicking buttons to dial Espejo's and Levins' cell phone numbers from a manually assembled list – human intervention that takes Santander's telephone system outside the ATDS definition. Both the human intervention, and the lack of random or sequential number generation capacity, are fatal to Plaintiffs' TCPA claims.

As neither Espejo nor Levins can present a genuine issue of material fact as to the consent they provided, or the type of telephone equipment Santander used, their TCPA claims fail as matter of law. Santander, therefore, requests that the Court enter summary judgment against Espejo and Levins and in favor of Santander under Federal Rule of Civil Procedure 56(a).

---

[1] Although the *Bonner* matter (12-cv-09431) initially included the claims of five plaintiffs, all plaintiffs other than Levins voluntarily dismissed their claims. (Dkt. Nos. 15, 25 and 78.) Additionally, Levins voluntarily filed a stipulation to dismiss her contract and Fair Debt Collections Practice Act claims leaving only her TCPA claim. (Dkt. 90.)

1

**II.     FACTS**

     **A.     Mr. Espejo Gave Express Consent to Receive Calls to His 1411-ended Cell Phone Number.**

*Maria Espejo Identifies the 1411-ended Telephone Number
as Her Home Telephone.*

In June 2007, Maria Espejo, the wife of Plaintiff Henry Espejo, purchased a Toyota Corolla from Kendall Toyota in Miami, Florida, obtaining $15,742.22 in financing from Sovereign Bank. (Def.'s Local R. 56.1 Statement of Material Facts ("SOF"), filed contemporaneously herewith, ¶ 6.) When Sovereign later engaged Santander, a specialized consumer finance company that provides vehicle financing (SOF 7), as the third-party servicer on this loan, Mrs. Espejo began making monthly loan payments to Santander. (SOF 8.) Starting in mid-2009, however, Mrs. Espejo experienced financial difficulties that led to her using a 1411-ended telephone number to call Santander in June, September and October 2009, to discuss payment options for her loan. (SOF 9-12.) In one of those calls, Mrs. Espejo identified the 1411 telephone number as her "home" number and verified the number as an appropriate number on which to contact her regarding her loan. (SOF 11.)

*Henry Espejo Identifies the 1411-ended Telephone Number
as a Good Number at Which to Call.*

On November 4, 2009, Mr. and Mrs. Espejo together made a call to Santander using the 1411 telephone number. (SOF 13.) During that call, Mrs. Espejo agreed that Santander could talk to Mr. Espejo about her debt. (SOF 14.) In accordance with Santander's policy of verifying contact information (SOF 15), Santander then obtained Mr. Espejo confirmation that the 1411 telephone number was the appropriate telephone number at which to reach him, as Mr. Espejo confirmed in the following testimony:

        Q.     Did [the Santander agents] ever say in sum and substance, is this a
              good contact number for you, Mr. Espejo?

2

> A. Oh, for me?
>
> Q. Yes.
>
> A. Yeah, they would ask me, can we call you on this number?
>
> Q. What did you say?
>
> A. I said yes. I mean, it's my number.

(SOF 16.) At no point prior to the call with Mr. and Mrs. Espejo on November 4, 2009, did Santander make an outbound call to the 1411 telephone number. (SOF 17.)

### *Santander's Records Reflect Espejo's Calls with Santander*

In his Amended Complaint (*Espejo* Dkt. 30), Mr. Espejo claims that Santander violated the TCPA by calling his 1411-ended cell phone without his consent dozens of times as part of Santander's effort to collect his wife's debt, an estimate he later changed to "at least 500" after receiving Santander's records in discovery. (SOF 25.) Those records, which Santander maintains on its "My Supervisor" or "My Sup" customer account management system (SOF 26), include a notation at the account level for each time the company attempts to dial a customer-related telephone number, receives a customer call, or otherwise communicates with a customer. (SOF 27.) The information collected includes: the date and time of the call; whether the call is inbound to, or outbound from, Santander; and if answered, how the Santander agent "dispositioned" the call (*i.e.*, events that occurred on the phone call such as the customer service provided, customer payment promised or message left). (SOF 28.) Of the Santander-initiated calls to the 1411 telephone number reflected in those records, Mr. Espejo answered a call to the 1411 telephone number only four times, with the remaining calls either not reaching the number, receiving a busy signal or connecting to an answering machine. (SOF 29.) In contrast, the Santander records show Mr. Espejo or his wife used the 1411 telephone number to call Santander 25 times, with

3

Mr. Espejo speaking on behalf of his wife in 23 of those calls to discuss payment accommodations for Mrs. Espejo's debt. (SOF 30.)

### B. Levins Provided Express Consent to Receive Calls at All Three of Her Cell Phone Numbers.

Plaintiff Faye Levins purchased a 2007 Chevrolet Impala from Adamson Ford in Birmingham, Alabama on January 31, 2009 (SOF 31), financing $12,100 of the purchase price with Drive Financial Services, a company that subsequently merged into Santander. (SOF 32.) When Levins later missed payments on her loan, Santander contacted her by telephone, including at three cell phone numbers ending in 6954, 9678 and 6074. (SOF 34.)

Santander obtained the first of these numbers, *i.e.* 6954, from Levins' January 31, 2009 credit application, where she identified the 6954 telephone number as both her "home" and "cell" phone number. (SOF 35.) As Levins remembers reading at the time, her credit application expressly stated that:

> By providing my cell phone number, I give my prior express consent to receive calls and text messages from the creditor or its third party debt collector at that number, including calls and messages made by using an autodialer or prerecorded message.

(SOF 36.)[2] Levins provided Santander express consent to call her second phone number ending in 9678 in a May 14, 2012 tape-recorded call on which she identified her 9678 number as a current cell phone number that Santander could use to contact her. (SOF 38.)

Levins provided her third cell phone number ending in 6074 "probably in 2009 or 2010" (SOF 40), and, thereaafter, repeatedly verified this cell phone information to Santander's agents as a valid number at which to contact her. (SOF 41.) Levins also voluntarily provided the 6074 telephone number on her MoneyGram and Western Union payment applications to Santander

---

[2] Because Levins' consent to receive calls at the 6954 telephone number is so obvious, Levins' counsel has stipulated that the 6954 telephone number is not a basis for her TPCA claim. (SOF 37.)

4

from May 2010 to January 2011. (SOF 42.) In addition, at least one Santander agent identified Levins' 6074 number in Santander's activity notes as "IVR1 Home" (SOF 43 ) – a designation the agent could make only if Levins had informed the agent that this " home" telephone number was a good number on which to contact her. (SOF 44). Thus, like Mr. Espejo, Levins provided express consent for Santander to call all of her cell phone numbers.

### C. Santander's Telephone System.

Santander employed the Aspect Telephone System when making its outbound calls to Espejo and Levins. (SOF 48.) To make "manual" calls on this system, an account agent physically either mouse clicks on a number contained on a My Sup computer screen or types in the 10-digit number using a computer keypad. (SOF 49.) Santander also uses criteria (such as account behavior scores, account balances, new loan status, days past due and amounts past due) to identify a list of customer telephone numbers stored in My Sup for potential telephone calls using the outbound "dialer" feature of the Aspect Telephone System. (SOF 50.) The company's dialer operations team manually uploads the file containing this criteria-generated list to the Aspect Telephone System. (SOF 51.) Customer service agents then log into My Sup and press buttons on their computer screens to request calls. (SOF 52.) The Aspect Telephone System's dialer responds to these agent-initiated signals by dialing numbers from the uploaded list, using an algorithm designed to efficiently match available agents to answered calls. (SOF 53.) Only when agents log-in and press buttons indicating their availability will the dialer make outbound calls. (SOF 54.) Pursuant to these procedures, Santander used the Aspect Telephone System dialer feature to make calls to the 1411, 6954, 9678 and 6074 cell phone numbers. (SOF 55.) Plaintiffs believe all of these dialer assisted calls violate the TCPA.

**III.     SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmovant, shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. The party seeking summary judgment initially must inform the court of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," that demonstrate an absence of genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted); *Spierer v. Rossman*, 798 F.3d 502, 508 (7th Cir. 2015). To defeat a motion for summary judgment, the party opposing the motion must show that there is a genuine issue of material fact. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "If no reasonable jury could find for the party opposing the motion, it must be granted." *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir. 1995). It is, in other words, "'the put up or shut up moment in a lawsuit,'" where a party must show evidence sufficient to "convince a trier of fact to accept its version of events," and "hunches" as to what happened will not survive. *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (quoting *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007)).

**IV.     ARGUMENT**

    **A.     Santander Had Plaintiffs' Prior Express Consent to Contact the Telephone Numbers at Issue.**

Under the TCPA, a caller may use an ATDS to call a cell telephone if the consumer called has provided the caller with "prior express consent" to call that number. *Payton v. Kale Realty, LLC*, No. 13 C 8002, 2016 WL 703869, at *9 (N.D. Ill. Feb. 22, 2016). As the statute

6

itself specifically provides, only calls to cell telephones "*made with[out] the prior express consent of the called party*" are subject to the Act's ATDS prohibition. *See* 47 U.S.C. § 227(b)(1)(A). Prior express consent, in other words, provides a complete defense to a TCPA claim. *Reardon v. Uber Techs., Inc.*, 115 F. Supp. 3d 1090, 1097 (N.D. Cal. 2015); *Greene v. DirecTV, Inc.*, No. 10 C 117, 2010 WL 4628734, at *3 (N.D. Ill. Nov. 8, 2010) (where defendant shows consent, TCPA claims fail as a matter of law).

A determination of what constitutes prior express consent starts with the guidance provided in the Federal Communications Commission ("FCC") 1992 order interpreting the TCPA. *See Payton*, 2016 WL 703869, at *9; *Reardon*, 115 F. Supp. 3d at 1097. In that order, the FCC held:

> [P]ersons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary.

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 7 FCC Rcd 8752 , 8769 , ¶ 31 (Oct. 16, 1992). Sixteen years later, in 2008, the FCC reiterated this interpretation, and further found that "autodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the 'prior express consent' of the called party." *In re Rules and Regs. Implementing Tel. Consumer Protection Act of 1991*, 23 FCC Rcd. 559, ¶ 9 (Jan. 4, 2008) ("2008 FCC Order"). As the FCC further stated, "the provision of a cell phone number to a creditor, *e.g.,* as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt," a result consistent with Congress' intent that the Act's restrictions "'do[ ] not apply when the called party has provided the telephone number of such a line to the caller for use in normal business communications.'" 23 F.C.C. Rcd 559, 564,

2008 WL 65485 (quoting H.R. Rep. 102-317, at 17); *see also In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 7 FCC Rcd. 8752, 8771- 72, ¶ 36 (FCC clarifies that "all debt collection circumstances involve a prior or existing business relationship"). In addition, courts have held that express consent obtained after consummating a credit transaction, can also satisfy the statutory requirement. *See*, *e.g.*, *Sharp v. Allied Interstate Inc.*, No. 12–CV–068S, 2014 WL 1224656, at *2 (W.D.N.Y. Mar. 25, 2014); *Moore v. Firstsource Advantage, LLC,* 07–CV–770, 2011 WL 4345703 (W.D.N.Y. Sept.15, 2011).

Given this FCC guidance, courts across the country have held as a general rule that providing a cellular number constitutes prior express consent to dial that telephone number no matter what the purpose of the call. *Payton*, 2016 WL 703869, at *9 (citing cases); *Reardon*, 115 F. Supp. 3d at 1097 (court notes that the "vast majority of cases" hold that a "telephone customer who provides her number to another party consents to receive calls or texts from that party"). Recently, however, a few courts in this district, relying in part on further 2014 FCC guidance, have limited the scope of the consent provided "to the purpose for which it was originally granted." *Zeidel v. YM LLC USA*, No. 13-cv-6989, 2015 WL 1910456, at *3 (N.D. Ill. April 27, 2015); *see also Payton*, 2016 WL 703869, at *9; *Kolinek v. Walgreen Co.*, No. 13 C 4806, 2014 WL 3056813, at * 4 (N.D. July 7, 2014). That a consumer gives his consent in the context of a debt transaction, however, allows subsequent calls regarding that debt to fall within even this more limited scope. *See Thrasher-Lyon v. CCS Comm. LLC*, 11 C 04473, 2012 WL 3835089, at *3 (N.D. Ill. Sept. 4, 2012) (FCC found that giving phone information constituted express consent in creditor/debtor context). As stated by one court:

> The thrust of the FCC's Rulings is that a person need not specifically consent to be contacted using an autodialer or artificial or prerecorded voice. Rather, a

8

>person who knowingly provides his telephone number to a creditor in connection with a debt is agreeing to allow the creditor to contact him regarding his debt, regardless of the means.

*Hill v. Homeward Residential, Inc.*, No. 2:13-cv-388, 2014 WL 4105580, at *5 (S.D. Ohio Aug. 19, 2014) (citation omitted).

Here Mr. Espejo gave his prior express consent to call his 1411 cell telephone number in connection with Santander's collection efforts on his wife's debt on November 4, 2009. (SOF 16.) At no time prior to that date did Santander attempt to call the 1411 telephone number. (SOF 17.) Levins also provided prior express consent on all three of her cell phone numbers, either through her credit application (for 6954), (SOF 35), in a tape recorded conversation (for 9678) (SOF 38), and as admitted by Levins and corroborated by relevant documents and Santander's records (for 6074). (SOF 40-44.) As both Mr. Espejo and Levins gave prior express consent to contact them at their cell phone numbers before Santander made any dialer calls to those numbers, their TCPA claims must fail.

Plaintiffs' vague claims of revocation at their depositions do not alter this result. As an initial matter, both Espejo and Levins confirmed they told Santander their cell telephone numbers were good numbers at which to contact them – consent corroborated by Santander's contemporaneous business records. (SOF 11, 16, 35-36, 38, 40-44.) Mr. Espejo, however, claimed to have revoked that consent in conversations with Santander, purportedly when Santander initiated calls to his cell phone number. (SOF 18.) But Santander's contemporaneous records do not reflect any such request from Mr. Espejo even though Santander's policies require agents to record "do not call" requests. (SOF 19.) In fact, contrary to his suggestion that he told Santander "a lot of times" not to call him, Santander's records reflect that he only picked up a Santander-initiated call four times over the relevant three-year period, and then spoke only about getting a deferment for his wife or making a promise to pay on her behalf. (SOF 20-21.) All

9

other conversations with Mr. Espejo (both before and after these four calls) took place on inbound calls to Santander where he sought accommodations for his wife. (SOF 22.) As Espejo acknowledged, not only did he fail to revoke his prior express consent on such in-bound calls, but he also confirmed his cell phone number as a good contact number. (SOF 24.) Given the multiple times in which Espejo called using the 1411-ended number, the express consent he gave on those calls, and the absence of any record evidence of revocation on the four calls he answered, Espejo's revocation claims lack any credibility.

Levins similarly claimed to have asked Santander to stop calling her, but admitted that she cannot remember any of the details related to those requests except that she asked a supervisor to "address[ ] the issue of why are you calling so many times" after payment arrangements had been made. (SOF 45.) In fact, as Levins clarified, she expected Santander would resume contacting her at the telephone numbers she had provided if she missed another car payment. (SOF 46.) Moreover, nothing in Santander's account notes supports her contention that she ever made a request to stop all further calls. (SOF 47.)

A court can properly enter summary judgment where (1) nothing in the record supports a plaintiff's allegations other than the plaintiff's own contradictory and incomplete testimony and (2) "'no reasonable person could believe [plaintiff's] testimony.;" *Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d Cir. 2005) (citation omitted); *see also Boyce v. Carter*, No. 12 C 5372, 2014 WL 4436384, at *13 (N.D. Ill. Sept. 8, 2014)(follows *Jeffries*). Here, neither Espejo nor Levins can provide any detail regarding their purported revocation (*e.g.*, the dates and content of such revocation) nor any contemporaneous corroboration of revoking their admitted identification of their cell phone numbers as good numbers at which to contact them. Because neither Espejo nor Levins presents anything other than vague, contradictory and uncorroborated

statements about purportedly asking for Santander to stop calling their cell phone numbers, they do not create an issue of material fact that precludes summary judgment here.

### B.     Santander Did Not Employ an ATDS.

#### 1.     Santander's Use of a Dialer Depends on Human Intervention.

To succeed on a TCPA claim, a plaintiff must show as an element of the claim that the defendant used an ATDS to call plaintiff's cell phone. *See Buslepp v. Improv Miami, Inc.*, No. 12-60171-CIV., 2012 WL 4932692, at *2 (S.D. Fla. Oct. 16, 2012). As the FCC stated in the 2008 FCC Order, the capacity to dial numbers without human intervention is a basic and defining function of an ATDS. *Glauser v. GroupMe, Inc.*, No. C 11-2584 PJH, 2015 WL 475111, at *6 (N.D. Cal. Feb. 4, 2015). Thus, where the application making a call does so in reaction to a human activity, the application does not meet the definition of "autodialer" under the Act or the FCC's subsequent TCPA interpretations. *See id.* (granting summary judgment against plaintiff's TCPA claim where defendant sent texts to a list of telephone numbers assembled by a human); *Luna v. Shac, LLC*, 2015 WL 4941781, at *5 (N.D. Cal. Aug. 19, 2015) (granting defendant summary judgment on TCPA claim where system sent texts to a human-developed list of cell telephone numbers when the sender clicked "send" on a website).

Here, Santander compiles a list of numbers using criteria that change every day and manually lodes that list into its dialer for potential calls during the day. (SOF 50-51.) The dialer then dials numbers on those lists but *only* when agents click buttons on their computer screens to request a call. (SOF 54.) Santander's dialing system thus relies on human intervention in the same way as the cab company in *Gragg v. Orange Cab Co.*, 995 F. Supp. 2d 1189 (W.D. Wash. 2014). In that case, the cab company's computerized dispatch system sent a text message to its customer's cell phone when its driver pressed a button to accept a ride request. The court held the cab company did not employ an ATDS because the system could "dial and transmit the

11

dispatch notification only after the driver has physically pressed 'accept'" – thus making "human intervention … essential." *Id.* at 1194.

Other courts have similarly held that dialing systems that require a user to affirmatively start the dialing process, even if to multiple numbers at the same time, employ human intervention and thus do not qualify as ATDS. *See McKenna v. WhisperText*, No. 5:14-cv-00424-PSG, 2015 WL 428728, at *3 (N.D. Cal. Jan. 30, 2015) (application that sent multiple text invitations only at the user's affirmative direction involved human intervention); *Derby v. AOL, Inc.*, No. 15-cv-00452-RMW, 2015 WL 3477658, at *3 (N.D. Cal. June 1, 2015) (text messages sent when customers directed defendant to send messages involved human intervention). Still other courts have found essential human intervention where the dialing scheme depended upon human curation of the list of numbers called and a manual upload of phone numbers onto the calling platform. *See Marks v. Crunch San Diego, LLC*, No. 14-cv-00348-BAS-BLM, 2014 WL 5422976, at *3 (S.D. Cal. Oct. 23, 2014); *see also Glauser v. GroupMe, Inc.*, 2015 WL 475111, at *6 (human intervention involved where defendant sent welcome texts to groups of numbers provided by users). As Santander's use of the dialer relies on human intervention to both manually load curated lists and to initiate the dialing of those numbers, it is not an ATDS.

### 2. Santander's Telephone System Does Not Employ a Random or Sequential Number Generator.

The TCPA defines an ATDS as "equipment which has the ***capacity***—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. 227(a)(1) (emphasis added). Like most modern dialers, Santander's telephone system does not have the capacity to generate and dial numbers via a "random or sequential number generator." The FCC, however, has defined "capacity" expansively to include the "*future* capacity" to generate and dial random or sequential numbers

12

through changes in hardware or software –*i.e.*, all "potential functionalities." (*See* July 10, 2015 FCC Ruling at ¶ 11 and ¶ 16 (App. 227-28).) As a result, the "rotary-dial phone" is the only type of equipment the FCC concedes cannot be converted into an autodialer.

Not surprisingly, the FCC's incredibly overbroad and vague definition of what constitutes an ATDS generated a swift appeal to the D.C. Circuit Court of Appeals. In *ACA International v. Federal Communications Commission*, Case No. 15-1211, the petitioner challenges the FCC's Ruling as arbitrary and capricious, an abuse of discretion, and inconsistent with various constitutional provisions. (*See* ACA Amended Petition at 3 (App. 264).) The petitioner further challenges earlier FCC decisions regarding whether "predictive dialers" fall within the ATDS definition, claiming those interpretations also exceed the FCC's statutory authority and go beyond Congress's intent under the TCPA. (*Id.*) While cognizant that this Court – unlike the *ACA International* appellate court – must give weight to the FCC orders pursuant to the Hobbs Act, Santander adopts the arguments made by the *ACA International* petitioner. Arbitrary determinations inconsistent with Congressional intent and which exceed the FCC's statutory authority should be rejected.[3]

---

[3] The argument that the "capacity" definition includes hypothetical future capabilities and, more particularly all predictive dialers, no matter what the equipment's random or sequential number generating capacity, is central to the TCPA claims Espejo and Levins make here. Thus, the outcome of the *ACA International* petition will have a direct and substantial impact in this case. A number of federal courts recently have granted motions to stay based on the pendency of the *ACA Int'l* appeal. *See, e.g.*, *Chattanond v. Discover Fin. Servs., LLC*, No. 2:15-cv-08549-RSWL-JC, (C.D. Cal. Feb. 26, 2016) (App.272-82); *Abplanalp v. United Collection Bureau, Inc.*, No. 3:15-CV-203-RJC-DCK, 2016 WL 81498, at *2-3 (W.D.N.C. Jan. 7, 2016); *Acton v. Intellectual Capital Mgmt., Inc.,* No. 15-CV-4004(JS)(ARL), 2015 WL 9462110 (E.D.N.Y. Dec. 28, 2015); *Fontes v. Time Warner Cable Inc.*, Case No. CV14-2060-CAS (CWx), 2015 WL 9272790 (C.D. Cal. Dec. 17, 2015); *Mackiewicz v. Nationstar Mortgage, LLC*, Case No.6:15-CV-00465 (M.D. Fla. Nov. 10, 2015) (App. 283-85); *Gensel v. Performant Techs., Inc.*, No. 13 C 1196, 2015 WL 6158072 (E.D. Wis. Oct. 20, 2015). To the extent that this Court's decision on whether Santander uses an ATDS depends on the FCC's overbroad "capacity" interpretation, the Court should stay its ruling until the D.C. Circuit's decision on this critical issue.

## V. CONCLUSION

Both Espejo and Levins gave express consent for Santander to call their cell phone numbers, a complete defense to their TCPA claims. That Santander did not employ an ATDS to call these numbers only further undermines Plaintiffs' TCPA claims. The Court, therefore, should grant summary judgment against Mr. Espejo and Ms. Levins and in favor of Santander.

Dated: April 21, 2016            Respectfully submitted,

**SANTANDER CONSUMER USA, INC.**,
*Defendant*

By:   s/ James A. Rolfes
         One of Its Attorneys

| | | |
|---|---|---|
| James A. Rolfes | Abraham J. Colman | Marc A. Lackner |
| (Bar No. 6200271) | *pro hac vice* | *pro hac vice* |
| *jrolfes@reedsmith.com* | *acolman@reedsmith.com* | *mlackner@mcguirewoods.com* |
| Henry Pietrkowski | REED SMITH LLP | David S. Reidy |
| (Bar No. 6230048) | 355 South Grand Avenue | *dreidy@mcguirewoods.com* |
| *hpietrkowski@reedsmith.com* | Los Angeles, CA 90071 | MCGUIRE WOODS LLP |
| REED SMITH LLP | (213) 457-8000 | 505 Sansome Street, Suite 700 |
| 10 South Wacker Drive | | San Francisco, CA 94111 |
| Chicago, IL 60606 | | (415) 844-1974 |
| (312) 207-1000 | | |

14

**CERTIFICATE OF SERVICE**

    I, James A. Rolfes, state that on April 21, 2015, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification to all parties.

                                            */s/* James A. Rolfes