## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| HENRY ESPEJO, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>    *v.*<br><br>SANTANDER CONSUMER USA INC., an Illinois corporation,<br><br>*Defendant.* | Case No.: 1:11-cv-08987<br><br>Honorable Charles P. Kocoras |

| | |
|---|---|
| ARICA BONNER, *et al.*, on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>SANTANDER CONSUMER USA INC.,<br><br>*Defendant.* | Case No.: 12-cv-09431<br><br>Honorable Charles P. Kocoras |

## DEFENDANT'S LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS

NOW COMES Santander Consumer USA, Inc., by its undersigned attorneys, and

pursuant to Local Rule 56.1 submit this Statement of Material Facts as to which there is no

genuine issue and that entitle Santander to judgment as a matter of law:

## I.   DESCRIPTION OF THE PARTIES AND FACTS SUPPORTING VENUE AND JURISDICTION.

1.       Plaintiff Henry Espejo ("Espejo") is domiciled in the State of Florida.  (Espejo

First Am. Complt. (Dkt. 30) ¶ 6.)

2.       Plaintiff Faye Levins ("Levins") is a citizen of the State of Alabama.  (Bonner

Sec. Am. Complt. (Dkt. 29) ¶ 2.)

3.       Santander is an Illinois corporation with its principal place of business in Texas. (Espejo First Am. Complt. (Dkt. 30) ¶ 7; Bonner Sec. Am. Complt. (Dkt. 29) ¶ 6.)

4.       Esepejo and Levins each assert a claim against Santander under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.* Accordingly, this Court has subject matter jurisdiction under 28 U.S.C. § 1331. (Espejo First Am. Complt. (Dkt. 30) ¶ 8; Bonner Sec. Am. Complt. (Dkt. 29) ¶6.)

5.       Venue is proper in this District because Santander is incorporated in Illinois and subject to the general and personal jurisdiction of the Court. (Espejo First Am. Complt. (Dkt. 30) ¶ 10; Bonner Sec. Am. Complt. (Dkt. 29) ¶ 9.)

## II.       UNCONTESTED FACTS ENTITLE DEFENDANT TO SUMMARY JUDGMENT.

### A.       Espejo

6.       In June 2007, Maria Espejo, the wife of Plaintiff Henry Espejo, purchased a Toyota Corolla from Kendall Toyota in Miami, Florida, obtaining $15,742.22 in financing from Sovereign Bank. (Santander0420-0421 (App. 214-15); Nightengale Declaration ("Decl.") ¶ 9.)

7.       Santander, a specialized consumer finance company that provides vehicle financing, became the third-party servicer on Maria Espejo's loan. (Decl. ¶ 9.)

8.       After Santander became the third-party servicer on Mrs. Espejo's loan, Mrs. Espejo made monthly loan payments to Santander. (10/22/14 Nightengale Dep. at 92:20-24 (App.212); 12/03/14 M. Espejo Dep. at 43:4-8, 44:11-14 (App. 156-57).)

9.       On June 26, 2009, Mrs. Espejo contacted Santander on a 1411-ended telephone number to indicate that she would keep an earlier promise to make a payment by that date. (SCUSA/E 0801 (App. 090); Decl. ¶ 12.)

10. On September 9, 2009, Mrs. Espejo called Santander using the 1411 telephone number to ask for additional time to make the next payment as a result of her need to pay medical expenses. (SCUSA/E 0800 (App. 090); Decl. ¶ 13.)

11. During a September 9, 2009 call, Mrs. Espejo identified the 1411 telephone number as her "home" number and verified the number as an appropriate number on which to contact her regarding her loan. (SCUSA/E 0801 (App. 090); Decl. ¶ 12.)

12. Mrs. Espejo used the 1411 telephone number to contact Santander on October 27, 2009, when she indicated that a family emergency caused her not to make a timely loan payment. (SCUSA/E 0800 (App. 089); Decl. ¶ 14.)

13. On November 4, 2009, Mr. and Mrs. Espejo together made a call to Santander using the 1411 telephone number to explain that Mr. Espejo's bank had not yet made a payment Mrs. Espejo had said Mr. Espejo would make on her behalf. (SCUSA/E 0799-800 (App. 088-89); Decl. ¶ 15.)

14. During a November 4, 2009 call, Mrs. Espejo agreed that Santander could talk to Mr. Espejo about her debt. (SCUSA/E 0799-800 (App. 088-89); Decl. ¶ 15.)

15. Santander by policy verifies contact information. (07/17/15 Nerios Dep. at 51:7 to 52:8 (App. 193-94).)

16. On a November 4, 2009 call, and in subsequent calls with Mr. Espejo, Santander obtained Mr. Espejo's confirmation that the 1411 telephone number was the appropriate telephone number at which to reach him. (SCUSA/E 0800 (App. 089); 12/02/14 H. Espejo Dep. at 74:5-12 (App. 151).)

17.     At no point prior to the call with Mr. and Mrs. Espejo on November 4, 2009, did Santander make an outbound call to the 1411 telephone number. (SCUSA/E 0799-0802 (App. 088-91); Decl. ¶ 17.)

18.     Mr. Espejo claimed to have revoked that consent in conversations with Santander, purportedly when Santander initiated calls to his cell phone number. (12/04/14 H. Espejo Dep. at 97:11-18, 144:13 to 145:23 (App. 152-54).)

19.     Santander's contemporaneous records do not reflect any do-not-call request from Mr. Espejo even though Santander's policies require agents to record "do not call" requests. (Decl. ¶ 20-21.)

20.     Contrary to his suggestion that he told Santander "a lot of times" not to call him when Santander made calls to the 1411 telephone number, Mr. Espejo picked up a Santander-initiated call only four times over the relevant three-year period. (12/03/14 H. Espejo Dep. at 145:13-23 (App. 154); Decl. ¶ 18.)

21.     When Mr. Espejo answered the four calls from Santander, he spoke only about getting a deferment for his wife or making a promise to pay on her behalf. (Decl. ¶ 19.)

22.     All other conversations with Mr. Espejo (both before and after the four calls referred to in SOF 20-21) took place on inbound calls to Santander. (Decl. ¶ 21.)

23.     On the inbound calls to Santander, Mr. Espejo sought accommodations for his wife. (*Id.*)

24.     Mr. Espejo acknowledged that, not only did he fail to revoke his prior express consent when speaking on in-bound calls to Santander, he also confirmed his cell phone number as a good contact number in those calls. (H. Espejo Dep. at 74, 97, 144-145; (App. 151-54).)

25.     In his Amended Complaint (11-8987 Dkt. 30), Mr. Espejo claims Santander called his cell phone dozens of times as part of Santander's effort to collect his wife's debt, an estimate he later changed to "at least 500" after receiving Santander's records in discovery. (Espejo First Am. Complt. (11-8987 Dkt. 30) at ¶ 14; Resp. to Interrogatory No. 4 (App. 222); Supp. Answer to Interrogatory No. 4 in Def.'s First Set of Interrogatories (App. 234-35).)

26.     Santander maintains its customer records on its "My Supervisor" or "My Sup" customer account management system. (10/22/14 Nightengale Dep. at 52:25 to 53:9 (App. 202-03).)

27.     The customer information that Santander maintains on My Sup at an account level includes a notation for each time the company attempts to dial a customer-related telephone number, receives a customer call, or otherwise communicates with a customer. (10/22/14 Nightengale Dep. at 47:19-22, 50:22 to 51:2, 82:18-21 (App. 199-201, 211); 07/17/15 Nerios Dep. at 24:1-6 (App. 186).)

28.     The call-related information Santander collects in My Sup. includes: the date and time of the call; whether the call is inbound to, or outbound from, Santander; and if answered, how the Santander agent "dispositioned" the call (*i.e.*, events that occurred on the phone call such as the customer service provided, customer payment promised or message left). (10/22/14 Nightengale Dep. at 47:19-22, 74:2-22 (App. 199, 210).)

29.     Of all the Santander-initiated calls to the 1411 telephone number, Mr. Espejo answered a call to the 1411 telephone number only 4 times (on November 12, 2009, March 8, 2010, August 30 2010 and December 6, 2010), with the remaining calls either not reaching the number, receiving a busy signal or connecting to an answering machine. (SCUSA/E 0799, 0792, 0783, 0778 (App. 067, 072, 081, 088); Decl. ¶ 19.)

30.     Mr. Espejo or his wife used the 1411 telephone number to call Santander 25

times, with Mr. Espejo speaking on behalf of his wife in 23 of those calls to discuss payment

accommodations for Mrs. Espejo's debt.  (Decl. ¶ 21.)

**B.     Levins**

31.     Plaintiff Faye Levins purchased a 2007 Chevrolet Impala from Adamson Ford in

Birmingham, Alabama on January 31, 2009. (07/14/15 F. Levins Dep. at 30:14-18 (App. 159);

SCUSA/B 43-46 (App. 43, 45-46).)

32.     Levins financed $12,100 of the purchase price of her car with Drive Financial

Services. (F. Levins Dep. Ex. 8, SCUSA/B 43, 45-46 (App.216-18); SCUSA/B 50 (App. 219);

Decl. ¶ 24.)

33.     Drive Financial Services merged into Santander after Levins received her car

loan. (Decl. ¶ 24.)

34.     When Levins missed payments on her loan, Santander contacted her by telephone,

including at three cell phone numbers ending in 6954, 9678 and 6074. (Pl. Faye Levins' First

Supp. Ans. To Def.'s First Set of Interrogatories, Resp. to Interrog. 3 (App. 240-60); Decl. ¶ 23.)

35.     Santander obtained the 6954 telephone number from Levins' January 31, 2009

credit application, on which she identified the 6954 telephone number as both her "home" and

"cell" phone number. (07/14/15 F. Levins Dep. at 30:5-13, 31:1-6 (App. 159-60) and Ex. 6,

SCUSA/B 00053-54 (App. 126-27); 07/17/15 Nerios Dep. at 26:17 to 27:9 (App. 187-88).)

36.     Levins remembers reading at the time she completed her credit application, the

credit application expressly stated that:

> By providing my cell phone number, I give my prior express
> consent to receive calls and text messages from the creditor or its
> third party debt collector at that number, including calls and
> messages made by using an autodialer or prerecorded message.

(07/14/15 F. Levins Dep. at 34:20-35:80 (App. 161-62) and Ex. 6, SCUSA/B 00053-54 (App. 126-27)).)

37. Because Levins' consent to receive calls at this number is so obvious, Levins' counsel has stipulated that the 6954 number is not basis for her TCPA claim. (07/14/15 F. Levins Dep. at 94:13-22 (App. 168).)

38. Levins provided Santander express consent to call her second phone number ending in 9678 in a May 14, 2012 tape-recorded call on which she identified her 9678 number as a current cell phone number that Santander could use to contact her. (07/14/15 F. Levins Dep. at 113:8-12, 114:8-15 (App. 175-76); audio recording of the May 14, 2012 phone call (SCUSA-B 00076 (App. 128).)

39. Before May 14, 2012, Santander had made only manually dialed calls to Levins on the 9678 number which took place on May 4, 7 and 10, 2012. (07/14/15 F. Levins Dep. at Ex. 13 (App. 092-125); SCUSA/B 00001-00003 (App. 092-94).)

40. Levins provided Santander the cell phone number ending in 6074 "probably in 2009 or 2010." (07/14/15 F. Levins Dep. at 102:12-22 (App. 169).)

41. In years subsequent to providing the 6074 telephone number, Levins repeatedly verified this cell phone information to Santander's agents as a valid number at which to contact her. (07/14/15 F. Levins Dep. at 76:11-23, 77:18-79:4, 114:8-22 (App. 164-67, 196) and Ex. 13 (App. 092-125).)

42. Levins voluntarily provided the 6074 telephone number on her MoneyGram and Western Union payment applications to Santander from May 2010 to January 2011. (07/14/15 F. Levins Dep. at 108:6-111:3 (App. 170-73) and Ex. 13, SCUSA/B 00023-24, 00027-28 (App. 114-15, 118-19).)

43.    Santander's Activity Notes identified Levins' 6074 number in Santander's activity notes as "IVR1 Home." (SCUSA/B 34 (App. 125); 07/17/15 Nerios Dep. at 38:8 to 39:4 (App. 190-91).)

44.    A Santander customer agent can designate the 6074 telephone number as "IVR1 Home" only if Levins had informed the agent that this " home" telephone number was a good number on which to contact her. (07/17/15 Nerios Dep. at 37:22 to 40:6, 51:21-24 (App. 189-93).)

45.    Levins recalls asking a supervisor to "address[ ] the issue of why are you calling so many times" after payment arrangements had been made. (07/14/15 F. Levins Dep. at 115:3-20, 117:11-118:5 (App. 177, 179-80).)

46.    Even after having the discussion referred to in SOF 45, Levins expected Santander would resume contacting her at the telephone numbers she had provided if she missed another car payment.  (07/14/15 F. Levins Dep. at 114:23-116:21, 179:5-17 (App. 176-78, 184).)

47.    Nothing in Santander's Activity Notes indicates that Levins ever made a request to stop all calls to any of her cell phone numbers.  (07/14/15 F. Levins Dep. at 122:4-9 (App. 181) and  Activity Notes  (App. 092 - 125); see also F. Levins Dep. at 72:10-17 (testifying that she had no reason to believe that Santander's account notes were not accurate) (App. 183).)

**C.    Telephone System**

48.    Santander employed the Aspect Telephone System when making its outbound calls to Espejo and Levins. (10/22/14 Nightengale Dep. at 42:2-18 (App. 197).)

49.    To make manual calls on the Aspect Telephone System, an account agent can either mouse click on a number contained on a My Sup computer screen or type in the 10-digit number using the computer keyboard. (10/22/14 Nightengale Dep. at 110:3-9 (App.213);

07/21/15 Burda Dep. at 75:22 to 76:3, 79:3-7; 104:14 to 105:17 (App. 141-43, 145-46);

SCUSA/E 202 (App. 221).)

50.     Santander also uses criteria (such as account behavior scores, account balances, new loan status, days past due and amounts past due) to identify a list of customer telephone numbers stored in My Sup for potential telephone calls using the "dialer" feature of the Aspect Telephone System. (10/22/14 Nightengale Dep. at 58:25 to 60:7 (App. 204-06); 07/21/15 Burda Dep. at 43:19 to 44:23 (App. 133-34); 07/17/15 Nerios Dep. at 91:2-6 (App. 195).)

51.     The company's dialer operations team manually uploads the file containing this criteria-generated list to the Aspect Telephone System. (10/22/14 Nightengale Dep. at 62:21 to 63:16 (App. 207-08); 07/21/15 Burda Dep. at 41:21 to 42:1 (App. 131-32).)

52.     Customer service agents then log into My Sup and press buttons on their computer screens to request calls. 910/22/14 Nightengale Dep. at 68:7-22 (App. 209); 07/21/15 Burda Dep. at 46:18 to 47:2, 47:24 to 48:4 (App.135-37).)

53.     The dialer responds to these agent-initiated signals by dialing numbers from the uploaded list, using an algorithm designed to efficiently match available agents to answered calls. (10/22/14 Nightengale Dep. at 44:18-25 (App. _198); 07/21/15 Burda Dep. at 66:14-18, 68:7 to 69:16, 90:7-15 (App. 138-40, 144); SCUSA/E 202, 698 (App. 221, 223).)

54.     Only when agents log-in and press buttons indicating their availability will the dialer make outbound calls. (07/21/15 Burda Dep. at 112:01 to 114:21 (App. 147-49).)

55.     Santander used the Aspect Telephone System dialer to make calls to 1411, 6954, 9678 and 6074 cell phone numbers. (Decl. ¶ 10.)

Date:  April 21, 2016                    Respectfully submitted,


                                         **SANTANDER CONSUMER USA, INC.,**
                                         *Defendant*


                                         By:     /s/ James A. Rolfes
                                             One of Its Attorneys


| | | |
|---|---|---|
| James A. Rolfes | Abraham J. Colman | Marc A. Lackner |
| (Bar No. 6200271) | *pro hac vice* | *pro hac vice* |
| *jrolfes@reedsmith.com* | *acolman@reedsmith.com* | *mlackner@mcguirewoods.com* |
| Henry Pietrkowski | REED SMITH LLP | David S. Reidy |
| (Bar No. 6230048) | 355 South Grand Avenue | *pro hac vice* |
| *hpietrkowski@reedsmith.com* | Los Angeles, CA 90071 | *dreidy@mcguirewoods.com* |
| REED SMITH LLP | (213) 457-8000 | MCGUIRE WOODS LLP |
| 10 South Wacker Drive | | 505 Sansome Street |
| Chicago, IL 60606 | | Suite 700 |
| (312) 207-1000 | | San Francisco, CA 94111 |
| | | (415) 844-1974 |

*Attorneys for Defendant Santander Consumer USA, Inc.*

## CERTIFICATE OF SERVICE

I, James A. Rolfes, state that on April 21, 2015, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification to all parties.


*/s/* James A. Rolfes