**TAB 13**

# RETAIL INSTALLMENT SALE CONTRACT
## SIMPLE FINANCE CHARGE

Dealer Number _____  Contract Number _____

| Buyer (and Co-Buyer) Name and Address (Including County and Zip Code) | Creditor - Seller (Name and Address) |
|---|---|
| MARIA C ESPEJO | KENDALL TOYOTA<br>10943 S DIXIE HWY<br>MIAMI FL 33156 |
| Buyer's Month of Birth: | |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Creditor - Seller (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge according to the payment schedule below. We will figure your finance charge on a daily basis at the Base Rate of 8.33 % per year. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used/Demo | Year | Make and Model | Weight (lbs.) | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| USED | 2007 | TOYOTA COROLLA | | 2T1BR32E67C771961 | ☐ personal, family or household<br>☐ business<br>☐ agricultural   ☐ |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $2695.00 is |
|---|---|---|---|---|
| 8.33 % | $ 4503.28 | $ 15742.22 | $ 20245.50 | $ 22940.50 |

### Your Payment Schedule Will Be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 75 | 269.94 | Monthly beginning 07/26/2007 |

Or As Follows:

**Late Charge.** If payment is not received in full within 10 days after it is due, you will pay a late charge of 5 % of the part of the payment that is late.

**Prepayment.** If you pay off all your debt early, you may have to pay a penalty.

**Security Interest.** You are giving a security interest in the vehicle being purchased.

**Additional Information:** See this contract for more information including information about nonpayment, default, prepayment penalties, any required repayment in full before the scheduled date and security interest.

### ITEMIZATION OF AMOUNT FINANCED

| | | |
|---|---|---|
| 1 Cash Price (including $ 988.82 sales tax) | $ 16635.82 | (1) |
| 2 Total Downpayment = | | |
| Trade-In _____<br>        (Year)      (Make)            (Model) | | |
| Trade-In _____<br>                              (VIN) | | |
| Gross Trade-In Allowance | $ N/A | |
| Less Pay Off Made By Seller | $ N/A | |
| Equals Net Trade In | $ N/A | |
| + Cash | $ 2695.00 | |
| + Other N/A | $ N/A | |
| (If total downpayment is negative, enter "0" and see 4I below) | $ 2695.00 | (2) |
| 3 Unpaid Balance of Cash Price (1 minus 2) | $ 13940.82 | (3) |
| 4 Other Charges Including Amounts Paid to Others on Your Behalf<br>(Seller may keep part of these amounts): | | |
| A Cost of Optional Credit Insurance Paid to Insurance Company or Companies. | | |
| Life        $ N/A | | |
| Disability    $ N/A | $ N/A | |
| B Vendor's Single Interest Insurance Paid to Insurance Company | $ N/A | |
| C Other Insurance Paid to Insurance Company or Companies | $ 695.00 | |
| D Official Fees Paid to Government Agencies | | |

**Insurance.** You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest Insurance is required is checked below. Your decision to buy or not buy other insurance will not be a factor in the credit approval process. Your choice of insurance providers will not affect our decision to sell you the vehicle or extend credit to you.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

Check the insurance you want and sign below:
### Optional Credit Insurance

☐ Credit Life:   ☐ Buyer  ☐ Co-Buyer  ☐ Both
Term N/A

☐ Credit Disability (Buyer Only)
Term N/A

Premium:

Credit Life $ N/A

Credit Disability $ N/A

Insurance Company Name N/A

Home Office Address N/A

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not to buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments.

If the box above is checked to indicate that you want credit life insurance, please read and sign the following acknowledgments:
1. You understand that you have the option of assigning any other policy or policies you own or may procure for the purpose of covering this extension of credit and that the policy need not be purchased from us in order to obtain the extension of credit.

X _____
Buyer                              Date

X _____
Co-Buyer                          Date

2. You understand that the credit life coverage may be deferred if, at the time of application, you are unable to engage in employment or unable to perform normal activities of a person of like age and sex. (You need not sign this acknowledgement if the proposed credit life insurance policy does not contain this restriction.)

X

SANTANDER0420

| | | | |
|---|---|---|---|
| H | LIC FEE | $ | 270.00 |
| | Government Certificate of Title Fees | $ | N/A |
| I | Other Charges (Seller must identify who is paid and describe purpose) | | |
| | to N/A for Prior Credit or Lease Balance | $ | N/A |
| | to N/A for N/A | $ | N/A |
| | to EWS/KENDAL for SERVICE CONTRACT | $ | 730.00 |
| | to N/A for N/A | $ | N/A |
| | to N/A for N/A | $ | N/A |
| | to N/A for N/A | $ | N/A |
| | to N/A for N/A | $ | N/A |
| | Total Other Charges and Amounts Paid to Others on Your Behalf | $ | 1801.40 (4) |
| 5 | Loan Processing Fee Paid to Seller (Prepaid Finance Charge) | $ | N/A (5) |
| 6 | Amount Financed (3 plus 4) | $ | 15742.22 (6) |

Payment Schedule: 75 installments of $ 269.94 each, monthly beginning 07/26/2007
or as follows _____

3. You understand that the benefits under the policy will terminate when you reach a certain age and affirm that your age is accurately represented on the application or policy.

X _____
Buyer                          Date

X _____
Co-Buyer                       Date

### Other Insurance

X☒ GAP                          75
Type of Insurance              Term

Premium $   695.00

Insurance Company Name
THE ONE GAP

Home Office Address _____

I want the insurance checked above.

X *[signature]* 06/26/07
Buyer Signature                Date

X _____
Co-Buyer Signature             Date

**LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS CONTRACT.**

□ VENDOR'S SINGLE INTEREST INSURANCE (VSI insurance): If the preceding box is checked, the Creditor requires VSI insurance for the initial term of the contract to protect the Creditor for loss or damage to the vehicle (collision, fire, theft). VSI insurance is for the Creditor's sole protection. This insurance does not protect your interest in the vehicle. You may choose the insurance company through which the VSI insurance is obtained. If you elect to purchase VSI insurance through the Creditor, the cost of this insurance is $ N/A and is also shown in Item 4B of the ITEMIZATION OF AMOUNT FINANCED. The coverage is for the initial term of the contract.
*You authorize us to purchase Vendor's or Lender's Single Interest Insurance.

Buyer:_____ Co-Buyer:_____ Date:_____

**Returned Check Charge:** If any check or order of payment you give us is dishonored, you will pay a charge if we make demand that you do so. The charge will be $25 if the check amount is $50 or less; $30 if the check is over $50 but not more than $300; $40 if the check amount is over $300, or such amount as permitted by law.

OPTION: □ You pay no finance charge if the amount financed, item 6, is paid in full on or before ___N/A___ , Year _____ SELLERS INITIALS _____

## NO COOLING OFF PERIOD
State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.   Buyer Signs X *[signature]*   Co-Buyer Signs X_____
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
See back for other important agreements.
**NOTICE TO THE BUYER: a)** Do not sign this contract before you read it or if it contains any blank spaces. **b)** You are entitled to an exact copy of the contract you sign. Keep it to protect your legal rights.

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You acknowledge that you have read both sides of this contract, including the arbitration clause on the reverse side, before signing below. You confirm that you received a completely filled-in copy when you signed it.

Buyer Signs X *[signature]* Date 06/26/07   Co-Buyer Signs X_____ Date_____

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest given to us in this contract.

Other owner signs here X_____   Address_____
Seller signs _____ Date 06/26/07 By X_____ Title_____

Seller assigns its interest in this contract to   SOVEREIGN BANK   (Assignee) under the terms of Seller's agreement(s) with Assignee.
□ Assigned with recourse          ☒ Assigned without recourse          □ Assigned with limited recourse
KENDALL TOYOTA
Seller _____ By _____ Title _____

FORM NO. 553-FL-ARB (REV. 1994) U.S. PATENT NO. D490,782
©2004 Reynolds and Reynolds TO ORDER: www.reysource.com; 1-800-344-0996; fax 1-800-551-5655
THE PRINTER MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO CONTENT OR

SANTANDER0421

# TAB 14

DEFENDANT'S EXHIBIT

SCUSA/B 00043
CONFIDENTIAL

**ABSOLUTELY ADAMSON**

BILL OF SALE

1922 Second Avenue South
Birmingham, Alabama 35233

INVOICE NO 21957

DATE 01/31/2009

SOLD TO: FAYE LEVINS

ADDRESS:

B.D. 07/22/56

SALESMAN AYERS, ARTHUR    WILLIAMS, JR I

TELEPHONE #

| STOCK NO. | YEAR | MAKE | MODEL & BODY | NEW OR USED | VIN XXXXXXX NUMBER | COLOR | IGNITION KEY NO. | TRUNK KEY NO. |
|---|---|---|---|---|---|---|---|---|
| CAC117A | 2007 | CHEVROLET | IMPALA SD | USED | 2G1WT69K779203576 | SILVER | | |
| VEHICLE SOLD | | | | | | | | |
| TRADE-IN | N/A N/A | | | | | | | |

Penalty of $15 due if vehicle
is not registered in the name
of the new owner within 20
calendar days.

DEAL NO: 56753

AL. TAX:   259.35  2.0000
JEFF TAX:   97.26  0.7500
BHAM TAX:  259.35  2.0000

BUYER _Faye Levins_

SELLER _____

60  MONTHLY PAYMENTS @   358.73  DRIVE FINANCIAL SERVICES

|  | | |
|---|---|---|
| PRICE OF VEHICLE | $ | 12618.54 |
| OPTIONAL EQUIPMENT | DOC | 349.00 |
| TOTAL | | 12967.54 |
| SALES TAX | | 615.96 |
| LICENSE & TITLE | | 16.50 |
| TOTAL | | 13600.00 |
| INSURANCE | | |
| CREDIT LIFE & A & H INS. | | |
| XXXXXXXX | | |

SETTLEMENT | | 13600.00 |
| CASH & DEPOSITS | | |
| VEHICLE RECEIVABLE | | 1500.00 |
| TRADE-IN | N.A. | |
| LESS LIEN | N.A. | |
| NET TRADE-IN | | N.A. |
| PAYOFF TO | | |
| FINANCED BY | | |
| TOTAL | | 12100.00 |

App. 216

You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**PROMISE TO PAY AND PAYMENT TERMS:** You promise to pay us the principal amount of $ __12100.00__ , plus finance charges accruing on the unpaid balance at the rate of __24.99__ % per year from today's date until maturity. Finance charges accrue on a __360__ day basis. After maturity, or after you default and we demand payment, we will earn finance charges on the unpaid balance at __24.99__ % per year. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the TRUTH IN LENDING DISCLOSURES. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

☐ **ADDITIONAL FINANCE CHARGE:** ☐ You agree to pay a refundable interest surcharge fee of $ __N.A.__ ☒ You agree to pay a processing fee of $ __349.00__ . The processing fee is ☐ refundable. ☒ nonrefundable. Fees will be ☐ paid in cash. ☐ added to the Cash Price. ☐ paid proportionally with each payment. ☐ You agree to pay a refundable account maintenance fee of ☐ $ __N.A.__ paid in cash ☐ $ __N.A.__ per month payable monthly.

☐ **MINIMUM FINANCE CHARGE:** You agree to pay a minimum finance charge of $ __N.A.__ if you pay this Contract in full before we have earned that much in finance charges.

**DOWN PAYMENT:** You also agree to pay, or apply to the Cash Price, on or before today's date, any cash, rebate and net trade-in value described in the ITEMIZATION OF AMOUNT FINANCED. ☐ You agree to make deferred payments as part of the cash down payment as reflected in your Payment Schedule.

## TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | AMOUNT FINANCED The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS The amount you will have paid when you have made all scheduled payments. | TOTAL SALE PRICE The total cost of your purchase on credit, including your down payment of $ 1500.00 |
|---|---|---|---|---|
| 24.99 % | $ 9423.80 | $ 12100.00 | $ 21523.80 | $ 23023.80 |

**Payment Schedule:** Your payment schedule will be

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 60 | $358.73 | MONTHLY STARTING.....: 17 MAR 2009 |

**Security:** You are giving a security interest in the Motor Vehicle purchased.

☒ **Late Charge:** If a payment is more than __10__ days late, you will be charged 5% OF THE INSTALLMENT DUE OR $10.00 WHICHEVER IS GREATER, NOT TO EXCEED $100.00

**Prepayment:** If you pay off this Contract early, you ☐ may ☒ will not have to pay a Minimum Finance Charge.
☐ If you pay off this Contract early, you may be entitled to a refund of part of the interest surcharge.
☐ If you pay off this Contract early, you ☐ may ☒ will not be entitled to a refund of part of the processing fee.
☐ If you pay off this Contract early, you ☒ may ☐ will not be entitled to a refund of part of the account maintenance fee.

**Contract Provisions:** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

**CREDIT INSURANCE:** Credit life, credit disability (accident and health), and any other insurance coverage quoted below, are not required to obtain credit and we will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below ONLY the coverages you have chosen to purchase.

Credit Life: Insured __N.A.__
☐ Single ☐ Joint Prem. $__N.A.__ Term __N.A.__
Credit Disability: Insured __N.A.__
☐ Single Prem. $__N.A.__ Term __N.A.__

Your signature below means you want (only) the insurance coverage(s) quoted above. If none are quoted, you have declined any coverages we offered.

_____ _____
Buyer              d/o/b    Buyer              d/o/b

☐ **PROPERTY INSURANCE:** You must insure the Property securing this Contract. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. The collision coverage deductible may not exceed $ __N.A.__ . If you get insurance from or through us you will pay $ __N.A.__ for _____ of coverage.

This premium is calculated as follows:
☐ $ __N.A.__ Deductible, Collision Coverage $ __N.A.__
☐ $ __N.A.__ Deductible, Comprehensive Cov. $ __N.A.__
☐ Fire-Theft and Combined Additional Coverage $ __N.A.__
☐ _____ $ __N.A.__

**Liability Insurance** coverage for bodily injury and motor vehicle damage caused to others is not included in this Contract unless checked and indicated.
☐ **SINGLE-INTEREST INSURANCE:** You must purchase single-interest insurance as part of this sale transaction. You may purchase the coverage from a company of your choice, reasonably acceptable

## ITEMIZATION OF AMOUNT FINANCED

| | | |
|---|---|---|
| Vehicle Price (incl. sales tax of $ 615.96 ) | $ | 13234.50 |
| Service Contract, Paid to: | | N.A. |
| | Cash Price $ | 13234.50 |
| Manufacturer's Rebate | $ | N.A. |
| Cash Down Payment | $ | 1500.00 |
| Deferred Down Payment | $ | N.A. |
| a. Total Cash/Rebate Down | | 1500.00 |
| b. Trade-In Allowance | $ | N.A. |
| c. Less: Amount owing | $ | N.A. |
| Paid to (includes I.): | | |
| d. Net Trade-In (b. minus c.) | $ | N.A. |
| e. Net Cash/Trade-In (a. plus d.) | $ | 1500.00 |
| I. Amount to Finance line e. (if e. is negative) | $ | N.A. |
| Down Payment (e.; disclose as $0 if negative) | $ | 1500.00 |
| Unpaid Balance of Cash Price | $ | 11734.50 |
| Paid to Public Officials - Filing Fees | $ | 16.50 |
| Paid to Public Officials - Taxes | $ | N.A. |
| Insurance Premiums* | $ | N.A. |
| Interest Surcharge Paid to Seller | $ | N.A. |
| Processing Fee Paid to Seller | $ | 349.00 |
| HANDLING & DELIVERY | $ | N.A. |
| To: | $ | N.A. |
| To: | $ | N.A. |
| Total Other Charges/Amounts Pd. to Others | $ | 365.50 |
| Less: Prepaid Finance Charges | $ | N.A. |
| Amount Financed | $ | 12100.00 |

*We may retain or receive a portion of this amount.

## NOTICE TO BUYER

(1) Do not sign this agreement before you read it or if it contains any blank spaces. (2) You are entitled to a completely filled-in copy of this agreement. (3) Under the law, you have the right to pay off in advance the

SCUSA/B 00045
CONFIDENTIAL

hall times as large as the average of all other regularly scheduled payments, you may refinance that payment when due without penalty. You may do so on terms as favorable as the terms originally agreed to in this Contract, if you meet our normal credit standards. This right does not apply if your payment schedule is adjusted for seasonal or irregular income, if this Contract is repayable in a single-principal payment irrespective of the scheduled interest payments, or we do not offer similar credit at that time.

**PREPAYMENT:** You may prepay this Contract in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until you pay in full, if an interest surcharge has been collected and this Contract is prepaid in full by any means within 90 days of the date of this Contract, we will refund or credit you with a pro rata portion of the interest surcharge, except we may retain $25.00, if this Contract is prepaid in full after 90 days, the interest surcharge is fully earned and will not be refunded.

If a refundable processing or account maintenance fee has been .illected and this Contract is prepaid in full, or upon maturity by acceleration, we will credit the unearned portion of the fee. If the original term of this Contract is 61 months or less, we will determine the credit using the Rule of 78's or the sum of the digits method. If the original term of this Contract is more than 61 months, we will determine the credit using the actuarial method. We will apply the credit to the amount you owe us or refund it to you. No refund of less than $1.00 will be made. If this note is renewed or refinanced within 120 days from the date it is made, the refundable fee will be refunded or credited on a pro rata basis computed as of the date of such renewal or refinancing.

If a nonrefundable processing fee has been collected, it will not be refunded even if the loan is prepaid.

A refund of any prepaid, unearned insurance premiums may be obtained from us or from the insurance company named in your policy or certificate of insurance.

**OWNERSHIP AND DUTIES TOWARD PROPERTY:** By giving us a security interest in the Property, you represent and agree to the following:

A. Our security interest will not extend to consumer goods unless you acquire rights to them within 10 days after we enter into this Contract, or they are installed in or affixed to the Vehicle.

B. You will defend our interests in the Property against claims made by anyone else. You will do whatever is necessary to keep our claim to the Property ahead of the claim of anyone else.

C. The security interest you are giving us in the Property comes ahead of the claim of any other of your general or secured creditors. You agree to sign any additional documents or provide us with any additional information we may require to keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.

D. You will keep the Property in your possession in good condition and repair. You will use the Property for its intended and lawful purposes. Unless otherwise agreed in writing, the Property will be located at your address listed on page 1 of this Contract.

E. You will not attempt to sell the Property (unless it is properly identified inventory) or otherwise transfer any rights in the Property to anyone else, without our prior written consent.

F. You will pay all taxes and assessments on the Property, as they become due.

G. You will notify us of any loss or damage to the Property. You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**DEFAULT:** You will be in default in this Contract if any one of the following occurs (except as prohibited by law):

A. You fail to perform any obligation that you have undertaken in this Contract.

B. We, in good faith, believe that you cannot, or will not, pay or perform the obligations you have agreed to in this Contract.

If you default, you agree to pay our costs for collecting amounts owing, including, without limitation, court costs, and fees for repossession, repair, storage and sale of the Property securing this Contract. If the original amount financed is more than $300, then after default we may refer this Contract to an attorney who is not our salaried employee and may collect reasonable attorneys' fees up to 15% of the unpaid debt.

If an event of default occurs as to any one of you, we may exercise our remedies against any or all of you.

**REMEDIES:** If you are in default on this Contract, we have all of the remedies provided by law and this Contract:

A. We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges.

B. We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. Any amount we pay will be added to the amount you

mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

You agree that, subject to your right to recover such property, we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above.

**INSURANCE:** If the original amount financed, exclusive of the insurance charges, is $300 or more and the value of the Property is $300 or more, then you agree to buy property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the PROPERTY INSURANCE section, or as we will otherwise require. You will name us as loss payee on any such policy. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. You will keep the insurance in full force and effect until this Contract is paid in full.

If you fail to obtain or maintain this insurance, or name us as a loss payee, we may obtain insurance to protect our interest in the Property. This insurance may include coverages not required of you. This insurance may be written by a company other than one you would choose. It may be written at a rate higher than a rate you could obtain if you purchased the property insurance required by this Contract. We will add the premium for this insurance to the amount you owe us. Any amount we pay will be due immediately. This amount will earn finance charges from the date paid at the post-maturity rate described in the PROMISE TO PAY and PAYMENT TERMS section until paid in full.

**OBLIGATIONS INDEPENDENT:** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:

A. You must pay this Contract even if someone else has also signed it.

B. We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.

C. We may release any security and you will still be obligated to pay this Contract.

D. If we give up any of our rights, it will not affect your duty to pay this Contract.

E. If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**WARRANTY:** Warranty information is provided to you separately.

**WAIVER:** To the extent permitted by law, you agree to give up your rights to require us to do certain things. We are not required to: (1) demand payment of amounts due; (2) give notice that amounts due have not been paid, or have not been paid in the appropriate amount, time or manner; or, (3) give notice that we intend to make, or are making, the Contract immediately due.

---

**THIRD PARTY AGREEMENT**

By signing below you agree to give us a security interest in the Property described in the SALE section. You also agree to the terms of this Contract, including the WAIVER section above, except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend, change this Contract, or release any party or property without releasing you from this Contract. We may take these steps without notice or demand upon you.

You acknowledge receipt of a completed copy of this Contract.

_____ (Seal)
Signature                        , Date

---

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**IF YOU ARE BUYING A USED VEHICLE, THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.**

---

**ASSIGNMENT BY SELLER**

Seller sells and assigns this Retail Installment Contract and Security Agreement, (Contract), to the Assignee, its successors and assigns, including all its rights, title and interest in this Contract, and guaranty executed in connection with this Contract. Seller gives Assignee full power, either in its own name or in Seller's name, to take all legal or other actions which Seller could have taken under this Contract. (SEPARATE AGREEMENT) If this Assignment is made "under the terms of a separate agreement as indicated on page 1, the terms of this assignment are described in a separate writing(s) and not as provided below.)

Seller warrants:

A. This Contract represents a sale by Seller to Buyer on a time price basis and not on a cash basis.

B. The statements contained in this Contract are true and correct.

C. The down payment was made by the Buyer in the manner stated on page 1 of this Contract and, except for the application of any manufacturer's rebate, no

SCUSA/B 00046
CONFIDENTIAL

**TAB 15**



**drive**
financial services

## Assignment
(To be physically attached to Retail Installment Contracts and Promissory Note)

For Value Received. The undersigned hereby sells and assigns to:

Drive Financial Services®
P.O. Box 560583
Dallas, TX 75356-0583

All of its right, title, and interest in and to the Retail Installment Contract and Promissory Note ("Contract Document") to which this assignment is attached. The terms and conditions of this assignment supersede any contrary provisions of the form of assignment contained in the Contract Document to which this assignment is attached.

This assignment is made pursuant to the Contract Purchase Agreement entered into between the undersigned and Drive Financial Services, the terms and conditions are incorporated herein by this reference.

Buyer: _Fayl Lewis_

Co-Buyer: _____

Dealership: _Adamson Ford_

Authorized Signature: _David Agee_

Print Name: _David Agee_

Date: _1·31·09_

App# 13636220


DEFENDANT'S EXHIBIT
10

SCUSA/B 00050
CONFIDENTIAL

# TAB 16

# FILED UNDER SEAL

**Pursuant to the Stipulated
Protective Order filed
October 22, 2014**

# TAB 17

# FILED UNDER SEAL

**Pursuant to the Stipulated
Protective Order filed
October 22, 2014**

**TAB 18**

**Before the**
**Federal Communications Commission**
**Washington, D.C. 20554**

In the Matter of

| | |
|---|---|
| Rules and Regulations Implementing the | ) |
| Telephone Consumer Protection Act of 1991 | ) |
| | ) |
| American Association of Healthcare | ) |
| Administrative Management | ) |
| Petition for Expedited Declaratory Ruling and | ) |
| Exemption | ) |
| | ) |
| American Bankers Association | )    CG Docket No. 02-278 |
| Petition for Exemption | ) |
| | )    WC Docket No. 07-135 |
| Coalition of Mobile Engagement Providers | ) |
| Petition for Declaratory Ruling | ) |
| | ) |
| Consumer Bankers Association | ) |
| Petition for Declaratory Ruling | ) |
| | ) |
| Direct Marketing Association | ) |
| Petition for Forbearance and | ) |
| Emergency Petition for Special Temporary Relief | ) |
| | ) |
| Paul D. S. Edwards | ) |
| Petition for Expedited Clarification and | ) |
| Declaratory Ruling | ) |
| | ) |
| Milton H. Fried, Jr., and Richard Evans | ) |
| Petition for Expedited Declaratory Ruling | ) |
| | ) |
| Glide Talk, Ltd. | ) |
| Petition for Expedited Declaratory Ruling | ) |
| | ) |
| Global Tel*Link Corporation | ) |
| Petition for Expedited Clarification and | ) |
| Declaratory Ruling | ) |
| | ) |
| National Association of Attorneys General | ) |
| Request for Clarification | ) |
| | ) |
| Professional Association for Customer | ) |
| Engagement | ) |
| Petition for Expedited Declaratory Ruling and/or | ) |
| Expedited Rulemaking | ) |
| | ) |
| Retail Industry Leaders Association | ) |
| Petition for Declaratory Ruling | ) |

Revolution Messaging                          )
Petition for Expedited Clarification and      )
Declaratory Ruling                            )
                                              )
Rubio's Restaurant, Inc.                      )
Petition for Expedited Declaratory Ruling     )
                                              )
Santander Consumer USA, Inc.                  )
Petition for Expedited Declaratory Ruling     )
                                              )
Stage Stores, Inc.                            )
Petition for Expedited Declaratory Ruling     )
                                              )
TextMe, Inc.                                  )
Petition for Expedited Declaratory Ruling and )
Clarification                                 )
                                              )
United Healthcare Services, Inc.              )
Petition for Expedited Declaratory Ruling     )
                                              )
YouMail, Inc.                                 )
Petition for Expedited Declaratory Ruling     )
                                              )
3G Collect, Inc., and 3G Collect LLC          )
Petition for Expedited Declaratory Ruling     )
                                              )
ACA International                             )
Petition for Rulemaking                       )

## DECLARATORY RULING AND ORDER

**Adopted: June 18, 2015**                    **Released: July 10, 2015**

By the Commission: Chairman Wheeler and Commissioner Clyburn issuing separate statements; Commissioners Rosenworcel and O'Rielly approving in part, dissenting in part, and issuing separate statements; and Commissioner Pai dissenting and issuing a statement.

## TABLE OF CONTENTS

                                                                        Paragraph #

I.   INTRODUCTION ............................................................................................. 1
II.  BACKGROUND ............................................................................................. 4
III. PETITIONS FOR DECLARATORY RULING AND EXEMPTION .............................. 10
     A. Discussion ............................................................................................. 10

2

    1. Autodialers .................................................................................................................... 10
    2. Maker of a Call ............................................................................................................. 25
        a. Texting/Calling Apps .............................................................................................. 25
        b. Collect Call Services and Prerecorded- or Artificial-Voice Messages ............................. 38
    3. Consent and Called Party ............................................................................................. 47
        a. Establishing Consent ............................................................................................... 47
        b. Revoking Consent ................................................................................................... 55
        c. Reassigned Wireless Telephone Numbers ............................................................... 71
            (i) Meaning of "Called Party" ................................................................................ 73
            (ii) Learning of Reassigned Numbers ..................................................................... 85
    4. Prior Express Written Consent After 2012 Rule Changes .............................................. 98
        a. DMA and Coalition ................................................................................................. 98
        b. RILA ..................................................................................................................... 103
    5. Text Messages as Calls ............................................................................................... 107
    6. Distinction Between Telemarketing and Informational Calls ....................................... 123
    7. Free-to-End-User Calls ............................................................................................... 125
    8. Waiver and Additional Exemption Requests ............................................................... 149
    9. Call-Blocking Technology .......................................................................................... 152
IV. PETITIONS FOR RULEMAKING .................................................................................. 164
V. ORDERING CLAUSES ..................................................................................................... 166

APPENDIX A – List of Commenters on American Association of Healthcare Administrative
Management Petition
APPENDIX B – List of Commenters on American Bankers Association Petition
APPENDIX C – List of Commenters on Coalition of Mobile Engagement Providers Petition
APPENDIX D – List of Commenters on Consumer Bankers Association Petition
APPENDIX E – List of Commenters on Direct Marketing Association Petition
APPENDIX F – List of Commenters on Paul D. S. Edwards Petition
APPENDIX G – List of Commenters on Milton H. Fried, Jr., and Richard Evans Petition
APPENDIX H – List of Commenters on Glide Talk, Ltd. Petition
APPENDIX I – List of Commenters on Global Tel*Link Corporation Petition
APPENDIX J – List of Commenters on National Association of Attorneys General
APPENDIX K – List of Commenters on Professional Association for Customer Engagement Petition
APPENDIX L – List of Commenters on Retail Industry Leaders Association Petition
APPENDIX M – List of Commenters on Revolution Messaging Petition
APPENDIX N – List of Commenters on Rubio's Restaurant, Inc., Petition
APPENDIX O – List of Commenters on Santander Consumer USA, Inc., Petition
APPENDIX P – List of Commenters on Stage Stores, Inc., Petition
APPENDIX Q – List of Commenters on TextMe, Inc., Petition
APPENDIX R – List of Commenters on United Healthcare Services, Inc., Petition
APPENDIX S – List of Commenters on YouMail, Inc., Petition
APPENDIX T – List of Commenters on 3G Collect Petition
APPENDIX U – List of Commenters on ACA International Petition
APPENDIX V – List of Commenters on Communication Innovators Petition

store or produce, and dial random or sequential numbers (and thus meets the TCPA's definition of "autodialer") even if it is not presently used for that purpose, including when the caller is calling a set list of consumers. We also reiterate that predictive dialers, as previously described by the Commission,[39] satisfy the TCPA's definition of "autodialer" for the same reason.[40] We also find that callers cannot avoid obtaining consent by dividing ownership of pieces of dialing equipment that work in concert among multiple entities.[41]

11.     Glide, PACE, and TextMe[42] ask whether dialing equipment is an autodialer under the TCPA when it does not have the "current capacity" or "present ability" to generate or store random or sequential numbers or to dial sequentially or randomly at the time the call is made. Glide asks the Commission to clarify that "equipment used to make a call is an autodialer subject to the TCPA only if it is capable of storing or generating sequential or randomized numbers at the time of the call."[43] PACE seeks clarification that a dialing system's "capacity" is "limited to what it is capable of doing, without further modification, at the time the call is placed."[44] TextMe asks the Commission to clarify that "capacity" "encompasses only equipment that, at the time of use, could in fact perform the functions described in the TCPA without human intervention and without first being technologically altered."[45]

12.     The TCPA defines "automatic telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number

---

[39] In its 2003 Declaratory Ruling, the Commission mentioned certain characteristics that, it was argued, removed equipment having those characteristics from the scope of the statutory autodialer definition. The Commission described a predictive dialer as "equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *2003 TCPA Order*, 18 FCC Rcd at 14091, para. 131. The Commission also noted that the "principal feature of predictive dialing software is a timing function, not number storage or generation." *Id.* After discussing the TCPA's definition of "autodialer" and Congress' intent in creating the TCPA, the Commission found that "a predictive dialer falls within the meaning and statutory definition of 'automatic telephone dialing equipment' and the intent of Congress." *Id.* at 14091-92, paras. 132-33. The Commission's finding that predictive dialers fall within the statutory autodialer definition thus focuses on whether equipment has the requisite "capacity," and therefore is not limited to any specific piece of equipment and is without regard to the name given the equipment for marketing purposes.

[40] *See* paras. 16-20, *infra*; *see also ACA Declaratory Ruling*, 23 FCC Rcd at 566, para. 13.

[41] *See* para. 23, *infra*.

[42] YouMail also raised this question in its Petition. *See* YouMail Petition at 11. It later requested that the Commission "set aside consideration of the ATDS argument originally raised in its Petition." *Ex Parte* Letter from Lauren Lynch Flick, Counsel to YouMail, to Marlene H. Dortch, Secretary, FCC in CG Docket No. 02-278, at 5 (filed April 14, 2014). CI also raised this issue in a Petition for Declaratory Ruling. *Communication Innovators, Petition for Declaratory Ruling*, CG Docket No. 02-278, filed June 7, 2012 (CI Petition). CI withdrew its Petition after the Commission sought comment on the issues raised in the Petition. *Consumer and Governmental Affairs Bureau Seeks Comment on Petition for Declaratory Ruling from Communication Innovators*, CG Docket No. 02-278, Public Notice, 27 FCC Rcd 13031 (2012); *Communication Innovators*, Withdrawal of Petition, CG Docket No. 02-278, filed July 14, 2014. Comments submitted in response to that Public Notice remain part of the record in this docket, and reveal continued questions about this issue beyond the CI Petition itself. *See* Appendix V for a list of all commenters on the CI Petition.

[43] Glide Petition at 10.

[44] PACE Petition at 4 (emphasis omitted).

[45] TextMe Petition at 3.

12

15.     We agree with commenters who argue that the TCPA's use of "capacity" does not exempt equipment that lacks the "present ability" to dial randomly or sequentially. We agree that Congress intended a broad definition of autodialer,[56] and that the Commission has already twice addressed the issue in 2003 and 2008,[57] stating that autodialers need only have the "capacity" to dial random and sequential numbers, rather than the "present ability" to do so.[58] Hence, any equipment that has the requisite "capacity"[59] is an autodialer and is therefore subject to the TCPA.[60]

16.     In the *1992 TCPA Order*, the Commission stated that it was rejecting definitions that fit "only a narrow set of circumstances" in favor of "broad definitions which best reflect[ed] legislative intent by accommodating the full range of telephone services and telemarketing practices."[61] The Commission rejected the narrower interpretation of "capacity" (as "current ability") when it held that predictive dialer equipment meets the autodialer definition. In the *2003 TCPA Order*, the Commission held that predictive dialers met the definition of an autodialer because that "hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers."[62] By finding that, even when the equipment presently lacked the necessary software, it nevertheless had the requisite capacity to be an autodialer, the Commission implicitly rejected any "present use" or "current capacity" test. In other words, the capacity of an autodialer is not limited to its current configuration but also includes its potential functionalities.[63] One dissent argues that our reading of "capacity" is flawed in the same way that saying an 80,000 seat stadium has the capacity to hold 104,000.[64] But that is an inapt analogy—modern dialing equipment can often be modified remotely without the effort and cost of adding physical space to an existing structure. Indeed, adding space to accommodate 25 percent more people to a building is the type of mere "theoretical" modification that is insufficient to sweep it into our interpretation of "capacity."[65]

17.     Given the scope of the Petitioners' requests, we do not at this time address the exact

(...continued from previous page)————————————————————
statement: "Tell the FCC: No robocalls to cell phones without our consent." The list includes a de minimis number of signatures for which an address in Canada is given.).

[56] *See, e.g.*, Kirby Comments on CI Petition at 1; Roylance Comments on CI Petition at 2; Shields Comments on Glide Petition at 5; *see also* Shields Reply Comments on YouMail Petition at 3. *See* Appendix S for a list of all commenters on the YouMail Petition.

[57] *See, e.g.*, Shields Comments on CI Petition at 1; Worsham Comments on CI Petition at 1; *see also* Roylance Comments on YouMail Petition at 2; Shields Comments on YouMail Petition at 1.

[58] *See* paras. 12-14, *supra.* In response to an argument raised in a dissenting statement, *see* Commissioner Pai Dissent at 3-4, we reiterate that the Commission's 2003 and 2008 statements referenced here focused not on equipment's present ability to dial randomly or sequentially, but instead on its capacity and the generally automated nature of the calling. *See 2003 TCPA Order*, 18 FCC Rcd at 14092-93, para. 133 (purpose of capacity requirement is to avoid circumvention of autodialing restrictions). The Commission specifically focused on the capacity to dial automatically, not on the kinds of numbers the equipment was presently configured to dial. *Id.* at 14092, para. 132 ("The basic function of such equipment, however, has not changed—the *capacity* to dial numbers without human intervention.").

[59] *ACA Declaratory Ruling*, 23 FCC Rcd at 566, para. 13.

[60] *See* paras. 18-20, *infra; see also ACA Declaratory Ruling*, 23 FCC Rcd at 566, para. 12.

[61] *1992 TCPA Order*, 7 FCC Rcd at 8755, para. 6.

[62] *2003 TCPA Order*, 18 FCC Rcd at 14091, para. 131.

[63] The functional capacity of software-controlled equipment is designed to be flexible, both in terms of features that can be activated or de-activated and in terms of features that can be added to the equipment's overall functionality through software changes or updates.

[64] *See* Commissioner Pai Dissent at 4.

[65] *See* para. 18, *infra.*

14

**TAB 19**

HENRY ESPEJO, individually and on behalf of
all others similarly situated,

      *Plaintiff,*

    *v.*

SANTANDER CONSUMER USA, INC., an
Illinois corporation,

      *Defendant.*

Case No.: 1:11-cv-08987

Honorable Charles P. Kocoras

## PLAINTIFF ESPEJO'S ANSWERS TO DEFENDANT'S
## FIRST SET OF INTERROGATORIES

Plaintiff Henry Espejo, by and through his undersigned counsel, for his answers to Defendant Santander Consumer USA, Inc.'s First Set of Interrogatories, states as follows. All answers contained herein are based only upon such information and documents presently available to Plaintiff. Further discovery, investigation, research and analysis may supply additional facts and/or add meaning to known facts. Moreover, the responses below are given without prejudice to Plaintiff's right to later produce additional information.

### *I. General Objections*

1.    Plaintiff Henry Espejo ("Plaintiff" or "Espejo") objects to each Interrogatory, definition and instruction, to the extent they seek or call for the production or disclosure of information protected by the attorney-client privilege and the work product doctrine, or any other applicable privilege or doctrine. By responding to any Interrogatory, Plaintiff does not waive, and hereby retains, any applicable privilege or doctrine as to that Interrogatory, or any other supplemental Interrogatories.

1

Subject to and without waiving his objections, pursuant to Fed. R. Civ. P. 33(d), Plaintiff

states that the documents Bates numbered SANTANDER0413-0422, are responsive to this

Interrogatory.

*   *   *

## INTERROGATORY NO. 4

IDENTIFY each and every telephone call, by date and time, SANTANDER made to
YOUR cellular telephone that YOU contend is a violation of the TCPA, as alleged in YOUR
COMPLAINT.

**ANSWER:** Plaintiff objects to this Interrogatory on the basis that the information sought

is within the possession, custody or control of Defendant because the telephone calls at issue

were made by Defendant and it maintains logs of such telephone calls, and is therefore more

easily discoverable from within Defendant's records.

Subject to and without waiving his objections, Plaintiff states as follows: Defendant has

placed at least five hundred (500) telephone calls to   |-1411 between 2009 and the

present from numerous telephone numbers, including but not limited to:    |4227,

 -0121,   |1410,    --1162,   |-3516. *See* SANTANDER0001-0412. *See*

*also* Defendant Santander Consumer USA, Inc.'s document production, specifically, SCUSA/E

0025 - SCUSA/E 0119.

*   *   *

## INTERROGATORY NO. 5

State all facts that REFER or RELATE TO YOUR contention that SANTANDER used
"equipment that had the capacity to store or produce telephone numbers to be called using a
random or sequential number generator and to dial such numbers," as alleged in Paragraph 16 of
YOUR COMPLAINT.

**ANSWER:** Plaintiff objects to this Interrogatory on the basis that the information sought

is within the possession, custody or control of Defendant because Defendant has access to and

6

**App. 230**

because Plaintiff does not have an ownership interest in the 2007 Toyota Corolla and is not a party to the financing agreement applicable to the 2007 Toyota Corolla.

Subject to and without waiving his objections, pursuant to Fed. R. Civ. P. 33(d), Plaintiff states that the documents Bates numbered SANTANDER0413-0422 are responsive to this Interrogatory.

*       *       *

*As to Answers:*

Date: October 11, 2012

**HENRY ESPEJO**, individually and on behalf of all others similarly situated,

By: /s/ Christopher L. Dore
One of Plaintiff's Attorneys

Date: October 11, 2012

*As to Objections:*

**HENRY ESPEJO**, individually and on behalf of all others similarly situated,

_____
Henry Espejo

Rafey S. Balabanian
Benjamin H. Richman
Christopher L. Dore
EDELSON MCGUIRE LLC
350 N. LaSalle St., Suite 1300
Chicago, Illinois 60604
Telephone: (312) 589-6380
rbalabanian@edelson.com
brichman@edelson.com
cdore@edelson.com

Scott D. Owens (Admitted *Pro Hac Vice*)
LAW OFFICES OF SCOTT D. OWENS, ESQ.
664 E. Hallandale Beach Blvd.
Hallandale, Florida 33009
Telephone: (954) 306-8104
scott@scottdowens.com

10

## <u>VERIFICATION</u>

I, Henry Espejo, declare under of penalty of perjury that the forgoing ***Plaintiff's Answers to Defendant's First Set of Interrogatories*** is true and correct.

Dated: October __11__, 2012

_____
Henry Espejo

**TAB 20**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HENRY ESPEJO, individually and on behalf of all others similarly situated,<br><br>     *Plaintiff,*<br><br>   *v.*<br><br>SANTANDER CONSUMER USA, INC., an Illinois corporation,<br><br>     *Defendant.* | Case No.: 1:11-cv-08987<br><br>Honorable Charles P. Kocoras<br><br>Magistrate Judge Sidney I. Schenkier |

## PLAINTIFF ESPEJO'S SUPPLEMENTAL ANSWERS TO
## DEFENDANT'S FIRST SET OF INTERROGATORIES

Plaintiff Henry Espejo, by and through his undersigned counsel, for his answers to

Defendant Santander Consumer USA, Inc.'s First Set of Interrogatories, states as follows. All

answers contained herein are based only upon such information and documents presently

available to Plaintiff. Further discovery, investigation, research and analysis may supply

additional facts and/or add meaning to known facts. Moreover, the responses below are given

without prejudice to Plaintiff's right to later produce additional information.

### *I. General Objections*

1.    Plaintiff Henry Espejo ("Plaintiff" or "Espejo") objects to each Interrogatory,

definition and instruction, to the extent they seek or call for the production or disclosure of

information protected by the attorney-client privilege and the work product doctrine, or any other

applicable privilege or doctrine. By responding to any Interrogatory, Plaintiff does not waive,

and hereby retains, any applicable privilege or doctrine as to that Interrogatory, or any other

supplemental Interrogatories.

1

the issues of whether Defendant had prior express consent to make telephone calls to Plaintiff's cellular telephone and whether it utilized an automatic telephone dialing system to place those telephone calls. Finally, this Interrogatory seeks irrelevant information because Plaintiff does not have an ownership interest in the 2007 Toyota Corolla and is not a party to the financing agreement applicable to the 2007 Toyota Corolla.

Subject to and without waiving his objections, pursuant to Fed. R. Civ. P. 33(d), Plaintiff states that the documents Bates numbered SANTANDER0413-0422, are responsive to this Interrogatory.

**SUPPLEMENTAL ANSWER:** Subject to and without waiving the objections asserted in his original Answer, and pursuant to Fed. R. Civ. P. 33(d), Plaintiff states that Maria Espejo's document production, specifically ESPEJO 001 – 018, is responsive to this Interrogatory.

*     *     *

**INTERROGATORY NO. 4**

IDENTIFY each and every telephone call, by date and time, SANTANDER made to YOUR cellular telephone that YOU contend is a violation of the TCPA, as alleged in YOUR COMPLAINT.

**ANSWER:** Plaintiff objects to this Interrogatory on the basis that the information sought is within the possession, custody or control of Defendant because the telephone calls at issue were made by Defendant and it maintains logs of such telephone calls, and is therefore more easily discoverable from within Defendant's records.

Subject to and without waiving his objections, Plaintiff states as follows: Defendant has placed at least five hundred (500) telephone calls to ⎟1411 between 2009 and the present from numerous telephone numbers, including but not limited to: ⎟-4227, -0121, ⊦1410, ⊦1162, -3516. *See* SANTANDER0001-0412. *See*

6

*also* Defendant Santander Consumer USA, Inc.'s document production, specifically, SCUSA/E

0025 - SCUSA/E 0119.

**SUPPLEMENTAL ANSWER:** Subject to and without waiving the objections asserted

in his original Answer, and pursuant to Fed. R. Civ. P. 33(d), Plaintiff that states Defendant

Santander Consumer USA, Inc.'s document production, specifically SCUSA/E 0722 – 0802, is

responsive to this Interrogatory.

*          *          *

## INTERROGATORY NO. 5

State all facts that REFER or RELATE TO YOUR contention that SANTANDER used "equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers," as alleged in Paragraph 16 of YOUR COMPLAINT.

**ANSWER:** Plaintiff objects to this Interrogatory on the basis that the information sought

is within the possession, custody or control of Defendant because Defendant has access to and

controls the equipment utilized to make the telephone calls at issue in this case, and therefore is

more easily discoverable from within Defendant's records.

Subject to and without waiving his objections, Plaintiff states as follows: Plaintiff

answered numerous phone calls made to                1411. In answering the calls, he was

repeatedly greeted by a pause before being connected to a live operator. The presence of a pause

prior to being connected indicated to Plaintiff that the live person had not personally made the

phone call, and therefore, the call had been placed by automated means. Additionally, call logs

produced by Defendant included notations that numerous calls placed to Plaintiff were "Handled

By" a "Dialer." *See* Defendant Santander Consumer USA, Inc.'s document production,

specifically, SCUSA/E 0025 - SCUSA/E 0119.   Plaintiff's investigation continues and Plaintiff

reserves the right to supplement his answer to this Interrogatory as additional responsive

7

telephone calls to Plaintiff's cellular telephone and whether it utilized an automatic telephone dialing system to place those telephone calls. Finally, this Request seeks irrelevant information because Plaintiff does not have an ownership interest in the 2007 Toyota Corolla and is not a party to the financing agreement applicable to the 2007 Toyota Corolla.

Subject to and without waiving his objections, pursuant to Fed. R. Civ. P. 33(d), Plaintiff states that the documents Bates numbered SANTANDER0413-0422 are responsive to this Interrogatory.

*     *     *

Date: December 2, 2014

*As to Objections:*

**HENRY ESPEJO**, individually and on behalf of all others similarly situated,

By: s/ J. Dominick Larry
    One of Plaintiff's Attorneys

Date: December 2, 2014

*As to Responses:*

**HENRY ESPEJO**, individually and on behalf of all others similarly situated,

Henry Espejo

Jay Edelson
jedelson@edelson.com
Rafey S. Balabanian
rbalabanian@edelson.com
Benjamin H. Richman
brichman@edelson.com
J. Dominick Larry
nlarry@edelson.com
EDELSON PC

11

**App. 236**

350 North LaSalle Street, Suite 1300
Chicago, Illinois 60604
Tel: 312.589.6370
Fax: 312.589.6378

12

## VERIFICATION

I, Henry Espejo, declare under of penalty of perjury that the forgoing *Plaintiff's Supplemental Responses to Defendant's First Set of Requests for the Production of Documents* is true and correct to the best of my knowledge.

Dated: December 2, 2014

_____
Henry Espejo

**TAB 21**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ARICA BONNER, et al., individually and on behalf of all others similarly situated,

    *Plaintiff,*

v.

SANTANDER CONSUMER USA, INC., an Illinois corporation,

    *Defendant.*

Case No.: 12-cv-09431

Honorable Charles P. Kocoras

Magistrate Judge Sidney I. Schenkier

## PLAINTIFF FAYE LEVINS'S FIRST SUPPLEMENTAL ANSWERS TO DEFENDANT'S FIRST SET OF INTERROGATORIES

Plaintiff Faye Levins, by and through her undersigned counsel, for her First Supplemental Answers to Defendant Santander Consumer USA, Inc.'s First Set of Interrogatories, states as follows. All answers contained herein are based only upon such information and documents presently available to Plaintiff. Further discovery, investigation, research, and analysis may supply additional facts and/or add meaning to known facts. Moreover, the responses below are given without prejudice to Plaintiff's right to later produce additional information.

### I. *Answers to Interrogatories*

**INTERROGATORY NO. 1**: IDENTIFY all persons with knowledge of the allegations in YOUR COMPLAINT or any facts that RELATE TO YOUR claims against SANTANDER in this case. You do not need to IDENTIFY the attorneys who are representing YOU in this matter.

    **ANSWER**: Plaintiff objects to this Interrogatory as unduly burdensome to the extent it seeks information that is already within Defendant's possession, custody, or control, and that is more easily discoverable from within Defendant's records. Additionally, Plaintiff objects to this

- June 13, 2012;

- June 16, 2012;

- June 19, 2012; and

- June 22, 2012.

(*See* SCUSA/B 00001–34.)


**INTERROGATORY NO. 3**: IDENTIFY each and every telephone call, by date and time, that

SANTANDER made to YOUR cellular telephone that YOU contend is a violation of the TCPA.

    **ANSWER**: Plaintiff objects to this Interrogatory on the basis that the information sought

is already within the possession, custody, or control of Defendant and therefore, the information

sought is more easily discoverable from within Defendant's records. That is, Defendant made the

telephone calls at issue and maintains logs of such calls, while Plaintiff possesses no such

records.

    Subject to and without waiving these objections, Plaintiff states that Defendant placed

hundreds of calls to telephone numbers     -6954,     -6019, and     -6074

from 2008 until approximately 2012, and that these calls generally took place between 8 a.m. and

9 p.m. central time, on all days of the week.

    **SUPPLEMENTAL ANSWER**: Plaintiff objects on the basis that discovery is not

complete, and several of the call-log entries in Santander's document production are vague and

ambiguous as to the telephone number called, and may be evidence of further violative calls.

Subject to and without waiving the objections asserted in her initial Answer and above, Plaintiff

states that Santander placed hundreds of telephone calls on at least the following dates and times:

    1.     June 20, 2009, 11:16 a.m.;

5

2.      June 24, 2009, 2:33 p.m.;

3.      June 26, 2009, 2:29 p.m.;

4.      July 8, 2009, 3:19 p.m.;

5.      July 8, 2009, 4:48 p.m.;

6.      July 15, 2009, 1:46 p.m.;

7.      July 16, 2009, 2:12 p.m.;

8.      July 17, 2009, 12:11 p.m.;

9.      July 18, 2009, 10:54 a.m.;

10.     July 19, 2009, 10:54 a.m.;

11.     July 20, 2009, 2:18 p.m.;

12.     July 25, 2009, 11:16 a.m.;

13.     July 27, 2009, 3:18 p.m.;

14.     August 6, 2009, 3:53 p.m.;

15.     August 9, 2009, 4:46 p.m.;

16.     August 10, 2009, 6:41 p.m.;

17.     August 13, 2009, 11:53 a.m.;

18.     August 15, 2009, 11:42 a.m.;

19.     August 20, 2009, 11:01 a.m.;

20.     August 21, 2009, 10:00 a.m.;

21.     August 25, 2009, 2:45 p.m.;

22.     August 26, 2009, 5:01 p.m.;

23.     September 9, 2009, 11:35 a.m.;

24.     September 10, 2009, 1:40 p.m.;

6

25. September 11, 2009, 1:02 p.m.;

26. September 23, 2009, 11:30 a.m.;

27. September 28, 2009, 4:14 p.m.;

28. September 29, 2009, 4:14 p.m.;

29. September 29, 2009, 8:04 p.m.;

30. September 30, 2009, 4:14 p.m.;

31. September 30, 2009, 8:04 p.m.;

32. October 1, 2009, 4:14 p.m.;

33. October 1, 2009, 8:04 p.m.;

34. October 22, 2009, 4:53 p.m.;

35. October 22, 2009, 7:27 p.m.;

36. October 23, 2009, 4:53 p.m.;

37. October 23, 2009, 7:27 p.m.;

38. October 27, 2009, 11:44 a.m.;

39. October 28, 2009, 12:20 p.m.;

40. November 1, 2009, 3:15 p.m.;

41. November 6, 2009, 8:34 p.m.;

42. November 11, 2009, 10:07 a.m.;

43. December 20, 2009, 10:54 a.m.;

44. December 28, 2009, 1:19 p.m.;

45. December 29, 2009, 11:30 a.m.;

46. January 4, 2010, 8:36 a.m.;

47. January 5, 2010, 9:40 a.m.;

48.     January 6, 2010, 4:33 p.m.;

49.     January 7, 2010, 3:16 p.m.;

50.     January 8, 2010, 12:59 p.m.;

51.     January 9, 2010, 2:32 p.m.;

52.     January 15, 2010, 2:57 p.m.;

53.     January 20, 2010, 3:16 p.m.;

54.     January 20, 2010, 8:13 p.m.;

55.     January 25, 2010, 4:26 p.m.;

56.     January 25, 2010, 8:18 p.m.;

57.     February 20, 2010, 12:08 p.m.;

58.     February 21, 2010, 12:08 p.m.;

59.     February 22, 2010, 1:54 p.m.;

60.     February 22, 2010, 8:09 p.m.;

61.     August 20, 2010, 8:35 a.m.;

62.     August 20, 2010, 11:18 a.m.;

63.     August 21, 2010, 8:41 a.m.;

64.     September 1, 2010, 10:28 a.m.;

65.     September 2, 2010, 10:45 a.m.;

66.     September 3, 2010, 12:50 p.m.;

67.     September 19, 2010, 11:14 a.m.;

68.     September 20, 2010, 10:43 a.m.;

69.     September 21, 2010, 11:33 a.m.;

70.     September 23, 2010, 9:13 a.m.;

8

71. September 25, 2010, 8:48 a.m.;

72. September 27, 2010, 9:16 a.m.;

73. October 1, 2010, 8:25 p.m.;

74. October 2, 2010, 1:53 p.m.;

75. October 4, 2010, 5:36 p.m.;

76. October 5, 2010, 2:52 p.m.;

77. October 6, 2010, 8:41 a.m.;

78. October 7, 2010, 3:42 p.m.;

79. October 8, 2010, 2:25 p.m.;

80. October 10, 2010, 4:07 p.m.;

81. October 12, 2010, 2:10 p.m.;

82. October 13, 2010, 1:08 p.m.;

83. October 13, 2010, 8:20 p.m.;

84. October 20, 2010, 8:00 p.m.;

85. October21, 2010, 4:20 p.m.;

86. October 22, 2010, 3:48 p.m.;

87. October 23, 2010, 3:01 p.m.;

88. October 25, 2010, 8:17 p.m.;

89. October 26, 2010, 6:29 p.m.;

90. October 27, 2010, 4:52 p.m.;

91. October 28, 2010, 8:39 p.m.;

92. October 29, 2010, 3:38 p.m.;

93. November 4, 2010, 3:06 p.m.;

94.     November 5, 2010, 6:46 p.m.;

95.     November 6, 2010, 10:23 a.m.;

96.     November 7, 2010, 1:08 p.m.;

97.     November 14, 2010, 12:40 p.m.;

98.     November 24, 2010, 8:51 a.m.;

99.     November 29, 2010, 8:56 p.m.;

100.    November 30, 2010, 8:46 p.m.;

101.    December 1, 2010, 8:47 p.m.;

102.    December 2, 2010, 5:52 p.m.;

103.    December 4, 2010, 4:24 p.m.;

104.    December 6, 2010, 11:42 a.m.;

105.    December 6, 2010, 4:37 p.m.;

106.    December 6, 2010, 8:26 p.m.;

107.    December 7, 2010, 10:17 a.m.;

108.    December 7, 2010, 2:33 p.m.;

109.    December 7, 2010, 5:41 p.m.;

110.    December 17, 2010, 8:35 a.m.;

111.    January 4, 2011, 12:06 p.m.;

112.    January 11, 2011, 8:20 p.m.;

113.    January 17, 2011, 9:04 a.m.;

114.    January 18, 2011, 9:04 a.m.;

115.    February 22, 2011, 1:07 p.m.;

116.    February 22, 2011, 8:02 p.m.;

117.   February 28, 2011, 1:10 p.m.;

118.   March 1, 2011, 1:37 p.m.;

119.   March 2, 2011, 1:03 p.m.;

120.   March 2, 2011, 7:12 p.m.;

121.   March 8, 2011, 1:06 p.m.;

122.   March 8, 2011, 7:04 p.m.;

123.   March 10, 2011, 8:15 a.m.;

124.   March 11, 2011, 8:13 a.m.;

125.   March 15, 2011, 8:23 a.m.;

126.   March 16, 2011, 12:29 p.m.;

127.   March 16, 2011, 4:51 p.m.;

128.   March 17, 2011, 8:14 a.m.;

129.   March 18, 2011, 8:15 a.m.;

130.   March 21, 2011, 8:18 a.m.;

131.   March 22, 2011, 2:17 p.m.;

132.   March 23, 2011, 1:33 p.m.;

133.   March 23, 2011, 8:05 p.m.;

134.   March 24, 2011, 8:15 a.m.;

135.   March 25, 2011, 8:16 a.m.;

136.   March 28, 2011, 8:18 a.m.;

137.   March 29, 2011, 9:13 a.m.;

138.   March 29, 2011, 4:45 p.m.;

139.   March 30, 2011, 8:26 a.m.;

11

140. March 31, 2011, 8:18 a.m.;

141. April 1, 2011, 8:26 a.m.;

142. April 5, 2011, 6:46 p.m.;

143. April 5, 2011, 7:13 p.m.;

144. April 6, 2011, 7:03 p.m.;

145. April 6, 2011, 7:47 p.m.;

146. April 7, 2011, 8:19 a.m.;

147. April 7, 2011, 4:41 p.m.;

148. April 12, 2011, 8:23 a.m.;

149. April 13, 2011, 8:21 a.m.;

150. April 17, 2011, 2:31 p.m.;

151. April 20, 2011, 5:50 p.m.;

152. April 20, 2011, 6:41 p.m.;

153. April 21, 2011, 4:29 p.m.;

154. April 21, 2011, 7:49 p.m.;

155. April 22, 2011, 1:26 p.m.;

156. April 28, 2011, 9:46 a.m.;

157. May 2, 2011, 8:56 a.m.;

158. May 8, 2011, 1:13 p.m.;

159. May 9, 2011, 11:48 a.m.;

160. May 9, 2011, 6:53 p.m.;

161. May 14, 2011, 1:53 p.m.;

162. May 15, 2011, 11:18 a.m.;

163. May 17, 2011, 6:40 p.m.;

164. May 17, 2011, 7:22 p.m.;

165. May 22, 2011, 12:40 p.m.;

166. May 23, 2011, 12:29 p.m.;

167. May 27, 2011, 5:29 p.m.;

168. May 28, 2011, 9:39 a.m.;

169. May 28, 2011, 5:23 p.m.;

170. May 29, 2011, 9:31 a.m.;

171. June 22, 2011, 1:08 p.m.;

172. June 22, 2011, 7:58 p.m.;

173. June 23, 2011, 12:58 p.m.;

174. June 23, 2011, 3:51 p.m.;

175. June 24, 2011, 2:58 p.m.;

176. June 24, 2011, 5:08 p.m.;

177. June 24, 2011, 6:48 p.m.;

178. June 24, 2011, 8:27 p.m.;

179. June 25, 2011, 10:53 a.m.;

180. June 27, 2011, 1:32 p.m.;

181. June 28, 2011, 1:40 p.m.;

182. June 28, 2011, 7:26 p.m.;

183. July 1, 2011, 12:38 p.m.;

184. July 2, 2011, 5:47 p.m.;

185. July 3, 2011, 11:25 a.m.;

13

186. July 10, 2015, 4:53 p.m.;

187. August 14, 2011, 9:05 a.m.;

188. August 15, 2011, 9:04 a.m.;

189. August 18, 2011, 10:23 a.m.;

190. August 18, 2011, 12:52 p.m.;

191. August 18, 2011, 2:45 p.m.;

192. August 18, 2011, 7:20 p.m.;

193. August 19, 2011, 9:37 a.m.;

194. August 19, 2011, 12:07 p.m.;

195. August 19, 2011, 2:32 p.m.;

196. August 19, 2011, 6:05 p.m.;

197. August 20, 2011, 8:34 a.m.;

198. August 20, 2011, 11:48 a.m.;

199. August 22, 2011, 8:09 a.m.;

200. August 22, 2011, 2:22 p.m.;

201. August 22, 2011, 4:55 p.m.;

202. August 23, 2011, 10:33 a.m.;

203. August 23, 2011, 1:41 p.m.;

204. August 23, 2011, 4:10 p.m.;

205. August 26, 2011, 2:22 p.m.;

206. August 27, 2011, 8:49 a.m.;

207. August 27, 2011, 10:36 a.m.;

208. August 27, 2011, 10:57 a.m.;

14

209.   August 27, 2011, 4:22 p.m.;

210.   August 28, 2011, 3:21 p.m.;

211.   August 29, 2011, 4:20 p.m.;

212.   August 30, 2011, 6:40 p.m.;

213.   August 31, 2011, 1:28 p.m.;

214.   August 31, 2011, 11:47 am.;

215.   August 31, 2011, 7:24 p.m.;

216.   August 31, 2011, 8:37 p.m.;

217.   September 3, 2011, 8:22 a.m.;

218.   September 3, 2011, 9:58 a.m.;

219.   September 3, 2011, 1:25 p.m.;

220.   September 4, 2011, 3:08 p.m.;

221.   September 5, 2011, 8:34 a.m.;

222.   September 5, 2011, 10:44 a.m.;

223.   September 5, 2011, 1:11 p.m.;

224.   September 5, 2011, 3:13 p.m.;

225.   September 5, 2011, 4:48 p.m.;

226.   September 6, 2011, 1:38 p.m.;

227.   September 6, 2011, 2:27 p.m.;

228.   September 7, 2011, 11:16 a.m.;

229.   September 7, 2011, 12:42 p.m.;

230.   September 7, 2011, 7:17 p.m.;

231.   September 7, 2011, 8:05 p.m.;

15

232.    September 8, 2011, 4:55 p.m.;

233.    September 10, 2011, 8:35 a.m.;

234.    September 10, 2011, 9:43 a.m.;

235.    September 10, 2011, 10:47 a.m.;

236.    September 10, 2011, 1:59 p.m.;

237.    September 14, 2011, 9:47 a.m.;

238.    September 14, 2011, 6:54 p.m.;

239.    September 14, 2011, 7:41 p.m.;

240.    September 17, 2011, 8:35 a.m.;

241.    September 17, 2011, 10:51 a.m.;

242.    September 17, 2011, 1:30 p.m.;

243.    September 18, 2011, 9:14 a.m.;

244.    September 18, 2011, 1:51 p.m.;

245.    September 20, 2011, 2:39 p.m.;

246.    September 20, 2011, 3:37 p.m.;

247.    September 21, 2011, 9:41 a.m.;

248.    September 21, 2011, 11:46 a.m.;

249.    September 24, 2011, 8:29 a.m.;

250.    September 24, 2011, 9:56 a.m.;

251.    September 24, 2011, 11:57 a.m.;

252.    September 24, 2011, 6:45 p.m.;

253.    September 25, 2011, 8:50 a.m.;

254.    September 25, 2011, 2:14 p.m.;

255. September 26, 2011, 1:57 p.m.;

256. September 27, 2011, 5:00 p.m.;

257. September 27, 2011, 8:36 p.m.;

258. September 28, 2011, 11:21 a.m.;

259. October 3, 2011, 11:18 a.m.;

260. October 3, 2011, 3:17 p.m.;

261. October 3, 2011, 7:35 p.m.;

262. October 4, 2011, 9:34 a.m.;

263. October 4, 2011, 3:03 p.m.;

264. October 4, 2011, 8:36 p.m.;

265. October 5, 2011, 9:52 a.m.;

266. October 5, 2011, 2:22 p.m.;

267. October 5, 2011, 5:36 p.m.;

268. October 20, 2011, 9:43 a.m.;

269. October 20, 2011, 12:17 p.m.;

270. October 20, 2011, 3:50 p.m.;

271. October 21, 2011, 8:54 a.m.;

272. October 21, 2011, 11:18 a.m.;

273. October 21, 2011, 2:51 p.m.;

274. October 27, 2011, 3:30 p.m.;

275. October 27, 2011, 7:56 p.m.;

276. October 28, 2011, 1:40 p.m.;

277. October 28, 2011, 3:06 p.m.;

278. October 28, 2011, 4:31 p.m.;

279. October 29, 2011, 8:18 a.m.;

280. October 29, 2011, 11:08 a.m.;

281. October 29, 2011, 3:23 p.m.;

282. October 30, 2011, 1:59 p.m.;

283. November 3, 2011, 6:31 p.m.;

284. November 4, 2011, 4:23 p.m.;

285. November 5, 2011, 10:26 a.m.;

286. November 5, 2011, 1:53 p.m.;

287. November 7, 2011, 6:27 p.m.;

288. November 8, 2011, 8:04 a.m.;

289. November 8, 2011, 1:08 p.m.;

290. November 8, 2011, 3:22 p.m.;

291. November 8, 2011, 8:32 p.m.;

292. November 9, 2011, 10:43 a.m.;

293. November 9, 2011, 2:17 p.m.;

294. November 9, 2011, 5:10 p.m.;

295. November 10, 2011, 3:19 p.m.;

296. November 10, 2011, 4:41 p.m.;

297. November 10, 2011, 6:46 p.m.;

298. November 10, 2011, 8:16 p.m.;

299. November 11, 2011, 2:04 p.m.;

300. November 11, 2011, 4:10 p.m.;

301.  November 12, 2011, 10:38 a.m.;

302.  November 13, 2011, 2:46 p.m.;

303.  November 14, 2011, 11:29 a.m.;

304.  November 14, 2011, 2:30 p.m.;

305.  November 14, 2011, 5:43 p.m.;

306.  November 15, 2011, 8:36 a.m.;

307.  November 15, 2011, 11:43 a.m.;

308.  November 15, 2011, 2:08 p.m.;

309.  November 15, 2011, 6:30 p.m.;

310.  November 16, 2011, 1:07 p.m.;

311.  November 16, 2011, 3:39 p.m.;

312.  November 16, 2011, 8:26 p.m.;

313.  November 17, 2011, 2:07 p.m.;

314.  November 17, 2011, 3:25 p.m.;

315.  November 18, 2011, 1:07 p.m.;

316.  November 18, 2011, 2:10 p.m.;

317.  November 18, 2011, 3:09 p.m.;

318.  November 18, 2011, 4:13 p.m.;

319.  November 18, 2011, 5:26 p.m.;

320.  November 19, 2011, 8:25 a.m.;

321.  November 19, 2011, 10:26 a.m.;

322.  November 19, 2011, 2:21 p.m.;

323.  November 20, 2011, 1:47 p.m.;

324.   November 21, 2011, 3:14 p.m.;

325.   November 21, 2011, 6:24 p.m.;

326.   November 22, 2011, 4:20 p.m.;

327.   November 22, 2011, 5:32 p.m.;

328.   November 22, 2011, 7:34 p.m.;

329.   November 23, 2011, 3:55 p.m.;

330.   November 25, 2011, 12:58 p.m.;

331.   November 25, 2011, 1:41 p.m.;

332.   November 25, 2011, 3:08 p.m.;

333.   November 25, 2011, 3:47 p.m.;

334.   November 25, 2011, 4:40 p.m.;

335.   November 28, 2011, 4:52 p.m.;

336.   November 29, 2011, 3:30 p.m.;

337.   November 29, 2011, 5:40 p.m.;

338.   November 30, 2011, 5:18 p.m.;

339.   November 30, 2011, 6:50 p.m.;

340.   November 30, 2011, 8:19 p.m.;

341.   December 1, 2011, 3:55 p.m.;

342.   December 1, 2011, 8:05 p.m.;

343.   December 2, 2011, 1:43 p.m.;

344.   December 2, 2011, 2:55 p.m.;

345.   December 2, 2011, 5:38 p.m.;

346.   December 3, 2011, 3:55 p.m.;

347. December 6, 2011, 11:28 a.m.;

348. December 6, 2011, 4:22 p.m.;

349. December 6, 2011, 6:30 p.m.;

350. December 6, 2011, 7:56 p.m.;

351. December 6, 2011, 8:34 p.m.;

352. December 7, 2011, 9:57 a.m.;

353. December 7, 2011, 4:43 p.m.;

354. December 7, 2011, 5:40 p.m.;

355. December 7, 2011, 6:43 p.m.;

356. December 8, 2011, 12:54 p.m.;

357. December 8, 2011, 1:30 p.m.;

358. December 8, 2011, 2:03 p.m.;

359. December 8, 2011, 4:01 p.m.;

360. December 8, 2011, 4:58 p.m.;

361. December 10, 2011, 8:20 a.m.;

362. December 10, 2011, 9:19 a.m.;

363. December 10, 2011, 10:10 a.m.;

364. December 10, 2011, 12:43 p.m.;

365. December 10, 2011, 4:59 p.m.;

366. December 11, 2011, 9:46 a.m.;

367. December 16, 2011, 10:03 a.m.;

368. December 16, 2011, 12:33 p.m.;

369. December 17, 2011, 3:10 p.m.;

21

370. December 19, 2011, 10:50 a.m.;

371. January 6, 2012, 5:01 p.m.;

372. January 9, 2012, 4:46 p.m.;

373. January 13, 2012, 4:42 p.m.;

374. January 15, 2012, 4:41 p.m.;

375. January 16, 2012, 3:36 p.m.;

376. January 18, 2012, 6:27 p.m.;

377. January 20, 2012, 2:54 p.m.;

378. January 21, 2012, 10:32 a.m.;

379. January 22, 2012, 3:39 p.m.;

380. January 23, 2012, 2:02 p.m.;

381. January 23, 2012, 5:30 p.m.;

382. January 24, 2012, 11:26 a.m.;

383. January 25, 2012, 5:38 p.m.;

384. January 26, 2012, 11:07 a.m.;

385. January 27, 2012, 1:00 p.m.;

386. January 27, 2012, 5:10 p.m.;

387. January 28, 2012, 9:15 a.m.;

388. February 3, 2012, 12:31 p.m.;

389. February 5, 2012, 9:17 a.m.;

390. February 5, 2012, 6:49 p.m.;

391. February 6, 2012, 9:20 a.m.;

392. February 6, 2012, 5:28 p.m.;

393. February 7, 2012, 10:38 a.m.;

394. February 10, 2012, 12:13 p.m.;

395. February 12, 2012, 8:44 a.m.;

396. February 13, 2012, 9:26 a.m.;

397. February 14, 2012, 10:39 a.m.;

398. February 15, 2012, 5:18 p.m.;

399. February 16, 2012, 10:37 a.m.;

400. February 22, 2012, 12:32 p.m.;

401. February 23, 2012, 4:34 p.m.;

402. February 25, 2012, 11:36 a.m.;

403. February 27, 2012, 4:40 p.m.;

404. February 28, 2012, 1:50 p.m.;

405. February 28, 2012, 5:48 p.m.;

406. February 29, 2012, 1:09 p.m.;

407. February 29, 2012, 3:55 p.m.;

408. March 2, 2012, 3:04 p.m.;

409. March 2, 2012, 3:04 p.m.;

410. March 5, 2012, 1:22 p.m.;

411. March 6, 2012, 6:28 p.m.;

412. March 7, 2012, 1:32 p.m.;

413. March 7, 2012, 5:23 p.m.;

414. March 8, 2012, 11:33 a.m.;

415. March 8, 2012, 3:30 p.m.;

416. March 9, 2012, 10:02 a.m.;

417. March 9, 2012, 1:14 p.m.;

418. March 10, 2012, 2:59 p.m.;

419. March 13, 2012, 9:58 a.m.;

420. March 13, 2012, 3:02 p.m.;

421. March 14, 2012, 10:01 a.m.;

422. March 16, 2012, 12:01 p.m.;

423. March 16, 2012, 1:59 p.m.;

424. March 17, 2012, 11:09 a.m.;

425. March 17, 2012, 3:50 p.m.;

426. March 19, 2012, 1:47 p.m.;

427. March 19, 2012, 3:11 p.m.;

428. April 7, 2012, 9:50 a.m.;

429. April 7, 2012, 3:57 p.m.;

430. April 12, 2012, 2:14 p.m.;

431. April 13, 2012, 12:50 p.m.;

432. April 15, 2012, 3:01 p.m.;

433. April 16, 2012, 9:27 a.m.;

434. April 17, 2012, 11:08 a.m.;

435. April 20, 2012, 12:41 p.m.;

436. April 20, 2012, 2:58 p.m.;

437. April 20, 2012, 4:55 p.m.;

438. April 21, 2012, 9:52 a.m.;

439.    June 2, 2012, 12:54 p.m.;

440.    June 4, 2012, 3:36 p.m.;

441.    June 5, 2012, 7:03 p.m.;

442.    June 5, 2012, 2:49 p.m.;

443.    June 6, 2012, 2:22 p.m.;

444.    June 6, 2012, 4:30 p.m.;

445.    June 7, 2012, 11:58 a.m.;

446.    June 7, 2012, 2:17 p.m.;

447.    June 11, 2012, 2:45 p.m.;

448.    June 11, 2012, 4:44 p.m.;

449.    June 12, 2012, 1:32 p.m.;

450.    June 12, 2012, 3:02 p.m.;

451.    June 13, 2012, 1:57 p.m.;

452.    June 16, 2012, 11:32 a.m.;

453.    June 19, 2012, 1:36 p.m.;

454.    June 22, 2012, 10:48 a.m.;

455.    June 22, 2012, 2:07 p.m.;

456.    June 25, 2012, 2:13 p.m.;

457.    June 25, 2012, 3:46 p.m.;

458.    June 26, 2012, 12:25 p.m.; and

459.    June 26, 2012, 2:38 p.m.

(*See* SCUSA/B 00001–00034.)

25

## CERTIFICATE OF SERVICE

I, J. Dominick Larry, an attorney, hereby certify that on May 26, 2015, I served the above and foregoing *Plaintiff's Responses to Defendant's First Set of Interrogatories*, by causing a true and accurate copy of such paper to be transmitted to the persons shown below via electronic mail and further, by placing a true and accurate copy of such paper in a postage prepaid envelope addressed to the persons shown below and depositing such envelope in the U.S. Mailbox located at 350 North LaSalle Street, Chicago, Illinois 60654.

James A. Rolfes
jrolfes@reedsmith.com
Henry Pietrkowski
hpietrkowski@reedsmith.com
Joseph B. Prater
jprater@reedsmith.com
Michael David Richman
mdrichman@reedsmith.com
REED SMITH LLP
10 South Wacker Drive, 40th Floor
Chicago, Illinois 60606

Abraham J. Colman
acolman@reedsmith.com
Felicia Yu
fyu@reedsmith.com
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, California 90071

s/ J. Dominick Larry

**TAB 22**

Case No. 15-1211

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

ACA International,

Petitioner,

v.

Federal Communications Commission,
named as United States of America,

Respondent.

## AMENDED PETITION FOR REVIEW

ACA International hereby petitions this Court for review of the order

of the Federal Communications Commission titled "Declaratory Ruling and

Order," *In re Rules and Regulations Implementing the Telephone Consumer

Protection Act of 1991*, released on July 10, 2015, a copy of which

accompanies this petition as Exhibit A. This amended petition replaces and

supersedes the Petition for Review (July 10, 2015).

I
**Nature of the Proceedings as to Which Review Is Sought**

ACA International filed a petition for rulemaking with the Federal

Communications Commission on February 11, 2014. The Commission

1

considered ACA's petition along with other petitions for clarification or expedited clarification, for a declaratory ruling or an expedited declaratory ruling, for an exemption, for rulemaking or expedited rulemaking, or for special temporary relief, under its dockets numbered GC Docket No. 02-278 and WC Docket No. 07-135. The Commission disposed of all such pending petitions in the order titled "Declaratory Ruling and Order," *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, released on July 10, 2015, a copy of which accompanies this petition as Exhibit A.

## II
## Facts on Which Venue Is Based

Pursuant to 28 U.S.C. § 2343, "[t]he venue of a proceeding under this chapter is in the judicial circuit in which the petitioner resides or has its principal office, or in the United States Court of Appeals for the District of Columbia Circuit." Venue therefore lies properly in this Court.

## III
## Grounds on Which Relief Is Sought

ACA International seeks relief on these grounds:

2

(1)     The Federal Communications Commission's treatment of
        "capacity" within the definition of an "automatic telephone
        dialing system" under the Telephone Consumer Protection Act
        is arbitrary, capricious, and an abuse of discretion, and results
        in an approach that does not comport with a caller's
        constitutional rights of due process and freedom of speech and
        that disregards the applicable statute.

(2)     The Commission's treatment of predictive dialers is not in
        accordance with law, and exceeded the Commission's statutory
        authority, in that it expands the statutory definition of an
        "automatic telephone dialing system" under the Telephone
        Consumer Protection Act beyond the definition that Congress
        enacted.

(3)     The Commission's treatment of "prior express consent"
        (including its treatment of reassigned numbers) was arbitrary,
        capricious, and an abuse of discretion, and does not comport
        with a caller's constitutional right of due process.

(4)     The Commission's order, both with respect to the topics
        enumerated above and otherwise, was arbitrary, capricious, and

3

**App. 264**

an abuse of discretion because it disregards Congress's findings

in the Telephone Consumer Protection Act, the statute from

which the Commission's jurisdiction and authority derive.

## IV
## Relief Prayed

ACA International therefore prays that this Court—

(1)    hold unlawful and set aside the Federal Communications

Commission's treatment of "capacity" within the definition of

an "automatic telephone dialing system" under the Telephone

Consumer Protection Act, and compel the Commission to treat

"capacity" in a way that comports with a caller's rights of due

process and freedom of speech;

(2)    hold unlawful and set aside the Commission's treatment of

predictive dialers, and compel the Commission to treat them in

a way that does not expand the statutory definition of an

"automatic telephone dialing system" under the Telephone

Consumer Protection Act beyond the definition that Congress

enacted;

4

(3)    hold unlawful and set aside the Commission's treatment of

prior express consent, including the Commission's treatment of

reassigned numbers, and compel the Commission to either—

    (A)    establish a viable safe harbor for autodialed "wrong

number" non-telemarketing calls to reassigned wireless

numbers, or

    (b)    define "called party" as a call's intended recipient.

July 13, 2015.

DYKEMA GOSSETT PLLC

/s/ Brian Melendez

Brian Melendez, D.C. Cir. Bar No.
   55882
DYKEMA GOSSETT PLLC
4000 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55403
Ph. 612.486.1589
Fax 877.599.6688
bmelendez@dykema.com

Attorney for Petitioner
   ACA International

5

## Certificate of Service

Within one business day of this petition for review being filed:

(a)    I will cause a date-stamped copy of this petition to be served by

hand on these persons:

Office of General Counsel
Federal Communications Commission
Eighth Floor
445 Twelfth Street, SW
Washington, DC 20554

The Honorable Loretta E. Lynch
The Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

(b)    I will cause a copy of this petition to be served by first-class

mail, postage prepaid, on these parties admitted to participate in

the agency proceedings:

Mark W. Brennan
Hogan Lovells US LLP
555 13th Street, NW
Washington, DC 20004
*Counsel for the American
    Association of Healthcare
    Administrative Management,
    RTI International; and United
    Healthcare Services, Inc.*

Virginia O'Neill
Vice President & Assistant Chief
        Compliance Counsel
American Bankers Association
1120 Connecticut Avenue, NW
Washington, DC 20036

1

Charles H. Kennedy
The Kennedy Privacy Law Firm
1050 30th Street, NW
Washington, DC 20007
*Counsel for American Bankers
    Association and Consumer
    Bankers Association*

Monica S. Desai
Patton Boggs LLP
2550 M Street, NW
Washington, DC 20037
*Counsel for A Coalition of Mobile
    Engagement Providers, Retail
    Industry Leaders Association,
    and ACA International*

Kate Larson
David Pommerehn
Consumer Bankers Association
Suite 550
1225 Eye Street, NW
Washington, DC 20005

Michael A. Signorelli
Venable LLP
575 Seventh Street, NW
Washington, DC 20004
*Counsel for Direct Marketing
    Association*

Jerry Cerasale
Senior Vice President,
    Government Affairs
Direct Marketing Association
Suite 1100
1615 L Street, NW
Washington, DC 20036

Paul D.S. Edwards
Unit 203
713 Wheat Ridge Lane
Las Vegas, NV 89145

Debra Brewer Hayes
Charles Clinton Hunter
The Hayes Law Firm, PC
Suite 210
700 Rockmead
Kingwood, TX 77339
*Counsel for Milton H. Fried, Jr.,
    and Richard Evans*

Natalie G. Roisman
Phillip R. Marchesiello
Joshua M. Bercu
Wilkinson Barker Knauer, LLP
Suite 700
2300 N Street, NW
Washington, DC 20037
*Counsel to Glide Talk, Ltd.*

Dorothy E. Cukier
Corporate Counsel, Executive
    Director
External Affairs
Global Tel*Link Corporation
Suite 100
12021 Sunset Hills Road
Reston, VA 20190

Cheire R. Kiser
Cahill Gordon & Reindel LLP
Suite 950
1990 K Street, NW
Washington, DC 20006
*Counsel for Global Tel\*Link*
*Corporation*

National Association of Attorneys
General
Eighth Floor
2030 M Street, NW
Washington, DC 20036

Susan Webb, President
ABIL Employment Services
Suite 200
5025 East Washington
Phoenix, AZ 85034
*National Employment Network*
*Association*

Michele A. Shuster
Nicholas R. Whisler
Mac Murray, Petersen and Shuster
LLP
Suite 210
6530 West Campus Oval
New Albany, OH 43054
*Counsel for Professional*
*Association for Customer*
*Engagement*

Phillip J. Grudzinski
President and CEO
Professional Association for
Customer Engagement
Suite 480
8500 Keystone Crossing
Indianapolis, IN 46240

Joseph E. Sandler
Elizabeth L. Howard
Sandler Reiff Young & Lamb
Suite 300
1025 Vermont Avenue, NW
Washington, DC 20002
*Counsel for Revolution Messaging,*
*LLC*

Joseph Oliva
Oliva & Associates
Suite 350
11770 Bernardo Plaza Court
San Diego, CA 92128
*Counsel for Rubio's Restaurant,*
*Inc.*

N. Martin Stringer
Michael F. Smith
McAfee and Taft
Suite 900
1717 South Boulder
Tulsa, OK 74119
*Counsel for Stage Stores, Inc.*

3

**App. 269**

Burton D. Brillhart
McGlinchey Stafford PLLC
Suite 2750
2711 North Haskell Avenue
Dallas, TX 75204
*Counsel for Santander Consumer*
*USA, Inc.*

Lauren E. Campisi
McGlinchey Stafford PLLC
Twelfth Floor
601 Poydras Street
New Orleans, LA 70130
*Counsel for Santander Consumer*
*USA, Inc.*

Dustin D. Godenswager
McGlinchey Stafford PLLC
Suite 406
25550 Chagrin Boulevard
Cleveland, OH 44122
*Counsel for Santander Consumer*
*USA, Inc.*

Chad R. Fuller
Troutman Sanders LLP
Suite 400
11682 El Camino Real
San Diego, CA 92130
*Counsel for Santander Consumer*
*USA, Inc.*

James D. Snell
Ronald W. Del Sesto, Jr.
Bingham McCutchen LLP
2020 K Street, NW
Washington, DC 20006-1806
*Counsel for TextMe, Inc.*

Lauren Lynch Flick
Pillsbury Winthrop Shaw Pittman
    LLP
2300 N Street, NW
Washington, DC 20037
*Counsel for YouMail, Inc., 3G*
*Collect Inc., 3G Collect LLC*

Andrew D. Bluth
Pillsbury Winthrop Shaw Pittman
    LLP
Suite 300
2600 Capitol Avenue
Sacramento, CA 95816-5930
*Counsel for 3G Collect Inc., 3G*
*Collect LLC*

4

**App. 270**

July 13, 2015.

DYKEMA GOSSETT PLLC

/s/ Brian Melendez

Brian Melendez, D.C. Cir. Bar No.
  55882
DYKEMA GOSSETT PLLC
4000 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55403
Ph. 612.486.1589
Fax 877.599.6688
bmelendez@dykema.com

Attorney for Petitioner
  ACA International

1

**TAB 23**

1

2

3

4

5

6

7

8                 UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11

12   DAISY CHATTANOND,              )   CV 15-08549-RSWL-JCx
                                    )
13                                  )
              Plaintiff,            )   **ORDER** re: Motion To Stay
14                                  )   Action [19]
       v.                           )
15                                  )
                                    )
16   DISCOVER FINANCIAL             )
     SERVICES, LLC,                 )
17                                  )
                                    )
18            Defendant.            )
                                    )
19   _____ )

20        Currently before the Court is a Motion to Stay

21   Action [19] ("Motion") filed by Defendant Discover

22   Financial Services, LLC ("Defendant").

23        Having reviewed all papers submitted pertaining to

24   this Motion, the Court **NOW FINDS AND RULES AS FOLLOWS**:

25   the Court **GRANTS** Defendant's Motion and **STAYS** the

26   Action pending the Supreme Court's decision in Spokeo,

27   Inc. v. Robins, 135 S. Ct. 1892 (2015), and the D.C.

28

1

**App. 272**

1   Circuit's decision in Appeal No. 15-1211.[1]

I. BACKGROUND

3   **A.   Factual Background**

4        Plaintiff Daisy Chattanond's ("Plaintiff") Action
5   is for unlawful debt collection practices in violation
6   of the Telephone Consumer Protection Act, 47 U.S.C. §
7   227 *et seq.* ("TCPA") and the California Rosenthal Fair
8   Debt Collection Practices Act, Cal. Civ. Code § 1788 *et*
9   *seq.* ("RFDCPA").

10       Plaintiff alleges that her debt arose through a
11  consumer credit transaction, and that in 2015,
12  Defendant began placing collection calls to Plaintiff
13  demanding payment for an alleged debt owed for a
14  student loan.  Id. at ¶¶ 9-10.

15       Plaintiff alleges that Defendant's calls were
16  placed using an automatic telephone dialing system
17  ("ATDS").  Id. at ¶ 13.  Plaintiff also alleges that
18  Defendant's automated collection calls were made
19  without her consent.  Id. at ¶ 15.  Despite repeated
20  requests to cease, Plaintiff alleges that Defendant
21  continued to place multiple collection calls to
22  Plaintiff on a daily basis.  Id. at ¶ 16.

23  / / /

24  / / /

25

26       [1] The Court **GRANTS** Defendant's Request for Judicial Notice
    [20].  Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442. F.3d 741,
27  746 n. 6 (9th Cir. 2006); Sami v. Wells Fargo Bank, No. C-12-
    00108 DMR, 2012 WL 3204194, at *1 (N.D. Cal. Aug. 3, 2012)
28  (granting request for judicial notice of a court-entered
    judgment).

2

B.  **Procedural Background**

On November 2, 2015, Plaintiff filed her Complaint [1].  Plaintiff requests statutory damages under both the TCPA and the RFDCPA.  Compl. ¶¶ 19-22, 25-27.

On January 5, 2016, Defendant filed the instant Motion [19].  The Court took the matter under submission on February 3, 2016 [25].

## II. DISCUSSION

A.  **Legal Standard**

The authority to stay proceedings is incidental to the Court's inherent power to control its docket and calendar and to provide for a just determination of pending cases.  Lopez v. Am. Express Bank, FSB, No. CV 09-07335 SJO (MANx), 2010 WL 3637755, at *4 (C.D. Cal. Sept. 17, 2010) (citing Landis v. N. Am. Co., 299 U.S. 248, 254 (1936)).  The Court, therefore, may "find it . . . efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case."  Leyva v. Certified Grocers of Cal., Ltd., 593 F.2d 857, 863 (9th Cir. 1979).  The rule applies to judicial proceedings and does not require the issues of such proceedings be necessarily controlling of the action before the Court.  Id. at 863-64.  A stay should not be granted unless it appears likely that the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims.  Id.; see Landis, 299 U.S. at 256-57

3

1  (discretion abused because the stay "continue[d] in
2  effect" without "reasonable limits").

3      In exercising its discretion in determining whether
4  to issue a stay, the Court must weigh the competing
5  interests affected by the granting or denying of a
6  request for a stay. <u>Lockyer v. Migrant Corp.</u>, 398 F.3d
7  1098, 1110 (9th Cir. 2005). The competing interests
8  include (1) "the possible damage which may result from
9  the granting of a stay," (2) "the hardship or inequity
10 which a party may suffer in being required to go
11 forward," and (3) "the orderly course of justice
12 measured in terms of the simplifying or complicating of
13 issues, proof, and questions of law which could be
14 expected to result from a stay." <u>CMAX, Inc. v. Hall</u>,
15 300 F.2d 265, 268 (9th Cir. 1962) (citing <u>Landis</u>, 299
16 U.S. at 254-55). The proponent of a stay has the
17 burden of proving that a stay is justified. <u>Clinton v.</u>
18 <u>Jones</u>, 520 U.S. 681, 708 (1997).

19 **B.  Discussion**

20     1.  <u>Stay Pending the Supreme Court's Decision in</u>
21         <u>Spokeo</u>

22     In <u>Robins v. Spokeo, Inc.</u>, the Ninth Circuit held
23 that an individual plaintiff has Article III standing
24 to sue under the Fair Credit Reporting Act ("FCRA")
25 where the plaintiff alleges violations of statutory
26 rights but has not pled actual harm in its complaint.
27 742 F.3d 409, 413 (9th Cir. 2014), <u>cert. granted</u>, 135
28 S. Ct. 1892 (U.S. Apr. 27, 2015) (No. 13-1339)

1    On April 27, 2015, the Supreme Court granted
2  certiorari in <u>Spokeo</u>.  135 S. Ct. 1892 (2015).  The
3  question presented to the Supreme Court is: "Whether
4  Congress may confer Article III standing upon a
5  plaintiff who suffers no concrete harm, and who
6  therefore could not otherwise invoke the jurisdiction
7  of a federal court, by authorizing a private right of
8  action based on a bare violation of a federal statute."[2]
9  The oral argument in <u>Spokeo</u> took place on November 2,
10  2015.[3]

11    While <u>Spokeo</u> involves claims under the FCRA, the
12  constitutional question extends to the TCPA.  Other
13  district courts have granted motions to stay in TCPA
14  cases, pending the Supreme Court's determination of the
15  standing issue in <u>Spokeo</u>.  <u>See, e.g.</u>, <u>Eric B. Fromer
16  Chiropractic, Inc. v. N.Y. Life Ins. & Annuity Corp.</u>,
17  No. CV 15-04767-AB (JCx), 2015 WL 6579779, at *1 (C.D.
18  Cal. Oct. 19, 2015) (staying TCPA case); <u>Tel. Sci.
19  Corp. v. Hilton Grand Vacations Co.</u>, No. 6:15-cv-969-
20  Orl-41DAB, 2015 WL 744409, at *3 (M.D. Fla. Nov. 20,
21  2015) (same); <u>Duchene v. Westlake Servs., LLC</u>, No.
22  2:13-cv-01577, 2015 WL 5947669, at *4 (W.D. Pa. Oct.
23  13, 2015) (same); <u>Boise v. ACE USA, Inc.</u>, No. 15-Civ-
24  21264, 2015 WL 4077433, at *3 (S.D. Fla. July 6, 2015)

25  ───────────────
26    [2] Question Presented, <u>Spokeo</u>, 135 S. Ct. 1892, <u>available at</u>
    http://www.supremecourt.gov/qp/13-01339qp.pdf.

27    [3] Supreme Court of the United States, Granted & Noted List,
28  <u>available at</u>
    http://www.supremecourt.gov/grantednotedlist/15grantednotedlist.

5

1  (same).

2      Moreover, district courts in the Ninth Circuit have

3  granted longer stays than the stay requested here,

4  pending the Supreme Court's decision in Spokeo.  See,

5  e.g., Ramirez v. Trans Union, LLC, No. 12-cv-00632-JSC,

6  2015 WL 6159942, at *2 (N.D. Cal. June 22, 2015)

7  (staying a case arising under the FCRA); Provo v. Rady

8  Children's Hosp.-San Diego, No. 15cv0081 JM (BGS), 2015

9  WL 6144029, at *1 (S.D. Cal. July 29, 2015) (staying a

10  case arising under the Fair Debt Collection Practices

11  Act ("FDCPA")).

12      Here, a stay of the Action is the fairest course

13  for the parties.  The outcome of Spokeo will affect the

14  case at hand if the Supreme Court determines that

15  Plaintiff does not have Article III standing by only

16  alleging a bare violation of the TCPA, but no concrete

17  harm.  The Supreme Court has already heard oral

18  argument in Spokeo, and the decision in Spokeo will

19  likely be issued within a few months of this Order.

20  Accordingly, the possible prejudice to Plaintiff is

21  minimal, as this case will only be stayed for a few

22  months until the Supreme Court's ruling in Spokeo.

23      Moreover, Plaintiff does not seek immediate

24  injunctive relief to remedy an ongoing violation of the

25  TCPA.  See Lopez, 2010 WL 3637755, at *5 (finding that

26  stay was warranted even though plaintiff suffered

27  ongoing harm and sought injunctive relief because,

28  among other things, plaintiff's harm could be remedied

6

1 by an award of damages). Plaintiff will not be unduly
2 prejudiced or harmed by a stay of the proceedings,
3 which only stands to delay Plaintiff's potential
4 recovery for a few months.

5     Defendant also faces the risk of unnecessary
6 proceedings and expenses if this case is not stayed, as
7 Defendant will incur costs relating to fact and expert
8 discovery, preparation of pretrial motions, and trial
9 preparation to defend this Action. These costs may be
10 unnecessary if the Supreme Court finds that Plaintiff
11 does not have Article III standing. "It would be
12 burdensome for both parties to spend much time, energy,
13 and resources on pretrial and discovery issues, only to
14 find those issues moot within less than a year."
15 Lopez, 2010 WL 3637755, at *4.

16     A stay in this case will also streamline the case
17 and avoid unnecessary litigation. See Provo, 2015 WL
18 6144029, at *1 (noting that a stay would streamline the
19 case, identify controlling legal principles, and
20 identify the scope of discovery). Accordingly, the
21 public interest in preserving judicial resources weighs
22 in favor of staying the case.

23     Lastly, the Court is confident that a stay of the
24 action is appropriate because several other Ninth
25 Circuit district courts have so similarly held. See
26 Ramirez, 2015 WL 6159942, at *2 (staying FCRA case
27 pending Spokeo decision); Provo, 2015 WL 6144029, at *1
28 (staying FDCPA case pending Spokeo decision); Malakha

1  v. Nationwide Credit, Inc., No. 3:15-cv-1562-DMS-MDD
2  (S.D. Cal. Dec. 15, 2015), Def.'s Req. For Judicial
3  Notice Ex. 4; Fromer, 2015 WL 6579779, at *1 (staying
4  TCPA case pending Spokeo decision); Patel v. Trans
5  Union, LLC et al., No. 3:14-cv-0522-LB (N.D. Cal. Sept.
6  3, 2015), Def.'s Req. For Judicial Notice, Ex. 3
7  (staying FRCA case pending Spokeo decision); Larson v.
8  Trans Union, LLC, No. 12-CV-057260-WHO, 2015 WL
9  3945052, at *8 (N.D. Cal. June 26, 2015) (staying FRCA
10 case pending Spokeo decision).[4]
11      2.   Stay Pending Appeal No. 15-1211 in the D.C.
12           Circuit
13      A stay is also warranted pending the D.C. Circuit's
14 decision on the appeals[5] of the Federal Communications
15 Commission's ("FCC") In re Rules & Regulations
16 Implementing the Tel. Consumer Prot. Act of 1991, 30
17 FCC Rcd 7961 (2015) ("July 2015 Ruling").
18      In ACA Int'l, Appeal No. 15-1211, the D.C. Circuit
19 will address, among other things, what type of
20
21 _____
22      [4] Plaintiff's reliance on Speer v. Whole Food Market Grp.,
   Inc., No. 8:14-cv-3035-T-26TBM, 2015 WL 2061665, at *1 (M.D. Fla.
23 Apr. 29, 2015) is not as persuasive as the cases mentioned above,
   as Speer was decided two days after the Supreme Court granted
   certiorari in Spokeo, and before oral argument in Spokeo was
24 heard.

25      [5] Defendant notes two appeals before the D.C. Circuit: (1)
   ACA Int'l v. Fed. Commc'ns Comm'n, Appeal No. 15-1211 (D.C.
26 Circuit) (filed on Oct. 13, 2015), and (2) Chamber of Commerce v.
   Fed. Commc'ns Comm'n, Appeal No. 15-1306 (D.C. Circuit) (filed on
27 Sept. 2, 2015).  The D.C. Circuit consolidated Appeal No. 15-
   1306, and others, with Appeal No. 15-1211. Def.'s Req. For
28 Judicial Notice, Ex. 5.

1 | equipment constitutes an ATDS. Under the TCPA, an ATDS
2 | is equipment "which has the capacity (A) to store or
3 | produce telephone numbers to be called, using a random
4 | or sequential number generator; and (B) to dial such
5 | numbers." 47 U.S.C. § 227(a)(1). Under the July 2015
6 | Ruling, a piece of equipment has sufficient "capacity"
7 | to qualify as an ATDS if it has the present or
8 | "potential" capacity to store or produce numbers to be
9 | called using a random generator, but not if it only has
10 | the "theoretical" capacity. July 2015 Ruling at 7971-
11 | 78 ¶¶ 10-24. The July 2015 Ruling does not clarify the
12 | difference between "potential" and "theoretical"
13 | capacity.

14 | The D.C. Circuit will determine whether the FCC's
15 | treatment of the term "capacity" within the definition
16 | of an ATDS is "arbitrary, capricious, and an abuse of
17 | discretion, and results in an approach that does not
18 | comport with the caller's constitutional rights of due
19 | process and freedom of speech and that disregards the
20 | applicable statute." Def.'s Req. For Judicial Notice,
21 | Ex. 1. Because Plaintiff must prove that Defendant
22 | called her using an ATDS in order to establish a TCPA
23 | claim, the definition of an ATDS is directly implicated
24 | in this litigation.[6] See Meyer v. Portfolio Recovery
25 | Assocs., LLC, 707 F.3d 1036, 1043 (9th Cir. 2012) ("The
26 | three elements of a TCPA claim are: (1) the defendant

27 |

---

28 | [6] Plaintiff's argument that a "predictive dialer" definitively constitutes an ATDS is irrelevant. Plaintiff's Complaint does not allege that Defendant used a "predictive dialer" to call Plaintiff.

1 called a cellular telephone number; (2) using an
2 automatic telephone dialing system [ATDS]; (3) without
3 the recipient's prior express consent.").

4     The final briefing in Appeal No. 15-1211 was
5 completed on February 24, 2016. Def.'s Req. For
6 Judicial Notice, Ex. 5. Accordingly, Appeal No. 15-
7 1211 is not likely to remain pending for an extended
8 period of time, and the possible prejudice to Plaintiff
9 is minimal.

10     Additionally, for similar reasons as set forth
11 above, hardship to Defendant and considerations of
12 judicial economy weigh in favor of a stay. If the case
13 is not stayed, Defendant will suffer hardship in
14 conducting discovery and trial preparation in light of
15 the uncertain difference between "potential" capacity
16 and "theoretical" capacity under the definition of an
17 ATDS.

18     Lastly, granting a stay will simplify the issues in
19 this case and conserve judicial resources. Any Order
20 by this Court which is issued in reliance on the July
21 2015 Ruling will be called into question if the D.C.
22 Circuit overturns the July 2015 Ruling. Accordingly,
23 the Court and both parties will benefit from a
24 clarification of the applicable law. See Provo, 2015
25 WL 6144029, at *1.

26                 **III. CONCLUSION**

27     For these reasons, the Court **GRANTS** Defendant's
28 Motion [19] and **STAYS** the case until the Supreme Court
   decides Spokeo and the D.C. Circuit decides Appeal No.

1 | 15-1211.  The parties shall jointly file a status

2 | report notifying the Court of how the parties wish to

3 | proceed in this Action within fourteen (14) days of

4 | both decisions being issued.

5 |   Further, the Scheduling Conference, presently under

6 | submission [33], is vacated and will be reset as

7 | necessary.

8 |   **IT IS SO ORDERED.**

9 |

10 | DATED: February 26, 2016   /s/ RONALD S.W. LEW

11 |            **HONORABLE RONALD S.W. LEW**

12 |            Senior U.S. District Judge

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

# TAB 24

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ALETHA K. MACKIEWICZ,

Plaintiff,

v.                                                    Case No:  6:15-cv-465-Orl-18GJK

NATIONSTAR MORTGAGE, LLC,

Defendant.

## ORDER

This cause comes for consideration on Defendant Nationstar Mortgage, LLC's ("Nationstar") Motion to Stay Proceedings Pending Ruling By United States Circuit Court of Appeals for the District of Columbia and the Supreme Court (the "Motion") (Doc. 27). Plaintiff Aletha Mackiewicz responded in opposition (Doc. 29). Nationstar contends that "two important legal issues that may be dispositive of this case" are currently pending before the United States Court of Appeals for the District of Columbia and the United States Supreme Court, and asks the Court to stay these proceedings until those cases are decided. (Doc. 27 at 1.)

A district court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket . . . [and] calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936). In the Middle District of Florida, courts consider several factors when evaluating a request for a stay, including prejudice to the non-moving party, whether the requested stay would simplify and clarify the issues, and whether the potential stay would reduce the burden of litigation on the parties and on the court. *See, e.g., Freedom Sci., Inc. v.*

*Enhanced Vision Sys.*, No. 8:11-CIV-1194-T-17-AEP, 2012 U.S. Dist. LEXIS 11410, at *2 (M.D. Fla. Jan. 21, 2012).

Here, the Court finds that a stay is warranted. Mackiewicz does not argue that a stay would prejudice her in any non-trivial way, and the Court cannot conceive of any significant prejudicial effects that would result from a stay order. Furthermore, a stay would assist the Court in simplifying and clarifying the law to be applied and issues to be decided. Mackiewicz concedes as much in her response when she observes that at least one count of the Complaint implicates a core issue involved in the *Spokeo* case currently before the Supreme Court—whether Article III standing may be conferred upon a plaintiff who suffers no concrete harm. (Doc. 29 at 5.) Further guidance on this issue and the *ACA International* question before the D.C. Circuit—the proper scope of the phrase "automatic telephone dialing system" within the Telephone Consumer Protection Act—would allow the Court to render a more certain, correct, and clear decision. Finally, a stay would reduce the burden of litigation on the parties and the Court by allowing the Court to avoid issuing a dispositive Order in the midst of an uncertain legal environment.

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Defendant Nationstar Mortgage, LLC's Motion to Stay Proceedings Pending Ruling By United States Circuit Court of Appeals for the District of Columbia and the Supreme Court (the "Motion") (Doc. 27), is hereby **GRANTED**.

2. This action is **stayed pending the Supreme Court's decision in *Spokeo, Inc. v. Robins*, and the United States Court of Appeals for the District of Columbia Circuit's decision in *ACA International*.**

2

3. Defendant Nationstar Mortgage, LLC, is **ORDERED** to file a **status report every ninety (90) days** commencing from the date of this Order.

**DONE AND ORDERED** at Orlando, Florida, this ___*10*___ day of November, 2015.

_____
G. KENDALL SHARP
SENIOR UNITED STATES DISTRICT JUDGE

Copies to:
Counsel of Record

3

App. 285