**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| HENRY ESPEJO, individually and on behalf of all others similarly situated, | Case No.: 1:11-cv-08987 |
| | Honorable Charles P. Kocoras |
| *Plaintiff*, | Magistrate Judge Sidney I. Schenkier |
| *v.* | |
| SANTANDER CONSUMER USA, INC., an Illinois corporation, | |
| *Defendant*. | |
| | |
| FAYE LEVINS, individually and on behalf of all others similarly situated, | Case No.: 1:12-cv-09431 |
| | Honorable Charles P. Kocoras |
| *Plaintiff*, | Magistrate Judge Sidney I. Schenkier |
| *v.* | |
| SANTANDER CONSUMER USA, INC., an Illinois corporation, | |
| *Defendant*. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF**
**<u>LEVINS'S MOTION FOR CLASS CERTIFICATION</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... ii

INTRODUCTION .................................................................................................................... 1

BACKGROUND ...................................................................................................................... 3

ARGUMENT ......................................................................................................................... 11

I.     The Proposed Class and Subclass Are Ascertainable. ...................................................... 14

II.    The Proposed Class and Subclass Satisfy Rule 23(a)'s Requirements. ........................... 16

    A.     The proposed Class and Subclass are sufficiently numerous because they are comprised of at least thousands of individuals. .................................................... 16

    B.     Members of the proposed Class and Subclass share common issues of law and fact.............................................................................................................................. 18

        1.     Whether Santander's dialing equipment falls within the definition of an ATDS is a common question. ............................................................... 19

        2.     Whether Santander can demonstrate consent is a common question. ...... 20

        3.     Whether the Classes suffered the same injuries is a common question. ................................................................................................... 21

    C.     Plaintiff's claims are typical of those of the proposed Classes............................. 22

    D.     Plaintiff and proposed class counsel will fairly and adequately protect the interests of the proposed Classes. ....................................................................... 24

III.   The Proposed Class and Subclass Satisfy Rule 23(b)(3)'s Requirements. ....................... 27

    A.     Common questions of law and fact predominate.................................................. 27

    B.     A class action is the superior method for resolving this controversy. .................. 30

CONCLUSION...................................................................................................................... 32

# TABLE OF AUTHORITIES

**UNITED STATES SUPREME COURT CASES**

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997)..................................................................................... 24, 27

*Erica P. John Fund, Inc. v. Halliburton Co.,*
    131 S. Ct. 2179 (2011)...................................................................................... 27

*Tyson Foods, Inc. v. Bouaphakeo,*
    136 S. Ct. 1036, 2016 WL 1092414 (Mar. 22, 2016)...................................... 27

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2011)......................................................................... 18, 19, 22

**UNITED STATES COURT OF APPEALS CASES**

*De La Fuente v. Stokely-Van Camp, Inc.,*
    713 F.2d 225 (7th Cir. 1983) ...................................................................... 22, 24

*Gomez v. St. Vincent Health, Inc.,*
    649 F.3d 583 (7th Cir. 2011) ............................................................................ 24

*Ira Holtzman, C.P.A. v. Turza,*
    728 F.3d 682 (7th Cir. 2013) .......................................................................... 3, 13

*Keele v. Wexler,*
    149 F.3d 589 (7th Cir. 1998) ............................................................................ 18

*Mace v. Van Ru Credit Corp.,*
    109 F.3d 338 (7th Cir. 1997) ...................................................................... 30, 31

*Messner v. Northshore Univ. HealthSystem,*
    669 F.3d 802 (7th Cir. 2012) ................................................... 11, 12, 27, 28

*Meyer v. Portfolio Recovery Assocs., LLC,*
    707 F.3d 1036 (9th Cir. 2012) .......................................................................... 20

*Mullins v. Direct Digital, LLC,*
    795 F.3d 654 (7th Cir. 2015) ................................................................... *passim*

*Rosario v. Livaditis,*
    963 F.2d 1013 (7th Cir. 1992) .............................................................. 18, 19, 24

*Satterfield v. Simon & Schuster, Inc.,*
    569 F.3d 946 (9th Cir. 2009) ...................................................................... 20, 26

*Spano v. The Boeing Co.*, 633 F.3d 574 (7th Cir. 2011) ...................................................... 18

*Suchanek v. Sturm Foods*, *Inc.*, 764 F.3d 750 (7th Cir. 2014) ..................................................... 18

UNITED STATES DISTRICT COURT CASES

*Abdeljalil v. Gen. Elec. Cap. Corp.*,
    306 F.R.D. 303 (S.D. Cal. 2015) .................................................................... 17

*Agne v. Papa John's Intern., Inc.*,
    286 F.R.D. 559 (W.D. Wash. 2012) ............................................................... 21

*Aranda v. Caribbean Cruise Line, Inc.*, No. 12 C 4069,
    2016 WL 1555576 (N.D. Ill. Apr. 18, 2016) ................................................ 26

*Balbarin v. N. Star*, No. 10-cv-1846,
    2011 WL 211013 (N.D. Ill. Jan. 21, 2011) ...................................... 14, 21, 29

*Birchmeier v. Caribbean Cruise Line, Inc.*,
    302 F.R.D. 240 (N.D. Ill. 2014) ............................................................ *passim*

*Bonner v. Santander Consumer USA, Inc.*,
    No. 12-cv-9431 (N.D. Ill.) .............................................................................. 25

*Bridgeview Health Care Ctr. Ltd. v. Clark*, No. 09 C 5601,
    2013 WL 1154206 (N.D. Ill. Mar. 19, 2013) ............................................... 22

*Brown v. Yellow Transp., In*c., No. 08 C 5908,
    2011 WL 1838741 (N.D. Ill. May 11, 2011) ................................................ 12

*CE Design v. Beaty Const., Inc.*, No. 07 C 3340,
    2009 WL 192481 (N.D. Ill. Jan. 26, 2009) ....................................... 16, 22, 23

*Connelly v. Hilton Grand Vacations Co., LLC*,
    294 F.R.D. 574 (S.D. Cal. 2013) .................................................................. 13

*Driver v. AppleIllinois, LLC*,
    265 F.R.D. 293 (N.D. Ill. 2010) ................................................................... 28

*Edmondson v. Simon*,
    86 F.R.D. 375 (N.D. Ill. 1980) ..................................................................... 23

*Espejo v. Santander Consumer USA, Inc.*,
    Case No. 1:11-cv-08987 (N.D. Ill.) ............................................................... 18

*G.M. Sign, Inc. v. Franklin Bank, S.S.B.*, No. 06-cv-949,
2008 WL 3889950 (N.D. Ill. Aug. 20 2008) .......................................................... 13, 16

*G.M. Sign., Inc. v. Finish Thompson, Inc.*, No. 07-cv-5953,
2009 WL 2581324 (N.D. Ill. Aug. 20, 2009) ............................................................ 21

*Gaspar v. Linvatec Corp.*,
167 F.R.D. 51 (N.D. Ill. 1996)................................................................................... 22

*Gehrich v. Chase Bank USA, N.A.*, No. 12 C 5510,
2016 WL 806549 (N.D. Ill. Mar. 2, 2016)........................................................... 16, 19

*Green v. Serv. Master on Location Servs. Corp.,* No. 07 C 4705,
2009 WL 1810769 (N.D. Ill. June 22, 2009) ............................................................ 16

*Hopwood v. Nuance Communc'ns, Inc.*,
No. 13-cv-2132 (N.D. Ill.) ........................................................................................ 26

*Jamison v. First Credit Servs., Inc.*,
290 F.R.D. 92 (N.D. Ill. 2013)............................................................................ 20, 29

*Johnson v. Yahoo!, Inc.*, No. 14-cv-2028,
2016 WL 25711 (N.D. Ill. Jan. 4, 2016) ........................................................... *passim*

*Keele v. Wexler*, No. 95 C 3483,
1996 WL 124452 (N.D. Ill. Mar. 19, 1996)......................................................... 16, 17

*Kolinek v. Walgreen Co.*,
311 F.R.D. 483 (N.D. Ill. 2015)........................................................................... 19, 24

*Kolinek v. Walgreen Co.*,
No. 13-cv-4086 (N.D. Ill.) ........................................................................................ 26

*Kramer v. Autobytel, Inc.*,
759 F. Supp. 2d 1165 (N.D. Cal. 2010) .................................................................... 26

*Kristensen v. Credit Payment Servs.*,
12 F. Supp. 3d 1292 (D. Nev. 2014)....................................................... 3, 14, 26, 30

*Lee v. Stonebridge Life Ins. Co.*,
289 F.R.D. 292 (N.D. Cal. 2013)........................................................................... 3, 26

*Lozano v. Twentieth Century Fox Film Corp.*,
702 F. Supp. 2d 999 (N.D. Ill. 2010) ....................................................................... 26

*Lukas v. Advocate Health Care Network & Subsidiaries*, No. 1:14-CV-2740,
    2015 WL 5006019 (N.D. Ill. Aug. 19, 2015) ................................................. 17

*Lynn v. Monarch Recovery Mgmt., Inc.*, No. 11-cv-2824,
    2013 WL 1247815 (D. Md. Mar. 25, 2013) ..................................................... 5

*Manno v. Healthcare Revenue Recovery Grp., LLC*,
    289 F.R.D. 674 (S.D. Fla. 2013) ..................................................... 14, 31, 32

*Maxwell v. Arrow Fin. Servs., LLC*, No. 03 C 1995,
    2004 WL 719278 (N.D. Ill. Mar. 31, 2004) ................................................... 25

*McCabe v. Crawford & Co.*,
    210 F.R.D. 631 (N.D. Ill. 2002) ......................................................... 16, 17

*Molnar et al. v. NCO Fin. Sys., Inc.*,
    No. 13-cv-131 (S.D. Cal.) .................................................................... 5

*Murray v. New Cingular Wireless Servs., Inc.*,
    232 F.R.D. 295 (N.D. Ill. 2005) ........................................................ 24, 25

*Nelson v. Santander Consumer USA, Inc., et al.*,
    No. 11-cv-307 (W.D. Wis.) .................................................................... 4

*Physicians Healthcare, Inc. v. Alma Lasers, Inc.*, No. 12-cv-4978,
    2015 WL 1538497 (N.D. Ill. Mar. 31, 2015) ................................................. 13

*Ramirez v. Trans Union, LLC*,
    301 F.R.D. 408 (N.D. Cal. 2014) ............................................................ 32

*Rojas v. CEC*,
    10-cv-5260 (N.D. Ill.) ...................................................................... 26

*Silbaugh v. Viking Magazine Servs.*,
    278 F.R.D. 389 (N.D. Ohio 2012) ........................................................ 21, 29

*Simpson v. Safeguard Properties, LLC*, No. 13 CV 2453,
    2014 WL 4652336 (N.D. Ill. Sept. 17, 2014) ................................................ 24

*Stemple v. QC Holdings, Inc.*, No. 12-cv-1997,
    2014 WL 4409817 (S.D. Cal. Sept. 4, 2014) ........................................... *passim*

*Targin Sign Sys., Inc. v. Preferred Chiropractic Ctr., Ltd.*,
    679 F. Supp. 2d 894 (N.D. Ill. 2010) ...................................................... 28

*Thrasher-Lyon v. Illinois Farmers Ins. Co.*,
    861 F. Supp. 2d 898 (N.D. Ill. 2012) .................................................. 29

*Whitten v. ARS Nat. Servs., Inc.*, No. 00-cv-6080,
    2001 WL 1143238 (N.D. Ill. Sept. 27, 2001) ................................. 26

## STATUTORY PROVISIONS

47 U.S.C. § 227 ........................................................................................ 1

47 U.S.C. § 227(b)(3) ............................................................................ 22

47 U.S.C. 227(a)(1) ................................................................................ 20

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 23(a) ........................................................................ 11, 12

Fed. R. Civ. P. 23(a)(1) ........................................................................ 16

Fed. R. Civ. P. 23(a)(2) ........................................................................ 18

Fed. R. Civ. P. 23(a)(3) ........................................................................ 22

Fed. R. Civ. P. 23(a)(4) ........................................................................ 24

Fed. R. Civ. P. 23(b)(3) ................................................................ 11, 12, 27

Fed. R. Civ. P. 23(g) ............................................................................ 25

## OTHER AUTHORITIES

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,
    18 F.C.C. Rcd. 14014 (July 3, 2003) ................................................ 4

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,
    30 F.C.C. Rcd. 7961 (July 10, 2015) .............................................. 20

Santander, Overview, http://www.santanderconsumerusa.com/about/overview
    (last visited Apr. 21, 2016) .......................................................... 3, 10

Santander, Products http://www.santanderconsumerusa.com/products
    (last visited Apr. 21, 2016) .............................................................. 3

# INTRODUCTION

This case is a clear-cut example of lender abuse, where you have a lender—here one specializing in car loans for relatively modest sums targeting the most vulnerable in society—using autodialing equipment to bombard their customers, and anyone remotely related to them, with calls to their cell phones without their consent, and in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"). Defendant Santander Consumer USA, Inc. ("Santander"), a publicly traded subsidiary of one of the world's largest banks, is one of the country's largest subprime auto lenders, and is one of its most prolific violators of the TCPA. In this case, Plaintiff Faye Levins alleges that Santander placed dozens of autodialed calls to her cell phone without her consent, in violation of the TCPA. But, as Levins is just one of millions of individuals unlawfully called by Santander, she brought her case as a putative class action, and she now seeks certification on behalf of a Class and Subclass of similarly situated individuals. The Class comprises all individuals who were called by Santander or its agents, using Santander's autodialer, on a number they did not previously provide to Santander or otherwise consent to be called on. The Subclass is limited to those Class members who were called on numbers obtained by Santander through its inbound call number-trapping system.

The path to certification here lies in Santander's own records. Those records show every telephone number Santander called, the equipment used to make those calls, the source of that number, and whether the number called was verified by the customer prior to being called. Thus, Santander's own records provide the information necessary to identify Class and Subclass members, and establish that Rule 23's requirements for class certification are satisfied here. Indeed, the records show that the Class likely consists of hundreds of thousands of members ("numerosity"), all of whom were in an identical evidentiary position (given that Santander's

records establish for each of them the number(s) at which they were called, how the number was called, and whether Santander was authorized to call them at that number) ("commonality" and "predominance"). Moreover, Levins's circumstances are no different than those of any other member of the Class or Subclass, and she and her counsel have steadfastly sought to vindicate the rights of everyone called unlawfully by Santander ("typicality" and "adequacy"). And, given the nature of the claims and the damages suffered by each class member relative to the resources required to effectively litigate their claims, the class action mechanism is quite clearly the superior method for adjudicating this case ("superiority").

Courts in this district and elsewhere have recently found class certification appropriate under highly similar circumstances in other TCPA cases where classes were defined by reference to the defendant's records. For instance, in *Johnson v. Yahoo!, Inc.*, No. 14-cv-2028, 2016 WL 25711 (N.D. Ill. Jan. 4, 2016), Judge Shah certified a class of individuals who received text messages on telephone numbers not associated in the defendant's records with any of its customers. Relying heavily on the Seventh Circuit's recent opinion in *Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015), *cert. denied*, 136 S. Ct. 1161 (Feb. 29, 2016), Judge Shah found that the precise and objective class criteria, established by reference to the defendant's own records, ensured class uniformity and rendered class treatment appropriate. *Johnson*, 2016 WL 25711, at *2, 7, 9; *see also Stemple v. QC Holdings, Inc.*, No. 12-cv-1997, 2014 WL 4409817 (S.D. Cal. Sept. 4, 2014) (certifying class of individuals called after their cell phone numbers were listed in the employment or contacts field on loan applications), *reconsideration denied*, 2015 WL 1344906 (Mar. 20, 2015), *leave to appeal denied*, (June 11, 2015). Both of those decisions are consistent with the Seventh Circuit's recognition that "[c]lass certification is normal in litigation under [47 U.S.C.] § 227," *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684

(7th Cir. 2013), and the recent certification of several similar classes bringing claims under that statute. *See, e.g., Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240 (N.D. Ill. 2014); *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292 (D. Nev. 2014); *Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292 (N.D. Cal. 2013).

Consistent with those rulings, the Class and Subclass here are built on precise and objective criteria. That makes class-wide treatment not only appropriate but necessary in vindicating the privacy rights of the thousands, perhaps hundreds of thousands, of individuals who were subject to Santander's unlawful calling practices. Accordingly, Plaintiff respectfully requests that the Court certify the Class and Subclass defined below under Rule 23(b)(3), appoint her as Class Representative for the Class and Subclass, and appoint her lawyers as class counsel under Rule 23(g).

## BACKGROUND

### *Santander Uses Automated Dialers to Call Millions of Consumers, and Keeps Detailed Computerized Records of its Telephonic Debt Collection Operation.*

Santander's primary business involves the acquisition and servicing of auto loans. *See* Santander, Overview, http://www.santanderconsumerusa.com/about/overview (last visited Apr. 21, 2016).[1] In particular, its loan portfolio is focused on sub-prime loans, which typically carry interest rates far above the average auto loan (*see* Exhibit B, Levins Financing Documents, at SCUSA/B 00045 ███████████████████████), and as a result, lead to borrowers falling behind on their payments or defaulting outright. (*See* Exhibit C, Mark

---

[1] With respect to acquisition, Santander either acquires loans directly from auto dealers throughout the country, *see* Santander, Products http://www.santanderconsumerusa.com/products (last visited Apr. 21, 2016), or purchases existing auto loans from other financial institutions, such as HSBC and CitiFinancial Auto. (Exhibit A, Wayne Nightengale Deposition Transcript Excerpt ("Nightengale Dep. Tr."), at 31:3–5, 93:11–93:18.) (All Exhibits referenced herein are attached to the contemporaneously filed Declaration of Jay Edelson ("Edelson Decl.").)

Mooney Deposition Transcript Excerpt, at 41:8–42:21 ███████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████).) Not surprisingly then, a substantial portion of Santander's day-

to-day operations involves attempting to collect on delinquent loans through various means,

including a massive telephonic debt collection operation that has placed calls to almost three

million unique account holders during the proposed class period. (Exhibit D, Santander Resp. to

Pl.'s Second Set of Interrogs. No. 15 (noting that Santander has approximately 4.3 million

customer accounts, 3.2 million of which were called at some point); *see also* Exhibit E,

Santander Fair Debt Collection Practices Act Policy, at SCUSA/E 8538 ██████████████████

████████████████████████████████████████████████████████████████████████████████

████████████

     To effectuate its collection calls, Santander automates the process using what is called the

██████████████████. (Nightengale Dep. Tr. at 42:8–43:7.)[2] The ██████████████████ is

what's known as a "predictive dialer," an "automated dialing system that uses a complex set of

algorithms to automatically dial consumers' telephone numbers in a manner that 'predicts' the

time when a consumer will answer the phone and a telemarketer will be available to take the

call." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of

1991*, 18 F.C.C. Rcd. 14014, 14022 n.31 (July 3, 2003); *see also Nelson v. Santander Consumer

USA, Inc., et al.*, No. 11-cv-307, Dkt. 141 at 17–19 (W.D. Wis. Mar. 8, 2013) (finding Aspect

dialer used by Santander to constitute an ATDS), *vacated by stipulation*, Dkts. 249, 251 (June 7,

---

[2] ██████████████████████████████████████████████████ (Exhibit F, Joseph Burda
Deposition Transcript Excerpt ("Burda Dep Tr.") at 51:24–54:1, 106:4–10.) ███████████████
████████████████████████████████████████████

2013); (Exhibit G, ██████████████████████████████████), at SCUSA/E 0202, 0216–17; Burda Dep. Tr. at 54:25–55:5).[3]

Santander is able to use the ████████ predictive dialing features to place thousands of calls simultaneously and without human intervention, while leaving its call center agents ████████████████████████████████████████████ ████████. (Burda Dep. Tr. at 47:24–49:2; 117:1–118:20; *see also* ████████████ ██████████████████████████████████████ ████████████████████████████████████ ██████████████████████████████████████████ (SCUSA/E 0202; *see* Nightengale Dep. at 109:23–110:9.) However, regardless of the dialing mode used, all calls made by Santander to the proposed classes here were made using the same equipment with the same dialing capacity. (Burda Dep. Tr. at 101:14–21, 105:21–106:3.)

With respect to the phone numbers actually called and broadly speaking, there are two ways that Santander obtains the numbers it dials: a consumer voluntarily provides it to Santander, or Santander gets the number without the consumer's help. ████████████ ██████████████████████████████████████████ ████████ (*See, e.g.*, Levins Financing Documents, at SCUSA/B 0035–74.) Likewise, Santander's customers ██████████████████████████████████████



---

[3]    Numerous other courts have similarly concluded that the Aspect dialer's predictive functionality. *See, e.g.*, *Lynn v. Monarch Recovery Mgmt., Inc.*, No. 11-cv-2824, 2013 WL 1247815, at *1 n.12 (D. Md. Mar. 25, 2013) (granting plaintiff summary judgment on TCPA claims after parties stipulated that Aspect dialer constituted ATDS), *reconsideration granted in part on other grounds*, 953 F. Supp. 2d 612 (D. Md. 2013), *aff'd*, 586 F. App'x 103 (4th Cir. 2014) *as amended* (Oct. 17, 2014); *Molnar et al. v. NCO Fin. Sys., Inc.*, No. 13-cv-131, Dkt. 173 at 7–8 (S.D. Cal. Apr. 20, 2015) (noting that Aspect dialer, among others, had "similar features" to dialer repeatedly determined to be an ATDS).

███████████████████████████████████████████████. (*See* Exhibit H,

Declaration of Wayne Nightengale ("Nightengale Decl."), ¶ 11.) ████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

███████████ (Exhibit I, Mark Nerios Deposition Transcript Excerpt ("Nerios Dep. Tr.") at

46:17–49:22; Nightengale Decl. ¶ 9.)[4] ███████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████

█████████

     Relevant here, Santander also obtains consumers' phone numbers to call through various

involuntary methods, like "number trapping" and "skip tracing." As to number trapping, each

time a customer dials ████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████Nightengale Dep. Tr. at 93:19–94:21.) Skip tracing,

generally speaking, involves using third parties to determine new contact information for a

customer when previous methods of contact have been unsuccessful. (*Id.*. at 91:8–92:7.) This can

involve █████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████



All activity related to every single Santander customer account is logged in Santander's recordkeeping system, known █████████████████████████████ (*Id.* at 52:25–53:9.) ████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████. (*Id.* at 74:8–22.) With respect to phone calls (both inbound and outbound),

████████████████████████████████████████████████████

████ Santander's system automatically logs the customer account number, date, and start time associated with each phone call. (Nightengale Decl. ¶ 4.) The system also automatically logs whether the call involved a customer service agent or was handled exclusively by the autodialing system; a unique identification code for the agent (if any); as well as an activity code—a four-character code describing the call, selected from a range of options by the agent, or automatically populated by the dialer. (*Id.*)

The call logs also include "activity note[s]," which provide further information describing the calls. (*Id.*) In particular, the activity notes include automatic coding that details whether the call was outbound or inbound, a notation of the number of "days past due" an account is (where applicable), the telephone number called (as well as how that number is described or characterized in Santander's records), the identification number for the recording of the call (if any), and the result of the call (whether it was answered, whether a message was left, and whether an answering machine was reached). (*Id.*; *see also* Nightengale Dep. Tr. at 106:14–111:11████████████████████████████).) The activity notes can also contain a "collector

note" from the call center agent describing the call, its result, and next steps to be taken on the account. (Nightengale Dec. ¶ 4) ████████████████████████████████████████ ████████████████████████████████████████. (*See* Nightengale Dep. Tr. at 74:10–17; *see also* Exhibit K, Santander Loan Servicing Account Documentation Policy, at SCUSA/E 008604.) Finally, Santander's records identify whether verifications of contact information were made on a call, and, if so, what was verified. (Nightengale Decl. ¶¶ 7–9.)

In sum, Santander's records show every call made to putative class members, what telephone number was dialed during that call, the source of that telephone number, whether that number was ever "verified" by the customer, and what happened during the call.

### Courts in the Seventh Circuit and Throughout the Country Have Certified Classes Identified Through the Use of Computerized Call Records like Santander's Here.

Judge Shah's recent *Johnson v. Yahoo!* opinion provides a roadmap for certification in this case. There, the defendant sent text messages to hundreds of thousands of class members to welcome them to a service that allowed individuals to send online instant messages to others' cell phones without consent. 2016 WL 25711, at *1–3. The plaintiffs proposed classes were limited to those individuals who received the messages between two given time periods on cell phone numbers assigned to particular carriers, and whose telephone numbers were not previously associated with a user account in the defendant's records. *Id.* at *2. The Court began its class certification analysis by assessing the ascertainability of the class under recent Seventh Circuit precedent:

> Plaintiffs' proposed classes—both the primary one and the two subclasses—are ascertainable because they are defined precisely, defined by objective criteria, and are not defined in terms of success on the merits. *Mullins*, 795 F.3d at 659. Nothing more is required.

*Id.* at *2. After finding the numerosity and commonality requirements easily satisfied—due to the class possibly "contain[ing] more than 500,000 members, for whom common questions

would include, among others, whether the [text message platform] constitutes an 'automatic telephone dialing system,'" *id.* at *3—and finding one of the proposed classes to lack adequate representation, *id.* at *4–5, the Court turned to Rule 23(b)(3)'s predominance requirement. In assessing whether potentially individualized issues of consent could overwhelm the predominance of common issues such as whether the defendant used an ATDS, the Court found that as to the individuals contained within the Class, the defendant's assertions about the possibility of unwritten consent were insufficient to deny class treatment. *See id.* at *7 ("[D]efendant may not rely on its own failure to obtain and retain records of who agreed to its uTOS to defeat class certification in this matter.") (citing *Mullins*, 795 F.3d at 668). Finally, and again tracking *Mullins*, Judge Shah found "class treatment to be the superior way to proceed in [the] case." *Id.* at *9.

The Southern District of California's *Stemple* decision likewise supports certification here. There, the defendant called 105,805 unique cell phone numbers, only some of which belonged to class members. *See* 2014 WL 4409817, at *8–9. Specifically, the proposed class consisted of individuals whose cell phone numbers were called by the defendant (i) using an ATDS, (ii) after their numbers appeared in the employment or contacts fields of certain loan applications. *Id.* at *9. Complicating the identification of class members was the fact that some of the individuals called after being listed as references had subsequently consented to the receipt of such calls. *Id.*

With the assistance of expert testimony, the plaintiffs proposed the use of a computer program to cross-reference the list of all numbers called by the defendant with a separate list of numbers identified only in the relevant reference fields, and also with a list of call recipients who gave separate consent to be called. *Id.* at *3. Over the defendant's objections, Judge Bashant

ultimately held the proposed class to be "readily ascertainable without resorting to expert testimony" because the defendant's own records allowed for isolation of those phone numbers (and individuals) actually falling within the proposed class definition. *Id.* at *7.

As described below, Plaintiff's proposed Class and Subclass definitions are objective, precise, and informed largely by Defendant's own records, as in *Johnson* and *Stemple*. As such, the Court should follow Judge Shah and Judge Bahsant and certify Plaintiff's proposed Class and Subclass here.

### *Like Other Class Members, Plaintiff Faye Levins Received Calls from Santander on Her Cellular Phone Which Were Made with an Automatic Telephone Dialing System.*

Plaintiff Faye Levins purchased a used █████████████████, and financed that purchase through █████████████████████████████ (Exhibit L, Faye Levins Deposition Transcript Excerpt, ("Levins Dep. Tr."), at 25:20–26:8; Levins Financing Documents at SCUSA/B 00043.); Santander, Overview, http://www.santanderconsumerusa.com/about/overview. After Ms. Levins fell behind on her payments, Santander began calling her repeatedly on a variety of different telephone numbers. (*See* Levins Call Logs, at SCUSA/B 00001–34.) Those numbers included numbers provided on her loan application, as well as others not provided directly by Ms. Levins. (*See id.*, Levins Financing Documents at SCUSA/B 00035–74.) At issue here is Ms. Levins's telephone number ending in -6074, a T-Mobile cellular number she subscribed to that was often, but not exclusively, used by her daughter. (Levins Dep. Tr. at 95:10–96:11; 101:17–19; Exhibit M, T-Mobile Subpoena Response.) ███████████████████████████████████████████

██████, and did not verify the number at the time, nor did Santander log any documentation of obtaining Ms. Levins's consent to call her at that number. (*See* Levins Call Logs, at SCUSA/B 00034.) Santander called that number with its █████████████████ over the following

five months before finally verifying the number with her on August 12, 2009. (*See id.* at

SCUSA/B 00032.) Santander proceeded to call the number ███████████ over the following

three years—despite numerous requests to stop—until Plaintiff filed her lawsuit against

Santander on June 26, 2012. (*See id.* at SCUSA/B 00001–32; Levins Dep. Tr. 114:23–115:15.)

## ARGUMENT

Plaintiffs seek certification of the following class and subclass under Fed. R. Civ. P. 23(a)

and 23(b)(3):

> **TCPA Class:** All individuals called by Santander or on its behalf, using the Aspect dialer system between December 19, 2007 and the present, on a cellular telephone number to which the individual was the subscriber, and which was not (a) listed in any application for credit or financing submitted to Santander or any of its originating creditors, (b) otherwise volunteered by the individual directly to Santander orally or in writing prior to the time of Santander's first call to that number, as reflected in Santander's records, or (c) verified prior to being called for the first time by Santander, as reflected in Santander's records.

> **Number Trapping Subclass:** All members of the TCPA Class called by Santander or on its behalf, on a cellular telephone number that Santander captured through calls made to its IVR system (as indicated by its identification in Santander's records with the notation 'IVR' followed by an Arabic numeral (e.g., IVR1, IVR2, etc.)).[5]

"To be certified, [the] proposed class[es] must satisfy the requirements of Federal Rule of

Civil Procedure 23(a), as well as one of the three alternatives in Rule 23(b)." *Messner v.*

*Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). "Plaintiffs bear the burden of

---

[5]     Excluded from the Class and Subclass are (1) any Judge or Magistrate presiding over this action and any members of their families; (2) Defendant; Defendant's subsidiaries, parents, successors, and predecessors; and any entity in which Defendant or its parents have a controlling interest, and its current or former employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; (6) all individuals who executed a financing application or agreement containing an arbitration clause with Santander or any of its originating creditors; (7) any individuals who provided Santander with releases or waivers of their TCPA claims; (8) any individuals who have filed any lawsuit or arbitration against Santander asserting a TCPA claim, and (9) the legal representatives, successors, and assigns of any such excluded persons.

showing that a proposed class satisfies the Rule 23 requirements, but they need not make that showing to a degree of absolute certainty. It is sufficient if each disputed requirement has been proven by a preponderance of evidence." *Id.* (citations omitted). That said, in determining whether class certification is appropriate, "the court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits," *id.*, and Rule 23 should be "liberally construed so as to favor the maintenance of class actions where appropriate." *Brown v. Yellow Transp., In*c., No. 08 C 5908, 2011 WL 1838741, at *2 (N.D. Ill. May 11, 2011).

Rule 23(a)'s four requirements—numerosity, commonality, typicality, and adequacy—are met when "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed R. Civ. P. 23(a). Additionally, because Plaintiff seeks certification of a damages class under Rule 23(b)(3), the Class and Subclass must also satisfy two additional requirements: predominance and superiority. These requirements are met where the common questions of law or fact "predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Finally, although it is not an express requirement of Rule 23, a proposed class or subclass must also be ascertainable. *Mullins*, 795 F.3d at 657–58. Here, as explained more fully below, the proposed Class and Subclass are ascertainable, and readily satisfy Rule 23's requirements.

Notably, courts throughout the country, including this one, have regularly certified classes asserting TCPA claims like those at issue here. *See, e.g., Johnson*, 2016 WL 25711 (certifying TCPA text message class); *Birchmeier*, 302 F.R.D. 240 (certifying TCPA prerecorded

voice classes); *G.M. Sign, Inc. v. Franklin Bank, S.S.B.*, No. 06-cv-949, 2008 WL 3889950 (N.D. Ill. Aug. 20 2008) (Kocoras, J.) (certifying TCPA fax class); *Stemple*, 2014 WL 4409817 (certifying TCPA text message class); *see also Holtzman*, 728 F.3d at 684 ("Class certification is normal in litigation under [47 U.S.C.] § 227, because the main questions, such as whether a given [communication] is an advertisement, are common to all recipients.").

In those rare instances where TCPA classes have not been certified, individual issues of consent have predominated. For example, this Court denied class certification in a TCPA fax case where there were no "fax transmission reports or any other lists of customers that might reliably illustrate the identity of the individuals [the defendant] sent faxes to[]." *Physicians Healthcare, Inc. v. Alma Lasers, Inc.*, No. 12-cv-4978, 2015 WL 1538497, at *4 (N.D. Ill. Mar. 31, 2015), *vacated in part on other grounds*, 2015 WL 7444378 (July 27, 2015). Here, obviously, that is no concern, as Santander's records identify every telephone number it has called, as well as when the number was called, how Santander obtained the number, and whether the customer verified the number. (*See* Nightengale Decl. ¶ 4; Nerios Dep. Tr. 19:17–25:6

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████

Likewise, certification has been denied where (unlike here) the plaintiff fails to propose a viable method for avoiding individual inquiries into the varied forms and scope of class members' consent to be called. *See, e.g., Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 578 (S.D. Cal. 2013); *Vigus v. Southern Riverboat/Casino Cruise, Inc.*, 274 F.R.D. 229, 237 (S.D. Ill. 2011) (denying certification where proposed class was "not a list of homogenously unconsenting recipients."). By contrast, when (as in this case) the proposed class

definition "weed[s] out those individuals who may have consented to be called," "the Court will

not have to inquire as to whether each putative class member may be subject to an independent

consent defense," and certification is typically granted. *Manno v. Healthcare Revenue Recovery

Grp., LLC*, 289 F.R.D. 674, 686 (S.D. Fla. 2013); *see also Balbarin v. N. Star*, No. 10-cv-1846,

2011 WL 211013, at *1 (N.D. Ill. Jan. 21, 2011) (declining to reconsider order granting class

definition where definition had been tailored to exclude individuals who had voluntarily

provided their numbers to the defendant); *Kristensen*, 12 F. Supp. 3d at 1307 ("[I]n the absence

of any evidence of consent by the defendant, consent is a common issue with a common

answer.").

I.      **The Proposed Class and Subclass Are Ascertainable.**

Though not explicitly stated in the text of Rule 23, ascertainability is an implicit

requirement "that a class must be defined clearly and that membership must be defined by

objective criteria." *Mullins*, 795 F.3d at 657. The Seventh Circuit has identified three common

situations rendering a class unascertainable. "First, classes that are defined too vaguely fail to

satisfy the 'clear definition' component." *Id*. at 659. "To avoid vagueness, class definitions

generally need to identify a particular group, harmed during a particular time frame, in a

particular location, in a particular way." *Id.* at 660. "Second, classes that are defined by

subjective criteria, such as by a person's state of mind, fail the objectivity requirement." *Id*.

"Plaintiffs can generally avoid the subjectivity problem by defining the class in terms of conduct

(an objective fact) rather than a state of mind." *Id*. For example, a class definition may turn on

what a defendant did, such as placing a call to a particular telephone number. *See Johnson*, 2016

WL 25711, at *2 (finding class of persons who received a particular text message from defendant

to be "defined by objective criteria"); *see also Mullins*, 795 F.3d at 661 (finding class of persons

who purchased a dietary supplement to be ascertainable because definition "focus[ed] on the act

of purchase and [defendant's] conduct in labeling and advertising the product"]). Finally, "classes that are defined in terms of success on the merits—so-called 'fail-safe classes'—also are not properly defined." *Id*. at 660. "The key to avoiding this problem is to define the class so that membership does not depend on the liability of the defendant." *Id.*

Here, the proposed Class and Subclass are ascertainable and avoid the common pitfalls because their definitions are specific, objective, and not dependent on Santander's ultimate liability. Specifically, whether any given individual is a member of the proposed Class can be determined by answering five objective, yes-or-no questions:

(1)     Did Santander place a call to the individual's cell phone number during a particular time period?

(2)     Did Santander place the call using the Aspect dialing system?

(3)     Was the number listed in any credit application documents submitted to Santander or any of its originating creditors?

(4)     Do Santander's records show that the individual voluntarily provided the number prior to being called?

(5)     Do Santander's records show that the number was "verified" prior to being called?

And with respect to whether a member of the proposed class falls within the subclass, a sixth objective, yes-or-no question:

(6)     Do Santander's records show that the number was "captured" during an incoming call to its IVR system?

Further, each of these questions can be answered by reference to Santander's own computerized records of the account at issue. (*See* Nightengale Decl. ¶ 4; Nerios Dep. Tr. at 24:4–27:22; *see also* Levins Call Logs, at SCUSA/B 00001–34.)

Courts in this district and elsewhere have routinely found TCPA classes based on objective membership criteria like these to be ascertainable. *See, e.g., Johnson*, 2016 WL 25711,

at *9; *Gehrich v. Chase Bank USA, N.A.*, No. 12 C 5510, 2016 WL 806549, at *6 (N.D. Ill. Mar. 2, 2016); *Stemple*, 2014 WL 4409817, at *8; *Green v. Serv. Master on Location Servs. Corp.*, No. 07 C 4705, 2009 WL 1810769, at *3–4 (N.D. Ill. June 22, 2009); *CE Design v. Beaty Const., Inc.*, No. 07 C 3340, 2009 WL 192481, at *3–4 (N.D. Ill. Jan. 26, 2009); *G.M. Sign*, 2008 WL 3889950, at *5. Simply put, the proposed Class and Subclass here are "ascertainable because they are defined precisely, defined by objective criteria, and are not defined in terms of success on the merits. Nothing more is required." *Johnson*, 2016 WL 25711, at *2 (internal citation omitted).[6]

## II.     The Proposed Class and Subclass Satisfy Rule 23(a)'s Requirements.

In addition to the proposed Class and Subclass being ascertainable, the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy—are easily met.

### A.     The proposed Class and Subclass are sufficiently numerous because they are comprised of at least thousands of individuals.

A class is sufficiently numerous when "the joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient to satisfy Rule 23(a)(1)." *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002). Plaintiffs may rely on "common-sense assumptions" to meet the numerosity requirement, and they need not establish an exact number of members in the class. *Id.* at 643–44; *see also Keele v. Wexler*, No. 95 C 3483, 1996 WL 124452, at *3 (N.D. Ill. Mar. 19, 1996) ("The

---

[6]     Notably, the Seventh Circuit has expressly declined to follow a trend in courts that "impose[s] a new requirement that plaintiffs prove at the class certification stage [] there is a 'reliable and administratively feasible' way to identify all who fall within the class definition." *Mullins*, 795 F.3d at 658, 659 (recognizing that "[n]othing in Rule 23 mentions or implies th[e] heightened requirement under Rule 23(b)(3)" and holding that the "'weak' version of ascertainability has long been the law in this circuit.") (citations omitted). In particular, the Seventh Circuit has held that the heightened ascertainability requirement upsets the balance of Rule 23 because "it gives one factor in the balance absolute priority, with the effect of barring class actions where class treatment is often most needed: in cases involving relatively low-cost goods or services, where consumers are unlikely to have documentary proof of purchase." *Id.* at 658.

exact number of class members need not be pleaded or proved, but impracticability of joinder must be positively shown, and not merely speculative."), *aff'd*, 149 F.3d 589 (7th Cir. 1998); *Lukas v. Advocate Health Care Network & Subsidiaries*, No. 1:14-CV-2740, 2015 WL 5006019, at *3 (N.D. Ill. Aug. 19, 2015).

Here, Santander's call records make clear that Class membership numbers in the tens of thousands, at least. In a previous settlement agreement, Santander stated that between July 2007 and August 2013, it had called (or had called on its behalf) 4.1 million individuals on their cellular telephones with automated dialers or prerecorded voices. (Exhibit N, *Hibler* Settlement Agreement, at 1–2.) Santander has also admitted here that it placed calls to almost three million discrete "active" debtors whose debts had not been discharged in bankruptcy. (Santander Resp. to Pl.'s Second Set of Interrogs. No. 15.) From those, Santander identified another 800,000 who were called on cellular numbers provided on their credit applications or who waived their TCPA claims by contract. (*Id.*) Thus, almost three million individuals were called by Santander or on its behalf, on numbers not provided in the loan applications. Given that many of those numbers were obtained through ███████████████████ (Nightengale Dep. Tr. at 91:8–92:7; 93:19–94:21), and that Santander's policy was to ███████████████████████ ██████████████, (*see* Exhibit O, Michele Rodgers Deposition Transcript Excerpt ("Rodgers Dep. Tr."), at 58:9–59:10), it is overwhelmingly likely that thousands of individuals— and certainly more than forty—fit the proposed Class and Subclass definitions. *See Keele*, 1996 WL 124452 ("Here, the court can assume a large class based on the over 5,000 letters sent by defendants."). This overwhelming evidence makes possible a "common-sense-assumption[]," *McCabe*, 210 F.R.D. at 644, that the Class is sufficiently numerous. *See Abdeljalil v. Gen. Elec. Cap. Corp.*, 306 F.R.D. 303, 308 (S.D. Cal. 2015) ("Based on the record presented,"—which

included a showing that defendant had more than 340 million account holders and a third party "made 2% of [defendant's] calls . . . using an automated dialer"—"it is clearly reasonable that at least 40 class members can be identified from defendant's 340 million account holders."). In fact, Santander itself made a similar assumption in the related *Espejo* action. (*See Espejo v. Santander Consumer USA, Inc.*, Case No. 1:11-cv-08987 (N.D. Ill.), Dkt. 117 at 11 (noting, in context of discovery dispute, that "information sought to show the size of [the] putative class" was not relevant because "Santander has not challenged numerosity.").

### B. Members of the proposed Class and Subclass share common issues of law and fact.

Rule 23(a)'s next requirement—commonality—is met where there are "one or more common questions of law or fact." *Spano v. The Boeing Co.*, 633 F.3d 574, 585 (7th Cir. 2011) (citing Fed. R. Civ. P. 23(a)(2)). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *accord Birchmeier*, 302 F.R.D. at 250. That is, the claims of the class must "depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 131 S. Ct. at 2551.

A common nucleus of operative fact, which is generally present when a defendant engages in a standardized pattern of conduct, "is usually enough to satisfy the commonality requirement." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (citing *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)); *see also Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) ("Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question."). Because TCPA cases such as this one almost always arise from standardized conduct—the alleged practice of

placing calls to cellular telephones using an ATDS—the commonality requirement is often easily met. *See, e.g.*, *Gehrich*, 2016 WL 806549, at *4 (finding commonality met where class members had received at least one phone call or text message from defendant on their cellular telephones, and certifying TCPA settlement class); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 491 (N.D. Ill. 2015) (finding commonality met where "[e]ach class member suffered the same alleged injury, namely, receipt of at least one prerecorded prescription refill reminder call to the class member's cellular telephone without the recipient's prior express consent," and certifying TCPA settlement class); *Birchmeier*, 302 F.R.D. at 251 (finding commonality met where class members "received the same calls . . . made by or for one of the defendants, using the same . . . technology," and certifying adversarial TCPA classes). Factual variation in the number of calls received or the substance of those calls, for instance, does not defeat commonality. *Rosario*, 963 F.2d at 1017–18; *accord Gehrich*, 2016 WL 806549, at *4.

This case is no different. Here, the claims of Plaintiff and the members of the proposed Class and Subclass all arise from a single common contention: that Santander violated the TCPA by using an ATDS to make calls to their cellular telephone numbers without their consent. Santander's uniform conduct gives rise to several common questions, the answers to which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 131 S. Ct. at 2551.

       1.    <u>Whether Santander's dialing equipment falls within the definition of an ATDS is a common question.</u>

The first common question that emerges is ***whether Santander placed the calls with equipment that meets the statutory definition of an ATDS.***[7] Here, Santander used a single

---

[7]     An ATDS refers to "equipment which has the capacity—(A) to store or produce numbers

dialing ███████████████████ to call each member of the Class and Subclass. (*See supra*, at 11.) Therefore, a determination as to whether that equipment constitutes an ATDS as defined by the TCPA will necessarily be answered in the same way for the Classes as a whole. *See Johnson*, 2016 WL 25711, at *3 (recognizing that whether a single calling "platform constitutes an 'automatic telephone dialing system'" is a common question under Rule 23(a)); *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 104 (N.D. Ill. 2013) (same); *see also Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009); *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).

           2.        <u>Whether Santander can demonstrate consent is a common question.</u>

A second common question for the Classes as a whole is **whether Santander lacked consent to place the calls at issue.** Here, the Class definition excludes all persons who provided their cellular telephone number to Santander on their financing documents, or by other means, as well as all persons who verified their telephone numbers prior to being called on them. (*See supra*, at 11.) (For its part, the Subclass is further limited to only those individuals whose numbers were trapped by Santander's IVR system.) As a result, the only individuals in the class are those for whom Santander has no evidence or other indicia of prior express consent, (*see id.*), and this second common question can be uniformly answered in the negative. Although Santander regularly placed calls to cellular telephone numbers regardless of whether consent was provided, Santander attests that it did record consent when it was given. (███████████████████

███████████████████████████████████████████████████

---

to be called, using a random or sequential number generator, and (B) to dial such numbers." 47 U.S.C. § 227(a)(1); *see also In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 F.C.C. Rcd. 7961, 7974 (July 10, 2015) (clarifying that an ATDS "need only have the 'capacity' to dial random and sequential numbers . . . [not] the 'present ability' to do so").

Based on this criteria, membership in the Class is closed to any person for whom Santander has evidence of prior express consent, and therefore the issue of consent is a common one for the Class.

Thus, by excluding from the Classes any individuals for whom NCO could arguably have documented consent to call, the argument that individualized inquiries into consent will be necessary is really not tenable. As courts considering certification of TCPA claims have repeatedly stated, a defendant cannot "defeat class certification by asserting the vague possibility that some of the individuals on the anonymous lists may have perchance consented to receive the [communication.]" *G.M. Sign., Inc. v. Finish Thompson, Inc.*, No. 07-cv-5953, 2009 WL 2581324, at *5 (N.D. Ill. Aug. 20, 2009) (collecting cases); *see also Balbarin*, 2011 WL 211013, at *1 (finding consent to be a common issue where class definition "exclude[d] individuals who provided their numbers to either defendant or the original creditor."); *see also Silbaugh v. Viking Magazine Servs.*, 278 F.R.D. 389, 393 (N.D. Ohio 2012) ("Having produced no evidence that any individual consented to receive the [calls in question] . . . [a] defendant is unable to realistically argue that individual issues regarding consent outweigh . . . commonality."); *Agne v. Papa John's Intern., Inc.*, 286 F.R.D. 559, 567 (W.D. Wash. 2012) (mere "speculation that [proposed class members] may have given their express consent to receive [calls] is not sufficient to defeat class certification."). If Santander tries to make a similar argument, this Court should treat it the same way—by simply ignoring it.

3.    Whether the Classes suffered the same injuries is a common question.

A third common question is **whether Santander's standardized conduct resulted in an injury that entitles each Class Member to statutory damages under the TCPA**. Where, as here, a defendant uses the same equipment to place substantially similar calls to class members

without their consent, all class members suffer the same injury. *See, e.g.*, *Birchmeier*, 302 F.R.D. at 251 (where class members, by definition, "received the same calls . . . made by or for one of the defendants, using the same . . . technology," there was "a common alleged injury presenting a common question.") Under the TCPA, this injury results in an identical measure of damages ($500 per call), which may be trebled where a defendant acted "willfully or knowingly." 47 U.S.C. § 227(b)(3); *see also Bridgeview Health Care Ctr. Ltd. v. Clark*, No. 09 C 5601, 2013 WL 1154206, at *7 (N.D. Ill. Mar. 19, 2013). Whether their injury entitles them to statutory damages, and whether Santander's conduct was willful or knowing, presents another question common to all Class members. In short, common questions loom over this case, any one of which alone satisfies Rule 23(a)(2). *See Wal-Mart*, 131 S. Ct. at 2562 (noting that "even a single common question will do") (citation and internal quotations omitted).

**C.  Plaintiff's claims are typical of those of the proposed Classes.**

Next, the typicality requirement is met where the named plaintiffs' claims and defenses are "typical of the claims and defenses of the class." Fed. R. Civ. P. 23(a)(3). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (citation and internal quotations omitted); *see, e.g.*, *CE Design*, 2009 WL 192481, at *5 (finding typicality met where standard practice of sending unsolicited faxes gave rise to the claims of all potential plaintiffs, and all claims were "based upon the same legal theory, *i.e.* violation of the TCPA"). "Typical does not mean identical, and the typicality requirement is liberally construed." *Gaspar v. Linvatec Corp.,* 167 F.R.D. 51, 57 (N.D. Ill. 1996); *see also De La Fuente*, 713 F.2d at 232 (noting that class representative's claims need only "have the same essential characteristics as the claims of the class at large.").

Because Santander's standardized conduct gives rise to all claims in this action—which are based on a single legal theory—Levins's claims are "typical" of those of her fellow Class and Subclass members. Like each Class member, Levins was called by Santander, using the Aspect dialer, on a cellular telephone number for which she was the subscriber. (Levins Dep. 99:12–15.) And like each Class member, her cellular telephone numbers at issue were not (1) listed on financing documents, (*see* Levins Financing Documents at SCUSA/00035–74), (2) provided directly to Santander by other means, (Levins Dep. Tr. at 105:12–20), or (3) verified prior to being called, (*see* Levins Call Logs at SCUSA/B 00032–34). As a result of Santander's uniform conduct, Levins's and the Class's claims all arise from an identical legal theory—that Santander violated the TCPA by using an ATDS to place calls to cellular telephone numbers, without first obtaining prior express consent.

The same is true of the Number Trapping Subclass. That is, like all members of the Subclass, Levins's cellular telephone number was captured through Santander's IVR system, ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Nerios Dep. Tr. at 37:1–25; Levins Call Logs at SCUSA/B 00034.)

Accordingly, there should be no serious dispute about whether Plaintiff's claims are typical of the claims of the other members of the Classes. *See CE Design*, 2009 WL 192481, at *5; *Edmondson v. Simon*, 86 F.R.D. 375, 381 (N.D. Ill. 1980) ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is met irrespective of varying fact patterns which underlie

individual claims."); *De La Fuente*, 713 F.2d at 232 ("[S]imilarity of legal theory may control even in the face of differences of fact.").[8]

### D. Plaintiff and proposed class counsel will fairly and adequately protect the interests of the proposed Classes.

Finally, Rule 23(a)(4)'s adequacy requirement is met where, as here, "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement tests both the adequacy of the named plaintiffs as well as that of proposed class counsel. *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011).

An adequate named plaintiff must possess the same interest and have suffered the same injury as his or her fellow class members. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–626 (1997); *accord Simpson v. Safeguard Properties, LLC*, No. 13 CV 2453, 2014 WL 4652336, at *4 (N.D. Ill. Sept. 17, 2014). Because the adequacy inquiry serves to uncover conflicts of interest, *see Amchem*, 521 U.S. at 625, a named plaintiff cannot have "antagonistic or conflicting claims." *Rosario*, 963 F.2d at 1018. In addition, a named plaintiff must also have a "sufficient interest in the outcome of the case to ensure vigorous advocacy." *Murray v. New Cingular Wireless Servs., Inc.*, 232 F.R.D. 295, 299 (N.D. Ill. 2005) (citation and internal quotations omitted).

Levins readily meets the adequacy requirement. As noted above, she has suffered the same injury as her fellow Class and Subclass members—the receipt of autodialed calls on a cellular telephone number she did not provide to Santander. She has no hidden agendas or conflicts of interest that render her inadequate to represent the Class or the Subclass. Indeed,

---

[8]     *See also Kolinek*, 311 F.R.D. at 492 ("The number of times other class members received prescription reminder calls is immaterial to the question whether those claims arise from the same course of conduct and share a common legal theory.").

Levins's participation in this case goes above and beyond what courts in this District consider adequate.

Levins's involvement began in the *Bonner* matter on June 26, 2012, *see Bonner v. Santander Consumer USA, Inc.*, No. 12-cv-9431, Dkt. 4 (N.D. Ill.), and she has been heavily committed to the Class since then. In addition to responding to written discovery requests and producing documents, Levins also sat for an all-day deposition, as did her daughter Jacqueline, and her sister Mary Godwin. (Levins's other sister, Angela Allen was subpoenaed, but responded by affidavit.) (Edelson Decl. ¶ 4.) Through the course of her commitment to this matter, Levins has shown an understanding of the issues in the case, as well as a commitment to honoring her duties to the class. (*See* Levins Dep. Tr. at 91:11–22; 168:1–15 (summarizing her role as class representative as including the duty "[t]o stop the harassing calls not only just for me, but for others like me.") Thus, through her continued participation in the case, Levins more than satisfies the adequacy requirement. *See Murray*, 232 F.R.D. at 300 (noting that adequacy standard is not difficult to meet, and is generally satisfied where the named plaintiff has "[a]n understanding of the basic facts underlying the claims, some general knowledge, and a willingness and ability to participate in discovery") (citation and internal quotations omitted).

As to Rule 23(g)'s requirement that a court certifying a class also appoint class counsel, Proposed Class Counsel's actions in this case also show that they are ready and willing to "zealously represent and advocate on behalf of the class as a whole." *Maxwell v. Arrow Fin. Servs., LLC*, No. 03 C 1995, 2004 WL 719278, at *5 (N.D. Ill. Mar. 31, 2004). Under Rule 23(g), factors such as the work class counsel have done in identifying or investigating potential claims, their experience handling other class actions, their knowledge of the law, and the resources they will commit to the case are all indicative of adequacy. Fed. R. Civ. P. 23(g). Here,

through the relation of separate actions, significant motion practice, four full-day mediation sessions, and substantial discovery—including the review of thousands of pages of document production and a dozen depositions—proposed Class Counsel have committed substantial resources to investigating and attempting to resolve the claims in this case, now in its fifth year.

In terms of experience, proposed Class Counsel are well-respected members of the legal community, with extensive experience litigating class actions of similar size, scope, and complexity, particularly in the TCPA space. Indeed, they were co-lead counsel in *Satterfield v. Simon & Schuster, Inc.*, where the Ninth Circuit confirmed the TCPA's application to text message calls. 569 F.3d at 949. Likewise, they have acted as lead counsel in cases upholding the constitutionality of the TCPA against First and Fifth Amendment challenges. *See Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1011–12 (N.D. Ill. 2010) (First Amendment); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1169–71 (N.D. Cal. 2010) (Fifth Amendment vagueness). Further, Edelson was class counsel for the largest adversarially certified class in TCPA history, where it recently obtained summary judgment in the class's favor. *See Birchmeier*, 302 F.R.D. 240; *Aranda v. Caribbean Cruise Line, Inc.*, No. 12 C 4069, 2016 WL 1555576, at *14 (N.D. Ill. Apr. 18, 2016); *see also Lee*, 289 F.R.D. 292 (Edelson appointed as class counsel in adversarial class action); *Kristensen*, 12 F. Supp. 3d 1292 (same); *Kolinek v. Walgreen Co.*, No. 13-cv-4086 (N.D. Ill.) (Edelson appointed settlement class counsel); *Hopwood v. Nuance Communc'ns, Inc.*, No. 13-cv-2132 (N.D. Ill.) (same); *Rojas v. CEC*, 10-cv-5260 (N.D. Ill.) (same).

For these reasons, Plaintiff's counsel have been—and will continue to be— adequate counsel for the Class, and should be appointed pursuant to Fed. R. Civ. P. 23(g). *See Whitten v. ARS Nat. Servs., Inc.*, No. 00-cv-6080, 2001 WL 1143238, at *4 (N.D. Ill. Sept. 27, 2001) ("The

fact that attorneys have been found adequate in other cases is persuasive evidence that they will be adequate again.") (citation and internal quotations omitted).

## III.     The Proposed Class and Subclass Satisfy Rule 23(b)(3)'s Requirements.

In addition to meeting the prerequisites of Rule 23(a), Plaintiff must also meet one of the three requirements of Rule 23(b) for class certification. Ms. Levins seeks certification under Rule 23(b)(3), which requires that common questions of law or fact predominate over any individual questions, and that a class action is superior to multiple individual actions. Fed. R. Civ. P. 23(b)(3). Those requirements are satisfied here.

### A.     Common questions of law and fact predominate.

The predominance requirement of Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," *Amchem*, 521 U.S. at 623, and is met where the common questions of law or fact "predominate over any questions affecting only individual members," Fed. R. Civ. P. 23(b)(3). Predominance tests the balance between common questions, where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof," and individual ones, which call for "evidence that varies from member to member." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 2016 WL 1092414, at *7 (Mar. 22, 2016) (citations and internal quotations omitted). Rule 23(b)(3) "contemplates that . . . individual questions will be present," and "requires only that those questions not predominate over the common questions affecting the class as a whole." *Messner*, 669 F.3d at 815.

Determining whether questions of law or fact predominate "begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011). A plaintiff need not establish "every element of liability," but rather, must "demonstrate that the elements of liability are capable of proof at trial through evidence that is

common to the class rather than individual to the members." *Driver v. AppleIllinois, LLC*, 265
F.R.D. 293, 303 (N.D. Ill. 2010). When a common nucleus of operative facts underlies the
proposed class's claims, common issues usually predominate. *See Messner*, 669 F.3d at 815.

Here, common issues predominate because each element of Plaintiff's and the Class's
claim can be proven by common evidence, and because any individual variations among them
have no bearing on their claims. As described above, each Class member was called with the
same dialing equipment ████████████), and as such the ATDS element of the Class's claims
will be resolved uniformly. █████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████). The next element of the Class's TCPA
claims—whether each Class member received the calls on a number assigned to a cellular
service—will likewise lack any individual issues, because the Class and Subclass definitions are
limited to persons who received calls on cellular telephone numbers for which they are the
subscriber. Finally, in a TCPA action such as this one, individualized damages are a non-issue
given that the TCPA provides for a uniform measure of statutory damages. *See Birchmeier*, 302
F.R.D. at 243 ("[D]efendants' contention about calculation of individual damages is a non-issue
in terms of predominance. Plaintiffs are asking only for statutory damages, which eliminates
individual variations."); *see also Targin Sign Sys., Inc. v. Preferred Chiropractic Ctr., Ltd.*, 679
F. Supp. 2d 894, 898 (N.D. Ill. 2010) (availability of statutory damages in TCPA case made
individualized damages inquiry unnecessary and class certification appropriate).

Nor does the issue of consent raise individual questions that predominate over the
common ones. Although consent is an affirmative defense to liability under the TCPA, *see*

*Thrasher-Lyon v. Illinois Farmers Ins. Co.*, 861 F. Supp. 2d 898, 905 (N.D. Ill. 2012), when evidence of consent is uniformly absent, it is a common question capable of class-wide resolution. *See Jamison*, 290 F.R.D. at 106–07 ("[I]f the defendants fail to set forth this specific evidence and instead only make vague assertions about consent, then individualized issues regarding consent will not predominate over common questions of law or fact so as to prevent class certification."); *see also Johnson*, 2016 WL 25711, at *7–8 (finding common questions to predominate over any individualized questions of consent where defendant did "not present[] specific evidence" of consent, and its "opposition [was] based on theory, not evidence.") (citing *Jamison*, 290 F.R.D. at 106). As Judge Bucklo held in a case where the proposed class "exclude[d] individuals who provided their numbers to either defendant or the original debtor," individualized consent challenges are especially likely to fail where, as here, "the evidence cited . . . tends to show not that the individual consent issues predominate . . . but instead that the individual in question is not a member at all." *Balbarin*, 2011 WL 211013, at *1.

As explained above, one need only look to Santander's records—which are very detailed—to determine the individuals who were called without consent. (*See* Nightengale Decl. ¶ 12.) Indeed, the Classes consist of only those individuals who (as reflected in and established by Santander's records) never provided any indicia of consent to be called. *See supra*, at 11.) As such, there is "no evidence that any [member of the Classes] consented to receive the [calls]" and Santander "is unable to realistically argue that individual issues regarding consent outweigh []commonality." *Silbaugh*, 278 F.R.D. at 394; *see also Johnson*, 2016 WL 25711, at *7 (finding predominance met where defendant had "not presented specific evidence showing that a significant percentage of the putative class" consented to receive text message by agreeing to terms of service, and noting that "an opposition based on theory, not evidence, is not a weighty

objection."); *Kristensen*, 12 F. Supp. 3d at 1307 ("[C]ourts should ignore a defendant's argument that proving consent necessitates individualized inquiries in the absence of any evidence that express consent was actually given. It also means that courts should afford greater weight to a plaintiff's theory of class-wide proof of lack of consent when that theory is entirely unrebutted by the precise type of evidence which could do it the greatest harm—evidence of express consent.").

Accordingly, because Plaintiff has defined the Classes in a narrow fashion that avoids the presence of any individualized issues, the numerous common issues facing the Classes predominate.

**B.      A class action is the superior method for resolving this controversy.**

In addition to showing that common questions of law and fact predominate, a party seeking certification under Rule 23(b)(3) must show that a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In making that determination, a court is to consider "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). The superiority requirement is comparative, and must be assessed "with an eye toward 'other available methods.'" *Mullins*, 795 F.3d 654.

"The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997). Thus, a class action favors class member interests when it would avoid the need for each member

to be "aware of her rights, willing to subject herself to all the burdens of suing and able to find an attorney willing to take her case . . . considerations that cannot be dismissed lightly in assessing whether a class action or a series of individual lawsuits would be more appropriate" for pursuing statutory objectives. *Id.*

As courts throughout the country have recognized, although "the TCPA [has] built-in incentives for aggrieved plaintiffs to litigate individually—such as the opportunity to collect statutory damages . . . it does not follow that such claims are inappropriate for class treatment." *Manno*, 289 F.R.D. at 690; *see also Johnson*, 2016 WL 25711, at *8 (rejecting argument that "Congress contemplated that TCPA claims could be brought as small-claims court actions," and noting that "Congress did not make a clear expression of an intent to preclude application of Fed. R. Civ. P. 23 to the TCPA, and the Court will not read one into the statute.") (citations and internal quotations omitted); *Birchmeier*, 302 F.R.D. at 255 (noting propriety of TCPA "claims be[ing] bound together in a class action, in which each plaintiff still would be entitled to his individual statutory damages"). "While nuisance calls from debt collectors may not be 'the most egregious of wrongs policed by Congress,' [the courts should not] assume 'that individual suits [will] deter large commercial entities as effectively as aggregated class actions and that individuals would be as motivated—or even more motivated—to sue in the absence of the class action vehicle.'" *Manno*, 289 F.R.D. at 690 (citation and internal quotations omitted).

In that light, there's no question a class action is the superior method here. Plaintiff's and the Classes' claims involve identical alleged violations of the TCPA and are subject to generalized proof. Moreover, absent a class action, most members would find the cost of litigating their claims—which are statutorily limited to a maximum of $500 (or $1,500) per call—to be prohibitive. Not to mention that prosecution of thousands of identical claims would

be judicially inefficient. *See Ramirez v. Trans Union, LLC*, 301 F.R.D. 408, 424 (N.D. Cal. 2014) ("It is more efficient to adjudicate the claims as a class action rather than thousands of individual actions."). In the end, because "there are no prickly individualized questions with the potential to derail this class action," it should move forward. *Manno*, 289 F.R.D. at 690.

## CONCLUSION

For the reasons stated above, Plaintiff Faye Levins respectfully requests that the Court enter an order certifying the proposed Class and Subclass pursuant to Fed. R. Civ. P. 23(b)(3); naming her as the representative for both the Class and Subclass; naming her counsel, Jay Edelson, Rafey S. Balabanian, Benjamin H. Richman and J. Dominick Larry as Class Counsel pursuant to Fed. R. Civ. P. 23(g); and entering any such other relief as the Court deems reasonable and just.

Respectfully submitted,

**FAYE LEVINS**, individually and on behalf of all others similarly situated,

Dated: April 21, 2016        By: s/ J. Dominick Larry
                             One of Plaintiff's Attorneys

Jay Edelson
jedelson@edelson.com
Benjamin H. Richman
brichman@edelson.com
J. Dominick Larry
nlarry@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Rafey S. Balabanian
rbalabanian@edelson.com
EDELSON PC
329 Bryant Street, Suite 2C

San Francisco, California 94107
Tel: 415.234.5342
Fax: 415.373.9435

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2016, I served the above and foregoing by causing a true and accurate copy of such paper to be filed and served on all counsel of record via the Court's CM/ECF electronic filing system.

s/ J. Dominick Larry